UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Martin S. Gottesfeld
_____
Write the full name of each plaintiff.

18 CV 10836

No. _____
(To be filled out by Clerk's Office)

-against-

Hugh J. ~~Horowitz~~ Horwitz
David Anderson
Esker Tatum
Anthony Bussanich

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☑ Yes   ☐ No

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/6/16

I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☑ Violation of my federal constitutional rights

☑ Other: _State civil rights violations_

II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_Martin_           _S_           _Gottesfeld_
First Name      Middle Initial      Last Name

_Marty Gottesfeld, Marty G., Martin Kerim, Marty Kerim_
State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_FBOP ID 12982-104, PCCF ID 71225_
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_The Plymouth County Correctional Facility (PCCF)_
Current Place of Detention

_26 Long Pond Road_
Institutional Address

_Plymouth County, Plymouth_     _MA_     _02360_
County, City              State    Zip Code

III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☑ Other: _Post-trial unsentenced detainee_

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

(MSG 2018-11-13)

Defendant 1:
First Name: Hugh J.
Last Name: Hurwitz
Shield #:
Current Job Title (or other identifying information): Acting Director - U.S. Federal Bureau of Prisons
Current Work Address: 320 First St. NW
County, City: Washington
State: DC
Zip Code: 20534

Defendant 2:
First Name: David
Last Name: Anderson
Shield #:
Current Job Title (or other identifying information): Acting Deputy Director - U.S. Marshals Service
Current Work Address: 1215 S. Clark St.
County, City: Arlington
State: Virginia
Zip Code: 22202

Defendant 3:
First Name: Esker
Last Name: Tatum
Shield #:
Current Job Title (or other identifying information): Warden - Metropolitan Correctional Center
Current Work Address: 150 Park Row
County, City: New York
State: New York
Zip Code: 10007

Defendant 4:
First Name: Anthony
Last Name: Bussanich
Shield #:
Current Job Title (or other identifying information): Medical Director - Metropolitan Correctional Center
Current Work Address: 150 Park Row
County, City: New York
State: New York
Zip Code: 10007

MSG 2018-11-13

Page 3

## V. STATEMENT OF CLAIM

Place(s) of occurrence: _Metropolitan Correctional Center (MCC) New York_

Date(s) of occurrence: _November 14th, 2016 – February 4th, 2017 inclusive_

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_Please see attached._

1. On or about November 14th, 2016, while remanded into the custody of The United States Marshals Service (herein "The USMS"), the plaintiff, Martin Gottesfeld (herein "the plaintiff"), was transferred to the Metropolitan Correctional Center (herein "MCC"), a Federal Bureau of Prisons (herein "FBOP") facility in Manhattan, while he was engaged in a Constitutionally-protected hunger strike (see Bihdo v. Gomez, 214 F.Supp.3d 709 (N.D. Ill. 2016)).

2. Immediately after being received into the facility, the plaintiff was placed in MCC's Special Housing Unit or SHU (pronounced like "shoe"). At the time of plaintiff's first entry into the SHU and throughout his confinement there, the main inmate entrance to the unit was labelled to the effect that MCC's SHU was the toughest SHU in America.

3. The plaintiff is no longer in the custody of the Federal Bureau of Prisons (FBOP) and thus the Bureau's administrative remedies are not available to him.

4. Throughout the FBOP system, inmates who are housed in SHUs, including at the SHU in MCC, live a tougher existence than those in general population. By way of illustration and not limitation, inmates in general population receive an allotment of 300 minutes of phone time per month and have access to telephones throughout most of the day, while those housed in a SHU are allowed only a single 15-minute social call per month; inmates in

— Facts – Page 1 of 9 —

the SHU have fewer opportunities for in-person visits with family members and often also fewer opportunities for attorney visits as well due to congestion of a smaller number of attorney visiting rooms for SHU inmates; inmates in general population have access to the FBOP's electronic mail system while inmates in the SHU do not; and inmates in general population eat communal meals, and have hours per day to watch television, utilize recreational facilities, microwaves, and showers while inmates in the SHU are generally "locked down" in their cells 23 to 24 hours per day and are generally afforded the opportunity to shower every 2 to 3 days.

5. To safeguard the civil rights of inmates, conditions in FBOP SHU's and the placement of inmates into SHUs are governed by relevant Code of Federal Regulation (CFR).

6. The plaintiff never received written notice of the reason(s) for his placement in the SHU as required by 28 CFR 541.25. The plaintiff intends to show through discovery that no such written notice was ever delivered to him and further he believes and intends to show by a preponderance of the evidence that no such written notice was ever prepared.

7. The plaintiff was never offered the opportunity to attend any administrative detention hearing and it appears that no such hearing(s) were ever conducted as required by 28 CFR 541.26. Again, the plaintiff intends to show through discovery that no such opportunity was ever

- Facts - Page 2 of 9 -

afforded to him and he further believes and intends to demonstrate through a preponderance of the evidence that no such hearings were ever conducted outside of his presence.

8. The plaintiff was never subject to formal disciplinary action at MCC nor elsewhere in the FBOP system and yet he was punished as badly if not worse than if he was. Once more, the plaintiff intends to conclusively demonstrate through discovery that no prison disciplinary proceedings were ever initiated against him at any FBOP facility and further, he believes and intends to demonstrate through a preponderance of the evidence that the eighty-one (81) consecutive days he was held in solitary confinement in the SHU at MCC, including twenty-five (25) days past the declared end of his hunger strike all the while his rights to Due Process, Freedom of expression, and freedom of the press, amongst others, were violated represents a far more severe sanction than most inmates would have (or indeed did in fact) receive if adjudicated guilty of a serious, violent, prison disciplinary infraction.

9. While the plaintiff was in the SHU at MCC, his 8th Amendment right to be free from cruel and unusual punishment as well as his right to Due Process were violated by the deliberate indifference of the facility and its staff to conditions which would shock the conscience of the average objectively reasonable member of the public.

- Facts - Page 3 of 9 -

10. During the plaintiff's occupancy there, the MCC SHU held an uncontrolled rodent and insect infestation problem. Rats and/or mice would crawl into occupied cells through the gaps underneath the cell doors, causing inmates to resort to blocking those gaps, which in many cases were their only significant source of ventilation.

11. At one point cockroaches were found by a Correctional Officer (CO) in a tray of food that was about to be served to an inmate. Upon this discovery, that officer reacted as perhaps the average objectively reasonable member of the public would have. He audibly dropped the tray and exclaimed, "I hate this [expletive redacted]ing jail!"

12. At another point, a cockroach climbed up the body of a prison mental health practitioner while she was talking with an inmate/patient housed on the same tier as the plaintiff, causing her to scream and shudder — as many objectively reasonable members of the public would also likely have reacted.

13. On at least one occasion, the water was turned off to the SHU leaving the plaintiff and other inmates there unable to drink or flush their toilets. Bottled water was not distributed to the plaintiff and other inmates, at least one of whom resorted to drinking from his toilet.

14. The temperature in the SHU regularly approached that of the outdoors during the winter due to insufficient insulation in the exterior walls. Rather than fix the

— Facts — Page 4 of 9 —

building or leave the heat at a sufficient level, the eventual amelioration effort of the MCC administration weeks after the problem's annual emergence in late 2016 was to hand out thermal underwear which did not cover the face, feet or hands.

15. Shortly after the plaintiff, who was a contributor to The Huffington Post throughout his time at MCC, had an open letter to then-U.S.-Attorney-General Loretta Lynch and Justice Department Inspector General Horowitz published in the politics section of The Huffington Post on November 21st, 2016 describing many of the aforementioned conditions of confinement in the SHU at MCC, two agents from the Office of the Inspector General conducted a recorded interview with the plaintiff where he informed them of the temperature problem. Senior agent Adams responded by asking the plaintiff whether the temperature was so cold that he could see his own breath. The plaintiff intends to seek copies of these interview recordings in discovery.

16. The plaintiff was intentionally placed in a cold cell with leaking water pooled on the floor and algae growing in the toilet — each posing a heightened risk of infection — at a time when the plaintiff reasonably assumed that his immune system was compromised by over six (6) weeks of starvation. MCC acknowledged the water leak in an email to The Huffington Post, and the plaintiff is prepared to testify that the aforementioned fear of infection caused him to

undergo significant emotional distress at a particularly vulnerable or inopportune juncture.

17. The plaintiff was repeatedly threatened by MCC's medical staff, in particular by Medical Director Anthony Bussanich, with the brutal practice of force-feeding if he did not stop his Constitutionally-protected expression of protest via his hunger-strike. The practice of force-feeding has grown increasingly controversial to the point where few medical professionals are willing to perform the procedure and where courts have begun restraining prison officials from engaging in it (again, please see Bindo v. Gomez supra). Indeed, in 2015, the American Nurses Association awarded a registered nurse in the U.S. Navy its brand new "Year of Ethics" award for his steadfast refusal of a direct order to violate his conscience by force-feeding hunger-striking detainees.

18. While in the SHU at MCC the plaintiff was denied the ability to send sealed media mail, pursuant to 28 CFR 540.20, to Rolling Stone for the feature-length article which it had commissioned on the plaintiff's case. The cited reason for this denial was that MCC did not consider Rolling Stone to be a member of the news media. The aforementioned feature-length article was later published by Rolling Stone and widely read under the title, "The Hacker Who Cared Too Much: How A Crusade To Save Children Landed A Hacker Behind Bars." The plaintiff now intends to show that it was manifestly

— Facts — Page 6 of 9 —

obvious that Rolling Stone qualified as a member of the news media and to explore the true motivation behind the defendants' refusal to comply with the relevant CFR through discovery and depositions. Regardless, this refusal constituted a violation of the 1st Amendment rights of a pre-trial detainee in a politically-sensitive case while he should have been enjoying the presumption of innocence.

19. The plaintiff's sealed media mail to a reporter for Wired Magazine arrived with signs of tampering, including a staple through the envelope which was not placed there by the plaintiff.

20. The Warden of MCC at the time of the plaintiff's confinement in the SHU, Esker Tatum, personally denied the plaintiff his First Amendment right to be interviewed by multiple media outlets which requested access to him, including Rolling Stone and Wired – again, all while the plaintiff should have been enjoying the presumption of innocence. The plaintiff intends to demonstrate through a preponderance of the evidence which is to be obtained via discovery, depositions, and possible trial testimony that there was no valid, reasonable, meritorious penological reason to deprive him, the reporters, and the public of these interviews.

21. Additional mail sent by the plaintiff containing articles and letters to officials for publication at The Huffington Post and elsewhere as well as responding to other media inquiries either wasn't sent out from the facility or arrived without having been sealed by prison staff as per

— Facts - Page 7 of 9 —

standard FBOP practice after their review, including but not limited to a letter for publication to then-President-elect Donald Trump regarding the economic and logistical problems of operating a facility such as MCC in a largely-dilapidated building in the most expensive city in the world as well as how the FBOP appears to use assignments of favored staff, including then-Warden Esker Tatum, to MCC for periods of time which seem designed to help them maximize their pension benefits at taxpayer expense just prior to retirement.

22. The plaintiff intends to demonstrate through a preponderance of the evidence after discovery that the USMS had him transferred to MCC in pursuit of some of the unlawful purposes described above.

23. In addition to the above Federal violations, the plaintiff also brings this complaint under Bivens. The plaintiff intends to show that his rights under Article 1 of the New York State Constitution, specifically but not necessarily limited to §§ 5, 8, and 11 were also violated.

24. However, as per Exhibit 1 hereto, the facility where the plaintiff is currently confined lacks the legal resources, including a law library with access to New York state court case law, and expertise to assist in matters in the Southern District of New York. Since the plaintiff is without necessary and adequate resources and he is considered indigent, the plaintiff intends to move The Honorable Court forthwith for the appointment of qualified counsel who can amend this complaint as appropriate and

- Facts - Page 8 of 9 -

consider making a request for class certification.

25. As the amount in controversy easily exceeds $20, the plaintiff demands a jury trial.
— Facts - Page 9 of 9 —

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI. RELIEF

State briefly what money damages or other relief you want the court to order.

1. That this shouldn't happen to anyone else in the FBOP ever again.
2. Recovery of plaintiff's fees and other costs to prepare/bring the suit, including costs incurred searching for pro bono representation, approx. $500.
3. Such other damages/relief as the court deems just and proper, especially to ensure #1 above, i.e. that the FBOP, MCC, and USMS each adhere to 28 CFR §§ 541.25, 541.26, 541.31(a), 540.2(b)(2), 540.2(c), and 540.20 as well as the 1st, 5th, 6th and 8th Amendments to the U.S. Constitution and Article 1 of the New York Constitution.

(MSG-2018-11-13)

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 2018-11-13 | /s/ Martin Gottesfeld |
|---|---|
| Dated | Plaintiff's Signature |

| Martin | S | Gottesfeld |
|---|---|---|
| First Name | Middle Initial | Last Name |

26 Long Pond Road
Prison Address

| Plymouth County, Plymouth | MA | 02360 |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: Nov. 13th, 2018

Exhibit 1:

### Plymouth County Correctional Facility

**Inmate Request / La Demanda Del Preso / Pedido de Ocupante**

Fecha: Data: Thursday, November 8th, 2018

A: Para: Legal

De: Martin Gottesfeld

71225

La Unidad / Unidade: H1    Room # / El Cuarto# / Quarto#: 235

**List request (s)**
Demanda de la lista (s) / Pedido de lista (s) / (Escrito en ingles) / (Escrito em ingles)

Whom It May Concern,

May I please get the New York U.S. District Court paperwork to file a federal civil rights bit/Bivens claim and in-forma application to proceed without fees?

Thanks,

Inmate's Signature: [signature]

Received by: [signature]

**Staff Response / Oficial de estado mayor Response / Projeto de pessoal Resposta**

☐ Approved / Aceptado / Aprovado    ☐ Denied / Negaron / Negado

**Comments or Reason for Denial**

Enclosed is some information. You will have to write to the Court for the appropriate forms. Please note, we will not be able to assist you with your lawsuit. Although it is federal court, each district has their own local rules. We are not familiar with New York procedure.

A. Usmet.  11-9-18

Original: Inmate Folder    Copy to Inmate

Exhibit 1:

**Plymouth County Correctional Facility**

Inmate Request / La Demanda Del Preso / Pedido de Ocupante

Fecha: Data: Thursday, November 8th, 2018

A: Para: Legal

De: Martin Gottesfeld    NOV - 9 2018

71225

La Unidad / Unidade: H1    Room # / El Cuarto# / Quarto#: 235

List request (s)
Demanda de la lista (s) / Pedido de lista (s) / (Escrito en ingles) / (Escrito em ingles)

To Whom It May Concern,

May I please get the New York U.S. District Court paperwork to file a federal civil rights suit/Bivens claim and records application to proceed without fees.

Thanks,

Inmate's Signature: [signature]
La Firma de preso:
sinatura de ocupante:

Received by: [signature]

Staff Response / Official de estado mayor Response / Proveja de pessoal Resposta

☐ Approved / Aceptado / Aprovado    ☐ Denied / Negaron / Negado

Comments or Reason for Denial
Comentarios o Rezona para el Rechazo / Comentários ou Argumenta para Negação

Enclosed is some information. You will have to write to the Court for the appropriate forms. Please note, we will not be able to assist you with your lawsuit. Although it is federal court, each district has their own local rules. We are not familiar with New York procedure.

N. Umeh 11-9-18

Name:
Original: Inmate Folder    Copy to Inmate

**Plymouth County Correctional Facility**
26 Long Pond Road          26 Long Pond Road
Plymouth, MA 02360         Plymouth, MA 02360

Your Full Name / Su Nombre Lleno
Martin Gottesfeld
ID: 71225

Unit & Room #: Unit H1 Cell 235
La unidad y Número del Cuarto

THIS CORRESPONDENCE IS FORWARDED FROM
THE PLYMOUTH COUNTY CORRECTIONAL
FACILITY. THE CONTENTS MAY NOT HAVE BEEN
EVALUATED AND THE PLYMOUTH COUNTY
SHERIFF'S DEPARTMENT IS NOT RESPONSIBLE
FOR THE SUBSTANCE OR CONTENT OF THE
ENCLOSED MATERIAL.

Clerk - Pro Se Intake Unit
United States District Court
500 Pearl Street
New York, NY 10007

USM P3
SDNY

RECEIVED
SDNY DOCKET UNIT
2018 NOV 19 PM 3:49

