UNITED STATES DISTRICT COURT For
THE SOUTHERN DISTRICT OF NEW YORK

| Martin S. Gottesfeld, Pro Se, Plaintiff - against - Hugh J. Hurwitz, et al. | Civil No.: 18-cv-10836-PGG |

## NOTICE REGARDING RECEIPT OF FILINGS

Plaintiff Martin S. Gottesfeld (herein "plaintiff"), acting pro se, wishes hereby to notify, respectfully, The Honorable Court that he has previously mailed the following filings to The Clerk of Court, which, logic dictates, should have all been received prior to this notice: his Friday, March 22nd, 2019, Notice of Non-receipt of Response From Respondants; his supplemental affidavit in support of Emergency Motion For a Temporary Injunction from the weekend of March 23rd-24th, 2019; his Reply To Government's Preliminary Opposition To Emergency Motion For a Temporary Injunction from Monday, March 25th, 2019; his separate Motion For a Temporary Injunction, dated Monday, March 25th, 2019; and his letter/affidavit to The Honorable U.S. District Court Judge Paul G. Gardephe, dated Wednesday, March 27th, 2019.

The plaintiff tried to send all but the last of which as special mail from the Metropolitan Detention Center (MDC) Brooklyn, and he attempted to send his March 27th, 2019 letter/affidavit as special mail from the Federal Transfer Center in Oklahoma City.

If any of the above are missing, then, at its discretion, The Honorable Court may wish to order The Clerk of Court to inquire with the relevant facility as to the status of the mailing of such item(s).

Additionally, the plaintiff wishes to notify The Honorable Court that he was unable - not for lack of effort - to send a sealed legal filing from Federal Transfer Center Oklahoma City. Please see the accompanying affidavit herewith.

Finally, the plaintiff wishes to notify The Honorable Court that the last item he received from The Clerk of Court was the order for the government to notify The Honorable Court if the plaintiff's transfer to Terre Haute did not occur as scheduled. The plaintiff has no doubt that The Clerk of Court has done a thorough and diligent job of mailing the appropriate filings to him and notes that anything which he has not received is likely the result of his recent transfers and/or issues at the relevant facilities.

SDNY
[stamp: ELECTRONICALLY FILED  4-12-19]

S.D. OF N.Y.
2019 APR 12 PM 12:43
SDNY PRO SE OFFICE
RECEIVED

Respectfully mailed on Thursday, April 4th, 2019,

_____
Martin S. Gottesfeld, Pro Se, Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

Affidavit of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, do hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 4th day of April, 2019:

1. My name is Martin S. Gottesfeld. I am a federal inmate in the Communications Management Unit (CMU) at the Federal Correctional Institution (FCI) Terre Haute. My federal registration number is 12982-104.

2. From the night of Sunday, March 31st, 2019, through the early morning of Monday, April 1st, 2019, when I was transfered, I tried to send a sealed legal filing to The Honorable U.S. District Court for The Southern District of New York while I was still at the Federal Transfer Center in Oklahoma City, OK. I was unable to do so because staff either were unwilling to accept the filing from me until the following Wednesday, which would have been the next opportunity to send non-privileged general correspondence, or because staff did not pick up the filing, which I placed in my door as per the instruction of a correctional officer (C.O.).

3. I was not able to bring this filing with me during my transfer from Oklahoma City to Terre Haute and I am still waiting for it to arrive with my property.

Signed under penalty of perjury,

_____
Martin S. Gottesfeld, Reg. No.: 12982-104

UNITED STATES DISTRICT COURT For
THE SOUTHERN DISTRICT OF NEW YORK

| Martin S. Gottesfeld, Pro Se, Plaintiff - against - Hugh J. Hurwitz, et al. | Civil No.: 18-cv-10836-PGG |
|---|---|

### MOTION FOR ASSISTANCE WITH SERVICE

   Plaintiff Martin S. Gottesfeld (herein "plaintiff"), acting pro se, hereby moves The Honorable Court to order The Clerk of Court to assist the plaintiff with service of any and all outstanding motions, notices, oppositions, replies, and other filings in the instant case. In support of this motion, the plaintiff wishes, respectfully, to direct The Honorable Court's attention to the accompanying affidavit enclosed herewith, explaining the circumstances of this request.

   The plaintiff also wishes to apologize to The Honorable Court and to The Clerk of Court for any and all inconvenience brought about by this request.

   Respectfully mailed on Thursday, April 4th, 2019,

_____
Martin S. Gottesfeld, Pro Se, Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

Affidavit of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, Federal Registration Number 12982-104, do hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 3rd day of April, 2019:

1. My name is Martin S. Gottesfeld. I am a federal inmate in the Communications Management Unit (CMU) at the Federal Correctional Institution (FCI) Terre Haute. My federal registration number is 12982-104.

2. On Tuesday, March 26th, 2019, I was transfered from the Metropolitan Detention Center (MDC) Brooklyn to the Federal Transfer Center in Oklahoma City. I was not allowed to bring my legal work and personal property with me during this transfer.

3. My legal work and personal property have not yet arrived in Terre Haute and I do not know when it will, nor when I will actually receive it when it arrives at the facility.

4. At present, I do not have the address information required to serve the defendants in the case 18-cv-10836-PGG. Nor do I have copies of the documents which require service.

5. I previously tried to send mail instructing a member of my team to download the relevant documents from PACER and to contact the Pro Se Clerk's Office for instructions on how to complete service then certify such to The Honorable Court. I do not know if this mail got through as not all of my mail from MDC Brooklyn was arriving intact.

6. Now that I am in the CMU, my understanding is that I may face disciplinary action if I should attempt to instruct someone else to complete the service of process of the outstanding documents on my behalf.

7. I regret this awkward situation and I wish to apologize to The Honorable Court and to The Clerk of Court for any and all inconvenience brought about by this request.

Signed under penalty of perjury,

_____
Martin S. Gottesfeld, Pro Se, Reg No.: 12982-104

```
UNITED STATES DISTRICT COURT For:
THE SOUTHERN DISTRICT OF NEW YORK
```
| Martin S. Gottesfeld, Pro Se |
|---|
| Plaintiff |
| - against - |
| Hugh J. Hurwitz, et al. |

Civil No.: 18-cv-10836-PGG

## NOTICE OF FILING OF AFFIDAVIT

Plaintiff Martin S. Gottesfeld (herein "plaintiff"), acting pro se, wishes to notify, respectfully, The Honorable Court, of his filing of the accompanying affidavit and documents in order to supplement the record. He believes that these will be relevant to future motions and hearings.

At the current time, the plaintiff makes no additional motion to The Honorable Court.

However, the plaintiff does also wish to note that while he now does have sufficient postage and stationery to serve process on the defendants and The United States, he does not have the required addresses on hand as his legal work has not yet arrived following his transfer from MDC Brooklyn through FTC Oklahoma City.

Respectfully mailed on Thursday, April 4th, 2019,

*[signature]*

Martin S. Gottesfeld, Pro Se, Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

- Page 1 of 1 -

Affidavit of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, Federal Registration Number: 12982-104, do hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 3rd day of April, 2019:

1. My name is Martin S. Gottesfeld. I am a federal inmate in the Communications Management Unit (CMU) of the Federal Correctional Institution (FCI) Terre Haute. My federal registration number is: 12982-104.

2. This morning I handed the current Intelligence Research Officer (IRO) for the FCI Terre Haute CMU, Ms. E. Keller, copies of the documents accompanying this notice and affidavit, specifically: a one-page, typed, Inmate Request To Staff (known as a "cop-out"), requesting the preservation of evidence and a LexisNexis print-out of the case <u>McGowan v. U.S., 825 F.3d 118 (2d Cir. 2016)</u> with a section spanning parts of its fourth and fifth pages marked, showing that the Federal Bureau of Prisons (FBOP) has issued mandatory guidance to its staff not to enforce the so-called "Byline Restriction" and that the "Byline Restriction" was rescinded, first by an interim rule published on April 23, 2010, and then by a finalized rule on May 3, 2012.

3. Ms. Keller first clarified with me that my reason for providing the print-out of <u>McGowan</u> was to avoid having an incident report generated for allegedly violating the "Byline Restriction," as had happened to Mr. McGowan. She then accepted the print-out and said that she would deliver it to the appropriate legal department here at FCI Terre Haute.

4. Earlier in the conversation, Ms. Keller accepted the cop-out and said that she would pass it on to the next Intelligence Research Officer (IRO). It has become well-known in the CMU that Ms. Keller will be leaving the IRO role very soon, likely on this upcoming Friday, April 5th, 2019.

5. Ms. Keller also told me that in the CMU I cannot send sealed legal mail to U.S. Courts, including to The Honorable U.S. District Court for The Southern District of New York. She later handed me a print-out of Federal Register / Vol. 80, No. 14 / Thursday, January 22, 2015 / Rules and Regulations pages 3177 and 3178 as well as FBOP Program Statement 5214.02 (April 1, 2015), which deals with 28 CFR §§ 540.200-540.205.

Signed under penalty of perjury,

_____
Martin S. Gottesfeld, Reg. No.: 12982-104

To: Ms. Keller - Intelligence Research Officer, Communications Management Unit, FCI Terre Haute

From: Martin S. Gottesfeld, Reg. No.: 12982-104

Date: Wednesday, April 3rd, 2019

Subject: Preservation of Evidence In My Property From Metropolitan Detention Center (MDC) Brooklyn and Request To Be Present At Inspection of Legal Work

Salutations Ms. Keller,

    May I please be present when my property and legal work from Metropolitan Detention Center (MDC) Brooklyn and Federal Transfer Center Oklahoma City are inspected? There is evidence therein which I wish to preserve for my open civil case in The Southern District of New York (<u>18-cv-10836-PGG, Gottesfeld v. Hurwitz, et al.</u>), showing that <u>Federal Bureau of Prisons (FBOP) employees in MDC</u> Brooklyn opened, inspected, and likely read my privileged special mail outside of my presence.

    If I may not be present for this inspection, may I please request a written explanation as to why not, as well as an opportunity to address this issue with The Honorable Court prior to any inspection of my legal work and property outside of my presence?

    Please let me know.

    Thank You In Advance,

_____
Martin S. Gottesfeld, Reg. No.: 12982-104

- Page 1 of 1 -

> DANIEL MCGOWAN, Plaintiff-Appellant, -v.- UNITED STATES OF AMERICA, TRACY RIVERS, Residential Reentry Manager, Defendants-Appellees, CORE SERVICE GROUP, INC., COMMUNITY FIRST SERVICES, INC., GRACE TERRY, Facility Director, MASSIEL SURIEL, Case Manager, UNKNOWN UNITED STATES MARSHALS, Defendants.1
> UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
> 825 F.3d 118; 2016 U.S. App. LEXIS 10263
> Docket No. 15-1786
> March 2, 2016, Argued
> June 7, 2016, Decided

**Editorial Information: Prior History**

Appeal from a final judgment, entered on April 7, 2015, in the United States District Court for the Eastern District of New York (Cogan, J.), dismissing plaintiff Daniel McGowan's complaint. **McGowan** alleged that, while serving a federal sentence of incarceration, he was placed in solitary confinement for approximately twenty-two hours in retaliation for publishing an article online. As relevant here, he asserted claims for violation of his First Amendment rights against Tracy Rivers, a Bureau of Prisons employee, under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and for false imprisonment and negligence against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671.2680. We hold that: (1) Rivers is entitled to qualified immunity from McGowan's Bivens claim because the asserted First Amendment right was not clearly established at the time of the challenged conduct; and (2) the district court lacked subject-matter jurisdiction of McGowan's FTCA claims because they have no private analogue. Accordingly, we AFFIRM the judgment of the district court.McGowan v. United States, 94 F. Supp. 3d 382, 2015 U.S. Dist. LEXIS 35874 (E.D.N.Y., 2015)

**Counsel** ALEXANDER A. REINERT, New York, NY (David B. Rankin, Rankin & Taylor PLLC, New York, NY, on the brief), for Plaintiff-Appellant.
ELLIOT M. SCHACHNER, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, on the brief), for Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Defendants-Appellees.

**Judges:** Before: KATZMANN, Chief Judge, SACK and LOHIER, Circuit Judges.

**CASE SUMMARY** BOP employee was entitled to qualified immunity from a prisoner's Bivens claim because the prisoner's asserted First Amendment right was not clearly established at the time of the challenged conduct--a prisoner's publication of an article on a website under his own byline. District court lacked subject-matter jurisdiction of prisoner's FTCA claims.

**OVERVIEW:** HOLDINGS: [1]-The issue of qualified immunity was presented in the district court, was fully briefed on appeal, and turned on the purely legal question of whether the prisoner alleged a violation of a clearly established right. It was therefore appropriate for the court to consider the defense of qualified immunity on appeal even though it was not passed on by the district court; [2]-A BOP employee was entitled to qualified immunity from a prisoner's Bivens claim because the asserted First Amendment right was not clearly established at the time of the challenged conduct; [3]-The district court lacked subject-matter jurisdiction of the prisoner's FTCA claims because they had no private analogue. Violation

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

of a rule of an administrative agency did not establish negligence as a matter of law under New York law.

**OUTCOME:** Judgment affirmed.

**LexisNexis Headnotes**

***Civil Rights Law > Implied Causes of Action***

In Bivens, the U.S. Supreme Court recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. The United States Court of Appeals for the Second Circuit has established a two-step process for determining whether a Bivens remedy is available for an alleged constitutional injury. First, the court must determine whether the underlying claims extend Bivens into a new context. If the plaintiff's claims arise in a new context, the court then asks (a) whether there is an alternative remedial scheme available to the plaintiff, and, even if there is not, (b) whether special factors counsel hesitation in creating a Bivens remedy.

***Civil Procedure > Appeals > Reviewability > Preservation for Review***
***Civil Procedure > Appeals > Appellate Jurisdiction***

Although the United States Court of Appeals for the Second Circuit generally declines to consider arguments that were not passed on by the district court, this principle is prudential, not jurisdictional. The Second Circuit retains discretion to consider such arguments based on factors such as the interests of judicial economy and whether the unaddressed issues present pure questions of law.

***Civil Rights Law > Immunity From Liability > Defenses***
***Evidence > Procedural Considerations > Burdens of Proof > Allocation***

The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. For a right to be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. In making this determination, the United States Court of Appeals for the Second Circuit considers U.S. Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct. Nonetheless, the absence of a decision by the Second Circuit or the U.S. Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established so long as preexisting law clearly foreshadows a particular ruling on the issue. A court may grant qualified immunity on the ground that a purported right was not clearly established by prior case law, without resolving the often more difficult question whether the purported right exists at all.

***Civil Rights Law > Prisoner Rights***
***Criminal Law & Procedure > Postconviction Proceedings > Imprisonment***

When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. This test is particularly deferential to the informed discretion of corrections officials where accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff.

***Governments > Federal Government > Claims By & Against***
***Torts > Public Entity Liability > Liability > Federal Tort Claims Act > Exclusions From Liability***

A02CASES                                                    2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

***Torts > Public Entity Liability > Liability > Federal Tort Claims Act > Elements***

The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. Subject to certain exceptions, 28 U.S.C.S. § 2680, the Federal Tort Claims Act (FTCA) waives the sovereign immunity of the United States against claims for property damage or personal injury caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C.S. § 1346(b)(1). Accordingly, for liability to arise under the FTCA, a plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred. This "private analogue" requirement asks whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred.

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction***
***Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review***
***Civil Procedure > Appeals > Standards of Review > De Novo Review***
***Evidence > Procedural Considerations > Burdens of Proof > Allocation***
***Torts > Public Entity Liability > Liability > Federal Tort Claims Act > Jurisdiction***

When reviewing the dismissal of a complaint for lack of subject matter jurisdiction, the United States Court of Appeals for the Second Circuit reviews factual findings for clear error and legal conclusions de novo, accepting all material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. The United States' waiver of immunity under the Federal Tort Claims Act is to be strictly construed in favor of the government.

***Torts > Intentional Torts > False Imprisonment > Elements***

Under New York law, the elements of the tort of false imprisonment are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.

***Torts > Intentional Torts > False Imprisonment > Elements***
***Torts > Intentional Torts > False Imprisonment > Civil Rights Actions***
***Evidence > Procedural Considerations > Burdens of Proof > Allocation***

To recover for wrongful confinement, a prisoner must demonstrate that he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process.

***Torts > Intentional Torts > False Imprisonment***

The tort of wrongful confinement lacks a private analogue.

***Torts > Public Entity Liability > Liability > Federal Tort Claims Act > Elements***
***Governments > Federal Government > Claims By & Against***

When private prison contractors perform governmental functions pursuant to contracts with governmental entities, they are not similarly situated to any private actor. The private analogue inquiry of the Federal Tort Claims Act asks whether private individuals may create a relationship with third parties that is similar to the relationship between a governmental actor and a citizen, not whether a government

A02CASES                                            3

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

contractor could create such a relationship. Private persons cannot establish facilities to detain other persons - only the government can, either on its own or through a governmental contractor.

*Torts > Negligence > Proof > Violations of Law > Rules & Regulations*

It is well established in New York law that violation of a rule of an administrative agency is merely some evidence of negligence but does not establish negligence as a matter of law because a regulation lacks the force and effect of a statute.

## Opinion

{825 F.3d 121} Per Curiam:

Plaintiff Daniel **McGowan** appeals from a judgment of the United States District Court for the Eastern District of New York (Cogan, *J.*), entered on April 7, 2015, dismissing his complaint. As relevant here, **McGowan** asserted claims for violation of his First Amendment rights under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and for false imprisonment and negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. The district court dismissed McGowan's *Bivens* claim on the ground that there is no private right of action for violation of a federal prisoner's First Amendment rights. It dismissed McGowan's false imprisonment claim for failure to state a claim upon which relief may be granted and dismissed his negligence claim for lack of subject-matter jurisdiction. We affirm {825 F.3d 122} the dismissal of McGowan's negligence claim for lack of subject-matter jurisdiction, and we affirm the dismissal of his remaining claims on alternative grounds.

### Background

On June 4, 2007, following his conviction in the United States District Court for the District of Oregon on multiple counts of arson, attempted arson, and conspiracy to commit arson, **McGowan** was sentenced principally to eighty-four months' incarceration. On December 11, 2012, he was transferred to Brooklyn House Residential Reentry Center ("RRC") to serve the remainder of his sentence. **McGowan** alleges that, at Brooklyn House RRC, he received daily work passes, which allowed him to maintain full-time employment as a receptionist, and enjoyed privileges such as weekend home visits, unrestricted use of the internet, a shopping pass, and the opportunity to apply to attend social events.

On April 1, 2013, **McGowan** published an article on the Huffington Post website under his own byline. *See* Daniel **McGowan**, *Court Documents Prove I was Sent to a Communications Management Unit (CMU) for my Political Speech*, Huffington Post (Apr. 1, 2013, 8:36 AM), . In the article, **McGowan** asserted that, while serving his federal sentence, he had been placed in a highly restrictive Communication Management Unit in retaliation for publishing political opinion pieces. *Id.*

**McGowan** alleges that, shortly after his article appeared online, defendant Tracy Rivers, the Residential Reentry Manager at the New York Residential Reentry Management Office of the Bureau of Prisons ("BOP"), determined that he should be issued an incident report and remanded to a federal detention center. The incident report stated that **McGowan** had violated "BOP Program Statement no. 1480.05 dated September 21, 2000; 540.62 page 5, section (d)," which provided that "an inmate currently confined in an institution may not be employed or act as a reporter or publish under a byline" (the "Byline Regulation").

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

However, unbeknownst to Rivers, by the time these events occurred, the Byline Regulation had been rescinded. Specifically, in August 2007, a district court in Colorado held that the Byline Regulation was unconstitutional under the First Amendment. See *Jordan v. Pugh*, 504 F. Supp. 2d 1109, 1124 (D. Colo. 2007). On November 27, 2007, the BOP issued mandatory guidance to its staff instructing them not to enforce it. On April 23, 2010, the BOP published an interim rule rescinding the Byline Regulation, and finalized that rule on May 3, 2012.

**McGowan** alleges that on April 4, 2013, he was taken from Brooklyn House RRC to the Metropolitan Detention Center and placed in the Special Housing Unit ("SHU"). After McGowan's lawyers contacted the BOP, Kerry P. Kemble, Assistant Administrator of the Residential Reentry Management Branch of the BOP, informed Rivers that the Byline Regulation had been rescinded. Kemble and Rivers agreed to expunge the incident report and return **McGowan** to Brooklyn House RRC. **McGowan** returned to Brooklyn House RRC on April 5, 2013, having spent approximately twenty-two hours in the SHU.

**McGowan** commenced this action on August 20, 2014, and filed his Amended Complaint on November 12, 2014. As relevant here, he asserted claims for: (1) violation of his First Amendment rights against Tracy Rivers under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971); (2) false imprisonment {825 F.3d 123} against the United States under the FTCA; and (3) negligence against the United States under the FTCA. **McGowan** also brought state law claims against Core Services Group, Inc. d/b/a Community First Services, Inc., the private operator of Brooklyn House RRC; those claims are not at issue in this appeal.2

On March 23, 2015, the district court granted the defendants' motion to dismiss McGowan's Amended Complaint. First, it declined to recognize a *Bivens* remedy for violations of federal prisoners' First Amendment rights. *McGowan v. United States*, 94 F. Supp. 3d 382, 387-90 (E.D.N.Y. 2015). Second, it held that **McGowan** failed to state a claim for false imprisonment because, as an inmate serving a lawful sentence, his confinement was "uncategorically privileged." *Id.* at 390. Third, it held that it lacked subject-matter jurisdiction to hear McGowan's FTCA negligence claim because there was no "private analogue" to the BOP's allegedly negligent failure to follow its own regulation. *Id.* at 392-94. Having dismissed all of McGowan's federal claims, the district court declined to exercise supplemental jurisdiction over his state law claims. *Id.* at 394. This appeal followed.

**Discussion**

**I. *Bivens* Claim**

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) (citing *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)). We have established a two-step process for determining whether a *Bivens* remedy is available for an alleged constitutional injury. "First, the court must determine whether the underlying claims extend *Bivens* into a 'new context.'" *Turkmen v. Hasty*, 789 F.3d 218, 234 (2d Cir. 2015) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009)). If the plaintiff's claims arise in a new context, the court then asks "(a) 'whether there is an alternative remedial scheme available to the plaintiff,' and, even if there is not, (b) 'whether special factors counsel hesitation in creating a *Bivens* remedy.'" *Id.* (quoting *Arar*, 585 F.3d at 572).

**McGowan** argues that his claim does not require us to extend *Bivens* to a new context, and, even if it did, that there is no adequate "alternative remedial scheme" and no "special factor[] counsel[ing] hesitation." *Id.* Accordingly, he argues, the district court erred in refusing to recognize a *Bivens*

A02CASES                                       5

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

remedy. We need not decide this difficult issue, however, because we conclude that McGowan's *Bivens* claim fails for the independent reason that defendant Rivers is entitled to qualified immunity.

Although we generally decline to consider arguments that were not passed on by the district court, this principle is prudential, not jurisdictional. *See Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012). We retain discretion to consider such arguments based on factors such as "the interests of judicial economy" and "whether the unaddressed issues present pure questions of law." *Bacolitsas v. 86th & 3rd Owner, LLC*, 702 F.3d 673, 681 (2d Cir. 2012). Both of these factors are present here. The issue of qualified immunity was presented in the district court, has been fully briefed on appeal, and turns on {825 F.3d 124} the purely legal question of whether **McGowan** alleged a violation of a clearly established right. *See Fabrikant*, 691 F.3d at 212 ("The matter of whether a right was clearly established at the pertinent time is a question of law." (quoting *Dean v. Blumenthal*, 577 F.3d 60, 67 n.6 (2d Cir. 2009)). It is therefore appropriate for us to consider the defense of qualified immunity on appeal.

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066-67, 188 L. Ed. 2d 1039 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). In making this determination, we consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct. *See Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2014). Nonetheless, the "'absence of a decision by this Court or the Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established' so long as preexisting law 'clearly foreshadow[s] a particular ruling on the issue.'" *Id.* (quoting *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000)). A court may "grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012).

We conclude that, at the time the alleged violation occurred, our case law did not clearly establish that **McGowan** had a First Amendment right to publish his article. The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)). This test is "particularly deferential to the informed discretion of corrections officials" where "accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff." *Id.* at 90. For example, the Supreme Court has upheld "proscriptions of media interviews with individual inmates, prohibitions on the activities of a prisoners' labor union, and restrictions on inmate-to-inmate written correspondence." *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S. Ct. 1475, 149 L. Ed. 2d 420 (2001) (citations omitted).

We have not identified any binding authority in existence at the relevant time that either "directly address[ed]" the reasonableness of the challenged conduct or "clearly foreshadow[ed]" a ruling in McGowan's favor, *Garcia*, 779 F.3d at 92, nor has **McGowan** cited any such case. **McGowan** relies instead on cases establishing the right of a prisoner to be free from retaliation for filing a lawsuit or grievance. *See Espinal v. Goord*, 558 F.3d 119, 128-29 (2d Cir. 2009); *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003); *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002).3 {825 F.3d 125} But a prisoner's publishing a bylined article may implicate different penological interests from those implicated by his filing a lawsuit or grievance. For example, in litigating the constitutionality of the

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Byline Regulation in the District of Colorado, the government took the position that allowing inmates to publish bylined articles could create security problems by permitting such inmates to become "big wheels" in the prison community, or could incite violence, or could intimidate prison staff members. *See Jordan*, 504 F. Supp. 2d at 1120-23. Whether or not we would agree with that analysis is beside the point. We conclude only that, in light of the different interests at stake, our case law establishing a prisoner's right to file a lawsuit or grievance does not clearly establish a prisoner's right to publish an article under a byline. Indeed, the only authority that **McGowan** has identified that involved expression similar to that at issue in this case is a district court opinion, which, of course, is not binding. *See Shaheen v. Filion*, No. 9:04-CV-625 (FJS/DRH), 2006 U.S. Dist. LEXIS 101788, 2006 WL 2792739, at *3 (N.D.N.Y. Sept. 17, 2006).

Thus, in light of the absence of authority clearly establishing the claimed right, we are constrained to hold that Rivers is entitled to qualified immunity from McGowan's *Bivens* claim. In so holding, we do not reach the question of whether Rivers violated McGowan's First Amendment rights.

**II. FTCA Claims**

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quoting *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980)). Subject to certain exceptions, *see* 28 U.S.C. § 2680, the FTCA waives the sovereign immunity of the United States against claims for property damage or personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b)(1); *see also id.* § 2674. Accordingly, "for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (quoting *C.P. Chem. v. United States*, 810 F.2d 34, 37 (2d Cir. 1987)). This "private analogue" requirement asks "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996) (quoting *Rayonier Inc. v. United States*, 352 U.S. 315, 319, 77 S. Ct. 374, 1 L. Ed. 2d 354 (1957)).

"When reviewing the dismissal of a complaint for lack of subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo*, accepting all material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Liranzo*, 690 F.3d at 84. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman {825 F.3d 126} Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The United States' waiver of immunity under the FTCA "is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988).

**McGowan** asserts claims under the FTCA for false imprisonment and negligence. Under New York law, the elements of the tort of false imprisonment are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State*, 37 N.Y.2d 451, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87 (N.Y. 1975). The district court held that **McGowan** failed to state a claim for false imprisonment on the ground that the government's confinement of an inmate pursuant to a lawful judgment is "uncategorically privileged." ***McGowan* v. *United States***, 94 F. Supp. 3d 382, 390 (E.D.N.Y. 2015). It also noted that the government argued that McGowan's false imprisonment claim lacked a private analogue, but declined to rely on that ground. *See id.* at

A02CASES                                                7

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

392.

On appeal, **McGowan** argues that the district court erred in concluding that his confinement was "uncategorically privileged" because New York law recognizes a tort of "wrongful confinement" of an inmate within solitary confinement or keeplock. *See Ramirez v. State*, 171 Misc. 2d 677, 655 N.Y.S.2d 791, 794 (N.Y. Ct. Cl. 1997). Some New York courts have described the tort of wrongful confinement as a "species of false imprisonment." *Gittens v. State*, 132 Misc. 2d 399, 504 N.Y.S.2d 969, 974 (N.Y. Ct. Cl. 1986). To recover for wrongful confinement, a prisoner must demonstrate that "he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process." *Willey v. Kirkpatrick*, 801 F.3d 51, 71 (2d Cir. 2015) (quoting *Gittens*, 504 N.Y.S.2d at 972). **McGowan** argues that he adequately stated a claim for wrongful confinement under New York law.4

The parties dispute whether **McGowan** forfeited his wrongful confinement argument by failing to raise it in the district court. Whether or not this argument has been forfeited, however, it fails for the independent reason that the tort of wrongful confinement lacks a private analogue. **McGowan** asserts, without citation, that the tort of wrongful confinement could run against municipalities and their employees. Even assuming that he is correct, the Supreme Court has made clear that the relevant inquiry is the liability of a "private person" under State law, not that of a "state or municipal entity." *United States v. Olson*, 546 U.S. 43, 45-46, 126 S. Ct. 510, 163 L. Ed. 2d 306 (2005). Accordingly, the liability of municipalities or municipal actors performing governmental functions cannot serve as a private analogue.

**McGowan** further posits that private contractors operating local, state, or federal detention facilities could provide the requisite private analogue. He cites no authority for the proposition that private contractors can be held liable for wrongful confinement under New York law. Even assuming that they can, when private prison contractors perform governmental functions pursuant to contracts with governmental entities, they are not similarly situated to any private actor. The private analogue inquiry asks whether "[p]rivate {825 F.3d 127} individuals ... may create a relationship with third parties that is similar to the relationship between" a governmental actor and a citizen, not whether a government contractor could create such a relationship. *Olson*, 546 U.S. at 47; *cf. Liranzo*, 690 F.3d at 94-95 (focusing on state-law liability of a person acting "entirely in his or her private capacity"). Private persons cannot establish facilities to detain other persons - only the government can, either on its own or through a governmental contractor. In short, there is no circumstance in state tort law that is analogous to the situation here. Accordingly, there is no private analogue to McGowan's claim.5

McGowan's FTCA negligence claim also fails. **McGowan** alleges that the BOP negligently failed to follow its own disciplinary regulations. We addressed a similar claim in *Chen v. United States*, in which the plaintiff, a federal contractor, alleged that the General Services Administration negligently misapplied federal procurement regulations, causing him to lose a lucrative contract. *See* 854 F.2d at 624-25. We held that the plaintiff's claim was not actionable under the FTCA. First, we held that "violation of the government's duties under federal procurement regulations 'is action of the type that private persons could not engage in and hence could not be liable for under local law.'" *Id.* at 626 (quoting *Jayvee Brand v. United States*, 721 F.2d 385, 390, 232 U.S. App. D.C. 150 (D.C. Cir. 1983)). Second, we held that, even if the plaintiff's proposed private analogue - "wrongful sanctions by private associations against individual members" - were analogous to the government's alleged conduct, the plaintiff failed to demonstrate that New York law "recognizes a cause of action *in tort*" for such conduct. *Id.* at 626-27.

McGowan's claim, like Chen's, is grounded solely on the government's failure to follow applicable

A02CASES 8

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

regulations. *See id.* He contends that the relevant private analogue is a private party's failure to follow its own internal regulations. Even if that situation were analogous to the one presented here, however, **McGowan** has failed to establish that New York law recognizes a freestanding duty to abide by private regulations. The cases on which he relies establish only that failure to do so constitutes *evidence* of negligence, not negligence in itself. *See Cruz v. Madison Detective Bureau, Inc.*, 137 A.D.2d 86, 91, 528 N.Y.S.2d 372 (1st Dep't 1988) (holding that security company's failure to follow procedures was evidence of negligence); *Haber v. Cross County Hosp.*, 37 N.Y.2d 888, 889, 340 N.E.2d 734, 378 N.Y.S.2d 369 (N.Y. Ct. App. 1975) ("[T]he hospital's failure to abide by its own rule is some evidence of negligence."); *see also Florence v. Goldberg*, 44 N.Y.2d 189, 375 N.E.2d 763, 767, 404 N.Y.S.2d 583 (N.Y. 1978) (suggesting that police department's adoption of rules and regulations relating to provision of crossing guards was evidence that it assumed a duty to supervise school crossings); {825 F.3d 128} *Danbois v. New York C. R. Co.*, 12 N.Y.2d 234, 189 N.E.2d 468, 471, 238 N.Y.S.2d 921 (N.Y. 1963) ("Violation of [company rules] . . . is not negligence in itself but under certain circumstances may be regarded by the trier of fact as some evidence of negligence."). Accordingly, **McGowan** has not "show[n] a violation of a duty for which the applicable state law would provide recovery." *Chen*, 854 F.2d at 627 (quoting *Myers & Myers, Inc. v. U.S.P.S.*, 527 F.2d 1252, 1261 (2d Cir. 1975)).

Finally, to the extent that **McGowan** asserts a theory of negligence *per se*, it is well established in New York law that "violation of a rule of an administrative agency is merely some evidence of negligence but does not establish negligence as a matter of law because a regulation lacks the force and effect of a statute." *Chen*, 854 F.2d at 627 (alterations and internal quotation marks omitted).

Accordingly, we conclude that the district court correctly dismissed McGowan's negligence claim on the ground that it lacks a private analogue.

**Conclusion**

For the reasons stated herein, we **AFFIRM** the judgment of the district court.

**Footnotes**

1   The Clerk of the Court is directed to amend the caption to conform to the above.

2

Defendants Grace Terry, Massiel Suriel, and Unknown United States Marshals were not named in the Amended Complaint and also are not parties to this appeal.

3

**McGowan** also cites a case relating to a prisoner's free exercise rights. *See Holland v. Goord*, 758 F.3d 215, 225-26 (2d Cir. 2014). That case was decided over a year after the conduct at issue in this case, and therefore is not relevant to the state of clearly established law at that time.

4

**McGowan** does not, on appeal, challenge the district court's conclusion as it applies to ordinary claims of false imprisonment, as distinct from prisoners' claims of wrongful confinement. Accordingly, he has abandoned such challenge.

5

The FTCA does not waive sovereign immunity for claims of false imprisonment, excepting those false imprisonment claims arising from the "acts or omissions of investigative or law enforcement officers of the United States Government," which are defined as "any officer of the United States

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The government does not challenge Rivers' status as an "investigative or law enforcement officer[]," and we have previously recognized that BOP employees so qualify based on their authority to make arrests under 18 U.S.C. § 3050. *See Hernandez v. Lattimore*, 612 F.2d 61, 64 n.7 (2d Cir. 1979). Nonetheless, the record is silent on this issue, so we assume without deciding that Rivers is an "investigative or law enforcement officer[]" within the meaning of 28 U.S.C. § 2680(h).

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

NAME: Martin S. Gottesfeld
NUMBER: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

RECEIVED
SDNY PRO SE OFFICE
2019 APR 12 PM 12:27
S.D. OF N.Y.

USMP3 SDNY



2019 APR 11 PM 2:35
RECEIVED
CLERK'S OFFICE
S.D.N.Y.



USPS TRACKING #
9114 9014 9645 1762 0779 28
Label 400 Jan. 2013
7690-16-000-7948

⇔ 12982-104 ⇔
Clerk Of The Court
500 Pearl ST
NEW YORK, NY 10007
United States



Pro se,
EL

