UNITED STATES DISTRICT COURT For:
THE SOUTHERN DISTRICT OF NEW YORK

| Martin S. Gottesfeld, Pro Se, Plaintiff - against - Hugh J. Hurtwitz, et al. | Civil No.: 18-cv-10836-PGG |
|---|---|

## NOTICE OF FILING OF AFFIDAVIT

Plaintiff Martin S. Gottesfeld (herein "plaintiff"), acting pro se, wishes, respectfully, to notify The Honorable Court of his filing of the accompanying affidavit in order to supplement the record. He believes that it will be relevant to future motions and/or proceedings.

At the current time, the plaintiff brings no additional motion before The Honorable Court herewith.

Respectfully mailed on Monday April 8th, 2019

Martin S. Gottesfeld, Pro Se, Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

- Page 1 of 1 -

Affidavit of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, do hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 6th day of April, 2019:

1. My name is Martin S. Gottesfeld. I am a federal inmate in the Communications Management Unit (CMU) of the Federal Correctional Institution (FCI) Terre Haute. My federal registration number is 12982-104.

2. I arrived at the FCI Terre Haute CMU this past Monday, April 1st, 2019.

3. Upon my initial arrival at the FCI Terre Haute CMU building, I immediately identified myself to CMU staff as a journalist with The Intercept and as a frequent contributor to Info Wars, among other news media publications.

4. In my first discussions with unit correctional officers (COs), I was asked if I was familiar with typical Federal Bureau of Prisons (FBOP) procedures, such as standing counts.

5. In this conversation, I learned that the majority of inmate disciplinary charges in the CMU are a result of alleged communications policy violations.

6. I was spontaeneously told by unit staff that the FCI Terre Haute CMU has its own distinct Special Housing Unit (SHU), which is separate from the main SHU which is used for inmates from the other units in the institution, and that the CMU SHU is not a place where I want to find myself. This cautionary warning was issued without my asking and prior to my suspicion or knowledge that the FCI Terre Haute CMU has its own, distinct, SHU.

7. CMU staff told me that the CMU SHU is located over a steam pipe and that it is very hot. They also advised me that they do not like having inmates confined in the CMU SHU as it is inconvenient for them to make their required 30-minute rounds in the CMU SHU due to the need to close a main hallway in order to do so.

8. A little while later, two (2) members of the CMU unit team, Ms. E. Keller, who was the CMU Intelligence Research Officer (IRO) at the time, and Ms. Thomas, who is the CMU Unit Manager, arrived to complete my unit intake paperwork. They told me that a third member of the unit team, Ms. Eisele, who is the CMU Case Manager, was out for the week and would see me upon her return next week.

9. Ms. Keller explained to me that I had been designated to the CMU, but that it was not the CMU unit team who had requested my placement in the unit. Ms. Keller told me that the CMU is not a "locked-down unit," that placement in the CMU is "non-punitive," that inmates may be designated to a CMU due to their offenses of conviction and/or their institutional behavior, and that I would be allowed access to the inmate computer systems like the other inmates in the unit, among other things. Ms. Keller also told me that the CMU is a "general-population unit," and Ms. Thomas went through the normal FBOP questionnare used to

determine if an inmate can be safely placed into general population. I was told that inmates in the CMU are allowed two (2) phone calls of fifteen (15) minutes each per week and that I could still sign up for two (2) calls this week, which I later did.

10. At no point did I ask for protective custody (P.C.).

11. I was also told by Ms. Keller that social visits for CMU inmates are non-contact.

12. Ms. Keller informed me that the FCI Terre Haute CMU is comprised of single-person cells, which many inmates find desireable.

13. Ms. Keller advised me of the requirement for inmates to exhaust administrative remedies prior to filing civil suits in court. I politely informed Ms. Keller and Ms. Thomas of the instant case in The Southern District of New York, and Ms. Keller told me that, while she did not know the specifics, she was aware that I had an open case. Unaware of the latest filings and scheduling changes, I informed the unit team that there was a hearing scheduled in the instant case for Thursday, April 11th, 2019, which I have since learned has been rescheduled.

14. Ms. Keller also told me that the FCI Terre Haute CMU has its own separate SHU, distinct from the SHU which is used to house non-CMU inmates from other units, and that the FCI Terre Haute CMU SHU is a place where I do not want to go. However, neither Ms. Keller nor Ms. Thomas elaborated on the specific conditions in the CMU SHU during our initial conversation. Once again, this cautionary warning was issued without my asking.

15. At the time of the above conversations, I was unaware Ms. Keller is/was a named defendant in the case of <u>Al-Kassar v. Bureau of Prisons</u>, 2:18-cv-00086-WTL-DLP (Southern District of Indiana), and that the conditions in the FCI Terre Haute CMU SHU are a matter of controversy in that case due to alleged 8th Amendment violations (please see <u>2018 U.S. Dist. LEXIS 87680::Al-Kassar v. Bureau of Prisons::May 24, 2018</u>).

16. At or near the end of my initial FCI Terre Haute CMU intake process, I specifically and explicitly inquired as to whether or not I was allowed to communicate with journalists while I am in the CMU. I was told that I am allowed to do so. I inquired as to whether I would be allowed to send sealed special mail to journalists, as inmates in general population elsewhere are allowed to do under Code of Federal Regulation (CFR). Ms. Keller informed me that I would not be allowed to do so, as the FBOP only considers mail which CMU inmates send directly to attorneys to qualify as being exempt from review prior to mailing.

17. After scheduling my phone calls as instructed, I had my first call to my wife from the CMU on the afternoon of Wednesday, April 3rd, 2019, without incident. A second call followed yesterday evening, Friday, April 5th, 2019, also without incident.

18. Ms. Keller left her role as the FCI Terre Haute CMU IRO before I could review the contents of this affidavit and the affidavit memorializing our conversation from Thursday, April 4th, 2019, with her. If she or anyone else with whom I have spoken would like to add or to clarify any of the details of our relevant conversations, then they are, of course, welcome to contact either counsel for the government or myself, and I will address their concerns as promptly as I am reasonably able to do so.

Signed under penalty of perjury,

_[signature]_
Martin S. Gottesfeld, Reg. No.: 12982-104

**NAME:** Martin S. Gottesfeld
**NUMBER:** 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

RECEIVED
2019 APR 15 PM 3:37
CLERK'S OFFICE
S.D.N.Y.

⇔12982-104⇔
Clerk Of The Court N.Y.
500 Pearl ST
NEW YORK, NY 10007
United States

RECEIVED Pro Se
SDNY PRO SE OFFICE
2019 APR 16 AM 11:45

USPS
PRIORITY
SDNY


PURPLE HEART
FOREVER USA