UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARTIN S. GOTTESFELD,

                              Plaintiff,                    18 Civ. 10836 (PGG)

              v.

HUGH J. HURWITZ, *et al.*,


                              Defendants.

---

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>


GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2799
Fax:  (212) 637-2686
E-mail: alexander.hogan@usdoj.gov


ALEXANDER J. HOGAN
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………………...1

BACKGROUND…………………………………………………………………………...........2

ARGUMENT………………………………………………………………………..................4

     I.         Legal Standard ……………………………………………………………………4

     II.       Plaintiff Failed to Exhaust His PLRA Administrative Remedies……………….............4

           A.  Legal Standards for PLRA Exhaustion……………………………………………....4

           B.  Plaintiff Failed to Exhaust His Administrative Remedies…………………………...7

     III.     Any Tort Claim Brought by Plaintiff Must Be Dismissed for Failure to Exhaust Pursuant to the FTCA……………………………………………………………....................9

     IV.     Plaintiff Fails to State a *Bivens* Claim……………………………………….............10

           A.  Lack of Defendants' Personal Involvement……………………………………….....10

              1.  Hurwitz and Anderson……………………………………………...............11

              2.  Bussonich and Tatum……………………………………………………....12

           B.  *Ziglar v. Abbasi* Precludes Plaintiff's *Bivens* Claims………………………...........13

              1.  Plaintiff's Claims Present a "New Context"……………………………………14

              2.  "Special Factors" and the Existence of Alternative Remedial Schemes Counsel Against Expanding *Bivens* to This Context……………………….……………...17

           C.  Plaintiff's Constitutional Rights Were Not Violated………………….…................19

              1.  Confinement in the SHU…………………………………………….…………20

              2.  Access to Counsel………………………………………………….…...22

              3.  Hunger Strike and Media Interviews…………………………………….……23

              4.  Pest Control, Poor Plumbing, and Inadequate Heat………………….………23

     V.     Stay of Discovery………………………………………….......................................25

Conclusion………………………………………………………………………………...25

i

# Table of Authorities

Cases                                                                                          Page(s)

*Abdoulaye v. Cimaglia*,
   No. 15-cv-4921 (PKC), 2018 WL 1890488 (S.D.N.Y. Mar. 30, 2018) ...................... 16, 18, 19

*Alhaj v. McCarthy*,
   No. 11-cv-9049 (LTS) (RLE), 2012 WL 2929957 (S.D.N.Y. July 18, 2012)......................... 20

*Amador v. Andrews*,
   655 F.3d 89 (2d Cir. 2011)................................................................................................... 5

*Analytical Diagnostic Labs., Inc. v. Kusel*,
   626 F.3d 135 (2d Cir. 2010)............................................................................................... 21

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................................ 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................... 4, 10

*Banks v. United States*, No. 10 Civ. 6613 (GBD),
   (GWG), 2011 WL 4100454 (S.D.N.Y. Sept. 15, 2011) ................................................ 5, 6, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................ 4

*Bell v. Wolfish*,
   441 U.S. 520 (1979).......................................................................................................... 18

*Benjamin v. Fraser*,
   264 F.3d 175 (2d Cir. 2001)............................................................................................. 22

*Berry v. Kerik*,
   366 F.3d 85 (2d Cir. 2004)................................................................................................. 8

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
   403 U.S. 388 (1971).................................................................................................. *passim*

*Blank v. United States*,
   No. 4:17-CV-609-A, 2017 WL 5591633 (N.D. Tex. Nov. 17, 2017) ...................................... 15

*Brown v. Eli Lilly & Co.*,
   654 F.3d 347 (2d Cir. 2011)............................................................................................... 7

*Burns v. Moore*,
   No. 99-cv-0966 (LMM) (THK), 2002 WL 91607 (S.D.N.Y. Jan. 24, 2002) ........................... 8

*Carlson v. Green*,
   446 U.S. 14 (1980) ................................................................................................. *passim*

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................ 7

*Clay v. Lee*,
   No. 13-cv-7662 (KMK), 2017 WL 436041 (S.D.N.Y. Jan. 30, 2017) ..................................... 24

*Collins v. Fischer*,
   No. 15-cv-103 (KMK), 2018 WL 1626528 (S.D.N.Y. Mar. 30, 2018) ............................ 23, 24

*Colon v. Coughlin*,
   58 F.3d 865 (2d Cir. 1995) ..................................................................................... 11, 12

*Colon v. Howard*,
   215 F.3d 227 (2d Cir. 2000) ............................................................................................. 21

*Culbertson v. Cameron*,
   No. 08-cv-4838 (SLT) (LC), 2010 WL 1269777 (E.D.N.Y. Mar. 30, 2018) ......................... 11

*Davis v. Passman*,
   442 U.S. 228 (1979) ....................................................................................................... 14

*Dunlea v. Fed. Bureau of Prisons*,
   No. 10-cv-214 (CFD), 2010 WL 1727838 (D. Conn. Apr. 26, 2010) ..................................... 21

*Evans v. Rockland Cnty. Sheriff's Dep't*,
   No. 14-cv-7379 (NSR), 2016 WL 1746094 (S.D.N.Y. Apr. 29, 2016) ..................................... 8

*F.D.I.C. v. Great Am. Ins. Co.*,
   607 F.3d 288 (2d Cir. 2010) .............................................................................................. 7

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) ............................................................................................... 4

*Frazier v. Coughlin*,
   81 F.3d 313 (2d Cir. 1996) .............................................................................................. 21

*Gonzalez v. Hasty*,
   269 F. Supp. 3d 45 (E.D.N.Y. 2017) ................................................................................ 15

iii

*Gonzalez v. United States*,
  No. 16-cv-1494 (KAM), 2018 WL 1597384 (E.D.N.Y. Mar. 31, 2018)................................. 17

*Gonzalez v. Velez*,
  864 F.3d 45 ........................................................................................................................ 19

*Gorzynski v. JetBlue Airways Corp.*,
  596 F.3d 93 (2d Cir. 2010)................................................................................................... 7

*Grand Jury Subpoena John Doe v. United States*,
  150 F.3d 170 (2d Cir. 1998)......................................................................................... 12, 23

*Henry v. Davis*,
  No. 10-cv-7575 (PAC) (JLC), 2011 WL 3295986 (S.D.N.Y. Aug. 1, 2011).......................... 22

*Hightower v. United States*,
  205 F. Supp. 2d 146 (S.D.N.Y. 2002)............................................................................. 9, 17

*Hollins v. City of New York*,
  No. 10-cv-1650 (LGS), 2014 WL 836950 (S.D.N.Y. Mar. 3, 2014)...................................... 11

*Hudson v. Palmer*,
  468 U.S. 517 (1984)............................................................................................................. 17

*Jackson v. Heer*,
  322 F. Supp. 3d 406 (W.D.N.Y. 2018) ............................................................................... 21

*Jenkins v. Cordero*,
  No. 17-cv-1592 (VB), 2018 WL 456311 (S.D.N.Y. Jan. 17, 2018)....................................... 21

*Livigni v. Ortega*,
  No. 15-cv-9454 (CM), 2016 WL 6143351 (S.D.N.Y. Oct. 19, 2016)..................................... 24

*Lowery v. Westchester Cnty. Dep't of Corr.*,
  No. 15-cv-4577 (KMK), 2017 WL 564674 (S.D.N.Y. Feb. 10, 2017) ................................... 22

*Manning v. Griffin*,
  No. 15-cv-0003 (KMK), 2016 WL 1274588 (S.D.N.Y. Mar. 31, 2016)................................. 11

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)................................................................................................. 6

*Millares Guiraldes de Tineo v. United States*,
  137 F.3d 715 (2d Cir. 1998)................................................................................................. 9

iv

*Mohamed v. FBI*,
    No. 14-cv-7615 (CM), 2015 WL 6437369 (S.D.N.Y. Oct. 21, 2015) ..................................... 10

*Morgan v. Shivers*,
    No. 14-cv-7921 (GHW), 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018) ........................ 26, 18, 19

*Ndoromo v. Holder*,
    No. 09-cv-5741 (BMC), 2010 WL 302123 (E.D.N.Y. Jan. 20, 2010) .............................. 12, 23

*Olutosin v. Lee*,
    No. 14-cv-00685 (NSR), 2018 WL 4954107 (S.D.N.Y. Oct. 12, 2018) ................................. 20

*Ortiz v. McBride*,
    380 F.3d 649 (2d Cir. 2004)................................................................................................. 21

*Patrick v. Adjusters Int'l, Inc.*,
    No. 16-cv-2789 (WFK) (PK), 2017 WL 6521251 (E.D.N.Y. Dec. 18, 2017) ....................... 16

*Pell v. Procunier*,
    417 U.S. 817 (1975)...................................................................................................... 13, 23

*Pope v. Geo Grp.*,
    No. 18-cv-6900 (BMC) (LB), 2019 WL 79426 (E.D.N.Y. Jan. 2, 2019)................................. 1

*Porter v. Nussle*,
    534 U.S. 516 (2002) ............................................................................................................. 5

*Ramrattan v. Fischer*,
    No. 13-cv-6890 (KPF), 2015 WL 3604242 (S.D.N.Y. June 9, 2015) ............................... 10, 11

*Raspardo v. Carlone*,
    770 F.3d 97 (2d Cir. 2014)................................................................................................. 11

*Rivera v. Bloomberg*,
    No. 11-cv-629 (PGG), 2012 WL 3655830 (S.D.N.Y. Aug. 27, 2012)..................................... 23

*Rivera v. Samilo*,
    No. 16-cv-1105 (DLI), 2019 WL 1466893 (E.D.N.Y. Mar. 31, 2019) ............................. 16, 18

*Rivera v. United States*,
    928 F.2d 592 (2d Cir. 1991).................................................................................................. 9

*Sandin v. Conner*,
    515 U.S. 472 (1995)........................................................................................................... 20

*Sealey v. Giltner*,
    197 F.3d 578 (2d Cir. 1999) ........................................................................... 20

*Smith v. Costello*,
    No. 15-cv-0401 (BKS)(JDS), 2017 WL 1155811 (N.D.N.Y. Mar. 3, 2017) ........................... 21

*Spencer Trask Softwre & Info. Svcs., LLC v. RPost Int'l Ltd.*,
    206 F.R.D. 367 (S.D.N.Y. 2002) ..................................................................... 25

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006) ........................................................................ 10

*Thomas v. Metro. Correction Ctr.*,
    No. 09-cv-1769 (PGG), 2010 WL 2507041 (S.D.N.Y. June 21, 2010) ........................ 6, 9

*Townsley v. Lee*,
    No. 16-cv-3837 (VB), 2017 WL 3025886 (S.D.N.Y. July 14, 2017) .............................. 6

*Turkmen v. Hasty*,
    789 F.3d 218 (2d Cir. 2015) ........................................................................ 11

*Woodford v. Ngo*,
    548 U.S. 81 (2006) .................................................................................. 5

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ......................................................................... *passim*

**Statutes**

18 U.S.C. § 371 ........................................................................................... 2

18 U.S.C. § 1030(a)(5)(A) ................................................................................. 2

28 U.S.C. § 2401(b) ..................................................................................... 10

28 U.S.C. § 2675(a) ...................................................................................... 9

28 U.S.C. § 2679(b) ..................................................................................... 18

28 U.S.C. § 2679(b)(1) ................................................................................... 9

28 U.S.C. § 2680(a) ..................................................................................... 24

28 U.S.C. § 2671 ......................................................................................... 2

42 U.S.C. § 1997e(a) ..................................................................................... 5

## Rules

Fed. R. Civ. P. 26(c) ............................................................................................ 25

Fed. R. Civ. P. 56(a) ............................................................................................ 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 7

## Regulations

28 C.F.R. § 542 ............................................................................................ 9, 10, 12

Defendants, by their attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, submit this memorandum of law in support of their motion to dismiss Martin S. Gottesfeld's ("Plaintiff" or "Gottesfeld") Complaint ("Cmpl.") pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), or, in the alternative, FRCP 56.

## PRELIMINARY STATEMENT

On November 19, 2018, Plaintiff instituted this action against the following defendants: (1) former Acting Deputy Director of the United States Marshals Service ("USMS") David Anderson ("Anderson"); (2) Esker L. Tatum ("Tatum")—former Warden of the Metropolitan Correctional Center ("MCC"); (3) Anthony Bussonich ("Bussonich")—former medical director at MCC; and (4) Acting Director of the Federal Bureau of Prisons ("BOP") Hugh Hurwitz ("Hurwitz") (collectively, "Defendants").[1]

Plaintiff asserts several constitutional claims arising from his detention at MCC against Defendants pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). These claims include violations of: (1) his right to Due Process under the Fifth Amendment; (2) his right to counsel under the Sixth Amendment; (3) his rights under the First Amendment to engage in a hunger strike and interact with the media; and (4) his rights under the Fifth Amendment relating to his conditions of confinement.[2] Read liberally, Plaintiff is also asserting a claim pursuant to the Federal Tort Claims Act

---

[1] Anderson, Tatum, and Bussonich have since retired from their respective positions.

[2] Plaintiff cites to the Eight Amendment to assert his claim relating to his conditions of confinement, but because Plaintiff was a pretrial detainee at the time, the proper vehicle for this claim is the Fifth Amendment. *See, e.g.*, *Pope v. Geo Grp.*, No. 18-cv-6900 (BMC) (LB), 2019 WL 79426, at *2 (E.D.N.Y. Jan. 2, 2019).

1

("FTCA"), *see* 28 U.S.C. §§ 2671 *et seq.*, and various provisions of the New York State Constitution.  As discussed below, all of these claims should be dismissed.

## BACKGROUND

Plaintiff, a pretrial detainee at the time, was held at MCC from November 14, 2016 to February 4, 2017—a total of 81 days.  Cmpl. at § 5; ¶ 8.[3]  Despite being charged with crimes in the District of Massachusetts, he was held for this short period of time at MCC because he was engaged in a hunger strike.[4]  *Id*. at ¶ 1.  Upon arrival at MCC, he was placed in MCC's Special Housing Unit (the "SHU") in order to allow the prison to properly monitor him and tend to his hunger strike.  Plaintiff alleges that he was kept in the SHU for the entirety of his duration at MCC.  *Id*. at ¶ 8.  Plaintiff's claims arise from the restrictions that were imposed upon him because of his confinement in the SHU.

Plaintiff's complaints fall into several general categories.  First, that he was improperly placed in the SHU, which caused his visitation, communication, and recreational privileges to be limited.  For example, he was only permitted one 15-minute social phone call per month, had fewer in-person visiting opportunities with family members, and lack of access to the prison's electronic mail system.  *Id*. at ¶ 4.  Plaintiff also asserts that SHU inmates sometimes had restrictions imposed on their ability to visit with counsel, though Plaintiff does not assert he was

---

[3] Plaintiff's Complaint is comprised of both the Southern District of New York's form complaint and an attachment that sets forth additional factual allegations.  If citing to the form complaint, Defendants cite to the relevant section of that form.  If citing to the attachment, Defendants cite to the enumerated paragraph.

[4] Plaintiff has since been convicted in the United States District Court for the District of Massachusetts for Conspiracy to Commit Offense or to Defraud the United States, in violation of 18 U.S.C. § 371, and Intentional Damage to a Protected Computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(B).  *See United States v. Gottesfeld*, No. 16-cr-10305 (D. Mass. 2016).  He is currently serving a 121-month term of imprisonment.

so restricted.  *Id*.  As to his recreational privileges he was not permitted to eat communal meals, watch television, and he showered less frequently ("every 2 to 3 days") than inmates in general population.  *Id*.

Second, Plaintiff raises multiple issues regarding the conditions of confinement at MCC. Plaintiff claims that there was a rodent and insect infestation problem there.  Plaintiff notes that a cockroach was once found in a tray of food that was about to be (but was not) served to an inmate (not Plaintiff) and that a cockroach once crawled up the body of a prison mental health practitioner (also not Plaintiff).  *Id*. at ¶¶ 10-12.  He also states that the water supply to the SHU was turned off on one occasion (for an undisclosed period of time) and bottled water was not distributed.  *Id*. at ¶ 13.  Additionally, Plaintiff alleges that it was cold in the SHU and, instead of increasing the temperature, prison officials provided thermal underwear.  *Id*. at ¶ 14.  Relatedly, Plaintiff complains that he was placed in a cell that had leaking water pooled on the floor and algae growing in the toilet.  *Id*. at ¶ 16.

Third, as stated, Plaintiff was at MCC because he was engaged in a hunger strike. Plaintiff alleges that he was "threatened" with force-feeding and that this amounted to a violation of his First Amendment rights.  *Id*. at ¶ 17.

Fourth, Plaintiff makes various allegations that his ability to interact with the media was limited, including being denied the ability to be interviewed by Rolling Stone and Wired Magazine.  *Id*. at ¶ 20.

In addition to describing the conditions of his confinement that Plaintiff believes to be actionable, he also notes that, at the time he drafted his Complaint, he was "no longer in the

custody of the Federal Bureau of Prisons (FBOP) and thus the Bureau's administrative remedies are <u>not</u> available to him."[5]  *Id.* at ¶ 3 (emphasis in original).

## ARGUMENT

### I.    Legal Standard

On a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations contained in the complaint as true and draw all reasonable inferences in favor of Plaintiff.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true.  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (internal citation and quotation omitted).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failure to state a claim.  *Id.* at 679.

### II.   Plaintiff Failed to Exhaust His PLRA Administrative Remedies

#### A.    Legal Standards for PLRA Exhaustion

Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA").  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this

---

[5] Plaintiff drafted the Complaint from the Plymouth County Correctional Facility, which is not a BOP facility.  *See* Cmpl. at § 2.

4

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). This exhaustion requirement, which applies to "federal prisoners suing under *Bivens*," encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

"The purpose of the PLRA is to reduce the quantity and improve the quality of prisoner suits and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (internal quotation marks and alterations omitted).  The PLRA requires "proper exhaustion," that is, "compliance with an agency's deadlines and other critical procedural rules," and the use of "all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *See Woodford v. Ngo*, 548 U.S. 81, 91 (2006) (internal quotation marks omitted; emphasis in original).  "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court."  *Amador*, 655 F.3d at 96.

An inmate in BOP custody may exhaust administrative remedies through a four-step process.  *See generally* 28 C.F.R. § 542.  In accordance with the BOP's Administrative Remedy Program, an inmate shall first attempt resolution of his complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue.  *See* 28 C.F.R. § 542.13(a).  The form utilized at this stage is referred to as a "BP-8."  *See* Declaration of Joy Aassiddaa ("Aassiddaa Decl.") at ¶ 4; *Banks v. United States*, No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 4100454, at *10 (S.D.N.Y. Sept. 15, 2011), *report and recommendation adopted by*, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011).  If the complaint cannot be resolved informally, the inmate may submit a formal written Administrative Remedy Request to the Warden on a "BP-9" form

within twenty days of the event that triggered the inmate's complaint.  *See* Aassiddaa Decl. at ¶ 4; *Banks*, 2011 WL 4100454, at \*10 (citing 28 C.F.R. § 542.14(a)).  If the inmate's formal request is denied, the inmate may submit an appeal (a "BP-10") to the appropriate Regional Director of BOP.  *See* Aassiddaa Decl. at ¶ 5; *Banks*, 2011 WL 4100454, at \*10 (citing 28 C.F.R. § 542.15(a)).  A negative decision from the Regional Director may in turn be appealed by submitting a form "BP-11" to the BOP General Counsel's office (in the BOP Central Office) within thirty days of the Regional Counsel's decision.  *See* Aassiddaa Decl. at ¶ 6; *Banks*, 2011 WL 4100454, at \*10.  No administrative remedy appeal is considered finally exhausted until it is considered by BOP's Central Office.  *See* Aassiddaa Decl. at ¶ 7; *see* 28 C.F.R. §§ 542.14, 542.15.

As this Court has held, "[w]here it appears from the face of the complaint that a plaintiff concedes lack of exhaustion under the PLRA, or non-exhaustion is otherwise apparent, a court may decide the exhaustion issue on a motion to dismiss."  *Thomas v. Metro. Correction Ctr.*, No. 09-cv-1769 (PGG), 2010 WL 2507041, at \*7 (S.D.N.Y. June 21, 2010).  If not apparent on the face of the complaint, a defendant's motion to dismiss should be converted to one for summary judgment for the narrow purpose of determining whether the plaintiff exhausted his administrative remedies.  *See Townsley v. Lee*, No. 16-cv-3837 (VB), 2017 WL 3025886, at \*7 (S.D.N.Y. July 14, 2017).

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In this context, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *McCarthy v. Dun & Bradstreet*

*Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted).  "In assessing the record to determine whether there is a genuine issue to be tried, [the Court is] required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Where that burden is carried, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson,* 477 U.S. at 249).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

As set forth below, Plaintiff failed to exhaust his PLRA administrative remedies, and this failure is evident from the face of the Complaint.  Accordingly, his claims can be dismissed pursuant to FRCP 12(b)(6).  However, in the alternative, based on the Aassiddaa Declaration and accompanying exhibit, there can be no genuine dispute of material fact that Plaintiff failed to exhaust his administrative remedies, and therefore, summary judgment should be granted in favor of Defendants and the case should be dismissed in its entirety.

### B.      Plaintiff Failed to Exhaust His Administrative Remedies

Plaintiff has failed to exhaust his PLRA administrative remedies before bringing this action, as is evident from both the face of his Complaint and the Aassiddaa Declaration.  Plaintiff

claims that he "is no longer in the custody of the Federal Bureau of Prisons (FBOP) and thus the Bureau's administrative remedies are <u>not</u> available to him." Cmpl. at ¶ 3 (emphasis in original).

No longer being in BOP custody, however, does not resolve whether Plaintiff was required to exhaust his administrative remedies. Rather, the issue becomes whether Plaintiff had "ample opportunity" to pursue his administrative remedies. *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004). If Plaintiff did have an opportunity to pursue administrative remedies, but failed to do so, then his claims are subject to dismissal. *Id.*

Here, Plaintiff was incarcerated at MCC for a total of 81 and did not pursue any administrative remedies during this time. *See* Aassiddaa Decl. at ¶¶ 8, 9. As discussed above, after informally making a complaint to staff, an inmate must submit a formal written Administrative Remedy Request to the warden on a BP-9 form within twenty days of the event that triggered the complaint. *See id*. at ¶ 4; *Banks*, 2011 WL 4100454, at *10 (citing 28 C.F.R. § 542.14(a)). Therefore, during his 81 days at MCC, Plaintiff had more than enough time to at least begin the administrative remedy process, which he failed to do. As such, he is barred from bringing an action in federal court. *See, e.g.*, *Berry*, 366 F.3d at 88 ("[Plaintiff] could have exhausted remedies while again in the custody of the NYCDOC from August 2000 until his transfer to State custody in November 2000."); *Evans v. Rockland Cnty. Sheriff's Dep't*, No. 14-cv-7379 (NSR), 2016 WL 1746094, at *3 (S.D.N.Y. Apr. 29, 2016) (claims barred because "Plaintiff had over three weeks during which he could have filed an administrative grievance"); *Burns v. Moore*, No. 99-cv-0966 (LMM) (THK), 2002 WL 91607, at *6 (S.D.N.Y. Jan. 24, 2002) (finding two months to be adequate time to file a grievance).

Accordingly, because all of Plaintiff's claims arise from the conditions of his confinement, which are subject to the PLRA's exhaustion requirements, the case should be

dismissed in its entirety.

### III.   Any Tort Claim Brought by Plaintiff Must Be Dismissed for Failure to Exhaust Pursuant to the FTCA

To the extent any of Plaintiff's claims are construed to assert tort claims under the FTCA, such claims must additionally be dismissed for lack of subject matter jurisdiction.[6]  The FTCA is the exclusive remedy for a claim involving the purported negligence of a federal employee acting within the scope of his federal employment.  28 U.S.C. § 2679(b)(1); *see also Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991).  The FTCA "constitutes a limited waiver by the United States of its sovereign immunity."  *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998).  Before instituting suit under the FTCA, a claimant must "have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing," or the agency must have failed to dispose of a claim within six months after it is filed.  28 U.S.C. § 2675(a).  As this Court has stated, "[t]he FTCA's presentment requirement 'must be satisfied to obtain jurisdiction to sue the United States."  *Thomas*, 2010 WL 2507041, at *5; *see also Millares Guiraldes de Tineo*, 137 F.3d at 719.

As set forth in the Aassiddaa Declaration, Plaintiff has not filed an administrative tort claim regarding the allegations in his Complaint.  *See* Aassiddaa Decl. at ¶ 11.  Therefore, Plaintiff has failed to meet the FTCA's presentment requirement, and any FTCA claim should be

---

[6]  The only proper defendant in an FTCA action is the United States.  *See Hightower v. United States*, 205 F. Supp. 2d 146, 153-54 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 2679(b)(1)) ("A suit against the United States is the exclusive remedy for a suit for damages for injury 'resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment'").  Accordingly, if the Court construes this action as an FTCA claim and does not dismiss it, then the United States should be added as the defendant as to Plaintiff's FTCA claim.

dismissed for lack of subject matter jurisdiction.  *See, e.g.*, *Mohamed v. FBI*, No. 14-cv-7615

(CM), 2015 WL 6437369, at *6 (S.D.N.Y. Oct. 21, 2015).[7]

## IV.    Plaintiff Fails to State a *Bivens* Claim

### A.    Lack of Defendants' Personal Involvement

This action should also be dismissed for failure to state a claim because Plaintiff has

failed to plead facts supporting Defendants' personal involvement in any alleged violation of his

rights.  The doctrines of vicarious liability and *respondeat superior* are inapplicable to *Bivens*

suits; rather, "a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see*

*Thomas v. Ashcroft*, 470 F.3d 491, 496-97 (2d Cir. 2006). While Plaintiff's complaint must be

construed liberally because he is a *pro se*, he still bears the burden to plead the personal

involvement of every individual defendant. *Ramrattan v. Fischer*, No. 13-cv-6890 (KPF), 2015

WL 3604242, at *10 (S.D.N.Y. June 9, 2015).

Before the Supreme Court's decision in *Iqbal*, it was the law in this Circuit that a

supervisor's personal involvement in a constitutional violation may be shown by evidence that

the supervisor (1) participated directly in the alleged constitutional violation; (2) failed to remedy

the wrong after being informed of the violation through a report or appeal; (3) created a policy or

custom under which unconstitutional practices occurred, or allowed the continuance of such a

policy or custom; (4) was grossly negligent in supervising subordinates who committed the

wrongful acts; or (5) exhibited deliberate indifference by failing to act on information indicating

---

[7] As to his FTCA claim, Plaintiff could have pursued his administrative remedies even after leaving MCC.  Now, however, because two years have elapsed since the date he was released from MCC, any such claim would be time barred.  *See* 28 U.S.C. § 2401(b) (An FTCA claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.").  Accordingly, any amendment to pursue an FTCA claim would be futile.

that unconstitutional acts were occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

The Second Circuit has not yet resolved which of these categories survived *Iqbal*.  *See Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014); *see also Hollins v. City of New York*, No. 10-cv-1650 (LGS), 2014 WL 836950, at *13 (S.D.N.Y. Mar. 3, 2014) (discussing disagreement between district courts as to *Iqbal's* effect on *Colon* categories). The Second Circuit has since clarified, however, that supervisors are liable under *Bivens* "only if, through their own actions, they satisfy each element of the underlying constitutional tort."  *Manning v. Griffin*, No. 15-cv-0003 (KMK), 2016 WL 1274588, at *12 (S.D.N.Y. Mar. 31, 2016) (citing *Turkmen v. Hasty*, 789 F.3d 218, 250 (2d Cir. 2015)).  Accordingly, a supervisor's failure to properly supervise subordinates alone cannot establish *Bivens* liability.[8]

### 1.    Hurwitz and Anderson

As to Defendants Hurwitz and Anderson, Plaintiff's Complaint does not mention them at all other than listing them as Defendants. As the Complaint notes, Hurwitz and Anderson are high-level supervisors based in Washington D.C. and Arlington, V.A., respectively.  *See* Cmpl. at § IV.  Hurwitz is the Acting Director of BOP and Anderson was the former Acting Deputy Director of the USMS.  *Id.*  There are no allegations whatsoever that either of these individuals were aware of the conditions of Plaintiff's confinement at MCC.  *See Ramrattan*, 2015 WL 3604242, at *10 ("'The bare fact that an official occupies a high position in the . . . prison hierarchy is insufficient to sustain a claim.'") (quoting *Colon*, 58 F.3d at 874) (alterations omitted).

---

[8] To the extent Plaintiff seeks to sue the Defendants in their official capacities, these claims "must be dismissed based on sovereign immunity.  It is well established that the United States, as sovereign, is immune from suit save as it consents to be sued."  *Culbertson v. Cameron*, No. 08-cv-4838 (SLT) (LC), 2010 WL 1269777, at *3 (E.D.N.Y. Mar. 30, 2018).

### 2.      Bussonich and Tatum

The only allegation Plaintiff makes as to Medical Director Bussonich is that he "threatened [Plaintiff] . . . with the brutal practice of force-feeding."  Cmpl. at ¶ 17.  As to all of the other conditions of confinement on which Plaintiff bases his claims, he does not allege Bussonich was involved with any of them.  Moreover, none of them relate to his medical care—something with which Bussonich would plausibly be involved.  As to the one allegation related to his medical care, Plaintiff fails to state a claim.  As an initial matter, Plaintiff does not allege that Bussonich actually subjected Plaintiff to force feeding, but only that he threated Plaintiff with this possibility.  *Id*.  Additionally, as the Second Circuit has stated, "we, like the majority of courts that have considered the question, hold that such a[] [court] order [requiring force-feeding] does not violate a hunger-striking prisoner's constitutional rights . . . Other compelling governmental interests, such as the preservation of life, prevention of suicide, and enforcement of prison security, order, and discipline, outweigh the constitutional rights asserted by Doe in the circumstances of this case."  *Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 171 (2d Cir. 1998) (internal citations omitted).  Therefore, Bussonich should be dismissed from this action because the only allegation as to him fails to state a claim.[9]

As to Tatum, the only allegation Plaintiff makes regarding his personal involvement is that he "personally denied the plaintiff his First Amendment right to be interviewed by multiple media outlets which requested access to him including Rolling Stone and Wired."  Cmpl. at ¶ 20.  However, there is not a "constitutional nor statutory right for a prisoner to be assigned to a facility that best enables him to undertake media communications."  *Ndoromo v. Holder*, No. 09-

---

[9] As noted, Bussonich never actually engaged in force feeding Plaintiff.  Accordingly, whatever process would have been required to do so, Bussonich did not pursue because the need never materialized.

cv-5741 (BMC), 2010 WL 302123, at *2 (E.D.N.Y. Jan. 20, 2010) (citing *Pell v. Procunier*, 417

U.S. 817 (1975) (upholding ban on prisoners conducting media interviews because institutional

considerations, particularly public safety, justified limitation on prisoner's speech)).  It is also

worth noting here that Plaintiff's complaint acknowledges that he was able to send articles to the

media.  *See* Cmpl. at ¶ 21.  In his Complaint, Plaintiff specifically refers to articles submitted to

the Huffington Post.  *Id*. at ¶ 15.  Even though an inmate does not have a right to be assigned to a

facility that best enables him to communicate with the media, Plaintiff certainly was able to do

so.

Accordingly, as to Hurwitz and Anderson, the claims against them should be dismissed

for failure to allege any personal involvement.  As to Bussonich and Tatum, the only personal

involvement alleged as to them does not state a claim for relief and should similarly be

dismissed.

**B.**      ***Ziglar v. Abbasi* Precludes Plaintiff's *Bivens* Claims**

The Court should decline to extend *Bivens* to reach Plaintiff's constitutional claims

regarding his pretrial detention at the MCC, thus providing an additional, independent ground to

dismiss Plaintiff's *Bivens* claims. The Supreme Court recently firmly instructed that "expanding

the *Bivens* remedy is now a 'disfavored' judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1843,

1857 (2017).  The Court further directed that courts should conduct a two-part inquiry to

determine whether a *Bivens* remedy is available in a given case.  First, courts should ascertain

whether the "case presents a new *Bivens* context."  *Id*. at 1859.  The considerations in the

determination of whether a context is "new" include differences in:

> [T]he rank of the officers involved; the constitutional right at issue; the generality
> or specificity of the official action; the extent of judicial guidance as to how an
> officer should respond to the problem or emergency to be confronted; the statutory
> or other legal mandate under which the officer was operating; the risk of disruptive

intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1860 (internal quotation and citation omitted).  "[T]he new-context inquiry is easily satisfied" by even "small" differences between the claim at issue and the Supreme Court's previously approved *Bivens* claims.  *Id*. at 1865.  Indeed, in *Abbasi*, the Supreme Court described the three *Bivens* claims the Court has approved in the past with a high degree of specificity: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma."  *Id*. at 1860 (discussing *Bivens*, 403 U.S. 388; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980)).

If the case presents a new context, courts should move to the second step of the test and ask whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"  *Id*. at 1857 (quoting *Carlson*, 446 U.S. at 18). If there are, "a *Bivens* remedy will not be available."  *Id*.  The "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id*. at 1857-58.  "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Id*. at 1858.  Additionally, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation."  *Id*. at 1865.

### 1.     Plaintiff's Claims Present a "New Context"

At the first step of the *Abbasi* evaluation, Plaintiff's constitutional claims present a new context.  Plaintiff alleges that he was subjected to unconstitutional conditions of confinement in his housing that violated his rights under the First, Fifth, and Sixth Amendments.

14

Of the three approved *Bivens* claims—those brought in *Bivens, Davis,* and *Carlson*—only *Carlson* involved allegations of constitutional violations in the prison context.  *See Abbasi*, 137 S. Ct. at 1865.  The claims here, however, differ meaningfully from *Carlson*, which involved allegations that federal prison officials exacted cruel and unusual punishment in violation of the Eighth Amendment in refusing to treat an inmate's serious medical condition that led to his death.  446 U.S. at 14.  Other than the allegation involving threatened forced-feeding, all of Plaintiff's claims (*e.g.* confinement in the SHU, visitation and recreation privileges, housing sanitation, access to media, access to counsel, and ability to communicate with people outside of the prison), are far afield from the Eighth Amendment violation presented in *Carlson*.  Indeed, none of Plaintiff's claims implicate the Eighth Amendment.  *See Abbasi*, 137 S. Ct. at 1864 (holding that plaintiffs' claims were meaningfully different from *Carlson* in part because "*Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth").

Both the difference in the nature of the claim as well as the right under which it is asserted, constitute at least a "modest extension," *Abbasi*, 137 S. Ct. at 1864, and combined they make the instant case significantly different from any of the approved *Bivens* claims.  Indeed, since *Abbasi*, courts have held that other conditions of confinement cases present a new context despite some parallels with *Carlson*.  *See Fernandini v. United States*, No. 15-cv-3843 (GHW) (KNF), Dkt. No. 150, at 17-21 (S.D.N.Y. Feb. 14, 2019), *report and recommendation adopted in part by*, 2019 WL 1033797 (S.D.N.Y. Mar. 5, 2019) (finding conditions of confinement claim precluded by *Bivens*); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 59-60, 64 (E.D.N.Y. 2017), *aff'd on other grounds*, --- Fed. App'x ---, 2018 WL 5960773 (2d Cir. Nov. 14, 2018) (holding Fifth and Eighth Amendment claims related to SHU confinement and conditions presented new contexts); *Blank v. United States*, No. 4:17-CV-609-A, 2017 WL 5591633, at *4 (N.D. Tex.

15

Nov. 17, 2017), *appeal docketed*, No. 18-10135 (5th Cir. Feb. 1, 2018) (inmate's Eighth Amendment claim against prison officials for failing to adequately address pigeon infestation at inmate's facility presented a new context); *see also Rivera v. Samilo*, No. 16-cv-1105 (DLI), 2019 WL 1466893 (E.D.N.Y. Mar. 31, 2019) (finding, as distinct from *Bivens*, a claim for excessive force under the Fourth Amendment because, unlike in *Bivens*, plaintiff was lawfully arrested outside of his home, rather than unlawfully arrested inside his home); *Patrick v. Adjusters Int'l, Inc.*, No. 16-cv-2789 (WFK) (PK), 2017 WL 6521251, at *4 (E.D.N.Y. Dec. 18, 2017) (holding that Fifth Amendment gender discrimination claim presented new context despite *Davis* because "the granularity of the [*Abbasi*] analysis supports the conclusion that a distinction as fundamental as the existence of an employment relationship is 'meaningful.'"); *Abdoulaye v. Cimaglia*, No. 15-cv-4921 (PKC), 2018 WL 1890488, at *7 (S.D.N.Y. Mar. 30, 2018) (declining to extend *Bivens* claim to new context of inmate alleging excessive force under the Fifth Amendment); *Morgan v. Shivers*, No. 14-cv-7921 (GHW), 2018 WL 618451, at *6-7 (S.D.N.Y. Jan. 29, 2018) (same).

As to Plaintiff's claim related to the threatened forced-feeding, this too is meaningfully different from the situation in *Carlson*. There, the prison failed to provide medical care leading to an inmate's death. Here, Plaintiff takes issues with Bussonich's threat to force feed him in an effort to keep him alive. Bussonich's actions are, in fact, the exact opposite of what occurred in *Carlson*. Additionally, Plaintiff alleges that any such forced-feeding would have violated his First Amendment right to protest, while, in *Carlson*, it was the inmate's Eighth Amendment right that was at issue.[10]

---

[10] Plaintiff also brings suit pursuant to the New York State Constitution. *See* Cmpl. at ¶ 23. Finding liability for actions that violate state law would certainly amount to an extension of *Bivens* to a new context that is unwarranted under the standard articulated in *Abbasi* and,

### 2. "Special Factors" and the Existence of Alternative Remedial Schemes Counsel Against Expanding *Bivens* to This Context

At the second step of the *Abbasi* evaluation, the special factors analysis counsels against judicial extension of a *Bivens* remedy to this case. Whether to entertain Plaintiff's claims presents policy considerations that must be weighed and considered—a task more appropriately suited for Congress than the Judiciary. *See Abbasi*, 137 S. Ct. at 1857 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them.") (internal citations and quotation omitted).

Any "decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Id*. at 1858. This is particularly important here because the Supreme Court has repeatedly acknowledged that maintaining the order and security of prisons involves a multitude of policy considerations. *See Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Supreme Court has also recognized that "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions" and "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order

---

accordingly, Plaintiff's state law claims should also be dismissed. *See Gonzalez v. United States*, No. 16-cv-1494 (KAM), 2018 WL 1597384, at *15 (E.D.N.Y. Mar. 31, 2018) ("*Bivens* itself concerned federal, not state, constitutional rights, and its application to vindicate *state* constitutional rights against *federal* law enforcement agents would certainly present a new context.") (emphasis in original) (internal citation omitted); *see also Hightower*, 205 F. Supp. 2d at 154 n.4 ("Although plaintiff purports to invoke Section 1983 and the New York Constitution as bases for his constitutional claims, his constitutional claims are properly construed as *Bivens* claims because Section 1983 and the New York State Constitution only permit suits against state actors acting under color of state law, and not against the federal government or federal employees acting under federal law.").

17

and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Thus, and importantly, "the administrator ordinarily will, as a matter of fact in a particular case,

have a better grasp of his domain than the reviewing judge," and "the operation of our

correctional facilities is peculiarly the province of the Legislative and Executive Branches of our

Government, not the Judicial." *Id.* at 548. That prison administration requires careful balancing

of policy considerations weighs against judicial creation of a *Bivens* remedy in this context. *See*

*Abbasi*, 137 S. Ct. at 1858.

Furthermore, the Supreme Court has emphasized that "if there is an alternative remedial

structure present in a certain case, that alone may limit the power of the Judiciary to infer a new

*Bivens* cause of action." *Id.* Congress has created an intricate alternative remedial structure in

the FTCA, which provides for monetary damages for torts committed by federal employees in

the course of their official duties. *See* 28 U.S.C. § 2679(b). Since *Abbasi*, courts have

recognized that the FTCA is an alternative remedial structure that counsels against authorizing a

*Bivens* action in a new context.[11] *See Rivera*, 2019 WL 1466893, at *5-6 (finding FTCA

sufficient alternative remedy); *Abdoulaye*, 2018 WL 1890488, at *7 (finding FTCA and PLRA

sufficient alternative remedies); *Morgan*, 2018 WL 618451, at *6-7 (S.D.N.Y. Jan. 29, 2018)

(same).

---

[11] Although the Supreme Court previously considered the existence of the FTCA remedy in *Carlson*, and nevertheless recognized a *Bivens* remedy, *see* 446 U.S. at 19-23, the Supreme Court's recent instructions in *Abbasi* counsel hesitation here. Emphasizing that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity," the Supreme Court acknowledged that its analysis in *Carlson* "might have been different if [it] were decided today." *Abbasi*, 137 S. Ct. at 1848, 1856, 1857 (observing that "the Court has refused to [extend *Bivens* to any new context] for the past 30 years"). Thus, although the Supreme Court previously noted that "Congress views FTCA and *Bivens* as parallel, complementary causes of action," *Carlson,* 446 U.S. at 20, the existence of an FTCA remedy alone is nevertheless sufficient, because "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863.

18

Another factor that counsels against extending *Bivens* into a new context is "legislative action suggesting that Congress does not want a damages remedy." *Abbasi*, 137 S. Ct. at 1865. Congress had "specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs" when it enacted the PLRA.  *Abbasi*, 137 S. Ct. at 1865. The PLRA, which encompasses Plaintiff's allegations in this case, "does not provide for a standalone damages remedy," suggesting that Congress "chose not to extend" the *Carlson* remedy "to cases involving other types of prisoner mistreatment." *Abbasi*, 137 S. Ct. at 1865; *see Morgan*, 2018 WL 618451, at *6-7 ("Congress had the specific occasion to consider the matter of prison sexual assault and to consider the proper way to remedy those wrongs, it did not find the creation of a remedy for individuals appropriate.") (internal quotations and citations omitted); *Gonzalez*, 269 F. Supp. 3d at 61 ("Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim.");  *Abdoulaye*, 2018 WL 1890488, at *7.

In sum, the Supreme Court's longstanding deference to prison officials regarding issues of prison management, as well as the "careful layering of federal statutes," in this area, indicating "a wide range of policy considerations best left to Congress's superior understanding of governmental structures and systems nationwide," *Gonzalez v. Velez*, 864 F.3d 45, 54 (1st Cir. 2017), counsels against recognizing a *Bivens* remedy here.  Accordingly, Plaintiff's constitutional claims should be dismissed.

### C.    Plaintiff's Constitutional Rights Were Not Violated

Putting aside Plaintiff's failure to exhaust his administrative remedies, the lack of Defendants' personal involvement in the alleged constitutional violations, and the impropriety of recognizing a new *Bivens* claim, Plaintiff's claims must also fail because the circumstances about

which he complains do not rise to the level such that they violate his constitutional rights and, therefore, are not actionable pursuant to *Bivens*.

### 1.      Confinement in the SHU

As to Plaintiff's confinement in the SHU, a prisoner's liberty interest can be implicated for confinement in the SHU, but only if such confinement "'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Two factors inform this determination—the duration of the confinement and the conditions of the confinement.  *Id*.

Regarding the duration of confinement, Plaintiff alleges that he was in the SHU for the duration of his confinement at MCC—81 days.  Cmpl. at ¶ 8.  Courts in this Circuit have routinely held that confinement in the SHU for a period of time comparable to Plaintiff's does not rise to the level of a liberty interest protected by due process.  *See, e.g.*, *Olutosin v. Lee*, No. 14-cv-00685 (NSR), 2018 WL 4954107, at *10 (S.D.N.Y. Oct. 12, 2018) ("Petitioner's transfer to the SHU was less than 101 days of confinement, what our Circuit has determined is the upper limit of normal confinement conditions."); *Alhaj v. McCarthy*, No. 11-cv-9049 (LTS) (RLE), 2012 WL 2929957, at *3 (S.D.N.Y. July 18, 2012) (as to a pretrial detainee stating that "normal SHU confinement—*i.e.*, solitary confinement for twenty-three hours a day with one hour of exercise in the prison yard per day—for 101 days falls short of the *Sandin* standard of atypicality.") (citing *Sealey v. Giltner*, 197 F.3d 578, 689 (2d Cir. 1999)).

While it is true that shorter periods of confinement can rise to the level of a due process violation if "unusually harsh conditions" accompanied the confinement, Plaintiff does not set forth any such particularly harsh conditions.  *Olutosin*, 2018 WL 4954107, at *10.  For example, courts have found solitary confinement for 23 hours per day with one hour of exercise and two

showers per week to not constitute harsh conditions. *See, e.g.*, *Ortiz v. McBridge*, 380 F.3d 649, 654 (2d Cir. 2004).

Here, Plaintiff complains of conditions that are part-and-parcel of confinement in the SHU, including restricted visitation privileges, limited telephone calls, limited recreation (including inability to watch television and dine with other inmates), and lack of access to the prison's electronic mail system. These limitations do not amount to atypically harsh conditions. *See Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000) (recognizing that limitations on visitors was normal SHU condition); *Frazier v. Coughlin,* 81 F.3d 313, 316 (2d Cir. 1996) (loss of telephone privileges did not amount to an atypical and significant deprivation); *Jenkins v. Cordero*, No. 17-cv-1592 (VB), 2018 WL 456311, at *1, 4 (S.D.N.Y. Jan. 17, 2018) (loss of telephone privileges not significant deprivation); *Jackson v. Heer*, 322 F. Supp. 3d 406, 409, 412 (W.D.N.Y. 2018) (holding that loss of visitation rights is normal condition of SHU confinement);  *Smith v. Costello*, No. 15-cv-0401 (BKS)(JDS), 2017 WL 1155811, at *6 (N.D.N.Y. Mar. 3, 2017), *report and recommendation adopted by* 2017 WL 1155813 (N.D.N.Y. Mar. 27, 2017) (finding as normal the fact that "[i]nmates in SHU are not permitted to attend meals, recreation, or religious services with other inmates, since the purpose of SHU [is] to separate certain inmates from the general prison population."); *Dunlea v. Fed. Bureau of Prisons*, No. 10-cv-214 (CFD), 2010 WL 1727838, at *2 (D. Conn. Apr. 26, 2010) (finding "no authority supporting a constitutional right to send and receive electronic messages via computer or other electronic device"), *abrogated on other grounds by*, *Analytical Diagnostic Labs., Inc. v. Kusel*, 626 F.3d 135, 141 (2d Cir. 2010).

###### 2. Access to Counsel[12]

In one sentence of his Complaint, Plaintiff alleges that "inmates in the SHU have . . . often also fewer opportunities for attorney visits as well due to congestion of a smaller number of attorney visiting rooms for SHU inmates." Cmpl. at ¶ 4. A pre-trial detainee's Sixth Amendment rights are violated when prison regulations "unjustifiable obstruct," "infringe," "unreasonably burden" or "significantly interfere" with the detainee's access to counsel. *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001). A detainee is not denied access to counsel unless he "allege[s] that he was stripped of alternate methods of communication." *See Henry v. Davis*, No. 10-cv-7575 (PAC) (JLC), 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011), *report and recommendation adopted by*, 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011). Importantly, Plaintiff does not allege that he himself was deprived of his access to counsel and that alone is sufficient to dismiss this claim. Rather he alleges, generally, that "often" inmates have fewer opportunities to meet with counsel. Plaintiff does not provide any details as to his hypothetical deprivation. For example, he does not assert that he attempted to meet with a lawyer but was refused, what the general limitations are (if any) regarding the number of attorney visits SHU inmates are permitted, or whether he was otherwise unable to communicate with his lawyer by telephone. *See Lowery v. Westchester Cnty. Dep't of Corr.*, No. 15-cv-4577 (KMK), 2017 WL 564674, at *3 (S.D.N.Y. Feb. 10, 2017) (dismissing *pro se* Sixth Amendment claim because inmate had "alternate means of communicating with counsel").

---

[12] Plaintiff does not expressly raise this as one of his claims, despite specifically enumerating the other alleged constitutional violations, but, read liberally, the Complaint arguably addresses Plaintiff's access to counsel. Accordingly, Defendants discuss it herein.

22

### 3. Hunger Strike and Media Interviews

As already discussed above, *see supra* at 12, Plaintiff alleges that Bussonich's threat to force feed Plaintiff if he did not end his hunger strike is not actionable. Again, Plaintiff acknowledges that Bussonich did not take this action. Second, even if Bussonich did, the Second Circuit has explicitly held that force feeding a prisoner does not violate a prisoner's rights because the government has a valid interest, *inter alia*, in preventing suicide. *See Grand Jury Subpoena John Doe*, 150 F.3d at 171.

Also as discussed above, *see supra* at 12-13, Plaintiff does not have a constitutional right to be interviewed by the media, and, in any event, Plaintiff cannot argue that his communication with the media was curtailed when he published numerous articles with the Huffington Post in his approximately three month period of confinement at MCC. *See Ndoromo*, 2010 WL 302123, at *2 (citing *Pell v. Procunier*, 417 U.S. 817 (1975)).

### 4. Pest Control, Poor Plumbing, and Inadequate Heat

For conditions of confinement to rise to the level of a constitutional deprivation, a plaintiff must show that the "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Collins v. Fischer*, No. 15-cv-103 (KMK), 2018 WL 1626528, at *5 (S.D.N.Y. Mar. 30, 2018). "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim." *Rivera v. Bloomberg*, No. 11-cv-629 (PGG), 2012 WL 3655830, at *3 (S.D.N.Y. Aug. 27, 2012).

None of Plaintiff's allegations rise to the level of extreme deprivations posing an unreasonable risk to Plaintiff's health. As to pests, "the mere presence of vermin in a detainee's housing area does not constitute a denial of the minimal civilized measures of life's necessities."

*Clay v. Lee*, No. 13-cv-7662 (KMK), 2017 WL 436041, at *4 (S.D.N.Y. Jan. 30, 2017) (internal

citation omitted) (collecting cases).  Moreover, there is no allegation that this condition affected

Plaintiff's health in any way.  As to Plaintiff's claim relating to the prison's temperature, unless a

prisoner is subjected to "bitterly cold" temperatures for a prolonged period of time, then there is

no actionable conditions of confinement claim. *See, e.g.*, *Collins*, 2018 WL 1626528, at *7

(dismissing complaint where there "are no allegations of exposure to freezing and sub-zero

temperatures") (internal quotation omitted).  Not only does Plaintiff fail to assert that he was

subjected to such extreme temperatures, but he also acknowledges that he was provided with

extra clothing in the winter months.  Moreover, while he claims that his cold cell increased his

risk of infection because he had just ended his self-imposed hunger strike, he never alleges that

he actually fell physically ill.  *See* Cmpl. ¶ 16.  Lastly, Plaintiff claims that, on one occasion, the

water to the SHU was turned off.  *Id*. at ¶ 13.  While, of course, water must be provided to

prisoners, Plaintiff fails to state how long he lacked access to water or whether water was

provided with meals.  Courts have held that a temporary deprivation of food and water does not

violate a prisoner's constitutional rights.  *See Clay*, 2017 WL 436041, at *5 (dismissing claim

regarding unsafe drinking water because plaintiff did not plead how long the deprivation lasted

or that it affected his health); *Livigni v. Ortega*, No. 15-cv-9454 (CM), 2016 WL 6143351, at *3

(S.D.N.Y. Oct. 19, 2016).  Without alleging how long he was deprived of water or that this

deprivation harmed his health, Plaintiff fails to state a conditions of confinement claim.[13]

---

[13]  Additionally, these claims are not actionable under the FTCA because they fall within the
statute's discretionary function exception.  *See* 28 U.S.C. § 2680(a).  As recently held in
*Fernandini v. United States*, No. 15-cv-3843 (GHW) (KNF), 2019 WL 1033797, at *5 (S.D.N.Y.
Mar. 5, 2019), "'[t]he discretionary function exception bars claims based on day-to-day
management decisions if those decisions require judgment as to which of a range of permissible
courses is wisest.'"  In *Fernadini*, the court held that pest control and plumbing issues fell within
this exception.  This reasoning would equally apply to MCC's decision to provide additional

Accordingly, even if the Court did recognize *Bivens* claims in these contexts, Plaintiff has failed to assert that any of the conditions of his confinement violated his constitutional rights.

**V.      Stay of Discovery**

Finally, the Defendants respectfully request that the Court stay discovery until the motion to dismiss is decided.  *See* Fed. R. Civ. P. 26(c); *Spencer Trask Software & Info. Svcs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (granting stay in part based on defendants' "substantial arguments" for dismissal).  The instant motion to dismiss may resolve this case in its entirety.  Alternatively, the motion may result in certain Defendants being dismissed from the case.  To conserve the parties' resources and most efficiently resolve this case, and because prejudice to Plaintiff from a stay is unlikely, the Defendants request that the Court stay discovery until this motion is resolved.

<strong>CONCLUSION</strong>

For the foregoing reasons, Defendants motion should be granted and this case should be dismissed in its entirety.

---

clothing instead of increasing the temperature throughout the prison, which also falls squarely within the "day-to-day management of the prison" and requires "judgment as to which of a range of permissible courses is wisest."  *Id*. at *5.

Dated: May 16, 2019
     New York, New York

                Respectfully Submitted,

                GEOFFREY S. BERMAN
                United States Attorney of the
                Southern District of New York

By:   /s/ Alexander J. Hogan
                ALEXANDER J. HOGAN
                Assistant United States Attorney
                86 Chambers Street, Third Floor
                New York, New York 10007
                Tel.: (212) 637-2799
                Fax: (212) 637-2686
                E-mail: alexander.hogan@usdoj.gov

cc:    Martin Gottesfeld,
       Register Number 12982-104
       FCI Terre Haute
       Federal Correctional Institution
       P.O. Box 33
       Terre Haute, IN  47808