UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Martin S. Gottesfeld, pro se, Plaintiff<br>- against -<br>Hugh J. Hurwitz, et al. | Civil No.: 18-cv-10836-PGG |

## MOTION FOR EXTENSION OF TIME TO FILE

Plaintiff Martin S. Gottesfeld (herein "Plaintiff"), acting pro se, hereby moves The Honorable Court for an extension of time in which to file his opposition to the defendants' motion to dismiss, filed on May 16th, 2019 (please see D.E. 51). The Honorable Court had previously ordered the plaintiff to file his opposition on June 20th, 2019 (please see D.E. 55) and the plaintiff had previously mailed (and thereby filed pursuant to Houston v. Lack, 487 U.S. 266 (1988)) a previous MOTION FOR EXTENSION OF TIME TO FILE on Monday, June 10th, 2019, asking for leave to file his response on or before August 31st, 2019.

In his previous motion for an extension, the plaintiff cited the length of the defendants' motion, the time which the defendants took to prepare their motion while represented by counsel, the disadvantages faced by the plaintiff as compared to the defendants' counsel (specifically his lack of access to word processing software), and the slow and careful necessity of distinguishing the instant case from the cacophony of unpublished non-precedential opinions provided by the defendants in support of their motion.

The plaintiff must now seek an open-ended extension of time to file out of an abundance of caution because he may not be able to request more time in the future due to circumstances beyond his control. In support of the instant motion, the plaintiff hereby requests that The Honorable Court take judicial notice, pursuant to Fed. R. Evid. 201(c)(2) of the following exhibits hereto, each provided herewith:

* Exhibit 1: Plaintiff's July 1st, 2019, letter to the Office of the

Inspector General for the U.S. Justice Department reporting violations of the voyeurism subsection  (please see 28 CFR §115.6) of the Prison Rape Elimination Act (PREA) at the plaintiff's unit, i.e. the FCI Terre Haute CMU, and the 49-paragraph Affidavit of Martin S. Gottesfeld executed on June 27th, 2019 (5 pages total), noting the likely retaliation which the plaintiff believes that he may face as a result of his report due to, inter alia, the failure of the Federal Bureau of Prisons (FBOP) to abide by 28 CFR §115.51(b) (please see affidavit therein ¶¶ 39-41)

    * Exhibit 2: Excerpt from 28 CFR §115.6 regarding "Voyeurism" and the Prison Rape Elimination Act (PREA) (1 page)

    * Exhibit 3: Excerpt of FBOP Program Statement 3300.03, "Employment," §19(8), "NAME TAGS AND OTHER ADORNMENTS," stating the policy that FBOP staff members are to wear nametags (see also Exhibit 1, declaration, ¶19) (2 pages)

    * Exhibit 4: Excerpt from FBOP Program Statement 3420.11, "Standards of Employee Conduct," §5, "PERSONAL CONDUCT," forbidding sexual behavior and intimidation toward inmates (see also Exhibit 1, declaration, ¶¶ 14-18 and 20-23) (4 pages)

    * Exhibit 5: Excerpt from 28 CFR §115.51, showing §115.51(b) (see also Exhibit 1 and declaration therein ¶¶ 26-27 and 31-38) (1 page)

    * Exhibit 6: Excerpt from 28 CFR §540.203 showing §540.203(b)(1), i.e. that CMU inmates cannot send special mail to the courts (see also Exhibit 1, declaration, ¶¶ 28-29) (2 pages)

    * Exhibit 7: December 10, 2018, letter from Katherine Siereveld, representing herself as a "Senior Attorney" to an Indiana state court where she may not be licensed to practice (see also Exhibit 1, declaration, ¶¶ 31-34) (1 page)

    * Exhibit 8: May 15th, 2019, letter from the plaintiff to "Certified PREA Auditor" Diane Lee reporting the lack of access to PREA hotlines and

confidential access to the Office of the Inspector General (see also Exhibit 1 and declaration therein ¶¶ 26-27 and 35-38, and Exhibit 5) (2 pages)

     * Exhibit 9: Print-out from USPS.com showing the delivery of Exhibit 8 in Rockville, MD, on May 28th, 2019 (see also Exhibit 1, declaration therein ¶¶ 36-38) (1 page)

     * Exhibit 10: Excerpt of S.D. NY 18-cv-10836-PGG D.E. 42 showing ¶¶ 6-7 and 14-15 (see also Exhibit 1, declaration therein ¶¶ 39-41) (2 pages)

In light of the above, the plaintiff moves The Honorable Court to order him to file a more specific motion in the future when the current uncertainty has subsided detailing when he expects to be able to complete his opposition to the defendants' motion to dismiss.

Respectfully mailed on Monday, July 1st, 2019 (and filed thereon pursuant to Houston v. Lack, 487 U.S. 266 (1988)) in an envelope bearing U.S. Postal Service tracking number 9114 9023 0722 4293 0876 29, handed to FBOP employees Ms. Eisele, Ms. Wheeler, and/or Ms. Thomas with sufficient postage affixed pre-paid,

Martin S. Gottesfeld, pro se
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

### CERTIFICATE OF SERVICE

I, Martin S. Gottesfeld, pro se, do hereby certify that on Monday, July 1st, 2019, I mailed a copy of the foregoing document to counsel for the defendants in the abovecaptioned case by handing such copy to FBOP employees Ms. Eisele, Ms. Thomas, and/or Ms. Wheeler for placement in the mail. See Houston v. Lack, 487 U.S. 266 (1988).

Martin S. Gottesfeld, pro se

Exhibit 1

Martin S. Gottesfeld
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

Office of the Inspector General
United States Justice Department
950 Pennsylvania Ave NW, Room 4322
Washington, DC 20530

Monday, July 1st, 2019

In Re: PREA Violations At FCI Terre Haute Communications Management Unit (28 CFR §115.6)

To Whom It May Concern,

It is my duty to inform the Office of the Inspector General for the United States Justice Department of violations of the Prison Rape Elimination Act (PREA) inside the communications management unit (CMU) of the Federal Correctional Institution (FCI) Terre Haute, Indiana, which occurred during the week of June 23rd to June 29th, 2019. Please see the declaration enclosed herewith and 28 CFR §115.6.

I would include more documentation, but my correspondence with the OIG is not treated as confidential by the FCI Terre Haute legal department, which deliberately violates 28 CFR §115.51(b) (see enclosed declaration ¶¶ 26-27 and 31-38). Any attempt(s) by me to include the other documentation which I believe is relevant would, at best, be unsuccessful and delay the receipt of this letter, and would at worst result in me being placed in a SHU in conditions which violate the 8th Amendment (see enclosed declaration ¶¶ 39-41) for longer than I am already likely to face as a result of my report.

If the Office of the Inspector General is reading this letter, than it is doing so only after the staff who run the FCI Terre Haute CMU have already done so.

I will attempt to make a fuller filing on the docket of S.D. NY 18-cv-10836-PGG in a second MOTION FOR EXTENSION OF TIME TO FILE which I also plan to mail today, as I believe that such a showing will be necessary in the interests of justice.

Should the Office of the Inspector General be left with any questions which it feels I can answer, then I would be happy to do so.

Sincerely,

Martin S. Gottesfeld
Rolling-Stone--Featured Human-Rights Activist

P.S. To be clear, I am requesting an external investigation of this matter by the Office of the Inspector General and not an "internal investigation" by the S.I.S. department here at FCI Terre Haute as such investigations have been questionable in the past.

## Affidavit of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, do hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 27th day of June, 2019, and I do so declare the following pursuant to 28 U.S.C. §1746 (see LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65-66 (2d Cir. 1999)):

1. My name is Martin S. Gottesfeld and I am an inmate in the communications management unit (CMU) of the Federal Correctional Institution (FCI) Terre Haute, Indiana.

2. My federal registration number is 12982-104.

3. Today I became at least the third FCI Terre Haute CMU inmate in about as many days to be sexually abused, as defined by 28 CFR §115.6, "(8) Voyeurism," by an unidentified employee of the Federal Bureau of Prisons (FBOP).

4. The aforementioned incident of sexual abuse happened while I was alone in my cell (cell 41) of the FCI Terre Haute CMU at approximately 10:00 A.M. Eastern Time and the FBOP employee should have been video and audio recorded outside my cell, though such records have a common tendency to become unavailable or degraded when the FBOP might desire such.

5. I was sitting on my toilet defecating at the time of the incident.

6. The FCI CMU unit team (which is separate from the correctional officers (COs) on the unit's custody team) is entirely female, so male inmates in the FCI Terre Haute CMU traditionally cover the windows in their cell doors temporarily while defecating, and this has become an accepted practice, to the point where a correctional officer (CO) was once reprimanded by a lieutenant for telling inmates to uncover the windows in their cell doors while using the facilities.

7. In order to meet the institutional need for inmate safety, staff on rounds who encounter a covered window in a cell door typically verbally confirm from the outside that the inmate inside of the cell is alright and then continue their rounds.

8. This unidentified staff member had harassed at least two (2) other FCI Terre Haute CMU inmates in the 48 hours prior while they too were defecating by ordering them in a disrespectful, coercive, and unprofessional manner to take down their window covers over their understandable objections.

9. When this unidentified male staff member came upon my cell (and I do not know why this previously-unknown staff member has been in the unit this week in the first place), he barked, "Why is this window covered again?"

10. I had never seen this man before and he had never, so far as I know, in fact encountered a cover on my window previously.

11. I attempted to answer his question in a respectful, albeit obvious, manner.

12. He did not like my answer and became more rude.

13. He ordered me to uncover my window and I got up partially in order to do so, as awkward as that was.

14. Before I could uncover my window myself, this unaccompanied male staff member opened my cell door, reached his arm into my cell, and thus broke

- Page 1 of 4 -

the plane of entry, then took down the shirt that was covering my window.

15. This unaccompanied male staff member proceeded to stare at my exposed genitals, obviously and awkwardly.

16. After standing there for longer than was necessary, this staff member barked, "Don't cover this window again."

17. Most FBOP staff members whom I have encountered go out of their way, understandably, to avoid seeing inmates defecate.

18. This unaccompanied male staff member appears to go out of his way to see inmates defecate and to react negatively to obstacles which obstruct his view, based on the frequency and intensity of the incidents like the above which have occurred over the past 72 hours or so in the FCI Terre Haute CMU.

19. Contrary to FBOP policy, this unaccompanied male staff member was not displaying a visible name tag (see FBOP Program Statement 3300.03, "Employment," §19(8), "NAME TAGS AND OTHER ADORNMENTS").

20. Contrary to FBOP policy, this unaccompanied male staff member spoke in a deliberately coercive, disrespectful, and unprofessional manner during this incident (see FBOP Program Statement 3420.11, "Standards of Employee Conduct," §5, "PERSONAL CONDUCT").

21. I do not have access to the official Correctional Services Manual (FBOP Program Statement 5500.11), which dictates mandatory procedure(s) for entering inmate cells, but I do believe that no FBOP staff member is allowed to enter a cell occupied by an inmate without backup present, and that this procedure is required in order to protect both staff and inmates.

22. Except for dire emergencies, it is hard to imagine a valid reason for an FBOP employee to enter an occupied cell without backup, and it is worth noting that in November of last year, inmate Rodney Hamrick killed inmate Robert David Neal in a cell in this very same unit and stabbed inmate Richard Warren a dozen or so times inside another cell here.

23. I believe it is also considered explicitly inappropriate for an FBOP employee to enter an area knowingly while alone when he or she has reason to believe that an inmate who they are not legitimately strip searching might be naked and defecating, and this unaccompanied male staff member had very good reason to believe that I and the other inmates he has similarly harassed were naked and defecating.

24. If this FBOP staff member violated policy by opening and entering my cell alone while he knew that I was likely naked and defecating, then such conduct would not be related to his official duties.

25. In part, 28 CFR §115.6 reads, "Sexual abuse of a detainee by a staff member, contractor, or volunteer includes any of the following acts, if engaged in by one or more staff members, volunteers, or contract personnel who, with or without the consent of the detainee, engages in or attempts to engage in:... (8) Voyeurism, which is defined as the inappropriate visual surveillance of a detainee for reasons unrelated to official duties. Where not conducted for reasons relating to official duties, the following are examples of voyeurism: staring at a detainee who is using a toilet in his or her cell to perform bodily functions..."

26. All FBOP inmates are supposed to be able to send confidential reports to the Office of the Inspector General (OIG) for the United States Justice Department and to have access to PREA hotlines (see 28 CFR §115.51(b)).

27. Because FCI Terre Haute CMU inmates like me do not have access to PREA hotlines nor any methods to contact the OIG confidentially, I am unable to report the aforementioned incident directly and confidentially to the appropriate independent authorities as I should be able to do according to 28 CFR §115.51(b).

28. Unlike inmates elsewhere in the FBOP, those in the FCI Terre Haute CMU cannot send sealed mail confidentially to the courts (see 28 CFR §540.203(b)(1)).

29. I am unable to report the aforementioned incident directly and confidentially to any court from inside the FCI Terre Haute CMU.

30. It has come to my attention that the previous Unit Manager here at the FCI Terre Haute CMU, Mr. Clint Swift, was transferred following one or more PREA complaints lodged against him for entering occupied cells without backup for non-official reasons.

31. I believe that the lack of access to PREA hotlines and to the OIG from inside the FCI Terre Haute CMU is the deliberate work of Katherine Siereveld.

32. Katherine Siereveld is a member of the FCI Terre Haute legal department.

33. Katherine Siereveld routinely presents herself as an attorney, including to courts.

34. However, it has come to my attention that Katherine Siereveld may not be licensed to practice nor admitted to the bar in Indiana nor Illinois, the locations of the FBOP's two (2) CMUs.

35. I have previously reported the lack of access to PREA hotlines and to confidential filing with the OIG to Diane Lee, the "Certified PREA Auditor" for the FCI Terre Haute CMU, in a written letter at her business address, 11820 Parklawn Dr., Suite 240, Rockville, MD 20852, which I gave to FBOP staff to mail on May 17th, 2019, in an envelope bearing United States Postal Service (USPS) tracking number 9114 9014 9645 1762 0787 72.

36. I was not allowed to seal my own letter to Diane Lee and it was read, scanned, and preserved by the FBOP before it was sent, if it was in fact sent at all as opposed to an empty envelope.

37. According to the USPS tracking system, my letter to Diane Lee's office was delivered thereto on May 28th, 2019, but again I do not know if it was received empty or altered due to the actions and inactions of the FBOP.

38. Today marks thirty (30) days since my letter was reportedly delivered to Diane Lee and I have not received any response from her office.

39. Due to reports from other inmates which I find credible based upon my experience as a Rolling-Stone--featured human-rights activist and as an investigative journalist, I find it likely that the agents, employees, contractors, and other entities acting under the control of Acting FBOP Director Hugh J. Hurwitz, including Katherine Siereveld, will retaliate against me for reporting the above incident of sexual abuse by an FBOP employee working inside of the FCI Terre Haute CMU, and that this retaliation will seriously impede my litigation against Mr. Hurwitz and others in the case of Gottesfeld v. Hurwitz, et al. (S.D. NY 18-cv-10836-PGG).

40. I believe that such unlawful retaliation will consist of further such

acts of voyeurism and that I will be placed in the "special housing unit," or SHU, here at the FCI Terre Haute CMU in a deliberate effort to get me to withdraw my complaint in order to secure my exit from the SHU.

41. The FCI Terre Haute CMU SHU is regarded as a torture chamber by the inmates here, who consistently report enduring extreme temperatures, drinking water which causes convulsive vomiting and dangerously-dehydrating diarrhea, sleep deprivation, a floor that becomes too hot for them to stand in their tiny punishment cells, withholding of writing impliments, postage, envelopes, and other items necessary to contact the outside world and to pursue litigation in the courts, and more (see S.D. NY 18-cv-10836-PGG D.E. 42 at 2 ¶¶ 6-7, and at 3 ¶¶ 14-15).

42. The unaccompanied male staff member from the incident above was a ~~vegetarian~~ grey-haired caucasian male wearing a grey shirt today, June 27th, 2019.

43. It has subsequently come to my attention that the surname of the unaccompanied male staff member in question may be "Royer" or something similarly spelled. MSG 6/28/19

44. It has subsequently come to my attention that the unaccompanied male staff member in question has taken down mandatory placards bearing Diane Lee's name and address, and I believe that this is also a policy violation. MSG/6/28/19

45. A fourth victim has subsequently come to my attention. MSG 6/28/19

46. The unaccompanied male staff member has subsequently threatened other victims with retaliatory disciplinary action for reporting his non-official MSG 6/28/19 activities.

47. It has recently come to my attention that the first initial of the unaccompanied male staff member in question may be "T." MSG 6/28/19

48. On Friday, June 28th, 2019, I was approached by two (2) members of the S.I.S. (or internal investigations) department of FCI Terre Haute who MSG 6/28/19 wanted to speak to me about a "PREA" matter about which they had heard from a "third party." I declined to speak with them and advised them that I would be filing a report with the Office of the Inspector General, as is my prerogative under federal regulations. This conversation took place in the lobby of the CMU around 2:45 P.M. Eastern Time.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on Thursday, June 27th, 2019.

Martin S. Gottesfeld

49. About 4 hours after I spoke with S.I.S., a victim whom "T. Royer" had threatened received a disciplinary charge, written, but not delivered by, "T. Royer." Thus, FCI Terre Haute is allowing Royer to retaliate against victims MSG 6/29/19 for reporting him, in violation of 28 CFR §115.67. In the report, Royer claims to have been on "PREA rounds." However, he didn't notice the violations of 28 CFR §115.51(b) cited above and rather he took down placards with Diane Lee's address. Royer may also be the backup disciplinary hearing officer (DHO) for FCI Terre Haute, and he appears to use this status to offend with impunity and to intimidate and coerce his victims further.

Exhibit 2

28 CFR § 115.6

Sexual abuse of a detainee by a staff member, contractor, or volunteer includes any of the following acts, if engaged in by one or more staff members, volunteers, or contract personnel who, with or without the consent of the detainee, engages in or attempts to engage in:

(1) Contact between the penis and the vulva or anus and, for purposes of this paragraph (1), contact involving the penis upon penetration, however slight;

(2) Contact between the mouth and the penis, vulva, or anus;

(3) Penetration, however slight, of the anal or genital opening of another person by a hand or finger or by any object that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(4) Intentional touching of the genitalia, anus, groin, breast, inner thighs or buttocks, either directly or through the clothing, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(5) Threats, intimidation, harassment, indecent, profane or abusive language, or other actions or communications, aimed at coercing or pressuring a detainee to engage in a sexual act;

(6) Repeated verbal statements or comments of a sexual nature to a detainee;

(7) Any display of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, or

(8) **Voyeurism**, which is defined as the inappropriate visual surveillance of a detainee for reasons unrelated to official duties. Where not conducted for reasons relating to official duties, the following are examples of **voyeurism**: staring at a detainee who is using a toilet in his or her cell to perform bodily functions; requiring an inmate detainee to expose his or her buttocks, genitals, or breasts; or taking images of all or part of a detainee's naked body or of a detainee performing bodily functions.

[79 FR 13100, 13165, Mar. 7, 2014]

CFR                                                                                    1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 3

**OPI:**       **HRD/PDB**
**NUMBER:**    <u>**3300.03**</u>
**DATE:**      5/8/17
**SUBJECT:**    **Employment**



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program
# Statement

***U.S. Department of Justice***

Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T

OPI    HRD/PDB

NUMBER    <u>**3300.03**</u>

DATE    May 8, 2017

## Employment

/s/

*Approved:*    Thomas R. Kane

Acting Director, Federal Bureau of Prisons

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## 8.  *NAME TAGS AND OTHER ADORNMENTS*

Name tags, approved by the Director, will be provided by the institution to all employees.  Supervisors, managers, and uniformed staff are required to wear the provided name tag while in official duty status.  All other staff will be encouraged to wear the provided name tag.

Monogrammed names are included on uniformed staff uniforms.

In the interest of professionalism, uniformed employees will not wear jewelry that detracts from the overall professional appearance of the uniform while on duty.  As a matter of professionalism, personal safety, or institution security, specific items of jewelry or other adornment may be prohibited altogether, consistent with the Master Agreement.

Adornments denoting any agency or organization other than the Bureau of Prisons, or any cause or belief, must not be worn on or with the uniform unless specifically authorized by the Director or in accordance with the Master Agreement.

**1**

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 4

| | |
|---|---|
| **OPI:** | **OGC/ELE** |
| **NUMBER:** | **3420.11** |
| **DATE:** | **12/6/2013** |
| **SUBJECT:** | **Standards of Employee Conduct** |



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program Statement

```
OPI:   OGC/ELE

NUMBER:  3420.11

DATE:  12/6/2013

SUBJECT:  Standards of Employee Conduct
```

/s/

*Approved*: Charles E. Samuels, Jr.

Director, Federal Bureau of Prisons

1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## 5. PERSONAL CONDUCT

Employees are expected to conduct themselves in a manner that contributes to the orderly running of Bureau facilities.  Some types of behavior cannot be tolerated in the Bureau:

a.    **Alcohol/Illegal Drugs**.    The use of illegal drugs or the abuse of any drug, including prescription-controlled substances, is strictly prohibited.  Illegal drugs include, but are not limited to:

Marijuana.

Cocaine.

Ecstasy.

Heroin.

Amphetamines ("speed" or "crank").

Lysergic Acid Diethylamide (LSD).

Use of alcoholic beverages or being under the influence of alcohol while on duty or immediately before reporting for duty are prohibited.  Employees are subject to disciplinary action if found to possess a .02 or greater blood alcohol content while on duty.

b. **Sexual Relationships/Contact With Inmates.**  Employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates, former inmates, or persons known (or who should have been known based on circumstances) to the employee as a family member or close friend of inmates or former inmates.

Chaplains, psychologists, and psychiatrists may continue a previously established therapeutic relationship with a former inmate in accordance with their codes of professional conduct and responsibility.

Bureau staff may not serve as program volunteers in religious services and educational programs.  Under no circumstances are staff volunteers authorized to participate in inmate programs on a regular or occasional basis.

An employee may not engage in, or allow another person to engage in, sexual behavior with an inmate.  There is never any such thing as *consensual* sex between staff and inmates.

Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where the force is used or threatened.  *Sexual contact* is defined as the intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse,

1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

humiliate, harass, degrade, arouse, or gratify the sexual desire of any person.

Penetration is not required to support a conviction for sexual contact. All allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution.

Employees are subject to administrative action, up to and including removal, for any inappropriate contact, sexual behavior, or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime. Physical contact is not required to subject an employee to sanctions for misconduct of a sexual nature.

c. **Additional Conduct Issues**. An employee may not offer or give to an inmate or a former inmate or any member of his/her family, or to any person known to be associated with an inmate or former inmate, any article, favor, or service that is not authorized in the performance of the employee's duties.

Neither shall an employee accept any gift, personal service, or favor from an inmate or former inmate, or from anyone known to be associated with or related to an inmate or former inmate. This prohibition includes becoming involved with families or associates of inmates.

An employee may not show favoritism or give preferential treatment to one inmate, or a group of inmates, over another.

Consistent with policies and regulations:

   An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond what is reasonably necessary to subdue an inmate.

   An employee may not use physical violence, threats, or intimidation toward any person visiting a Bureau work site or toward fellow employees.

In their official capacity, employees may not use profane, obscene, or abusive language when communicating with inmates, fellow employees, or others. Employees shall conduct themselves in a manner that will not be demeaning to inmates, fellow employees, or others. The above requirements also apply to situations where there is a nexus between the employee's conduct and his/her position.

An employee who becomes involved in circumstances as described in this section, Section 9 (or any situation that might give the appearance of improper involvement with inmates or former inmates or their families, including employees whose relatives are inmates or former inmates) must report the contact in writing to the CEO as soon as practicable. (This includes, but is not limited to, telephone calls or written communications with such persons outside the normal scope

pro

2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

of employment.)  The employee will then be instructed as to the appropriate course of action.

Exempted program officials must obtain prior approval to communicate with former inmates, their family members, or associates.  **All communications must occur from an institution setting.**

Employees must avoid situations that give rise to a conflict of interest or the appearance of a conflict of interest (see Section 2, Definitions).

Employees shall not participate in conduct that would lead a reasonable person to question their impartiality.

pro

**3**

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit S

28 CFR § 115.51

# Reporting

## § 115.51 Inmate reporting.

(a) The agency shall provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents.

(b) The agency shall also provide at least one way for inmates to report abuse or harassment to a public or private entity or office that is not part of the agency, and that is able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials, allowing the inmate to remain anonymous upon request. Inmates detained solely for civil immigration purposes shall be provided information on how to contact relevant consular officials and relevant officials at the Department of Homeland Security.

(c) Staff shall accept reports made verbally, in writing, anonymously, and from third parties and shall promptly document any verbal reports.

(d) The agency shall provide a method for staff to privately report sexual abuse and sexual harassment of inmates.

[77 FR 37106, 37197, June 20, 2012]

[EFFECTIVE DATE NOTE: 77 FR 37106, 37197, June 20, 2012, added Part 115, effective Aug. 20, 2012.]

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

28 CFR § 540.203

## § 540.203 Written correspondence limitations.

(a) General correspondence. General written correspondence as defined by this part, may be limited to six pieces of paper (not larger than 8.5 x 11 inches), double-sided writing permitted, once per calendar week, to and from a single recipient at the discretion of the Warden, except as stated in (c) below. This correspondence is subject to staff inspection for contraband and for content.

(b) Special mail. (1) Special mail, as defined in this part, is limited to privileged communication with the inmate's attorney.

(2) All such correspondence is subject to staff inspection in the inmate's presence for contraband and to ensure its qualification as privileged communication with the inmate's attorney. Inmates may not seal such outgoing mail before giving it to staff for processing. After inspection for contraband, the inmate must then seal the approved outgoing mail material in the presence of staff and immediately give the sealed material to the observing staff for further processing.

(c) Frequency and volume limitations. Unless the quantity to be processed becomes unreasonable or the inmate abuses or violates these regulations, there is no frequency or volume limitation on written correspondence with the following entities:

(1) U.S. courts;

(2) Federal judges;

(3) U.S. Attorney's Offices;

(4) Members of U.S. Congress;

(5) The Bureau of Prisons;

(6) Other federal law enforcement entities; or

(7) The inmate's attorney (privileged communications only).

(d) Electronic messaging may be limited to two messages, per calendar week, to and from a single recipient at the discretion of the Warden.

CFR                                                                    1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[80 FR 3168, 3177, Jan. 22, 2015]

[EFFECTIVE DATE NOTE: 80 FR 3168, 3177, Jan. 22, 2015, added Subpart J, effective Feb. 23, 2015.]

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 7



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*

Office of the Complex Warden                    *4700 Bureau Road South*
                                                *Terre Haute, Indiana 47802*

December 10, 2018

Clerk, Vigo Superior Court 1
33 South 3rd Street
Courthouse
Terre Haute, IN 47807

RE:     *Robert E. Miller v. David W. Sullivan*
        Case No:84D01-1807-CT-005360

Dear Clerk:

This is in response to the Subpoena Duces Tecum issued to the United States Penitentiary at
Marion, Illinois (USP Marion). Pursuant to 28 C.F.R. ¶ 16.22, et seq., we are in receipt of your
request for production of documents in connection with the assault on inmate Robert Miller,
Federal Register Number 48707-019.

As you are aware, an employee of the United States Department of Justice[1] is prohibited from
producing any material or testimony regarding any material contained in the files of the Department
of Justice or acquired as a part of the performance of that person's official duties or status without
the prior approval of the proper Department official.  28 C.F.R. § 16.22.  Therefore, this response is
being provided to you following a review of responsive documents by the United States Attorney's
Office for the Southern District of Indiana.

If you have any questions, please do not hesitate to contact me at (812) 238-3476.

Sincerely,

Katherine Siereveld
Senior Attorney

Enclosures

---

[1] The Bureau of Prisons is a component of the United States Department of Justice which is an
executive agency of the United States.  *See* 5 U.S.C. § 101, 105.

Exhibit 8

Martin S. Gottesfeld
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

Ms. Diane Lee
Certified PREA Auditor
11820 Parklawn Dr. Suite 240
Rockville, MD 20852

Wednesday, May 15th, 2019

In Re: Lack of Acess to Hotlines and OIG At FCI Terre Haute
       Communications Management Unit (CMU)

Salutations Ms. Lee,

I hope that this letter finds you well.

My name is Martin S. Gottesfeld and my federal registration
number is 12982-104. I am an inmate in the communications
management unit (CMU) at FCI Terre Haute.

I believe that you are the PREA auditor for this unit based
on a notice posted on the bulletin board in our cafeteria. If I
am mistaken, then please do let me know and I will endeavour to
find the appropriate person to whom to direct my correspondence.

I am writing because I wish to inform the appropriate
designated individual that here in the CMU (which is its own
self-contained unit within the FCI wherein inmates do not have
access to all of the same resources as those elsewhere in the
institution), we inmates have no access to PREA hotlines
whatsoever--nor access to hotlines of any other kind. For that
matter, we cannot contact the Office of the Inspector General
confidentially.

The one working inmate telephone in the CMU is generally
off throughout the day and is only turned on for pre-arranged and
pre-approved calls to pre-designated parties. Further, even if an
inmate wanted to try to gain pre-approval to call a PREA hotline,
no such numbers are publicly posted for that purpose. And such a
phone call would require that inmate to use one of their two
weekly 15-minute-maximum ~~weekly~~ social telephone calls, thereby
depriving them of that call with their family. Moreover, many
inmates are on phone restrictions here at any given time and thus
could not ~~even~~ schedule such a call to a PREA hotline.

Obviously too, having to pre-schedule a call to a PREA
hotline through the same staff whom an inmate might need to
report presents serious issues and is manifestly untenable.

Further, CMU inmates have no direct and unmonitored means by
which to contact the Office of the Inspector General (OIG). The
button to do so via TRULINCS is simply disabled on the computers
here--it does not work. Then, any mail which inmates here wish to
send to the OIG (the address for which is not posted publicly) is
subject to discretionary review by the FBOP and its contractors
prior to being allowed out in the mail.

For just one example of such pre-screening, I recently was
told that I am not allowed to mail the OIG sworn affidavits from
other CMU inmates backing up my factual narrative.

- Page 1 of 1 -

Also, it should go without saying that many inmates might not feel comfortable trying to contact the OIG at all based on the knowledge that the FBOP and its contractors would read their mail days, if not weeks, before the OIG.

Ms. Lee, I consider these issues to be very serious and to require prompt resolution. I hope that you agree.

I am forbidden ~~specifically~~ from listing the various national news publications for which I write, but I do believe that a quick Google search of the name "MartyG" would be quite illuminating. I am also forbidden from requesting a comment from you prior to publication, so your only response which I could note would be your actions in response to this disappointing information; actions which I do hope will be fast, decisive, and comprehensive.

Should you have any questions for me, please do let me know and I will do my best to answer them despite the wanton and unlawful interference from the FBOP and its contractors which I anticipate based on my recent past experiences.

Best Regards,

Martin S. Gottesfeld
Rolling-Stone--Featured Human Rights Activist

Case 1:18-cv-10836-PGG   Document 639   Filed 07/16/19   Page 22 of 26

Exhibit 9

A status update is not yet available on your package. It will be available when the shipper provides an update or the package is delivered to USPS. Check back soon.

**Sign up for Informed Delivery® (https://informeddelivery.usps.com/box/pages/intro/start.action)** to receive notifications for packages addressed to you.

**Tracking Number:** 9114901496451762078772                    Remove

Your item was delivered to the front desk, reception area, or mail room at 2:17 pm on May 28, 2019 in ROCKVILLE, MD 20852.

# Delivered

May 28, 2019 at 2:17 pm
Delivered, Front Desk/Reception/Mail Room
ROCKVILLE, MD 20852

**Get Updates**

**See More**

**Tracking Number:** 9114901496451828118220                    Remove

Your package is moving within the USPS network and is on track to be delivered to its final destination. It is currently in transit to the next facility.

# In-Transit

May 30, 2019
In Transit to Next Facility

Feedback

Affidavit of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, do hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 6th day of April, 2019:

1. My name is Martin S. Gottesfeld. I am a federal inmate in the Communications Management Unit (CMU) of the Federal Correctional Institution (FCI) Terre Haute. My federal registration number is 12982-104.

2. I arrived at the FCI Terre Haute CMU this past Monday, April 1st, 2019.

3. Upon my initial arrival at the FCI Terre Haute CMU building, I immediately identified myself to CMU staff as a journalist with The Intercept and as a frequent contributor to Info Wars, among other news media publications.

4. In my first discussions with unit correctional officers (COs), I was asked if I was familiar with typical Federal Bureau of Prisons (FBOP) procedures, such as standing counts.

5. In this conversation, I learned that the majority of inmate disciplinary charges in the CMU are a result of alleged communications policy violations.

6. I was spontaeneously told by unit staff that the FCI Terre Haute CMU has its own distinct Special Housing Unit (SHU), which is separate from the main SHU which is used for inmates from the other units in the institution, and that the CMU SHU is not a place where I want to find myself. This cautionary warning was issued without my asking and prior to my suspicion or knowledge that the FCI Terre Haute CMU has its own, distinct SHU.

7. CMU staff told me that the CMU SHU is located over a steam pipe and that it is very hot. They also advised me that they do not like having inmates confined in the CMU SHU as it is inconvenient for them to make their required 30-minute rounds in the CMU SHU due to the need to close a main hallway in order to do so.

8. A little while later, two (2) members of the CMU unit team, Ms. E. Keller, who was the CMU Intelligence Research Officer (IRO) at the time, and Ms. Thomas, who is the CMU Unit Manager, arrived to complete my unit intake paperwork. They told me that a third member of the unit team, Ms. Eisele, who is the CMU Case Manager, was out for the week and would see me upon her return next week.

9. Ms. Keller explained to me that I had been designated to the CMU, but that it was not the CMU unit team who had requested my placement in the unit. Ms. Keller told me that the CMU is not a "locked-down unit," that placement in the CMU is "non-punitive," that inmates may be designated to a CMU due to their offenses of conviction and/or their institutional behavior, and that I would be allowed access to the inmate computer systems like the other inmates in the unit, among other things. Ms. Keller also told me that the CMU is a "general-population unit," and Ms. Thomas went through the normal FBOP questionnare used to

determine if an inmate can be safely placed into general population. I was told that inmates in the CMU are allowed two (2) phone calls of fifteen (15) minutes each per week and that I could still sign up for two (2) calls this week, which I later did.

10. At no point did I ask for protective custody (P.C.).

11. I was also told by Ms. Keller that social visits for CMU inmates are non-contact.

12. Ms. Keller informed me that the FCI Terre Haute CMU is comprised of single-person cells, which many inmates find desireable.

13. Ms. Keller advised me of the requirement for inmates to exhaust administrative remedies prior to filing civil suits in court. I politely informed Ms. Keller and Ms. Thomas of the instant case in The Southern District of New York, and Ms. Keller told me that, while she did not know the specifics, she was aware and that I had an open case. Unaware of the latest filings and scheduling changes, I informed the unit team that there was a hearing scheduled in the instant case for Thursday, April 11th, 2019, which I have since learned has been rescheduled.

14. Ms. Keller also told me that the FCI Terre Haute CMU has its own separate SHU, distinct from the SHU which is used to house non-CMU inmates from other units, and that the FCI Terre Haute CMU SHU is a place where I do not want to go. However, neither Ms. Keller nor Ms. Thomas elaborated on the specific conditions in the CMU SHU during our initial conversation. Once again, this cautionary warning was issued without my asking.

15. At the time of the above conversations, I was unaware Ms. Keller is/was a named defendant in the case of Al-Kassar v. Bureau of Prisons, 2:18-cv-00086-WTL-DLP (Southern District of Indiana), and that the conditions in the FCI Terre Haute CMU SHU are a matter of controversy in that case due to alleged 8th Amendment violations (please see 2018 U.S. Dist. LEXIS 87680::Al-Kassar v. Bureau of Prisons::May 24, 2018).

16. At or near the end of my initial FCI Terre Haute CMU intake process, I specifically and explicitly inquired as to whether or not I was allowed to communicate with journalists while I am in the CMU. I was told that I am allowed to do so. I inquired as to whether I would be allowed to send sealed special mail to journalists, as inmates in general population elsewhere are allowed to do under Code of Federal Regulation (CFR). Ms. Keller informed me that I would not be allowed to do so, as the FBOP only considers mail which CMU inmates send directly to attorneys to qualify as being exempt from review prior to mailing.

17. After scheduling my phone calls as instructed, I had my first call to my wife from the CMU on the afternoon of Wednesday, April 3rd, 2019, without incident. A second call followed yesterday evening, Friday, April 5th, 2019, also without incident.

Exhibit 11
July 1st 2019

Martin S. Gottesfeld
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

UNITED STATES
POSTAL SERVICE®

USPS TRACKING #

9114 9023 0722 4293 0876 81

Label 400 Jan. 2013
7680-16-000-7948



<>12982-104<>
Inspector General
950 Pennsylvania AVE NW
Room 4322
Washington, DC 20530
United States

...ttesfeid
...982-104
...ectional Institution
... IN 47808

...STATES
...SERVICE®
...S TRACKING #
0722 4293 0876 29
Label 400 Jan. 2013
7690-16-000-7948

⇔12982-104⇔
U S District Court
Pro Se Clerk
500 Pearl ST
NEW YORK, NY 10007
United States

1
USA
DOLLAR

1
USA
DOLLAR

July 1st, 2019, Houston v. Lack, 487 U.S. 266 (1988)

2019 JUL 16 PM 4:55
S.D. OF N.Y.

USM P3
SDNY