UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Martin S. Gottesfeld, pro se,
　　　　　Plaintiff
　　　　- against -
Hugh J. Hurwitz, et al.,
　　　　　Defendants

Case No.: 18-cv-10836-PGG-GWG

RECEIVED
NOV 19 2019
PRO SE OFFICE

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR EXTENSION OF TIME TO FILE (DOCKET ENTRY 86)

Plaintiff Martin S. Gottesfeld (herein "plaintiff"), acting pro se, hereby replies to the defendants' opposition to his earlier motions for extensions of time to file (docket entry 86).

In support of this reply, the plaintiff herewith provides Exhibit 1 hereto; Declaration of Martin S. Gottesfeld; November 6th, 2019; and he moves The Honorable Court to take mandatory judicial notice thereof pursuant to Fed. R. Evid. 201(c)(2).

The plaintiff notes that the instant defendants do not deny the recent failures of their agents to make commissary deliveries to the plaintiff, nor that by the design of the instant defendants, the plaintiff has no other means to secure his supplies other than through these commissary deliveries. Nor do the defendants deny that Mr. Robert Decker is their agent. Please see D.E. 86.

Defendants frivilously aver that the plaintiff moved for extensions "without further elaboration on what he was unable to receive that is preventing him from filing his opposition." Id. The plaintiff, however, notes that such a list is explicitly included in Exhibit 2 to his previously-filed MOTION FOR EXTENSION OF TIME TO FILE, mailed (and filed pursuant to Houston v. Lack) on October 2nd, 2019, to wit: copy cards; typewriter ribbons; typewriter erasing ribbons; manila envelopes; and postage stamps.

Defendants then--in an unsworn filing--proffer the fallacy, "Moreover, as evidenced by the multiple recent filings on the docket sheet, Plaintiff clearly has access to materials he needs to file documents with this Court."

D.E. 86. The plaintiff notes in <u>Exhibit 1</u> hereto, however, that neither the defendants, their counsel, nor their agents, have inquired with the plaintiff in order to ascertain what "materials he needs to file" his opposition to the defendants' motion to dismiss (<u>D.E. 51-52</u>).

It should be obvious, and the plaintiff is certain it is not lost on The Court, that the plaintiff's ability to file some things does not and cannot signify that he has the ability to file all things. As noted in <u>Exhibit 1</u>, the plaintiff is unable to say more at the current juncture without giving away protected strategic information about the nature and composition of his upcoming opposition to <u>D.E. 51-52</u>, and the defendants point to no authority requiring the plaintiff to do so. The plaintiff is confident that once he files his opposition The Court will clearly see that the lack of the timely delivery of the aforementioned supplies proximately caused the delay in its filing and that the plaintiff employed considerable work-around measures to minimize to the extent practicle such delays.

The plaintiff further notes for posterity that the instant defendants easily could have--but did not--take any effort to rectify the root cause of this situation. With a few phone calls they likely could at any time see to the delivery of the required supplies to the plaintiff in less time than it took to compose, file, and serve <u>D.E. 86</u>. Their inaction is telling; especially in light of their flagrant violation of the decision of The U.S. Court of Appeals in <u>Aref v. Lynch</u>, 833 F.3d 242 (2d Cir. 2016) in sending the plaintiff--a nationally-published political journalist--to a communications-management unit (CMU) with no prior due process as required by The Court, at a time when the instant case was pending before This Court citing previous violations of the plaintiff's <u>First Amendment</u> and other Constitutional rights. Now, having unlawfully proverbially tied the plaintiff's hands behind his back by illegally designating him to a CMU in violation of the explicit findings of

The U.S. Court of Appeals, the defendants and their parties in privity have further limited the plaintiff's ability to file while disingenuously complaining about the results of their own acts and omissions. The Court should rebuke rather than condone this extrajudicial bullying by the instant defendants in their unseemly attempt to win at all costs.

As noted under penalty of perjury in Exhibit 1 hereto, the instant plaintiff is eager for the prompt adjudication of the merits of the instant case. He is in fact the injured party and such adjudication is his best and perhaps only chance of relief. The plaintiff also notes, however, that by forcing him to file this reply ~~opposition~~ rather than see to the proper actions by their agents, the defendants have perhaps further delayed the plaintiff's filing of his opposition by requiring him to spend the better part of a day and to use more of his limited supplies that otherwise would have gone towards filing his opposition. The plaintiff is sure that this was not lost on the instant defendants as they filed D.E. 86.

As The Honorable Court is no doubt aware, denying the instant plaintiff the supplies and the time he needs to file his opposition to the defendants' motion to dismiss would constitute a denial of access to the courts cognizable under The First Amendment.

Finally, defendants concede "there is often a significant lag between Plaintiff mailing filings to the Court and those filings appearing on the docket." D.E. 86. This delay is entirely the responsibility of the defendants and their parties in privity. Houston v. Lack, 487 U.S. 266 (1988). It cannot be attributed to the unrepresented incarcerated plaintiff. Id. Indeed, this delay represents a further violation by the instant defendants and their parties in privity of their own policies and procedures. Please see Exhibit 3 to plaintiff's previous NOTICE OF FILING, mailed (and filed pursuant to Houston v. Lack) on Monday, August 5th, 2019; i.e. marked excerpts of FBOP

Program Statement 5800.10, "Mail Management Manual," § 306, "IN/OUT PROCESSING REQUIREMENTS FOR SPECIAL AND LEGAL MAIL, "Special and legal mail is afforded priority and every reasonable effort shall be made to assure delivery of special mail within 24 hours. Delivery time is essential in the filing of court documents or other legal papers, therefore, mail room staff, as well as staff making the actual delivery to the inmate (usually unit staff), must adhere to delivery time frames for special mail."

The plaintiff immediately perfects his filings in the instant case when he hands them to agents of the instant defendants for mailing to The Court. These agents then exercise unlawful content-based Executive review of the plaintiff's filings before they are mailed to The Court. Please see: (1) 28 C.F.R. § 540.203(a), "This correspondence is subject to staff inspection for contraband and content;" (2) 28 C.F.R. § 540.203(b)(1), excluding mail to and from The Court from non-discretionary forwarding; and (3) 28 C.F.R. § 540.203(c), purporting to allow volume restrictions based upon page length of the plaintiff's filings under arbitrarily-defined criteria. Please cf. Ex Parte Hull, 312 U.S. 546 (1941). (The plaintiff further notes that the more-limited definition of special mail found in 28 CFR § 540.203(b)(1), by the express terms of that section, is limited to that part of C.F.R. and does not apply, for example, to the FBOP Program Statement 5800.10 § 306).

Agents of the instant defendants and their common counsel immediately scan the plaintiff's filings and provide them to said counsel after the plaintiff perfects his service of process pursuant to Fed. R. Civ. P. 5(b)(2)(B) by hand-delivering his filings to the aforementioned agents of the defendants and their common counsel. Thus, counsel for the defendants sees the plaintiff's filings in the instant case before either The Court or the public, and this constitutes a manifestly unfair advantage in the adversarial process. Those agents then delay the actual mailing of the plaintiff's filings by weeks

in violation of their own clearly-stated policies.

Indeed, all of the relevant delays in the instant case are due to the actions and omissions of the instant defendants; from placing the plaintiff in the SHUs at MDC Brooklyn and FTC Oklahoma City; to chilling his litigation-related communications by punishing him for lawfully trying to assist in the court-ordered service of process in another case (which delayed filings in the instant case); to delaying the mailing of the plaintiff's court filings while their agents unlawfully exercise content-based discretionary review of those filings; designating the plaintiff to a CMU where his phone and other communications--if not entirely suppressed as they have been for the past six (6) months--would be vastly reduced in frequency and duration, yet inordinately delayed; to now failing to allow the plaintiff to make necessary commissary purchases that are widely available to inmates in the custody of the defendants elsewhere.

At every such juncture the plaintiff has diligently sought relief from The Court only to be denied.

Is the public to believe that this has been fair?

And now, unsatisfied by the weeks-long head start their counsel already receives before the plaintiff's filings appear on the docket and the normal seven-(7)-day period provided by Loc. Civ. R. 6.1(b)(3) for them to reply to the plaintiff's forthcoming opposition to their motion to dismiss, and notwithstanding their superior numbers and access to word-processing and other technologies of which they deprive the plaintiff, the instant defendants seek a further twenty-one (21) days in which to file their reply after whatever other delays their agents introduce to the prejudice of the plaintiff--delays that are fully within the control of the defendants and their counsel and that have stretched to twenty-one (21) days in the past.

The Court declined to intervene to preclude these unfair practices despite at the repeated requests of the plaintiff. It would be clearly unjust for The Court

to now extend the seven-(7)-day period provided by Loc. Civ. R. 6.1(b)(3) for the defendants at prejudice to the plaintiff and the prompt adjudication of his claims when it is the defendants who both introduce and benefit from the very same delays about which they now complain.

Respectfully mailed pursuant to the prison-mailbox rule of Houston v. Lack on Wednesday, November 6th, 2019, and filed thereat, in an envelope bearing sufficient affixed pre-paid first-class U.S. postage and U.S. Postal Service tracking number 9114 9023 0722 4291 7452 79, handed to Ms. J. Wheeler of the FCI Terre Haute CMU unit team acting in her official capacity as an agent of the defendants,

by: _____
Martin S. Gottesfeld, pro se
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

## CERTIFICATE OF SERVICE

I, Martin S. Gottesfeld, pro se, hereby certify that on Wednesday, November 6th, 2019, I mailed a copy of the foregoing document to counsel for the defendants in the above-captioned case pursuant to Houston v. Lack by handing said copy in an envelope bearing sufficient affixed pre-paid first-class U.S. postage to Ms. J. Wheeler of the FCI Terre Haute CMU unit team, acting in her official capacity as an agent of the defendants in the above-captioned case.

by: _____
Martin S. Gottesfeld, pro se

## Declaration of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, do hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 6th day of November, 2016, and I declare pursuant to 28 U.S.C. § 1746(1) and under penalty of perjury that the following is true and correct:

1. My name is Martin S. Gottesfeld and I am the sole plaintiff in the case of 18-cv-10836-PGG-GWG, currently pending before The Honorable U.S. District Court for The Southern District of New York (hereafter "the case").

2. I received docket entry (D.E.) 86 in the case for the first time earlier today.

3. The defendants in the case have not inquired with me in order to ascertain what materials I need to file my opposition to their previously-filed motion to dismiss the case (docket entry 51-52), and neither have their counsel or other agents.

4. While I provided an explicit list of the various supplies that agents of the defendants in the case have denied me for weeks, specifying with any more particularity the specific supplies that I am currently missing would divulge protected strategic information about the nature and composition of my upcoming opposition to docket entry 51-52 in the case.

5. I am eager to see the prompt adjudication of the case and I have been working long hours despite severe limitations imposed by the defendants and their parties in privity so that I can file my opposition to docket entry 51-52 as soon as possible.

6. I am aware of no effort by the defendants in the case to rectify the actions and omissions of their agents that have led to months of delay in the case.

7. I am mailing this reply on Wednesday, November 6th, 2019, or my first opportunity thereafter pursuant to Houston v. Lack, 487 U.S. 266 (1988) by handing this reply to Ms. J. Wheeler of the FCI Terre Haute CMU unit team in her official capacity as an agent for the defendants pursuant to the prison-mailbox rule because there is no free-standing prison-mailbox in the FCI Terre Haute CMU and the envelope containing this filing bears sufficient affixed pre-paid first-class U.S. postage and U.S. Postal Service tracking number 9114 9023 0722 4291 7452 79.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on Wednesday, November 6th, 2019.

Martin S. Gottesfeld



Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

USPS TRACKING #

9114 9023 0722 4291 7452 79

UNITED STATES
POSTAL SERVICE

<>12982-104<>
U S District Court
Pro Se Clerk
500 Pearl ST
NEW YORK, NY 10007
United States

Houston v. Lack, 487 U.S. 266 (1988)

Wednesday, November 6th, 2019,

RECEIVED
PRO SE OFFICE

SDNY
USA.P3