representatives of the news media.

Special mail also includes correspondence received from the following: President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts. For incoming correspondence to be processed under the special mail procedures (see §§ 540.18--540.19), the sender must be adequately identified on the envelope, and the front of the envelope must be marked "Special Mail--Open only in the presence of the inmate".

50 FR 40108, Oct. 1, 1985.

CFR                                                          2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 14

28 CFR

## § 540.18 Special mail.

(a) The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail. The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail -- Open only in the presence of the inmate".

(b) In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail.

(c)(1) Except as provided for in paragraph (c)(2) of this section, outgoing special mail may be sealed by the inmate and is not subject to inspection.

(2) Special mail shall be screened in accordance with the provisions of paragraph (c)(2)(iii) of this section when the special mail is being sent by an inmate who has been placed on restricted special mail status.

(i) An inmate may be placed on restricted special mail status if the Warden, with the concurrence of the Regional Counsel, documents in writing that the special mail either has posed a threat or may pose a threat of physical harm to the recipient (e.g., the inmate has previously used special mail to threaten physical harm to a recipient).

(ii) The Warden shall notify the inmate in writing of the reason the inmate is being placed on restricted special mail status.

(iii) An inmate on restricted special mail status must present all materials and packaging intended to be sent as special mail to staff for inspection. Staff shall inspect the special mail material and packaging, in the presence of the inmate, for contraband. If the intended recipient of the special mail has so requested, staff may read the special mail for the purpose of verifying that the special mail does not contain a threat of physical harm. Upon completion of the inspection, staff shall return the special mail material to the inmate if the material does not contain contraband, or contain a threat of physical harm to the intended recipient. The inmate must then seal the special mail material in the presence of staff and immediately give the sealed special mail material to the observing staff for delivery. Special mail determined to pose a threat to the intended recipient shall be forwarded to the appropriate law enforcement entity. Staff shall send a copy of the material, minus the contraband, to the intended recipient along with notification that the original of the

CFR                                                           1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

material was forwarded to the appropriate law enforcement entity.

(iv) The Warden shall review an inmate's restricted special mail status at least once every 180 days. The inmate is to be notified of the results of this review. An inmate may be removed from restricted special mail status if the Warden determines, with the concurrence of the Regional Counsel, that the special mail does not threaten or pose a threat of physical harm to the intended recipient.

(v) An inmate on restricted mail status may seek review of the restriction through the Administrative Remedy Program.

(d) Except for special mail processed in accordance with paragraph (c)(2) of this section, staff shall stamp the following statement directly on the back side of the inmate's outgoing special mail: "The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address."

[50 FR 40109, Oct. 1, 1985; 62 FR 65184, 65185, Dec. 10, 1997]

[EFFECTIVE DATE NOTE: 62 FR 65184, 65185, Dec. 10, 1997, revised paragraphs (c) and (d), effective Jan. 9, 1998.]

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 15

**OPI:**     **CPD/CPB**
**NUMBER:**     **5265.14**
**DATE:**     **April 5, 2011**
**SUBJECT:**     **Correspondence**



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program Statement

OPI:   CPD/CPB

NUMBER:   5265.14

DATE:   April 5, 2011

# Correspondence

/s/

*Approved*: Harley G. Lappin

Director, Federal Bureau of Prisons

pro

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## 12.   INMATE CORRESPONDENCE WITH REPRESENTATIVES OF THE NEWS MEDIA

**§ 540.20 Inmate correspondence with representatives of the news media.**

**(a)   An inmate may write through "special mail" to representatives of the news media specified by name or title (see § 540.2(b)).**

28 CFR § 540.2(b) refers to Section 2.b. of this Program Statement.

Properly identified and labeled correspondence from an inmate who is not on restricted mail status to qualifying news media representatives is sealed and forwarded without inspection, directly and promptly.   Properly identified and labeled correspondence from an inmate on restricted special mail status is also sealed and forwarded promptly, but may be subject to inspection per procedures in Section 10.   If there is doubt whether a representative qualifies, contact the Public Information Officer in the Central Office.

**(b)    The inmate may not receive compensation or anything of value for correspondence with the news media.   The inmate may not act as reporter.**

**(c)    Representatives of the news media may initiate correspondence with an inmate.   Staff shall open incoming correspondence from representatives of the media and inspect for contraband, for its qualification as media correspondence, and for content which is likely to promote either illegal activity or conduct contrary to Bureau regulations.**

See the Program Statement **News Media Contacts** on other aspects of contact with news media.

pro

**1**

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 16

Martin S. Gottesfeld
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

The Honorable William Barr
U.S. Attorney General
950 Pennsylvania Ave NW
Washington, DC 20530-0001

Sunday, August 11th, 2019

In Re: <u>Qui-Tam Action (S.D. NY 18-cv-10836-PGG)</u>

Dear Attorney General Barr:

I hope that this letter finds you and your staff well.

I wish to notify you pursuant to 31 U.S.C. §3730(b)(2) of a pending qui-tam action filed pursuant to <u>31 U.S.C. §3729(a)(1)</u> in The Honorable U.S. District Court for The Southern District of New York in case number <u>18-cv-10836-PGG</u>. I've enclosed a copy of the relevant complaint. The qui-tam part thereof can be found in §V ¶¶ 21-22.

Upon review of the docket, I'm sure it's obvious that there is a bizarre procedural posture for this qui-tam action. I apologize. At the time I filed this complaint, I didn't have sufficient access to the statutes and rules for bringing an action qui tam. I'm hoping that your office will stipulate to the action despite the circumstances, but I'd understand if not, and I'd be happy to argue the matter in camera.

I am also enclosing, pursuant to the full disclosure requirements of <u>31 U.S.C. §3730(b)(2)</u>, copies of news article that I have published regarding the above-captioned case and the relevant circumstances at The Intercept and Red State/Info Wars.

If you or your staff have any questions for me, please just ask.

Sincerely,

Martin S. Gottesfeld, pro se, non-sibi

- Page 1 of 1 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

18 CV 10836

COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes  ☐ No

NOTICE

I. LEGAL BASIS FOR CLAIM

II. PLAINTIFF INFORMATION

III. PRISONER STATUS

IV. DEFENDANT INFORMATION

V. STATEMENT OF CLAIM

## VI. RELIEF

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

**INJURIES:**

Exhibit 4:



USMB3
SDNY










## Is The Federal Bureau Of Prisons Scamming Taxpayers With Its Pension System?





RedState POLL

Will you elect to defend America and the Constitution against socialism?

[ ] Yes
[ ] No
[ ] Undecided





Martin S. Gottesfeld
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

Sunday, August 11th, 2019, *Houston v. Lack*, 487 US 266 (1988)

USPS TRACKING #
9114 9023 0722 4293 0883 12

<>12982-104<>
Hon U.S. Attorney Gen.
William Barr
950 Pennsylvania AVE NW
Washington, DC 20530-0001
United States

---

4/6/2019                    Is the Federal Bureau of Prisons Scamming Taxpayers With Its Pension System?

*However, there are reasons to doubt Quay's word in light of the dishonesty demonstrated during the blackout, not to mention his likely desire to keep his pension despite the millions of tax dollars which may be spent on the lawsuits originating during his tenure.*

*Warden Quay did not immediately respond to a request for comment as to whether he plans to reimburse taxpayers.*

*The Federal Bureau of Prisons did not immediately respond to a request for comment as to whether Warden Quay was transferred to MDC Brooklyn to maximize his pension and whether it is considering firing him.*

*This article originally appeared at www.FreeMartyG.com*
Correction: This article stated that employees BOP employees contribute into their pensions, which they do not. We regret the error.

**f** Share On Facebook          **𝕏** Share On Twitter



Will you fight to defend America and the Constitution against socialism?

Enter your email to vote

<u>CERTIFICATE OF SERVICE</u>

I, Martin S. Gottesfeld, hereby certify that on Sunday, August 11th, 2019, I provided the foregoing documents, pursuant to the meaning of the prison-mailbox rule of <u>Houston v. Lack, 487 US 266 (1988)</u>, to Ms. J. Wheeler of the FCI Terre Haute CMU unit team, acting in her official capacity as an agent for The Hon. U.S. Attorney General William Barr, for mailing to the office of the U.S. attorney general in an envelope bearing sufficient pre-paid first-class U.S. postage affixed and tracking number 9114 9023 0722 4293 0883 12.

Signed,

Martin S. Gottesfeld, pro se, non-sibi

- Page 1 of 1 -

Martin S. Gottesfeld
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808





USPS TRACKING #

9114 9023 0722 4293 0883 12

Label 400 Jan. 2013
7690-14-000-7948



⇔12982-104⇔
William Barr
Hon. U.S. Attorney Gen.
950 Pennsylvania AVE NW
Washington, DC 20530-0001
United States

Sunday, August 11th, 2019, <u>Houston v. Lack</u>, 487 US 266 (1988)

To: CMU Unit Team
From: Martin S. Gottesfeld (Reg. No.: 12982-104)
Date: Tuesday, August 20th, 2019
Subject: U.S. Postal Service tracking information?

Salutations Unit Team,

    May I please get the latest-available tracking information for the following USPS tracking numbers?

9114 9023 0722 4293 0883 12   8/20 delivered

9114 9023 0722 4293 0878 89   alert 8/24/19

9114 9023 0722 4293 0878 58   8/9 delivered

9114 9023 0722 4293 0871 31   in transit 7/30

9114 9023 0722 4293 0883 05   8/26/19 in transit.

My thanks,

Martin S. Gottesfeld

Exhibit 17

```
  THABQ              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        06-24-2019
  PAGE 002              *            SANITIZED FORMAT            *         15:00:02
  REMEDY-ID    SUBJ1/SUBJ2  --------------------ABSTRACT--------------------
               RCV-OFC    RCV-FACL     DATE-RCV      STATUS    STATUS-DATE
```

| REMEDY-ID | SUBJ1/SUBJ2 | ABSTRACT | | | |
|---|---|---|---|---|---|
| | RCV-OFC | RCV-FACL | DATE-RCV | STATUS | STATUS-DATE |
| 977006-F1 | 15HS/ | COMPLAINTS AGAINST CMU | | | |
| | THA | THA | 05-06-2019 | REJ | 05-08-2019 |
| 977009-F1 | 15HS/ | COMPLAINTS AGAINST CMU | | | |
| | THA | THA | 05-06-2019 | REJ | 05-08-2019 |
| 978744-R1 | 34AM/ | STAFF COMPLAINT | | | |
| | NCR | THA | 05-21-2019 | REJ | 05-28-2019 |
| 977009-F2 | 15HS/ | COMPLAINTS AGAINST CMU | | | |
| | THA | THA | 06-03-2019 | REJ | 06-03-2019 |
| 979745-F1 | 16ZS/ | STATES HIS MAIL IS NOT BEING HANDLED REASONABLY | | | |
| | THA | THA | 06-03-2019 | ACC | 06-04-2019 |
| 979747-F1 | 15HS/ | CONCERNS REGARDING CMU POLICY AND PROCEDURE | | | |
| | THA | THA | 06-03-2019 | ACC | 06-04-2019 |

```
  G0002        MORE PAGES TO FOLLOW . . .
```

```
THABQ              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        06-24-2019
PAGE 003 OF 003 *                SANITIZED FORMAT              *        15:00:02
REMEDY-ID      SUBJ1/SUBJ2  -------------------ABSTRACT----------------------
               RCV-OFC      RCV-FACL     DATE-RCV       STATUS      STATUS-DATE


977006-F2      15HS/        COMPLAINTS AGAINST CMU
               THA          THA          06-04-2019     REJ         06-04-2019


979748-F1      34ZS/        CONCERNS WITH CMU STAFF WEARING NAME TAGS
               THA          THA          06-04-2019     REJ         06-04-2019


980471-F1      15HS/16AS    STATES WALL STREET JOURNAL DELIVERY DELAYED
               THA          THA          06-11-2019     CLO         06-18-2019


980704-F1      16GS/        REQUESTS TRULINCS CONTACTS BE APPROVED
               THA          THA          06-12-2019     ACC         06-12-2019




                   10 REMEDY SUBMISSION(S) SELECTED
G0000          TRANSACTION SUCCESSFULLY COMPLETED
```

Exhibit 18

28 CFR

## PART 542 -- ADMINISTRATIVE REMEDY

5 U.S.C. 301; 18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082 (Repealed in part as to offenses committed on or after November 1, 1987), 5006-5024 (Repealed October 12, 1984, as to offenses committed after that date), 5039; 28 U.S.C. 509, 510.

---

CFR                                    1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# SUBPART B -- ADMINISTRATIVE REMEDY PROGRAM

## § 542.10 Purpose and scope.

(a) Purpose. The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate.

(b) Scope. This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.

(c) Statutorily-mandated procedures. There are statutorily-mandated procedures in place for tort claims (28 CFR part 543, subpart C), Inmate Accident Compensation claims (28 CFR part 301), and Freedom of Information Act or Privacy Act requests (28 CFR part 513, subpart D). If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.

[44 FR 62250, Oct. 29, 1979; 58 FR 58246, Oct. 29, 1993; 61 FR 86, 88, Jan. 2, 1996; 67 FR 50804, 50805, Aug. 6, 2002]

[EFFECTIVE DATE NOTE: 67 FR 50804, 50805, Aug. 6, 2002, revised this section, effective Aug. 6, 2002.]

## § 542.11 Responsibility.

(a) The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:

CFR                                                    2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(1) Establish procedures for receiving, recording, reviewing, investigating, and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;

(2) Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;

(3) Conduct an investigation into each Request or Appeal;

(4) Respond to and sign all Requests or Appeals filed at their levels. At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this § 542.11, but may not be further delegated without the written approval of the General Counsel.

(b) Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.

[44 FR 62250, Oct. 29, 1979, as amended at 56 FR 58634, Nov. 20, 1991; 58 FR 58246, Oct. 29, 1993; 61 FR 86, 88, Jan. 2, 1996]

## § 542.12 [Reserved]

## § 542.13 Informal resolution.

(a) Informal Resolution. Except as provided in § 542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. Each Warden shall establish procedures to allow for the informal resolution of inmate complaints.

(b) Exceptions. Inmates in CCCs are not required to attempt informal resolution. An informal resolution attempt is not required prior to submission to the Regional or Central Office as provided for in § 542.14(d) of this part. An informal resolution attempt may be waived in

CFR                                                            3

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.

[44 FR 62250, Oct. 29, 1979, as amended at 44 FR 76726, Dec. 27, 1979; 58 FR 58246, Oct. 29, 1993; 61 FR 86, 88, Jan. 2, 1996]

## § 542.14 Initial filing.

(a) Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.

(b) Extension. Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

(c) Form.

(1) The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).

(2) The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue. For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.

(3) The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form. If more space is needed, the inmate may use up

CFR                                                    4

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

to one letter-size (8 1/2" by 11") continuation page. The inmate must provide an additional copy of any continuation page. The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response. Because copies of exhibits must be filed for any appeal (see § 542.15(b)(3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.

(4) The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor). CCC inmates may mail their Requests to the CCM.

(d) Exceptions to Initial Filing at Institution.

(1) Sensitive Issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

(2) DHO Appeals. DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.

(3) Control Unit Appeals. Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.

(4) Controlled Housing Status Appeals. Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.

(5) Other requests for formal review of decisions not originating from the Warden. Other than the exceptions listed above, formal administrative remedy requests regarding initial decisions that did not originate with the Warden, or his/her staff, may be initially filed with the Bureau office which made the original decision, and appealed directly to the General Counsel.

[44 FR 62250, Oct. 29, 1979; 58 FR 58246, Oct. 29, 1993; 61 FR 86, 88, Jan. 2, 1996; 75 FR 34625, 34626, June 18, 2010]

CFR                                                     5

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[EFFECTIVE DATE NOTE: 75 FR 34625, 34626, June 18, 2010, added paragraph (d)(5), effective June 18, 2010.]

## § 542.15 Appeals.

(a) Submission. An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.

(b) Form.

(1) Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response. Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal.

(2) An inmate may not raise in an Appeal issues not raised in the lower level filings. An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.

(3) An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page. The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal). The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for

CFR                                                6

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

information on locating Bureau addresses).

[44 FR 62250, Oct. 29, 1979; 58 FR 58246, Oct. 29, 1993; 61 FR 86, 89, Jan. 2, 1996; 70 FR 67090, 67091, Nov. 4, 2005, as confirmed at 71 FR 51748, 51749, Aug. 31, 2006]

[EFFECTIVE DATE NOTE: 70 FR 67090, 67091, Nov. 4, 2005, amended paragraph (b)(3), effective Nov. 4, 2005.]

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 19

**OPI:**       **OGC/LIT**
**NUMBER:**  **1330.18**
**DATE:**     **January 6, 2014**
**SUBJECT:**  **Administrative Remedy Program**



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program Statement

OPI:   OGC/LIT

NUMBER:   1330.18

DATE:   January 6, 2014

SUBJECT:   Administrative Remedy Program

*/s/*

*Approved*:  Charles E. Samuels, Jr.

Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE  §542.10**

pro

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**a.  Purpose.  The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate.**

Inmates seeking a formal review of issues relating to sexual abuse should use the regulations promulgated by the Department of Justice under the Prison Rape Elimination Act, 42 U.S.C. § 15606, et seq.  These procedures are provided in Section 16 of this Program Statement.

**b.  Scope.  This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.**

The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

**c.  Statutorily-mandated Procedures.  There are statutorily-mandated procedures in place for Tort claims (28 CFR 543, subpart C), Inmate Accident Compensation claims (28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D).  If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.**

**Federal Regulations from 28 CFR are shown in this type.**

Implementing instructions are shown in this type.

2.  **PROGRAM OBJECTIVES.**  The expected results of this program are:

   A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.

   Each request, including appeals, will be responded to within the time frames allowed.

   A record of Inmate Administrative Remedy Requests and Appeals will be maintained.

   Bureau policies will be more correctly interpreted and applied by staff.

3.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

pro

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

P1330.17    Administrative Remedy Program (8/20/2012)

b. **Directives Referenced**

P1320.06    Federal Tort Claims Act (8/1/03)

P4500.08    Trust Fund/Deposit Fund Manual (5/4/12)

P5212.07    Control Unit Programs (2/20/01)

P5214.04    HIV Positive Inmates Who Pose Danger to Other, Procedures for Handling of (2/4/98)

P5264.08   Inmate Telephone Regulations (1/24/08)

P5270.09    Inmate Discipline Program (7/8/11)

P5324.11   Sexually Abusive Behavior Prevention and Intervention Program (12/31/13)

P5890.13    SENTRY - National On-Line Automated Information System (12/14/99)

28 CFR 301 Inmate Accident Compensation

28 CFR 16.10 Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c. Rules cited in this Program Statement are contained in 28 CFR 542.10 through 542.19; and 28 CFR Part 115 – Prison Rape Elimination Act National Standards

4. **STANDARDS REFERENCED**

   American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4236 and 3-4271

   American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3C-22, and 3-ALDF-3E-11 5.

5. **RESPONSIBILITY §542.11**

a. **The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:**

(1) **Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals)**

pro|

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**submitted by an inmate;**

See Section 13 for further information on remedy processing, including use of SENTRY.

**(2)   Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;**

The receipt is generated via SENTRY.

**(3)  Conduct an investigation into each Request or Appeal;**

**(4)   Respond to and sign all Requests or Appeals filed at their levels. At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.**

§ 542.11 refers to Section 5 of this Program Statement.

For purposes of this Program Statement, the term "institution" includes Community Corrections Centers (CCCs); the term "Warden" includes Camp Superintendents and Community Corrections Managers (CCMs) for Requests filed by CCC inmates; and the term "inmate" includes a former inmate who is entitled to use this program.

(5) The Warden shall appoint one staff member, ordinarily above the department head level, as the Administrative Remedy Coordinator (Coordinator) and one person to serve as Administrative Remedy Clerk (Clerk).  The Regional Director and the National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

To coordinate the regional office program, each Regional Director shall also appoint an Administrative Remedy Coordinator of at least the Regional Administrator level, ordinarily the Regional Counsel, and an Administrative Remedy Clerk.   The National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

(6)   The Administrative Remedy Coordinator shall monitor the program's operation at the Coordinator's location and shall ensure that appropriate staff (e.g., Clerk, unit staff) have the knowledge needed to operate the procedure.  The Coordinator is responsible for signing any rejection notices and ensuring the accuracy of SENTRY entries; e.g., abstracts, subject codes, status codes, and dates.  The Coordinator also shall serve as the primary point of contact for the Warden or Regional Director in discussions of Administrative Remedies appealed to higher levels.

pro

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(7)   The Administrative Remedy Clerk shall be responsible for all clerical processing of Administrative Remedies, for accurately maintaining the SENTRY index, and for generating SENTRY inmate notices.

(8)   The Unit Manager is responsible for ensuring that inmate notices (receipts, extension notices, and receipt disregard notices from institutions, regions and the Central Office) are printed and delivered daily for inmates in their units and for deleting those notices from SENTRY promptly after delivery to the inmate.   CCMs are responsible for this function for inmates under their supervision.

**b.  Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.**

6.  **RESERVED**

7.  **INFORMAL RESOLUTION §542.13**

**a.  Informal Resolution.   Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy.   Each warden shall establish procedures to allow for the informal resolution of inmate complaints.**

The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff.   These procedures may not operate to limit inmate access to formal filing of a Request.

**b.  Exceptions.   Inmates in CCCs are not required to attempt informal resolution.   An informal resolution attempt is not required prior to submission to the regional or Central Office as provided for in §542.14(d) of this part.   An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.**

For example, the Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals, or when informal resolution is deemed inappropriate due to the issue's sensitivity.

Although not mandatory, inmates may attempt informal resolution of DHO decisions. See the Program Statement **Inmate Discipline Program**.

pro

**5**

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

8. **INITIAL FILING §542.14**

**a.    Submission.    The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**

In accord with the settlement in *Washington* v. *Reno*, and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9) (BP-229), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

**b.    Extension.    Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.**

Ordinarily, the inmate should submit written verification from staff for any claimed reason for delay.

If an inmate requests an Administrative Remedy form but has not attempted informal resolution, staff should counsel the inmate that informal resolution is ordinarily required.   If the inmate nevertheless refuses to present a request informally, staff should provide the form for a formal Request.   Upon receipt of the inmate's submission, the Coordinator shall accept the Request if, in the Coordinator's discretion, informal resolution was bypassed for valid reasons, or may reject it if there are no valid reasons for bypassing informal resolution.

**6**

pro

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**c. Form**

**(1)  The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).**

The following forms are appropriate:

Request for Administrative Remedy, Form BP-9 (BP-229), is appropriate for filing at the institution.

Regional Administrative Remedy Appeal, Form BP-10 (BP-230), is appropriate for submitting an appeal to the regional office.

Central Office Administrative Remedy Appeal, Form BP-11 (BP-231), is appropriate for submitting an appeal to the Central Office.

**(2)  The inmate shall place a single complaint or a reasonable number of closely related issues on the form.  If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue.  For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.**

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised.

**(3)  The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" by 11") continuation page.**

**The inmate must provide an additional copy of any continuation page.  The inmate must submit one copy of supporting exhibits.  Exhibits will not be returned with the response.  Because copies of exhibits must be filed for any appeal (see § 542.15 (b) (3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.**

**(4)  The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor).  CCC inmates may mail their Requests to the CCM.**

**d. Exceptions to Initial Filing at Institution**

7

pro

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**(1) Sensitive Issues.** If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

**(2) DHO Appeals.**  DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.

See the Program Statement **Inmate Discipline Program**.

**(3) Control Unit Appeals.**  Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.

See the Program Statement **Control Unit Programs**.

**(4) Controlled Housing Status Appeals.**  Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.

See the Program Statement **Procedures for Handling HIV Positive Inmates Who Pose Danger to Other.**

9. **APPEALS  § 542.15**

**a. Submission.**  An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  When the inmate demonstrates a valid reason for delay, these time limits may be extended.  Valid reasons for delay include those situations described in §542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.

pro<sub></sub>

**8**

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office.  The deadlines have been made deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt.  Ordinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY.

In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.

**b. Form**

**(1)  Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response.  Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses.  Appeals shall state specifically the reason for appeal.**

**(2)  An inmate may not raise in an Appeal issues not raised in the lower level filings.  An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.**

**(3)  An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page.  The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal).  The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).**

c. **Processing**.  The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

10.  **ASSISTANCE §542.16**

pro¡

**9**

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**a.  An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal.  An inmate may also obtain assistance from outside sources, such as family members or attorneys.  However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff.**

**b.  Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English.  Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.**

For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem.

11.  **RESUBMISSION §542.17**

**a.  Rejections.  The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.**

**b.  Notice.  When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.**

(1)  **Sensitive Submissions**.  Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate.  Only a rejection notice will be provided to the inmate.  However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2)  **Defects**.  Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects.

Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and

pro

**10**

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

15 calendar days at the Central Office.

(3)   **Criteria for Rejection**.   When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise.  Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or problematic issue, such as medical treatment, sentence computation, or staff misconduct, even though that submission may be somewhat untimely.

**c. Appeal of Rejections.  When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level.  The Coordinator at that level may affirm the rejection, may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level), or may accept the submission for filing.  The inmate shall be informed of the decision by delivery of either a receipt or rejection notice.**

**12. RESPONSE TIME §542.18**

**If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days.  If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing.  If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level.  Staff shall inform the inmate of this extension in writing.  Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.**

The date a Request or an Appeal is received in the Administrative Remedy index is entered into SENTRY as the "Date Rcv", and should be the date it is first received and date-stamped in the Administrative Remedy Clerk's office.  Notice of extension ordinarily is made via SENTRY notice.

pro

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## 13. REMEDY PROCESSING

a. **Receipt**. Upon receiving a Request or Appeal, the Administrative Remedy Clerk shall stamp the form with the date received, log it into the SENTRY index as received on that date, and write the "Remedy ID" as assigned by SENTRY on the form. Once a submission is entered into the system, any subsequent submissions or appeals of that case shall be entered into SENTRY using the same Case Number. The "Case Number" is the purely numerical part of the "Remedy ID" which precedes the hyphen and "Submission ID."

All submissions received by the Clerk, whether accepted or rejected, shall be entered into SENTRY in accordance with the SENTRY Administrative Remedy Technical Reference Manual.

Sensitive issues, when the inmate claims that his or her safety or well-being would be placed in danger if it became known at the institution that the inmate was pursuing the issue, should be withheld from logging in until answered and/or should be logged into SENTRY with sufficient vagueness as to subject code and abstract to accommodate the inmate's concerns.

A Request should be submitted and logged in at the institution where the inmate is housed at the time the inmate gives the Request to the counselor or other appropriate staff member. If the event(s) occurred at a previous institution, staff at that previous institution shall provide, promptly upon request, any investigation or other assistance needed by the institution answering the Request. If an inmate is transferred after giving the Request to a staff member, but before that Request is logged in or answered, the institution where the Request was first given to a staff member remains responsible for logging and responding to that Request.

b. **Investigation and Response Preparation**. The Clerk or Coordinator shall assign each filed Request or Appeal for investigation and response preparation. Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision. Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals. Where appropriate; e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all relevant information developed in the investigation shall ordinarily be supported by written documents or notes of the investigator's findings. Notes should be sufficiently detailed to show the name, title, and location of the information provided, the date the information was provided, and a full description of the information provided. Such documents and notes shall be retained with the case file copy. When deemed necessary in the investigator's discretion, the investigator may request a written statement from another staff member regarding matters raised in the Request or Appeal. Requested staff

prof

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

shall provide such statements promptly.   For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

c.   **Responses**.   Responses ordinarily shall be on the form designed for that purpose, and shall state the decision reached and the reasons for the decision.   The first sentence or two of a response shall be a brief abstract of the inmate's Request or Appeal, from which the SENTRY abstract should be drawn.   This abstract should be complete, but as brief as possible.   The remainder of the response should answer completely the Request or Appeal, be accurate and factual, and contain no extraneous information.  The response should be written to be released to any inmate and the general public under the Freedom of Information Act (FOIA) and the Privacy Act.   Inmate names shall not be used in responses, and staff and other names may not be used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and statutes shall be referred to in responses whenever applicable, including section numbers on which the response relies.

d.   **Response Time Limits**.  Responses shall be made as required in Section 12 of this Program Statement.

e.   **Index Completion**.   When a response is completed, the Clerk shall update SENTRY in accordance with the SENTRY Administrative Remedy Manual and the instructions in Attachment A.   Particular attention should be paid to updating the status date, code, and reason, and to making any changes to the subject code and abstract indicated by the Coordinator or by the response drafter.   The abstract shall be taken from the response's first paragraph.   Abbreviations may be liberally used, as long as they are easily understood, to allow as complete a description of the issue in the 50 characters allotted.   For consistency, the Administrative Remedy Coordinator shall approve the closing entry, including the subject codes, status code and reason, and abstract, before the closing entry is made by the Clerk.

f.   **Response Distribution**.   For an institution response, one copy of the complete Request and response shall be maintained in the Warden's Administrative Remedy File together with all supporting material.   Three copies shall be returned to the inmate.   An inmate who subsequently appeals to the regional or Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at the regional office.   One copy shall be sent to the Warden at the original filing location.   The remaining two copies shall be returned to the inmate; one to submit in case of subsequent appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be returned to the inmate.   One copy will be retained in the Central Office Administrative Remedy File, one copy will be forwarded to the

pro;

**13**

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.