Exhibit 27

District of Massachusetts Local Rule 83.2.1 Release of Information By Attorneys



**(a) Generally**. No lawyer shall release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

**(b) Grand Jury and Criminal Investigation**. With respect to a grand jury or other pending investigation of any criminal matter, a lawyer participating in or associated with the investigation shall refrain from making any extrajudicial statement, which a reasonable person would expect to be disseminated by means of public communication, that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers, or otherwise to aid in the investigation.

**(c) Pending Matters**. From the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment in any criminal matter until the commencement of trial or disposition without trial, a lawyer associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement, which a reasonable person would expect to be disseminated by means of public communication, relating to that matter and concerning:

**(1)** The prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the accused, except that the lawyer may make a factual statement of the accused's name, age, residence, occupation, and family status, and if the accused has not been apprehended, a lawyer associated with the prosecution may release any information necessary to aid in his apprehension or to warn the public of any dangers the accused may present;

**(2)** The existence or contents of any confession, admission, or statement given by the accused, or the refusal or failure of the accused to make any statement;

**(3)** The performance of any examinations or tests or the accused's refusal or failure to submit to an examination or test;

**(4)** The identity, testimony, or credibility of prospective witnesses, except that the lawyer may announce the identity of the victim if the announcement is not otherwise prohibited by law;

**(5)** The possibility of a plea of guilty to the offense charged or a lesser offense; and

**(6)** Any opinion as to the accused's guilt or innocence as to the merits of the case or the evidence in the case.



© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**(d) Permitted Disclosures**. The foregoing shall not be construed to preclude the lawyer during this period, in the proper discharge of the lawyer's official or professional obligations, from announcing the facts and circumstances of arrest (including time and place of arrest, resistance, pursuit, and use of weapons), the identity of the investigating and arresting officer or agency, and the length of the investigation; from making an announcement, at the time of seizure of any physical evidence other than a confession, admission or statement, which is limited to a description of the evidence seized; from disclosing the nature, substance, or text of the charge, including a brief description of the offense charged; from quoting or referring without comment to public records of the court in the case; from announcing the scheduling or result of any stage in the judicial process; from requesting assistance in obtaining evidence; or from announcing without further comment that the accused denies the charges.

**(e) Statements During Trial**. During the trial of any criminal matter, including the period of selection of the jury, no lawyer associated with the prosecution or defense shall give or authorize any extrajudicial statement or interview relating to the trial or the parties or issues in the trial which a reasonable person would expect to be disseminated by means of public communication, except that the lawyer may quote from or refer without comment to public records of the court in the case.

**(f) Statements Before Sentencing**. After the completion of a trial or disposition without trial of any criminal matter, and prior to the imposition of sentence, a lawyer associated with the prosecution or defense shall refrain from making or authorizing any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will affect the imposition of sentence.

**(g) Effect on Other Rules**. Nothing in this rule is intended to preclude the formulation or application of more restrictive rules relating to the release of information about juvenile or other offenders, to preclude the holding of hearings or the lawful issuance of reports by legislative, administrative, or investigative bodies, or to preclude any lawyer from replying to charges of misconduct that are publicly made against him or her.

**(h) Civil Cases**. A lawyer associated with a civil action shall not during the investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to:



© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**(1)** Evidence regarding the occurrence or transaction involved;

**(2)** The character, credibility, or criminal record of a party, witness, or prospective witness;

**(3)** The performance or results of any examination or tests or the refusal or failure of a party to submit to such;

**(4)** His or her opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule;

**(5)** Any other matter reasonably likely to interfere with a fair trial of the action.

**(i) Application to Law Firms and Agencies**. The provisions of this rule concerning lawyers shall apply to the law firm and government agencies or offices, and the partners and employees of such firms, government agencies, or offices, with which the lawyer is associated.

## HISTORY

Effective September 1, 1990.



© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 28

28 CFR

## Subpart B--Special Housing Units

### § 541.20 Purpose.

This subpart describes the Federal Bureau of Prisons' (Bureau) operation of special housing units (SHU) at Bureau institutions. The Bureau's operation of SHUs is authorized by 18 U.S.C. 4042(a)(2) and (3).

[53 FR 197, Jan. 5, 1988; 75 FR 76263, 76273, Dec. 8, 2010; 76 FR 11078, 11079, Mar. 1, 2011]

[EFFECTIVE DATE NOTE: 75 FR 76263, 76273, Dec. 8, 2010, revised Subpart B, effective Mar. 1, 2011; 76 FR 11078, 11079, Mar. 1, 2011, delayed the effective date of the amendment appearing at 75 FR 76263, 76273, Dec. 8, 2010, until June 20, 2011.]



© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 29

## § 540.202 Designation procedures.

Inmates may be designated to CMUs only according to the following procedures:

(a) Initial consideration. Initial consideration of inmates for CMU designation begins when the Bureau becomes aware of information relevant to the criteria described in § 540.201.

(b) Assistant Director authority. The Bureau's Assistant Director, Correctional Programs Division, has authority to approve CMU designations. The Assistant Director's decision must be based on a review of the evidence, and a conclusion that the inmate's designation to a CMU is necessary to ensure the safety, security, and orderly operation of correctional facilities, or protection of the public.

(c) Written notice. Upon arrival at the designated CMU, inmates will receive written notice from the facility's Warden explaining that:

(1) Designation to a CMU allows greater Bureau staff management of communication with persons in the community through complete monitoring of telephone use, written correspondence, and visiting. The volume, frequency, and methods of CMU inmate contact with persons in the community may be limited as necessary to achieve the goal of total monitoring, consistent with this subpart;

(2) General conditions of confinement in the CMU may also be limited as necessary to provide greater management of communications;

(3) Designation to the CMU is not punitive and, by itself, has no effect on the length of the inmate's incarceration. Inmates in CMUs continue to earn sentence credit in accordance with the law and Bureau policy;

(4) Designation to the CMU follows the Assistant Director's decision that such placement is necessary for the safe, secure, and orderly operation of Bureau institutions, or protection of the public. The inmate will be provided an explanation of the decision in sufficient detail, unless the Assistant Director determines that providing specific information would jeopardize the safety, security, and orderly operation of correctional facilities, or protection of the public;

(5) Continued designation to the CMU will be reviewed regularly by the inmate's Unit Team under circumstances providing the inmate notice and an opportunity to be heard, in accordance



© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

with the Bureau's policy on Classification and Program Review of Inmates;

(6) The inmate may challenge the CMU designation decision, and any aspect of confinement therein, through the Bureau's administrative remedy program.

[80 FR 3168, 3177, Jan. 22, 2015]

[EFFECTIVE DATE NOTE: 80 FR 3168, 3177, Jan. 22, 2015, added Subpart J, effective Feb. 23, 2015.]



© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 30

**§ 300.102 Policy.**

This subpart is directed to implementation of the policy that competitive employment practices:

(a) Be practical in character and as far as possible relate to matters that fairly test the relative capacity and fitness of candidates for the jobs to be filled;

(b) Result in selection from among the best qualified candidates;

(c) Be developed and used without discrimination on the basis of race, color, religion, sex (including pregnancy and gender identity), national origin, age (as defined by the Age Discrimination in Employment Act of 1967, as amended), disability, genetic information (including family medical history), marital status, political affiliation, sexual orientation, labor organization affiliation or nonaffiliation, status as a parent, or any other non-merit-based factor, or retaliation for exercising rights with respect to the categories enumerated above, where retaliation rights are available.

(d) Insure to the candidate opportunity for appeal or administrative review, as appropriate.

[40 FR 15379, Apr. 7, 1975; 79 FR 43919, 43922, July 29, 2014]

[EFFECTIVE DATE NOTE: 79 FR 43919, 43922, July 29, 2014, revised paragraph (c), effective July 29, 2014.]

**§ 300.103 Basic requirements.**

(a) Job analysis. Each employment practice of the Federal Government generally, and of individual agencies, shall be based on a job analysis to identify:

(1) The basic duties and responsibilities;

(2) The knowledges, skills, and abilities required to perform the duties and responsibilities; and



© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(3) The factors that are important in evaluating candidates. The job analysis may cover a single position or group of positions, or an occupation or group of occupations, having common characteristics.

(b) Relevance. (1) There shall be a rational relationship between performance in the position to be filled (or in the target position in the case of an entry position) and the employment practice used. The demonstration of rational relationship shall include a showing that the employment practice was professionally developed. A minimum educational requirement may not be established except as authorized under section 3308 of title 5, United States Code.

(2) In the case of an entry position the required relevance may be based upon the target position when --

(i) The entry position is a training position or the first of a progressive series of established training and development positions leading to a target position at a higher level; and

(ii) New employees, within a reasonable period of time and in the great majority of cases, can expect to progress to a target position at a higher level.

(c) Equal employment opportunity and prohibited forms of discrimination. An employment practice must not discriminate on the basis of race, color, religion, sex (including pregnancy and gender identity), national origin, age (as defined by the Age Discrimination in Employment Act of 1967, as amended), disability, genetic information (including family medical history), marital status, political affiliation, sexual orientation, labor organization affiliation or nonaffiliation, status as a parent, or any other non-merit-based factor, or retaliation for exercising rights with respect to the categories enumerated above, where retaliation rights are available. Employee selection procedures shall meet the standards established by the "Uniform Guidelines on Employee Selection Procedures," where applicable.

[40 FR 15380, Apr. 7, 1975, as amended at 43 FR 38310, Aug. 25, 1978; 79 FR 43919, 43922, July 29, 2014]

[EFFECTIVE DATE NOTE: 79 FR 43919, 43922, July 29, 2014, revised paragraph (c), effective July 29, 2014.]



© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Martin S. Gottesfeld
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

UNITED STATES POSTAL SERVICE®

USPS TRACKING #

9114 9023 0722 4291 7452 31

Label 400 Jan. 2013
7690-16-000-7948

1 USA DOLLAR

Monday, November 18th, 2019, Houston v. Lack, 487 U.S. 266 (198

⇔12982-104⇔
U S District Court
Pro Se Clerk
500 Pearl ST
NEW YORK, NY 10007
United States

PRO SE OFFICE

Priority Mail Flat-Rate

PURPLE HEART 2014 FOREVER USA