UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN S. GOTTESFELD,

                Plaintiff,

      v.

HUGH J. HURWITZ, *et al*,

                Defendants.

18 Civ. 10836 (PGG)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2799
Fax: (212) 637-2686
E-mail: alexander.hogan@usdoj.gov

ALEXANDER J. HOGAN
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .....................................................................................................................1

I. ZIGLAR v. ABBASI ....................................................................................1

II. LACK OF DEFENDANTS' PERSONAL INVOLVEMENT ................................4

III. PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE
REMEDIES ....................................................................................................5

IV. PLAINTIFF'S CONFINEMENT IN THE SHU DOES NOT
AMOUNT TO A CONSTITUTIONAL VIOLATION ...........................................9

V. PLAINTIFF'S OTHER ALLEGATIONS DO NOT STATE A
VIOLATION OF THE CONSTITUTION ..........................................................12

CONCLUSION................................................................................................................14

TABLE OF AUTHORITIES

Page(s)

Cases

*Bey v. Griffin*,
   No. 16-cv-3807 (VB), 2017 WL 5991791 (S.D.N.Y. Dec. 1, 2017) ...................................... 11
*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ............................................................................................................... 2
*Brown v. Graham*,
   No. 07-cv-1353 (FJS) (ATB), 2010 WL 6428251 (N.D.N.Y. Mar. 30, 2010) ........................ 11
*Cabral v. Strada*,
   513 Fed. App'x 99 (2d Cir. 2013) ........................................................................................... 9
*Carlson v. Green*,
   446 U.S. 14 (1980) ......................................................................................................... 2, 3, 4
*Davis v. Passman*,
   442 U.S. 228 (1979) .......................................................................................................... 2, 3
*Dawkins v. Copeland*,
   No. 17-cv-9926 (ER), 2019 WL 1437049 (S.D.N.Y. Mar. 31, 2019) ..................................... 1
*Francis v. United States*,
   No. 10-cv-1474 (AWT), 2011 WL 3563146 (D. Conn. Aug. 12, 2011) .................................. 7
*Gonzalez v. Hasty*,
   269 F. Supp. 3d 45 (E.D.N.Y. 2017) .................................................................................. 2, 3
*Grand Jury Subpoena John Doe v. United States*,
   150 F.3d 170 (2d Cir. 1998) ............................................................................................. 5, 11
*Hale v. Fed. Bureau of Prisons*,
   759 Fed. Appx. 741 (10th Cir. 2019) ...................................................................................... 5
*Hernandez v. United States*,
   939 F.3d 191 (2d Cir. 2019) ................................................................................................. 14
*Joost v. Menifee*,
   No. 03-cv-1608 (DLC), 2003 WL 22977499 (S.D.N.Y. Dec. 19, 2003) ................................ 7
*Ndoromo v. Holder*,
   No. 09-cv-5741 (BMC), 2010 WL 302123 (E.D.N.Y. Jan. 20, 2010) ..................................... 5
*Ojo v. United States*,
   No. 16-cv-4112 (MKB) (LB), 2019 WL 3852391 (E.D.N.Y. Aug. 15, 2019) ......................... 3
*Patterson v. Ponte*,
   No. 16-cv-3156 (PAE) (JCF), 2017 WL 1194489 (S.D.N.Y. Mar. 30, 2017) ................. 12, 13
*Pell v. Procunier*,
   417 U.S. 817 (1974) .......................................................................................................... 5, 11
*Richardson v. Vermont*,
   No. 15-cv-120 (JGM) (JMC), 2016 WL 7157027 (D. Vt. Nov. 4, 2016) ............................... 9
*Rivera v. Bloomberg*,
   No. 11-cv-629 (PGG), 2012 WL 3655830 (S.D.N.Y. Aug. 27, 2012) .................................. 13

*Rosario v. Fischer*,
   No. 11-cv-4617(JPO) (FM), 2012 WL 4044901, at*9 (S.D.N.Y. Aug. 28, 2012) .................. 13
*Salahuddin v. Goord*,
   467 F.3d 263 (2d Cir. 2006)........................................................................................................ 1
*Sandin v. Conner*,
   515 U.S. 472 (1995).................................................................................................................... 9
*Tellier v. Reish*,
   189 F.3d 462 (2d Cir. 1999)........................................................................................................ 9
*Thomas v. Metro. Corr. Ctr.*,
   No. 09-cv-1769 (PGG), 2010 WL 2507041 (S.D.N.Y. June 21, 2010) ................................. 5, 7
*Thomas v. Washburn*,
   No. 13-cv-303, 2016 WL 6791125 (W.D.N.Y. Sept. 7, 2016)................................................. 13
*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017)........................................................................................................... 1, 2

Regulations

28 C.F.R. § 542.14 ............................................................................................................................ 7

Defendants, by their attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, submit this reply memorandum of law in further support of their motion to dismiss Martin S. Gottesfeld's ("Plaintiff" or "Gottesfeld") Complaint ("Cmpl.").

## PRELIMINARY STATEMENT

On November 29, 2019, Plaintiff filed a sprawling, 163-page opposition (*see* Dkt. No. 101, the "Opp." or "Opposition") with hundreds of exhibits to Defendants' motion to dismiss ("Motion") his Complaint. Therein, Plaintiff engages in needless tangents, including, *inter alia*, alleged instant messaging with Mark Zuckerberg and the "gaming" of the federal pension system by prison officials. Despite the arguments contained therein, Plaintiff's Complaint should be dismissed in its entirety.[1]

## ARGUMENT

### I. *Ziglar v. Abbasi*

As articulated in the Motion, *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) precludes Plaintiff's *Bivens* claims. Plaintiff's Opposition fundamentally misunderstands the implication of *Abbasi*. *See* Opp. at 103-131. In *Abbasi*, the Supreme Court dictated that courts must conduct a two-part inquiry to determine whether a *Bivens* remedy is available in a given case. At the first

---

[1] Plaintiff opens his Opposition by stating that "Money Doesn't Make the Plaintiff's World Go Round." Opp. at 8. He states that Defendants misunderstand his Complaint that is "explicitly seeking prospective relief as opposed to retrospective money damages." *Id*. However, "'[i]n this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" *Dawkins v. Copeland*, No. 17-cv-9926 (ER), 2019 WL 1437049, at *9 (S.D.N.Y. Mar. 31, 2019) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). Therefore, given Plaintiff is no longer incarcerated at the Metropolitan Correctional Center ("MCC"), his claims for prospective injunctive relief are moot. Accordingly, if by Plaintiff's own admission his goals "aren't financial," but rather that he is "asking the court to force MCC NY to respect human dignity, the First Amendment, federal regulations, and other human and civil rights," then this case should be dismissed because any claim for such injunctive relief is moot. *See* Opp. at 8.

1

stage, courts should ascertain whether the case presents a new *Bivens* context. "[T]he new-context inquiry is easily satisfied" by even "small" differences between the claim at issue and the Supreme Court's previously approved *Bivens* claims. *Id.* at 1865. Indeed, in *Abbasi*, the Supreme Court described the three *Bivens* claims the Court has approved in the past with a high degree of specificity: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Id.* at 1860 (discussing *Bivens*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980)).

Defendants do not dispute that the Second Circuit has, prior to *Abbasi*, recognized *Bivens* claims in contexts other than those three delineated by the Supreme Court. However, as described in *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 57-58 (E.D.N.Y. 2017), *aff'd* 755 Fed. App'x 67 (2d Cir. 2018), "*Ziglar* also made it clear that the *only* recognized implied rights of action were the narrow situations presented in *Bivens*, *Davis*, and *Carlson*, and lower courts must scrutinize attempts to expand the *Bivens* remedy, even where courts had assumed the availability of such a remedy . . . Practically speaking, this means that even where a circuit court had previously found a *Bivens* remedy, that court must still consider the availability of an implied right of action in subsequent cases relying on the same precedent."

The facts of *Gonzalez* are perfectly on point here. There, a prisoner brought claims pursuant to the Fifth and Eighth Amendments stemming from his placement in a special housing unit ("SHU"). The *Gonzalez* court concluded that Plaintiff's Fifth Amendment claim relating to his confinement in the SHU presented a new context. In fact, as the *Gonzalez* court noted, this situation was remarkably similar to the facts of *Abbasi* itself, where, *inter alia*, the *Abbasi*

plaintiffs contended that they were subjected to prolonged detentions under harsh conditions in violation of their Fifth Amendment rights.  At the next step of the analysis, the *Gonzalez* court listed several special factors that prevented the court from recognizing a *Bivens* remedy in this context, including other remedial schemes, separation of powers, and legislative action signaling that Congress does not want a *Bivens* remedy in the prison context.  *Id*. at 60-63.  As to the prisoner's Eighth Amendment claim relating to conditions of confinement in the SHU, the *Gonzalez* court concluded that there was no *Bivens* remedy available given the alleged conditions were markedly different from the lack of medical treatment that gave rise to the *Bivens* claim in *Carlson* and, again, the special factors previously described prevented the court from concluding that a *Bivens* remedy was available.  *Id*. at 64-65.  *See also Ojo v. United States*, No. 16-cv-4112 (MKB) (LB), 2019 WL 3852391, at *11-13 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted by*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019) (refusing to find a *Bivens* remedy in multiple contexts, including violation of First Amendment rights and placement in the SHU).

      The same analysis set forth in *Gonzalez* applies here.  Plaintiff's claims amount to a new context because they certainly do not relate to the Fourth Amendment's prohibition on unreasonable seizures (*Bivens*), the Fifth Amendment's prohibition against gender discrimination (*Davis*), or the unconstitutional denial of medical care (*Carlson*)—if anything, Plaintiff is claiming that Defendants improperly "threatened" to provide him with medical care while he was on his hunger strike to ensure his wellbeing.  Any potential Fifth Amendment claim arising from Plaintiff's confinement in the SHU, his access to counsel, "threatened" end of his hunger strike, lack of access to the media, alleged mail tampering, or poor conditions of confinement all amount to new contexts under the first step in the *Abbasi* analysis.

Because Plaintiff's claims patently present new contexts, the Court must turn to the second step of the analysis that requires the Court to consider whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). If there are, "a *Bivens* remedy will not be available." *Id*. For the reasons discussed in Defendants' motion, there are a multitude of reasons that weigh in favor of not recognizing a *Bivens* claim in the context of prison administration. *See* Motion at 17-19.

Accordingly, given any claim for injunctive relief is moot and *Abbasi* precludes the recognition of a *Bivens* claim in the context of Plaintiff's allegations, the Complaint should be dismissed in its entirety.

## II.     Lack of Defendants' Personal Involvement

For the reasons articulated in the Motion, Plaintiff's claims must also be dismissed for failure to allege the necessary personal involvement of Defendants. *See* Motion at 10-13. Defendants Hurwitz and Anderson, high-level supervisors in the Bureau of Prison ("BOP") who were not based at the MCC, should be dismissed from this action because Plaintiff pleads no facts to suggest that they were aware of or personally involved in any of the allegations made in the Complaint. *See* Motion at 11.  The only allegations relating to any Defendants' personal involvement is that Bussanich threatened Plaintiff with force-feeding and that Tatum did not permit Plaintiff to be interviewed by the media. These allegations are insufficient to state a claim, as discussed below.

Specifically, Plaintiff claims that Defendant Bussanich ""threatened [Plaintiff] . . . with the brutal practice of force-feeding." Cmpl. at ¶ 17.  This, however, does not amount to a

4

constitutional violation.  *See* Motion at 12 (citing *Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 171 (2d Cir. 1998)).

Similarly, the only allegation Plaintiff made regarding Defendant Tatum is that he "personally denied the plaintiff his First Amendment right to be interviewed by multiple media outlets which requested access to him including Rolling Stone and Wired."  Cmpl. at ¶ 20.  However, there is not a "constitutional nor statutory right for a prisoner to be assigned to a facility that best enables him to undertake media communications."  *Ndoromo v. Holder*, No. 09-cv-5741 (BMC), 2010 WL 302123, at *2 (E.D.N.Y. Jan. 20, 2010) (dismissing complaint where plaintiff complained that prison was preventing him from contacting the media) (citing *Pell v. Procunier*, 417 U.S. 817 (1974) (upholding ban on prisoners conducting media interviews because institutional considerations justified limitation on prisoner's speech)); *see also Hale v. Fed. Bureau of Prisons*, 759 Fed. Appx. 741, 753 (10th Cir. 2019) ("Indeed, it is well-established that a prison's no-interview policy is reasonably related to legitimate security interests.") (internal quotation and citation omitted).

Plaintiff's failure to allege the personal involvement of any Defendant in conduct sufficient to state a claim requires dismissal of the Complaint.[2]

### III.     **Plaintiff Failed to Exhaust his Administrative Remedies**

Plaintiff argues that Defendants should be estopped from asserting that he failed to exhaust his administrative remedies.  As this Court stated in *Thomas v. Metro. Corr. Ctr.*, No. 09-cv-1769 (PGG), 2010 WL 2507041, at *6 (S.D.N.Y. June 21, 2010), a plaintiff may be excused from compliance with the PLRA's administrative exhaustion requirements if the

---

[2] Plaintiff's request to add new defendants, *see* Dkt. No. 98, would not cure this defect given there is no indication whatsoever that any of these proposed defendants had any involvement with the allegations in Plaintiff's Complaint.

5

"defendants have either waived this defense or acted so as to estop them from raising the defense." Here, Plaintiff claims that "in light of the defendants' conduct denying the plaintiff BP-8 forms in the instant case, then within a short period failing to file and respond to his hand-drawn substitute BP-8 forms before transferring him outside of their custody, the plaintiff moves the Honorable Court to estop the defendants from presenting their claim of non-exhaustion." Opp. at 68. Plaintiff further states that, "shortly before the plaintiff was transferred out of MCC New York, the plaintiff asked for a quantity of ten (10) BP-8 forms [and] that the attached documents are authentic hand-drawn substitute BP-8 forms to which the plaintiff resorted in an effort to utilize the FBOP's administrative remedy process." *See* Dkt. No. 99 at 7. The attached "authentic hand-drawn substitute BP-8 forms" are problematic for Plaintiff's argument in two respects.

First, they only relate to two issues—an incident in the law library that is not part of his Complaint and his inability to send mail to Rolling Stone. *See id*. at 12-13. Accordingly, even when Plaintiff did attempt to file complaints, they were unrelated to a substantial set of the allegations in this litigation—his detention in (and the conditions of) the SHU, the "threatened" end of his hunger strike, access to counsel, or his ability to be interviewed by the media. Therefore, at the very least, all of his claims but for the one alleged instance of his inability to send mail should be dismissed because he failed to exhaust his administrative remedies (and, for the reasons discussed below, this allegation related to his mail does not state a claim).

Second, by Plaintiff's own admission, he requested these BP-8 forms "shortly" before being transferred out of MCC. *See id*. at 7. In fact, the two handwritten complaints discussed above are dated January 29, 2017, and state that his efforts to receive these BP-8 forms "have been fruitless for the past 9 days." *See id*. at 12-13. Thus, according to Plaintiff, he did not seek

6

to initiate (nor did Defendants allegedly attempt to stymie his use of) any grievance process until January 20, 2017.  However, as this Court has recognized, an inmate must initiate the grievance process "within twenty days 'following the date on which the basis for the Request occurred.'" *See Thomas*, 2010 WL 2507041, at *7 (quoting 28 C.F.R. § 542.14).  As the Complaint clearly alleges and, in fact, as Plaintiff states, "on November 15, 2016, the plaintiff was intentionally placed in a cold and leaky cell in the SHU at MCC New York."  Dkt. No. 99 at 7.  Accordingly, as of that date, Plaintiff was aware that he was placed in the SHU and that the conditions of his confinement there were not to his liking.  Therefore, he had twenty days from November 15, 2016 (approximately December 5, 2016), to initiate the grievance process as to claims relating to his allegedly unjustified confinement in the SHU or his conditions of confinement, such as inadequate heat, poor plumbing, and pest infestations.  Plaintiff's submissions make clear that he did not request any BP-8 forms until approximately January 20, 2017.  On this basis, any claims related to Plaintiff's confinement in the SHU or the conditions of his confinement therein must be dismissed for failing to timely pursue his administrative remedies.  *See Joost v. Menifee*, No. 03-cv-1608 (DLC), 2003 WL 22977499, at *2-3 (S.D.N.Y. Dec. 19, 2003) (dismissing complaint for failure to exhaust under PLRA because plaintiff did not file complaint within 20 days of his placement in the SHU)[3]; *Francis v. United States*, No. 10-cv-1474 (AWT), 2011 WL 3563146,

---

[3] In *Joost*, the court also addressed (and rejected) plaintiff's attempt to extend this deadline by arguing that he did not become aware that his confinement in the SHU was unjustified until a given date.  In the instant case, Plaintiff makes clear that, as of the date he was placed in the SHU, he believed it was unjustified and retaliatory.  Accordingly, he had twenty days from his initial placement in the SHU on November 15, 2016, to file a grievance.  *See* Dkt. No. 99 at 7 ("[P]laintiff was intentionally placed in a cold and leaky cell in the SHU . . . in deliberate retaliation against the plaintiff for his assertion of his rights under the 1st Amendment and as a medical patient in the State of New York.").

at *3-4 (D. Conn. Aug. 12, 2011) (dismissing complaint for failure to abide by 20-day requirement of the PLRA).

The same is true as to any claim premised on his ability to send mail to Rolling Stone. In the handwritten administrative complaint relating to Rolling Stone, Plaintiff notes that he discussed this issue with a BOP staff member in December of 2016. *See* Dkt. No. 99 at 13-14. Yet, Plaintiff states that he did not ask for a BP-8 form until January 20, 2017, thus falling outside of the allowable 20-day window. *Id*. at 13. This analysis also applies to Plaintiff's claim relating to the denial of his media interview. This request was denied on December 5, 2016. *See* Declaration of Alexander J. Hogan, Exhibit A (letter denying Rolling Stone interview request). Again, Plaintiff had 20 days to initiate the grievance process as to this denial, yet he allegedly did not attempt to do so until well thereafter.

Lastly, though there are no certain dates as to Plaintiff's remaining allegations—the "threatened" force-feeding or his access to counsel—the implication of Plaintiff's Complaint and Opposition is that these were ongoing conditions while he was at MCC. *See* Cmpl. at ¶ 4 (describing the ability to meet with attorneys); *id*. at ¶ 17 (stating that he was "repeatedly threatened" with force-feeding). Therefore, again, Plaintiff's alleged attempt to initiate the grievance process on January 20, 2017, was untimely as to these claims given these issues existed upon his arrival at MCC.

In sum, Plaintiff's own submissions undercut his theory relating to estoppel because the administrative complaints he alleges to have filed were unrelated to the claims in this action and, in any event, his attempt to initiate the grievance process occurred well after the 20-day window during which he was required to raise his complaints. Therefore, the Complaint should be dismissed based upon Plaintiff's failure to exhaust his administrative remedies.

## IV. Plaintiff's Confinement in the SHU Does Not Amount to a Constitutional Violation

While Plaintiff is correct that, as a pretrial detainee, he was entitled to greater protections than those outlined in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), Plaintiff must nonetheless allege that the challenged action was done "with the intent to punish." *See Richardson v. Vermont*, No. 15-cv-120 (JGM) (JMC), 2016 WL 7157027, at *9 (D. Vt. Nov. 4, 2016) (citing *Tellier v. Reish*, 189 F.3d 462 (2d Cir. 1999)), *report and recommendation adopted by*, 2016 WL 7156484 (D. Vt. Dec. 7, 2016).[4] If there is no allegation that the complained of action was done with such an intent to punish, then the decision need only be rationally connected to some other governmental purpose and not excessive to achieve that purpose. *Id*.

Here, Plaintiff's Opposition clearly details the status of his confinement while in BOP custody and that his transfer to MCC's SHU was not punitive. *See* Opp. at 37-42. As Plaintiff describes, while initially housed at the "Wyatt" facility (a facility near Boston where Plaintiff's criminal proceeding occurred), he was engaged in a six-week hunger strike during which time he "decline[d] one hundred twenty-three (123) consecutive meals." Opp. at 40. Plaintiff then alleges that his hunger strike was the subject of conversations held between "the warden and medical staff of Wyatt, the U.S. Marshals Service, and the U.S. attorney's office." Then, in November of 2016, in addition to refusing meals, he "escalated his hunger strike after the 2016 elections—and days before his transfer to MCC" by "announc[ing] publicly his stoppage of fluid

---

[4] In its Motion, Defendants mistakenly cited to *Sandin* as the governing standard. However, Plaintiff is correct that *Sandin's* standard stating that a liberty interest is only implicated if the confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" is inapplicable to pretrial detainees. *Sandin*, 515 U.S. at 484. Rather, pretrial detainees have a right to be free from actions done with an intent to punish. When there is no allegation that a given action was done with the intent to punish the pretrial detainee, then the action need only be rationally related to another governmental purpose. *See Cabral v. Strada*, 513 Fed. App'x 99, 101 (2d Cir. 2013) (rejecting due process challenge by pretrial detainee to detention in the SHU at the Metropolitan Detention Center).

9

intake." Opp. at 41. Staff at Wyatt then brought Plaintiff to a hospital "approximately forty-eight (48) hours into his fluid stoppage on or about Sunday, November 13th, 2016." *Id*. Plaintiff then states, "[t]he next day, Monday, November 14th, 2016, the instant defendants, acting in privity with AUSA Bookbinder [an AUSA associated with Plaintiff's criminal case in Massachusetts], transferred the plaintiff across many U.S. court districts to the [MCC]." *Id*.

Plaintiff's factual recitation fails to support his claim that his transfers to MCC's SHU amounted to a constitutional violation for two reasons. First, as already articulated, the named Defendants in this action were not involved in the decision relating to Plaintiff's housing status. Rather, Plaintiff was initially housed at a facility near Boston—Wyatt—from which he was transferred. Plaintiff alleges nothing to indicate that any of the named Defendants in this action were involved in that decision to transfer Plaintiff from Wyatt to MCC. This is certainly true as to Defendants Tatum and Bussanich—employees at MCC who would not plausibly play a role in determining whether a defendant at another facility would be transferred into their custody. Additionally, while Plaintiff makes broad references to the fact that the United States Marshals Service and the Bureau of Prisons played a role in the decision to transfer him to MCC, again, there is no allegation whatsoever that the individual named Defendants in this action were involved in this decision. Plaintiff cannot assume that Hurwitz and Anderson, due to their high-level status in these respective agencies, personally took part in decisions related to his housing. *See* Motion at 10-13.

Second, Plaintiff's account also demonstrates that, whoever made the decision to transfer him to MCC, did not do so with an intent to punish Plaintiff. To the contrary, Plaintiff takes no issue with his treatment during the early stages of his hunger strike at Wyatt. *See* Opp. at 37-40. Rather, it was not until his situation became dire that he was transferred to MCC. Specifically,

by November of 2016, he had been on his hunger strike for many weeks and then stopped drinking fluids. *Id*. After 48 hours of Plaintiff refusing to intake fluids, he was brought to a hospital where Plaintiff claims doctors refused to hydrate him. *Id*. The next day, Plaintiff was brought to MCC. *Id*. On these facts, it is simply implausible to determine that anybody (let alone these named Defendants) were acting with the intent to punish Plaintiff. Rather, it became clear that different steps needed to be taken in order to properly manage his hunger strike— specifically, placing him in a room that permitted close monitoring, which, at MCC, exists in the SHU. In light of this lack of intent to punish, there need only be a rational connection to some other governmental purpose to justify the challenged actions. Here, as already articulated, "compelling government interests" include "the preservation of life, prevention of suicide, and enforcement of prison security, order, and discipline." *Grand Jury Subpoena*, 150 F.3d at 171; *see also Brown v. Graham*, No. 07-cv-1353 (FJS) (ATB), 2010 WL 6428251, at *9-10 (N.D.N.Y. Mar. 30, 2010) (rejecting due process claim for confinement in SHU during hunger strike and stating that "[p]rison officials have the right and the duty to take measures reasonably necessary to preserve order and security within the prison and to safeguard inmates committed to their custody and care. This necessarily includes the right and duty to take reasonable measures to insure the physical and mental health of inmates engaged in hunger strikes."), *report and recommendation adopted by*, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), *aff'd*, 470 Fed App'x 11 (2d Cir. 2012).

      Accordingly, in addition to this claim being barred by *Abbasi*, Plaintiff also fails to allege that any of the Defendants named herein were personally involved with the decision to transfer him to MCC's SHU. *See Bey v. Griffin*, No. 16-cv-3807 (VB), 2017 WL 5991791, at *8 (S.D.N.Y. Dec. 1, 2017) (dismissing complaint against superintendent of prison due to failure to

state personal involvement in alleged constitutional violations, including his confinement in the SHU); *Rosario v. Fischer*. No. 11-cv-4617 (JPO) (FM), 2012 WL 4044901, at *9 (S.D.N.Y. Aug. 28, 2012), *report and recommendation adopted by*, 2012 WL 6681695 (S.D.N.Y. Dec. 20, 2012) (dismissing claim against warden arising from confinement in SHU because plaintiff failed to allege personal involvement).  Moreover, and equally problematic, Plaintiff is unable to demonstrate that his transfer was punitive in nature.  Rather, his transfer had a worthy purpose— trying to save his life.  As Courts in this district routinely hold, BOP has a duty to protect the health and safety of inmates in its care.  Its decision to do so here should not now result in liability.

## V.     Plaintiff's Other Allegations Do Not State a Violation of the Constitution

For the reasons stated in Defendants' Motion, Plaintiff fails to state a claim arising from his allegations relating to his access to counsel, the conditions of his cell, or alleged mail tampering.  *See* Motion at 22-25.  Defendants will not reiterate all of the arguments made in their Motion, but add the following limited points.

As to pest control, poor plumbing, and inadequate heat, in order to state a conditions of confinement claim, a plaintiff must satisfy both an objective element and a mental element.  The objective element was discussed at length in the Motion.  *See* Motion at 23-25.  With respect to the mental element, a plaintiff must allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known that the condition posed an excessive risk to health or safety." *Patterson v. Ponte*, No. 16-cv-3156 (PAE) (JCF), 2017 WL 1194489, at *7 (S.D.N.Y. Mar. 30, 2017), *report and recommendation adopted by*, 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017) (internal

quotation and citation omitted). As to each of these alleged conditions, Plaintiff fails to meet the mental prong, which independently requires dismissal of these claims. Similar to this Court's conclusion in *Rivera v. Bloomberg*, No. 11-cv-629 (PGG), 2012 WL 3655830, at *3 (S.D.N.Y. Aug. 27, 2012), the Complaint is bereft of any allegations suggesting that the named Defendants had the requisite state of mind or awareness of the alleged conditions for them to be subject to a conditions of confinement claim.[5] *See id.* *5-6; *see also Patterson*, 2017 WL 1194489 at *7 (dismissing conditions of confinement claim and stating that "these meager allegations are insufficient to show how any specific defendant would have known about the alleged conditions"). Here, Plaintiff has not pleaded that any Defendant acted with the requisite "*mens rea*." *Id*.

As to Plaintiff's allegations relating to mail tampering, Plaintiff claims that, on two occasions, his ability to send outgoing, non-legal mail was limited. *See* Cmpl. at ¶¶ 18, 19. However, "unless the challenged interference represents a regular pattern or practice of such interference absent other prison concerns with regards to a particular inmate, the interference does not state a claim of First Amendment violation." *See Thomas v. Washburn*, No. 13-cv-303, 2016 WL 6791125, at *2 (W.D.N.Y. Sept. 7, 2016), *report and recommendation adopted by*, 2016 WL 6778794 (W.D.N.Y. Nov. 16, 2016) (internal quotations omitted). As the court in *Thomas* held, "three incidents of alleged interference" with non-legal mail are insufficient to state a claim for relief. *Id*. (collecting cases). Similarly, here, Plaintiff's two alleged instances of issues with his outgoing mail fail to state a claim, especially given, as to one of them, the allegations are entirely vague and do not articulate what tampering occurred other than that there

---

[5] As this Court noted in *Rivera*, "[w]here a complaint names a defendant in the caption but the complaint contains no substantive allegation against the defendant, dismissal is appropriate." *Rivera*, 2012 WL 3655830, at *10 (internal quotation and citation omitted).

was "a staple through the envelope which was not placed there by the plaintiff." Cmpl. at ¶ 19. Not only does Plaintiff fail to state a claim based on these allegations, but this claim is also barred by *Abbasi* and Plaintiff fails to allege the personal involvement of the named Defendants with Plaintiff's mail.[6]

## CONCLUSION

For the reasons stated herein, Plaintiff's Complaint should be dismissed with prejudice.[7]

Dated: December 11, 2019
      New York, New York

Respectfully Submitted,

GEOFFREY S. BERMAN
United States Attorney of the
Southern District of New York

By:   /s/ Alexander J. Hogan
ALEXANDER J. HOGAN
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2799
Fax: (212) 637-2686
E-mail: alexander.hogan@usdoj.gov

---

[6] To the extent Plaintiff attempts to bring suit pursuant to the New York State Constitution, *see* Cmpl. at 8, such a claim is not cognizable against federal officials because, rather than acting under state law, they are acting under federal law. *See Hernandez v. United States*, 939 F.3d 191, 205-206 (2d Cir. 2019) ("Indeed, the New York Court of Appeals has recognized that there can be no question that the drafters intended the State Constitution to govern the rights of citizens *with respect to their government* . . . As he was acting under the color of federal law and not state law, the claim for violation of the New York State Constitution fails.") (internal quotations and citations omitted) (emphasis in original).

[7] The Court should deny Plaintiff's request to file a sur-reply given Plaintiff has already submitted an Opposition that is well in excess of the typical length permitted by the Court's individual rules. *See* Dkt. No. 92.

cc:     Martin Gottesfeld,
        Register Number 12982-104
        FCI Terre Haute
        Federal Correctional Institution
        P.O. Box 33
        Terre Haute, IN  47808