enforcement, but officials said that they may also assess financial penalties in the future.

## Options for Taking Action to Promote Youth Well-Being in Residential Facilities

Protecting youth in residential facilities—many of whom are troubled and vulnerable to harm either from themselves or from others—requires particular vigilance on the part of parents and responsible governmental agencies. However, abuse, neglect, and civil rights violations documented in all types of residential facilities—government and private, licensed and unlicensed—show that the current federal-state oversight structure is inadequate to protect youth from maltreatment. States, federal agencies, and Congress have several options that they can use to improve standards of well-being for youth in residential facilities, monitor facility compliance with the standards, and take necessary corrective action. Although individual states are primarily responsible for taking action to improve the welfare of youth domiciled within their borders, federal agencies may establish additional safeguards for those youth that are served in residential facilities under federally funded state programs. Further, Congress has several options to consider—such as direct regulation of residential facilities, modifying conditions of participation for existing federal programs, and creating new program funding and requirements. Each of these options entails trade-offs among the cost to the government, the extent of federal involvement, and the extent that protections would apply to youth in various types of facilities.

- *States*. States could take action to improve the well-being of youth in residential facilities through their licensing processes, contract provisions, or accreditation requirements. Expanding licensing coverage would allow states to establish minimum standards for youth in all facilities, but may require state legislation to provide necessary authority, as well as increased funding for oversight and enforcement. Creating common contract provisions for facilities serving youth is another way state agencies could safeguard youth well-being across state agencies for those private facilities under contract with the state. Accreditation for all facilities that serve youth is another option that could benefit states in several ways. Accreditation by a national organization provides universal standards that are applied not only within states, but across state lines. Accreditation in lieu of licensing requirements may help minimize increases in state spending as a result of expanding oversight coverage.

- *Federal agencies*. Federal agencies could also take action by holding states accountable for the well-being of youth in residential facilities that participate in programs supported by federal funding—such as state child

welfare, health and mental health, and juvenile justice programs. Federal agencies could increase state accountability by modifying the conditions of participation for relevant programs. These program conditions could include priorities for placing youth first in facilities that are accredited or held to recognized standards of care, or include specific standards of well-being and oversight, such as suicide prevention and seclusion and restraint. This may be most effective if the federal agencies worked together to develop minimum standards for all relevant federal programs, possibly through an interagency council or the Office of Management and Budget. If the federal agencies determine they do not have authority to modify program conditions of participation, they could seek such authority from Congress. This option would not increase federal program spending, but federal agency action would not extend to exclusively private facilities.

- *Congress.* Congress also has several options to consider. These options include direct federal regulation of facilities that house youth under certain conditions, or establishing conditions of participation in existing or new federal programs.[31] These options are not mutually exclusive—some may be taken in combination with other federal or state action.

- *Direct regulation.* States have reported that thousands of youth are placed in out-of-state facilities, and we have previously testified before Congress on the extent of marketing and advertising across states lines. Under the Constitution, Congress would have a basis to directly regulate private facilities that participate in activities involving interstate commerce.[32] Congress might regulate such facilities by establishing a federal program that preempts state law and regulation, or provide states the option of carrying out an equivalent state program. These actions would result in increased federal spending. Congress could choose to minimize federal spending and oversight activities by requiring accreditation of residential

---

[31] See related discussion in a recent report by the Congressional Research Service, *Family Law: Congress's Authority to Legislate on Domestic Relations Questions,* Updated October 25, 2007, Washington, D.C. (RL31201).

[32] For example, the Commerce Clause serves as the basis for federal regulation of child pornography that moves in interstate or foreign commerce. Moreover, courts have found that the Child Support Recovery Act, which criminalizes failure to pay past child support obligations to a child residing in a different state than the parent, is a constitutional exercise of congressional authority under the Commerce Clause.

facilities by a national organization.[33] In considering a federal mandate, Congress may need to evaluate concerns about federal versus state responsibilities, practical feasibility, and the ability to offset attendant costs to the federal government. This option would have the benefit of capturing exclusively private facilities, but only those facilities that have the requisite connection to interstate commerce.

- *Add requirements in law to existing federal programs.* Congress could change existing program law to add requirements states must meet to receive federal programs funds. For example, it could include specific standards of well-being and oversight in areas where youth are known to be at risk, such as suicide prevention and seclusion and restraint. This would provide the advantage of developing minimum requirements for youth well-being that cut across agencies and programs. This option would not increase federal program spending. However, because it is directed at federal programs that provide funding to states, it would not safeguard youth in exclusively private facilities.

- *Establish a new federal program.* Congress could also establish a new federal program that would provide financial assistance to states that agree to comply with federal requirements, such as those to expand the scope and rigor of oversight to cover all residential facilities. This option would address oversight coverage for youth in all facilities in a state, but would be effective only in states that choose to comply with federal requirements in exchange for the new program funding. This option would also increase spending for the federal government.

## Conclusion

States' freedom to legislate and the existing patchwork of federal legislation and oversight addressing youth well-being have led to substantial disparity in protecting the well-being and civil rights of some of the nation's most vulnerable youth. There are no easy solutions. However, states, federal agencies, and Congress have various options to consider in restructuring the current federal-state oversight system to better protect youth from harm. While Congress, federal agencies, and states will need time to consider these options, and weigh the trade-offs that each option

---

[33] The Centers for Medicare & Medicaid Services, for example, have accreditation requirements for certain facilities as a condition of payment under its programs. To be effective, this approach would require a mechanism to ensure that the accrediting body communicates any problems or loss of accreditation to the appropriate state and federal entities.

entails, more can be done now within the existing regulatory structure to address outstanding concerns.

State and federal agencies acknowledge the need for comprehensive and complete data for each case of death, maltreatment, and other adverse incidents that occur in residential facilities, but barriers remain in collecting and reporting this information. Absent complete data and mechanisms to share information among relevant state and federal oversight agencies, officials are missing opportunities to assess the full magnitude of child maltreatment in residential facilities and respond to the extent of their authority in addressing issues or targeting investigations, such as those conducted by DOJ's Civil Rights Division. Further, absent enhanced oversight among federal agencies, these agencies will continue to miss opportunities to use available information to address identified risks to youth and hold states accountable for youth well-being under the current regulatory structure. Unless sufficient accountability is set up within state or federal regulatory structures using the oversight processes provided by federal program authority, state licensing systems, national accreditation, or other options, the well-being and civil rights of youth in some facilities will remain at risk.

## Recommendations for Executive Action

To help policymakers craft solutions that best address the magnitude of maltreatment and other threats to youth well-being in residential facilities, and also to facilitate federal oversight across states and agencies, we recommend that the Secretary of HHS take action to determine what barriers remain in those states that do not report case-file data for residential facilities to NCANDS and explore options to help states address existing barriers.

To help target federal civil rights investigations among states and facilities that can provide maximum benefit, we recommend that the U.S. Attorney General work with the Secretary of HHS to obtain access to the NCANDS case-file data for residential facilities. We also recommend that the Attorney General work with HHS, the Office of Juvenile Justice and Delinquency Prevention, and Education to obtain access to other sources of relevant information within relevant subagencies, such as HHS' Centers for Disease Control and Prevention.

To help ensure that the existing federal regulatory structure protects youth well-being across government and private residential facilities supported by federal programs, we recommend that HHS, DOJ, and Education work to enhance their oversight of state accountability for youth well-being in

residential facilities. Such efforts could include ensuring that residential facilities are included in federal oversight reviews and on-site visits to states.

## Agency Comments and Our Evaluation

We provided a draft of this report to HHS, DOJ, and Education for comment. HHS' comments are reproduced in appendix X, and DOJ's comments are reproduced in appendix XI. Education's Office of Special Education and Rehabilitative Services provided comments on behalf of the department that are reproduced in appendix IX. HHS and DOJ also provided technical comments that we incorporated, as appropriate.

## Federal Agency Comments on GAO Report Recommendations

Overall, HHS and DOJ either generally agreed, or did not disagree, with each of our recommendations. They also suggested further action that could be taken to address the report findings related to gaps in data and oversight for residential facilities. Education did not directly respond to the report recommendations but rather discussed its role and responsibilities for oversight of certain programs.

HHS did not agree or disagree with our recommendation that the Secretary take action to identify and help states address barriers in reporting case-file data for residential facilities to NCANDS, and DOJ did not comment on this recommendation. HHS stated that the number of states reporting case-level data and the quality of data submitted has improved over the years, and that its Administration for Children and Families (ACF) will continue to work with states to improve the collection of information wherever possible and feasible. We recognize that federal law provides states with some latitude in reporting data "to the maximum extent practicable." However, we remain concerned about the gaps in reported data that have persisted over a decade since the reporting requirement has been in place, which is why we have recommended that HHS take action to help address remaining barriers.

DOJ agreed with our recommendation that the Attorney General work with the Secretary of HHS to obtain NCANDS data that can help target civil rights investigations. HHS stated that ACF would be pleased to work with DOJ in implementing this recommendation; however, ACF was unclear how the NCANDS data would be useful in targeting investigations. As our report shows (see app. III), custom data analysis provided by HHS's NCANDS contractor provides important information on the number and type of maltreatment incidents by facility staff in each state that DOJ can use, in combination with other information sources, to prioritize investigations among states.

DOJ also agreed with our recommendation that the Attorney General work with its Office of Juvenile Justice and Delinquency Prevention, HHS, and Education to obtain access to other sources of relevant oversight information within the subagencies of these departments. HHS did not address this recommendation.

In regard to our recommendation that HHS, DOJ, and Education work to enhance their oversight of state accountability for youth well-being in residential facilities, DOJ and HHS indicated that they are conducting state oversight consistent with existing statutory authority and resources. In addition, DOJ cited several measures it has implemented, such as training and technical assistance to states as well as use of interdepartmental working relationships, which will help ensure that the existing federal regulatory structure protects youth well-being across facilities supported by federal programs.  We agree that the efforts cited by DOJ can help to improve conditions for youth in residential facilities. However, given the continued reports of maltreatment in residential facilities by state agencies we surveyed, and results of investigations by DOJ's Civil Rights Division, we continue to recommend that HHS, DOJ, and Education seek to identify ways to enhance their oversight of state accountability for youth well-being. For example, HHS and Education could include residential facilities in federal oversight reviews. Also, our recommendations focus on agency actions that could be done or begun quickly under the current legal and regulatory framework; however, in our discussion of policy options we identify additional longer-term measures that federal agencies could consider taking. For example, agencies could modify the conditions of participation for relevant grant programs to require states to give priority to facilities that are accredited or held to recognized standards of care. We further note that if these agencies determine they do not have authority to do this, they could request it from Congress.

DOJ and HHS also commented on further actions that federal agencies could take beyond the GAO recommendations.  Specifically, DOJ identified interagency coordination as an important way to enhance youth well-being in residential facilities and stated that the existing Coordinating Council on Juvenile Justice and Delinquency Prevention could be used for this purpose. DOJ suggested that this council could be a vehicle establishing minimum standards of care for all relevant federal programs. We offer a similar approach in our discussion of longer-term policy options. HHS noted the likely benefits of requiring facilities to notify parents of certain actions, such as disciplinary actions, restraint, or seclusion.

Finally, HHS stated that the report findings and recommendations should more prominently address the issue of unlicensed facilities. In our discussion of longer-term policy options, we note that states could improve the well-being of youth in residential facilities by expanding their licensing coverage, among other options. We also describe actions Congress could take to address gaps in licensing and oversight since, under the current framework, federal agencies do not have oversight authority for private facilities unless those facilities serve youth in state programs supported by federal funds. However, we also note that many facility types are licensed and that licensing alone, absent comprehensive standards, regular monitoring, and effective use of sanctions for noncompliance, cannot ensure youth well-being in residential facilities.

Education commented that while it is responsible for ensuring state compliance with certain federal education programs for youth—and recognizing that a protective and safe school environment is necessary for all students—it is not in the department's statutory or regulatory authority to ensure oversight of the total well-being of youth in residential facilities. Although Education would not be responsible for the total well-being of these youth, we believe that the report findings highlighting the gaps in safeguarding the educational well-being of youth in residential facilities warrant greater Education oversight of state accountability for the education of youth in residential facilities.

## Federal Agency Comments on GAO Report Findings

HHS commented that table 5 of the report shows that the Substance Abuse and Mental Health Services Administration has no program requirements that address certain risks to youth well-being, and noted that the agency has no regulatory oversight of individual residential facilities at the local level.  To clarify, the federal program requirements in table 5 do not relate to federal requirements for individual facilities, but to federal program requirements for state oversight of residential facilities, as stated.  The report text following the table states the position of HHS, DOJ, and Education that they do not have the authority to require states to address these risks in their oversight of facilities.

Copies of this report are being sent to the Honorable Margaret Spellings, Secretary of Education; the Honorable Michael O. Leavitt, Secretary of Health and Human Services; the Honorable Michael B. Mukasey, U.S. Attorney General; and relevant congressional committees and other interested parties. We will also make copies available to others upon request. In addition, the report will be made available at no charge on GAO's Web site at http://www.gao.gov. Please contact me on (202) 512-7215 if you or your staff have any questions about this report. Other contacts and major contributors are listed in appendix XII.

Sincerely yours,

*Kay C. Brown*

Kay E. Brown
Director,
Education, Workforce, and Income Security Issues

# Appendix I: Objectives, Scope, and Methodology

We were asked to examine (1) the nature of the incidents that adversely affect the well-being of youth in residential facilities, (2) how state licensing and monitoring requirements address the well-being of youth in residential facilities, and (3) how federal agencies hold states accountable for youth well-being in residential facilities. We used multiple data collection methods to obtain this information. We conducted three Web-based surveys of state child welfare, health and mental health, and juvenile justice directors and conducted site visits in four states where we interviewed state officials. Because of overlapping state agency program jurisdictions, and differences in how residential treatment centers and the services they provide are defined, we were unable to quantify the number of residential facilities and youth served. We also interviewed federal child welfare, health and mental health, juvenile justice, and education officials and representatives from national organizations concerning state child welfare, health and mental health, and juvenile justice programs and federal roles and responsibilities for overseeing residential facilities. In addition, we reviewed several national studies and related GAO reports to identify adverse incidents affecting youth in residential facilities and key federal and state oversight policies and practices. Finally, we analyzed agency documentation, legislation, and other documentation related to child welfare, health and mental health, and juvenile justice programs and requirements. We performed our work between November 2006 and April 2008, in accordance with generally accepted government auditing standards.

For purposes of this study, we defined residential facilities as those that require youth—ages 12 through 17—to reside at the facility and that provide program services for youth with behavioral and emotional challenges. These types of facilities include (1) juvenile justice, youth offender, juvenile delinquency, and incorrigibility programs; (2) treatment programs for youth with behavioral, emotional, mental health, and substance abuse issues and homes for pregnant teens; (3) alternative schools, e.g., schools for discipline or character education; and (4) therapeutic group homes, such as a home that specializes in supporting and treating youth with severe emotional disorders. The types of residence

Appendix I: Objectives, Scope, and
Methodology

include schools, academies, camps, ranches, boarding homes, dormitories,
treatment centers, and juvenile detention centers.[1]

## Web-based survey

To obtain state perspectives on our objectives, we conducted three Web-
based surveys of state child welfare, health and mental health, and juvenile
justice directors in the 50 states, the District of Columbia, and Puerto Rico.
The surveys were conducted using a self-administered electronic
questionnaire posted on the Web. We contacted directors via e-mail
announcing the survey and sent follow-up e-mails to encourage responses.
The survey data were collected between May and September 2007. We
received at least one completed survey from 50 states and the District of
Columbia. We received completed surveys from 44 child welfare agencies,
45 health and mental health agencies, and 44 juvenile justice agencies. In
32 states and the District of Columbia, all three agencies completed the
survey. We received at least one survey back from each state, except
Puerto Rico. We invited Puerto Rico to participate in the survey but did
not receive any response from its offices.  This report does not contain all
of the results from the survey.  The survey and a more complete tabulation
of the results can be viewed by accessing the following link:
http://www.gao.gov/cgi-bin/getrpt?GAO-08-631SP.

**Table 6: Status of State Agency Responses to GAO Survey on Residential Facilities for Youth**

| State | Child welfare | Health/mental health | Juvenile justice |
|---|---|---|---|
| States that responded to all three surveys | | | |
| Alaska | √ | √ | √ |
| Ark. | √ | √ | √ |
| Calif. | √ | √ | √ |
| Colo. | √ | √ | √ |
| Conn. | √ | √ | √ |
| D.C. | √ | √ | √ |

[1] As a result of this definition, the following facilities were excluded from the review as
they do not primarily serve adolescents or provide behavior modification services: (1) adult
prisons; (2) hospitals, nursing homes, and facilities that serve youth who are medically
fragile; (3) family or group foster care homes, orphanages, homeless shelters, halfway
houses, and other facilities where the primary services are housing and ordinary child care;
(4) recreational facilities such as summer sports camps; (5) college preparatory schools;
and (6) facilities that serve only children under 12 years of age.

**Appendix I: Objectives, Scope, and
Methodology**

| State | Child welfare | Health/mental health | Juvenile justice |
|---|---|---|---|
| Del. | √ | √ | √ |
| Fla. | √ | √ | √ |
| Ga. | √ | √ | √ |
| Hawaii | √ | √ | √ |
| Idaho | √ | √ | √ |
| Ind. | √ | √ | √ |
| Kans. | √ | √ | √ |
| Mass. | √ | √ | √ |
| Md. | √ | √ | √ |
| Maine | √ | √ | √ |
| Mich. | √ | √ | √ |
| Minn. | √ | √ | √ |
| Mo. | √ | √ | √ |
| Mont. | √ | √ | √ |
| N.C. | √ | √ | √ |
| N.Dak. | √ | √ | √ |
| Neb. | √ | √ | √ |
| N.H. | √ | √ | √ |
| N.Y. | √ | √ | √ |
| Ohio | √ | √ | √ |
| Pa. | √ | √ | √ |
| S.C. | √ | √ | √ |
| Tenn. | √ | √ | √ |
| Utah | √ | √ | √ |
| Va. | √ | √ | √ |
| Wash. | √ | √ | √ |
| Wis. | √ | √ | √ |
| **States that responded to two surveys** | | | |
| Ala. | √ | √ | — |
| Ariz. | — | √ | √ |
| Iowa | — | √ | √ |
| Ill. | √ | √ | — |
| Ky. | — | √ | √ |
| La. | √ | √ | — |
| Miss. | √ | √ | — |
| N.Mex. | √ | — | √ |
| Okla. | √ | — | √ |

Appendix I: Objectives, Scope, and
Methodology

| State | Child welfare | Health/mental health | Juvenile justice |
|---|---|---|---|
| Ore. | √ | — | √ |
| R.I. | √ | √ | — |
| S.Dak. | √ | — | √ |
| Tex. | √ | √ | — |
| Vt. | — | √ | √ |
| W.Va. | — | √ | √ |
| Wyo. | √ | √ | — |
| **States that responded to one survey** | | | |
| N.J. | — | — | √ |
| Nev. | — | — | √ |

Source: GAO analysis of state agencies' survey responses.

Note: √ = survey received, — = no survey received.

To develop the survey questions, we reviewed several national studies and
related GAO reports to determine issues pertaining to the licensing and
monitoring of residential facilities for youth. We analyzed agency
documentation to identify the oversight roles and responsibilities of the
departments of Health and Human Services, Justice, and Education. In
addition, we examined related surveys administered by other
organizations to identify relevant issues pertaining to adverse incidents
affecting youth and state practices regarding their licensing and
monitoring of residential facilities.

We worked to develop the questionnaire with social science survey
specialists. Because these were not sample surveys, there are no sampling
errors. However, the practical difficulties of conducting any survey may
introduce errors, commonly referred to as nonsampling errors. For
example, differences in how a particular question is interpreted, in the
sources of information that are available to respondents, or how the data
are entered into a database can introduce unwanted variability into the
survey results. We took steps in the development of the questionnaires, the
data collection, and data analysis to minimize these nonsampling errors.
For example, prior to administering the survey, we pretested the content
and format of the questionnaire with several states to determine whether
(1) the survey questions were clear, (2) the terms used were precise, (3)
respondents were able to provide the information we were seeking, and
(4) the questions were unbiased. We made changes to the content and
format of the final questionnaire based on pretest results. In that these
were Web-based surveys in which respondents entered their responses
directly into our database, there was a reduced possibility of data entry

Appendix I: Objectives, Scope, and
Methodology

error. We also performed computer analyses to identify inconsistencies in responses and other indications of possible error and called back respondents to verify responses as needed. We also collected paper documentation to support survey responses from the agencies in our case study states.

We used standard descriptive statistics to analyze survey questions. For certain open-ended survey questions, such as other causes of deaths and interstate locations where youth were placed, we used standard content analysis methods, including independent coding by two raters and tests of concurrence and rates of agreement. All disagreements between raters were resolved by discussion. In addition, an independent analyst verified that the computer programs used to analyze the data were written correctly.

While we asked state officials to complete the survey for their agency, some officials responded for their state as a whole. This includes Alaska and Nebraska's health, mental health, and substance abuse survey; Colorado's juvenile justice and rehabilitation survey; and Montana's child welfare services survey. In a few states, residential facilities are licensed by a central licensing agency whose information was not included among the three surveyed agency responses (e.g., Kansas' Department of Health and Environment; Massachusetts' Department of Early Education and Care; and Utah's Office of Licensing).

## Site visits

We visited four states—California, Florida, Maryland, and Utah. We based our criteria for selecting these states on the following five criteria: (1) the breadth of state policies regarding processes for licensing and monitoring residential programs; (2) reports of child abuse, neglect, and fatalities; (3) administration of residential programs by states or by county governments; (4) initiation of broad changes to licensing and monitoring policies; and (5) geographic location of the state. During these visits, we interviewed state child welfare, health and mental health, and juvenile justice officials and collected relevant state agency policies and procedures and reports. In addition, we obtained information on adverse incidents and state licensing and monitoring practices from protection and advocacy agencies, state attorney general offices, state auditors, and U.S. Attorneys' offices in each of the four selected states. Information that we gathered on our site visits represents only the conditions present in the states and local areas at the time of our site visits. We cannot comment on any changes that may have occurred after our fieldwork was completed. Furthermore, our fieldwork focused on in-depth analysis of only a few

**Appendix I: Objectives, Scope, and Methodology**

selected states. On the basis of our site visit information, we cannot generalize our findings beyond the states we visited.

## NCANDS Data Reliability

We also obtained data on the extent, nature, and cause of youth abuse and neglect in residential facilities from Cornell University—the designated archive for the National Child Abuse and Neglect Data System (NCANDS). The Department of Health and Human Services (HHS) conducts extensive edit checks of the NCANDS for internal reliability. All edit check programs are shared with the states. HHS also funds the National Resource Center for Information Technology in Child Welfare. This resource center provides technical assistance to states to improve reporting to NCANDS, improve statewide information systems, and better utilize state data. We obtained NCANDS data for fiscal year 2005, the latest year for which such data are available, from Cornell University, the designated archive for NCANDS. We worked with representatives from Cornell who manage NCANDS to develop appropriate databases for identifying the extent, nature, and cause of youth abuse and neglect in residential facilities. Our analysis of NCANDS, however, showed that the reliability of the data could be affected by several factors, including missing state data, the differences in state definitions for NCANDS data elements, the nonparticipation of 2 states, and the inability of 37 states to identify the type of perpetrator in all instances of abuse and neglect. NCANDS data weaknesses are also summarized in the report. As a result of these issues, we found that it is likely that the total number of national incidents of abuse and neglect by residential facility staff is underreported.

# Appendix II: Circumstances Surrounding State-Reported Suicides in Residential Facilities for Youth, 2006

Nearly all state-reported suicides occurred in licensed private residential facilities that received government funds. Generally, these residential facilities provided health and mental health services. Pennsylvania also reported that a suicide occurred in a government correctional facility that was not required to be licensed. Recommendations intended to address the circumstances surrounding state-reported suicides included steps to provide statewide training in suicide awareness and prevention and improved suicide prevention protocols in residential facilities.

**Table 7: States Reporting Youth Suicides by Type of Facility, Authorization for Providing Services, and Related Investigatory Findings, 2006**

| State[a] | Type of facility in which fatality occurred | Type of authorization for providing services (licensure, accreditation, general contractor authority) | Findings and recommendations from related investigations |
|---|---|---|---|
| Alaska | Private treatment facility for health services that received government funds | Licensed | The state agency recommended physical modifications to the building and changed policies and procedures to address staffing, supervision, and clinical services. |
| Ariz. | Private treatment facility for health and mental health services that received government funds | Licensed | The investigations prompted recommendations to provide staff training on interventions and hire additional staff to be present during crisis episodes. |
| Calif. | Private group home for child welfare services that received government funds | Licensed | The state agency instructed the facility administrator to discuss with staff behaviors that may lead to suicide. The agency also recommended additional training for facility staff. In addition, facility staff and clients were to receive counseling regarding the incident. Following the investigation, the agency cited the facility for lack of care and supervision and closed it. |
| Iowa | Private facility for child welfare and juvenile justice treatment services that received government funds | Licensed and accredited | Residential facilities initiated improved suicide prevention protocols and one facility improved its communication among staff. |
| Neb. | Private treatment facility for health and mental health services that received government funds | Licensed and accredited | No formal recommendations resulted from the agency's internal investigation and it did not know whether other agencies made recommendations. |
| Pa. | Government correctional facility for juvenile justice services | Unlicensed (state did not require government facilities to be licensed) | The state agency contracted with an expert on suicides in residential facilities to provide recommendations for preventing future suicides. |

**Appendix II: Circumstances Surrounding State-Reported Suicides in Residential Facilities for Youth, 2006**

| State[a] | Type of facility in which fatality occurred | Type of authorization for providing services (licensure, accreditation, general contractor authority) | Findings and recommendations from related investigations |
|---|---|---|---|
| Tex. | Private treatment facility for health and mental health services that received government funds | Licensed | The state agency provided a residential facility with technical assistance on implementing policies to search for contraband that youth might bring to the facility. |
| Wis. | Private treatment facility for health and mental health services that received government funds | Licensed | The facility implemented a quality improvement plan that includes revisions to facility's policy on suicide precautions and staff orientation, development, and in-service training. In addition, the agency sponsored statewide training in suicide awareness and prevention for managers and others who work with youth in group homes and residential settings. |

Source: GAO analysis of survey responses and additional state-reported information.

[a]Alabama did not respond to our request for additional information on the circumstances surrounding its reported suicide.

# Appendix III: State-Reported Incidents of Staff Maltreatment of Youth in Residential Facilities, Fiscal Year 2005

NCANDS data show that 34 of 41 states that provide facility-level data reported incidents where residential facility staff maltreated youth in fiscal year 2005. Reported incidents of neglect or deprivation of necessities in each state generally exceeded other types of maltreatment, although certain states reported more cases of physical or sexual abuse. In 22 states, facility staff committed multiple maltreatments, as indicated by the number of maltreatment cases exceeding the number of unique perpetrators. Among the 10 states that did not provide facility level data, 7 states did not track data for residential facilities in a form that could be shared with NCANDS, 1 state did not report data in 2005 due to outstanding legal issues, and 2 states did not report any data to NCANDS.

**Table 8: State-Reported Incidents of Staff Maltreatment of Youth in Residential Facilities, Fiscal Year 2005**

| State | Unique perpetrators | Unique maltreatments | Maltreatment type | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Physical abuse | Neglect or deprivation of necessities | Medical neglect | Sexual abuse | Psychological or emotional maltreatment | Other | Unknown or Missing |
| Ala. | 4 | 4 | 3 | 0 | 0 | 1 | 0 | 0 | 0 |
| Ark. | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 0 | 0 |
| Ariz. | 9 | 18 | 0 | 17 | 0 | 1 | 0 | 0 | 0 |
| Calif. | 56 | 69 | 15 | 45 | 0 | 2 | 6 | 1 | 0 |
| Colo. | 25 | 70 | 8 | 54 | 0 | 4 | 2 | 0 | 2 |
| D.C. | 4 | 4 | 3 | 0 | 0 | 1 | 0 | 0 | 0 |
| Fla. | 46 | 87 | 7 | 52 | 4 | 6 | 6 | 12 | 0 |
| Ill. | 18 | 27 | 18 | 4 | 0 | 5 | 0 | 0 | 0 |
| Ind. | 47 | 75 | 27 | 36 | 0 | 12 | 0 | 0 | 0 |
| Kans. | 3 | 3 | 1 | 0 | 0 | 2 | 0 | 0 | 0 |
| Ky. | 15 | 17 | 9 | 4 | 0 | 4 | 0 | 0 | 0 |
| La. | 2 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| Mass. | 95 | 153 | 29 | 116 | 0 | 8 | 0 | 0 | 0 |
| Md. | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Maine | 1 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 0 |
| Minn. | 7 | 10 | 0 | 9 | 0 | 1 | 0 | 0 | 0 |
| Mo. | 27 | 34 | 11 | 6 | 2 | 15 | 0 | 0 | 0 |
| Mont. | 3 | 5 | 0 | 2 | 0 | 3 | 0 | 0 | 0 |
| N.C. | 45 | 71 | 4 | 56 | 1 | 6 | 0 | 4 | 0 |
| Neb. | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| N.J. | 66 | 66 | 12 | 45 | 6 | 2 | 1 | 0 | 0 |

Appendix III: State-Reported Incidents of
Staff Maltreatment of Youth in Residential
Facilities, Fiscal Year 2005

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| N.Y.[a] | 186 | 469 | 97 | 92 | 5 | 14 | 53 | 208 | 0 |
| Ohio | 18 | 18 | 9 | 3 | 0 | 6 | 0 | 0 | 0 |
| Pa. | 38 | 40 | 24 | 1 | 0 | 15 | 0 | 0 | 0 |
| R.I. | 24 | 36 | 3 | 10 | 0 | 0 | 1 | 22 | 0 |
| S.C. | 21 | 28 | 8 | 14 | 0 | 6 | 0 | 0 | 0 |
| S.Dak. | 2 | 7 | 0 | 6 | 0 | 1 | 0 | 0 | 0 |
| Tenn. | 36 | 53 | 30 | 14 | 1 | 8 | 0 | 0 | 0 |
| Tex. | 56 | 82 | 34 | 45 | 0 | 3 | 0 | 0 | 0 |
| Va. | 6 | 12 | 3 | 5 | 0 | 4 | 0 | 0 | 0 |
| Vt. | 1 | 2 | 0 | 0 | 0 | 2 | 0 | 0 | 0 |
| Wash. | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Wis. | 9 | 9 | 0 | 4 | 0 | 4 | 0 | 1 | 0 |
| W.Va. | 12 | 26 | 6 | 13 | 0 | 1 | 6 | 0 | 0 |
| **State reported no incidents of abuse and neglect in residential facilities** | | | | | | | | | |
| Del. | 0 | | | | | | | | |
| Hawaii | 0 | | | | | | | | |
| Idaho | 0 | | | | | | | | |
| Iowa | 0 | | | | | | | | |
| N.H. | 0 | | | | | | | | |
| Nev. | 0 | | | | | | | | |
| Utah | 0 | | | | | | | | |
| **State did not track data on abuse and neglect in residential facilities in a format compatible with NCANDS** | | | | | | | | | |
| Alaska | | | | | | | | | |
| Conn. | | | | | | | | | |
| Mich. | | | | | | | | | |
| Miss. | | | | | | | | | |
| N.Mex. | | | | | | | | | |
| Okla. | | | | | | | | | |
| Wyo. | | | | | | | | | |
| **State did not report data on abuse and neglect in residential facilities** | | | | | | | | | |
| Ga. | | | | | | | | | |
| **State did not report any NCANDS data** | | | | | | | | | |
| N.Dak. | | | | | | | | | |
| Ore. | | | | | | | | | |
| **Total** | **887** | **1,503** | **363** | **657** | **20** | **138** | **75** | **248** | **2** |

Source: NCANDS.

**Appendix III: State-Reported Incidents of
Staff Maltreatment of Youth in Residential
Facilities, Fiscal Year 2005**

ᵃAccording to NCANDS data archive officials, the large number of incidents in New York, including "other" maltreatment types, may be attributable to the child welfare agency's broader definition of what constitutes a residential facility and "other" types of abuse and neglect compared to narrower definitions used by other states.  The comparability of data among states is difficult because of the variability in state definitions and state compliance with report requirements.

# Appendix IV: Licensing Status for Selected Residential Facilities

**Table 9:  Licensing Status for Selected State-Operated Residential Facilities**

| Facility type and state agency | Required | Exempt | No such facility in state | No oversight |
|---|---|---|---|---|
| **State-Operated  facilities** | | | | |
| Child welfare | 13 | 7 | 3 | 20 |
| Health and mental health | 23 | 6 | 1 | 14 |
| Juvenile justice | 13 | 28 | 2 | 1 |

Source: GAO analysis of state agencies' survey responses.

Note:  Other responses included "Don't know" and "No response."

**Table 10: State Agencies Reporting the Licensing Status for State-Operated Residential Facilities That Serve Youth**

| State | Child welfare | Health and mental health | Juvenile justice |
|---|---|---|---|
| Alaska | NO | NO | Exempt |
| Ala. | NO | NO | NS |
| Ariz. | NS | Required | Required |
| Ark. | NO | Required | NO |
| Calif. | Exempt | NR | Exempt |
| Colo. | Required | Required | Required |
| Conn. | Exempt | Exempt | Exempt |
| D.C. | DK | NO | Required |
| Del. | Exempt | Required | Exempt |
| Fla. | NO | Required | Exempt |
| Ga. | NO | Exempt | Exempt |
| Hawaii | NO | Required | Exempt |
| Iowa | NS | Required | Exempt |
| Idaho | NF | NF | Exempt |
| Ill. | NO | Required | NS |
| Ind. | Required | Required | Required |
| Kans. | Exempt | Required | Exempt |
| Ky. | NS | NO | Required |
| La. | NO | Required | NS |
| Mass. | NO | NO | Required |
| Md. | NO | Required | Exempt |
| Maine | NO | NO | Exempt |
| Mich. | Required | Required | Required |

Appendix IV: Licensing Status for Selected
Residential Facilities

| State | Child welfare | Health and mental health | Juvenile justice |
|---|---|---|---|
| Minn. | Required | Required | Required |
| Mo. | NO | Required | Exempt |
| Miss. | NO | Required | NS |
| Mont. | Required | Required | Exempt |
| N.C. | NO | Exempt | Exempt |
| N.Dak. | NF | NO | Exempt |
| Neb. | NO | Required | Exempt |
| N.H. | Required | NO | Exempt |
| N.J. | NS | NS | Exempt |
| N.Mex. | Required | NS | NF |
| Nev. | NS | NS | Required |
| N.Y. | NF | NO | Exempt |
| Ohio | Exempt | Exempt | Required |
| Okla. | Required | NS | Exempt |
| Ore. | NO | NS | Exempt |
| Pa. | Exempt | Exempt | Exempt |
| R.I. | Required | NO | NS |
| S.C. | Required | Required | Required |
| S.Dak. | NO | NS | Exempt |
| Tenn. | Required | Required | NF |
| Tex. | NO | Required | NS |
| Utah | NO | NO | Exempt |
| Va. | Required | Required | Required |
| Vt. | NS | NO | Exempt |
| Wash. | NO | Exempt | Exempt |
| Wis. | Required | NO | Exempt |
| W.Va. | NS | Required | Required |
| Wyo. | Exempt | NO | NS |

Source: GAO analysis of state agencies' survey responses.

Notes: NF = no such facility in state, NO = no oversight, DK = don't know, NS = no survey, NR = no response.

The survey questions were as follows: Which, if any, of the following types of government-operated facilities providing residential [targeted; health, mental health, substance abuse; juvenile justice or rehabilitation] services for youth are currently exempt from licensing or monitoring in your state by statute or state regulation? State-operated facility: (a) exempt from licensing, (b) exempt from monitoring, (c) exempt from both, (d) exempt

**Appendix IV: Licensing Status for Selected
Residential Facilities**

from neither; (e) no such facility in state, (f) don't know, and (g) no response. The question was administered only to agencies that reported that their agency operates or has oversight over government-operated residential facilities providing services to youth age 12-17.

**Table 11:  Licensing Status for Selected Residential Facilities That Receive Government Funds**

| Facility type and state agency | Licensure required | Exempt from licensing | No such facility in state | Don't know or no response |
|---|---|---|---|---|
| **Treatment Centers** | | | | |
| Child welfare | 39 | 1 | 1 | 3 |
| Health and mental health | 35 | 0 | 2 | 8 |
| Juvenile justice | N/A | N/A | N/A | N/A |
| **Wilderness camps** | | | | |
| Child welfare | 24 | 3 | 10 | 7 |
| Health and mental health | 16 | 3 | 9 | 17 |
| Juvenile justice | 13 | 1 | 17 | 13 |
| **Ranches** | | | | |
| Child welfare | 14 | 3 | 20 | 7 |
| Health and mental health | 8 | 3 | 16 | 18 |
| Juvenile justice | 6 | 2 | 22 | 14 |
| **Boot camps** | | | | |
| Child welfare | 10 | 6 | 20 | 8 |
| Health and mental health | 6 | 2 | 15 | 22 |
| Juvenile justice | 4 | 3 | 25 | 12 |
| **Residential schools and academies** | | | | |
| Child welfare | 19 | 18 | 4 | 3 |
| Health and mental health | 15 | 10 | 1 | 19 |
| Juvenile justice | 14 | 14 | 5 | 11 |
| **Detention centers** | | | | |
| Child welfare | N/A | N/A | N/A | N/A |
| Health and mental health | N/A | N/A | N/A | N/A |
| Juvenile justice | 14 | 11 | 6 | 13 |

Source: GAO analysis of state agencies' survey responses.

Appendix IV: Licensing Status for Selected
Residential Facilities

**Table 12: State Child Welfare Agencies Reporting the Licensing Status for Selected Private Residential Facilities That Serve Youth and Receive Government Funding**

| State | Treatment facilities | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|---|---|---|---|---|---|
| Alaska | NR | NR | NF | DK | NR |
| Ala. | Required | Required | Required | Required | Exempt |
| Ariz. | NS | NS | NS | NS | NS |
| Ark. | Required | Required | Required | DK | DK |
| Calif. | Required | NF | Required | NF | Exempt |
| Colo. | Required | Required | Required | NF | Required |
| Conn. | Required | Required | NF | NF | Exempt |
| D.C. | Required | DK | DK | DK | NF |
| Del. | Required | NF | NF | NF | Required |
| Fla. | Required | DK | DK | DK | Exempt |
| Ga. | Required | Required | NF | NF | Exempt |
| Hawaii | NR | NR | NR | NR | Exempt |
| Iowa | NS | NS | NS | NS | NS |
| Idaho | Required | Required | NF | NF | Required |
| Ill. | Required | DK | NF | DK | NF |
| Ind. | NF | Exempt | Exempt | Exempt | Required |
| Kans. | Required | NF | NF | NF | Required |
| Ky. | NS | NS | NS | NS | NS |
| La. | Required | Required | DK | NF | DK |
| Mass. | NR | NR | NR | NR | Required |
| Md. | Required | Required | Required | Required | Required |
| Maine | Required | NF | NF | NF | Required |
| Mich. | Required | Required | Required | Required | Exempt |
| Minn. | Required | NF | NF | NF | NF |
| Mo. | Required | Exempt | Required | Exempt | Exempt |
| Miss. | Required | NF | NF | NF | Required |
| Mont. | Required | Required | Exempt | Required | Required |
| N.C. | Required | Required | DK | Exempt | Exempt |
| N.Dak. | Required | NF | Required | NF | Exempt |
| Neb. | Required | NF | NF | NF | NF |
| N.H. | Required | Required | NF | NF | Required |
| N.J. | NS | NS | NS | NS | NS |

Appendix IV: Licensing Status for Selected
Residential Facilities

| State | Treatment facilities | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|-------|----------------------|------------------|-------|------------|--------------------------------------|
| N.Mex. | Required | Exempt | Exempt | Exempt | Exempt |
| Nev. | NS | NS | NS | NS | NS |
| N.Y. | Exempt | NF | NF | NF | Exempt |
| Ohio | Required | NR | Required | Required | Exempt |
| Okla. | Required | Required | Required | Required | Required |
| Ore. | Required | Required | NF | Exempt | Required |
| Pa. | Required | Required | Required | Required | Exempt |
| R.I. | Required | Required | NF | NF | Required |
| S.C. | Required | Required | NF | Required | Exempt |
| S.Dak. | Required | NF | NF | NF | Exempt |
| Tenn. | Required | Required | NF | NF | Required |
| Tex. | Required | Required | NR | NR | Exempt |
| Utah | Required | Required | NF | NF | Required |
| Va. | Required | Required | Required | Required | Required |
| Vt. | NS | NS | NS | NS | NS |
| Wash. | Required | Required | Required | Exempt | Required |
| Wis. | Required | Required | Required | Required | Exempt |
| W.Va. | NS | NS | NS | NS | NS |
| Wyo. | Required | Required | NF | NF | Required |

Source: GAO analysis of state agencies' survey responses.

Note: N/A = not applicable, NF = No such facility in state, DK = don't know, NS = no survey, NR = no response.

[a]The survey question for private residential schools and academies did not distinguish between private facilities that received government funding and those that did not.

The survey questions pertaining to private residential facilities that received or did not receive government funds for state child welfare, health and mental health, and juvenile justice agencies were as follows: Which, if any, of the following types of residences that provide [targeted; health, mental abuse; juvenile justice and rehabilitation] services for youth are currently exempt from licensing or routine monitoring in your state by statute or state regulations: (a) exempt from licensure, (b) exempt from monitoring, (c) exempt from both, (d) not exempt from either, (e) no such residence in state, (f) don't know, and (g) no response? Check only one for each row.

Are residential educational institutions, such as schools or academies that specialize in serving students with behavior or discipline problems (e.g., providing discipline, character education, or behavior modification

Appendix IV: Licensing Status for Selected
Residential Facilities

training in addition to more traditional education), exempt from licensing or monitoring by your agency by statute or state regulation: (a) exempt from licensure, (b) exempt from monitoring, (c) exempt from both, (d) not exempt from either, (e) no such residence in state, (f) don't know, and (g) no response? Check only one for each row.

**Table 13: State Health and Mental Health Agencies Reporting the Licensing Status for Selected Private Residential Facilities That Serve Youth and Receive Government Funding**

| State | Treatment facilities | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|-------|----------|----------|-------|-----------|------------|
| Alaska | Required | Required | NF | Required | Exempt |
| Ala. | Required | DK | DK | DK | Exempt |
| Ariz. | Required | Required | NF | DK | DK |
| Ark. | DK | DK | NF | DK | DK |
| Calif. | Required | NR | NR | NR | Required |
| Colo. | NR | NR | NR | NR | Required |
| Conn. | Required | Exempt | Required | NF | Exempt |
| D.C. | Required | NR | NR | NR | DK |
| Del. | Required | NF | NF | NF | DK |
| Fla. | Required | DK | DK | DK | NR |
| Ga. | NR | Required | Required | DK | Required |
| Hawaii | Required | Exempt | Exempt | Exempt | DK |
| Iowa | Required | NR | NR | NR | Required |
| Idaho | Required | Required | NF | NF | Required |
| Ill. | Required | Exempt | Exempt | Exempt | Required |
| Ind. | DK | DK | DK | DK | Required |
| Kans. | NF | NF | NF | NF | DK |
| Ky. | DK | DK | DK | DK | DK |
| La. | Required | DK | DK | DK | DK |
| Mass. | Required | Required | NF | Required | Required |
| Md. | Required | NR | NR | NR | Exempt |
| Maine | Required | DK | DK | DK | DK |
| Mich. | Required | Required | DK | DK | DK |
| Minn. | Required | NF | NF | NF | NF |
| Mo. | Required | DK | DK | DK | DK |
| Miss. | Required | NF | NF | NF | Required |
| Mont. | Required | Required | Exempt | Required | Required |

**Appendix IV: Licensing Status for Selected Residential Facilities**

| State | Treatment facilities | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|-------|---------------------|------------------|-------|------------|---------------------------------------|
| N.C. | Required | Required | NR | NR | Exempt |
| N.Dak. | NR | DK | DK | DK | DK |
| Neb. | Required | NF | Required | NF | Required |
| N.H. | Required | Required | NF | NF | Required |
| N.J. | NS | NS | NS | NS | NS |
| N.Mex. | NS | NS | NS | NS | NS |
| Nev. | NS | NS | NS | NS | NS |
| N.Y. | Required | DK | DK | DK | Exempt |
| Ohio | Required | NF | NF | NF | NR |
| Okla. | NS | NS | NS | NS | NS |
| Ore. | NS | NS | NS | NS | NS |
| Pa. | Required | Required | Required | Required | Exempt |
| R.I. | Required | NF | NF | NF | DK |
| S.C. | Required | NF | NF | NF | Exempt |
| S.Dak. | NS | NS | NS | NS | NS |
| Tenn. | Required | Required | Required | Required | Exempt |
| Tex. | Required | Required | Required | DK | DK |
| Utah | Required | Required | Required | NF | Required |
| Va. | Required | Required | NF | Required | Exempt |
| Vt. | Required | Required | NF | NF | Required |
| Wash. | DK | DK | DK | DK | NR |
| Wis. | DK | DK | DK | DK | DK |
| W.Va. | Required | Required | Required | NF | Required |
| Wyo. | NF | NF | NF | NF | DK |

Source: GAO analysis of state agencies' survey responses.

Notes: NF = no such facility in state, DK = don't know, NS = no survey, NR = no response.

[a]The survey question for private residential schools and academies did not distinguish between private facilities that received government funding and those that did not.

**Table 14: State Juvenile Justice Agencies Reporting the Licensing Status for Selected Private Residential Facilities That Serve Youth and Receive Government Funding**

| State | Detention centers | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|---|---|---|---|---|---|
| Alaska | NR | NR | NR | NR | NR |
| Ala. | NS | NS | NS | NS | NS |
| Ariz. | DK | DK | DK | DK | Exempt |
| Ark. | Exempt | Exempt | Exempt | Exempt | Exempt |
| Calif. | DK | DK | DK | DK | DK |
| Colo. | Exempt | Required | Exempt | Exempt | Required |
| Conn. | Exempt | NF | NF | NF | Exempt |
| D.C. | Exempt | NF | NF | NF | NF |
| Del. | Required | NF | NF | NF | Required |
| Fla. | Exempt | Required | NF | NF | Exempt |
| Ga. | Exempt | Required | DK | DK | Required |
| Hawaii | Exempt | DK | NF | NF | DK |
| Iowa | Required | NF | NF | Required | Exempt |
| Idaho | Exempt | DK | DK | DK | DK |
| Ill. | NS | NS | NS | NS | NS |
| Ind. | Required | NF | NF | NF | DK |
| Kans. | NF | NF | NF | NF | NF |
| Ky. | Required | Required | Required | Required | Required |
| La. | NS | NS | NS | NS | NS |
| Mass. | Required | NF | NF | NF | Exempt |
| Md. | NF | NF | NF | NF | Required |
| Maine | DK | NF | NF | NF | DK |
| Mich. | DK | DK | DK | DK | NR |
| Minn. | Required | Required | Required | NF | Exempt |
| Mo. | DK | DK | DK | DK | Required |
| Miss. | NS | NS | NS | NS | NS |
| Mont. | NR | NR | NR | NR | Required |
| N.C. | NR | NR | NR | NR | Required |
| N.Dak. | Required | NF | Required | NF | NF |
| Neb. | NR | NR | NR | NR | NR |
| N.H. | Exempt | Required | NF | NF | Required |
| N.J. | NR | NF | NF | NF | DK |

Appendix IV: Licensing Status for Selected
Residential Facilities

| State | Detention centers | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|-------|-------------------|------------------|-------|------------|--------------------------------------|
| N.Mex. | DK | DK | DK | DK | Exempt |
| Nev. | DK | NF | NF | NF | DK |
| N.Y. | Required | NF | NF | NF | Exempt |
| Ohio | Required | DK | DK | DK | Exempt |
| Okla. | Required | Required | DK | Required | Exempt |
| Ore. | Exempt | Required | NF | NF | Required |
| Pa. | Required | Required | Required | Required | Exempt |
| R.I. | NS | NS | NS | NS | NS |
| S.C. | NF | Required | NF | NF | Required |
| S.Dak. | NF | NF | Required | NF | NF |
| Tenn. | Required | Required | Required | NF | Required |
| Tex. | NS | NS | NS | NS | NS |
| Utah | Required | Required | NF | NF | Required |
| Va. | NF | NF | NF | NF | Exempt |
| Vt. | NF | Required | NF | NF | Required |
| Wash. | DK | NF | NF | Exempt | Exempt |
| Wis. | Exempt | DK | DK | NF | DK |
| W.Va. | Required | NF | NF | NF | NF |
| Wyo. | NS | NS | NS | NS | NS |

Source: GAO analysis of state agencies' survey responses.

Notes: NF = no such facility in state, DK = don't know, NS = no survey, NR = no response.

[a]The survey question for private residential schools and academies did not distinguish between private facilities that received government funding and those that did not.

**Table 15:  Licensing Status for Selected Exclusively Private Residential Facilities**

| Facility type and state agency | Licensure required | Exempt from licensing | No such facility in state | Don't know or no response |
|---|---|---|---|---|
| **Treatment centers** | | | | |
| Child welfare | 30 | 3 | 3 | 8 |
| Health and mental health | 30 | 0 | 4 | 11 |
| Juvenile justice | N/A | N/A | N/A | N/A |
| **Wilderness camps** | | | | |
| Child welfare | 18 | 3 | 11 | 12 |
| Health and mental health | 14 | 2 | 9 | 20 |
| Juvenile justice | 5 | 4 | 15 | 20 |
| **Ranches** | | | | |
| Child welfare | 11 | 1 | 18 | 14 |
| Health and mental health | 11 | 2 | 12 | 20 |
| Juvenile justice | 2 | 5 | 17 | 20 |
| **Boot camps** | | | | |
| Child welfare | 8 | 2 | 22 | 12 |
| Health and mental health | 6 | 1 | 14 | 24 |
| Juvenile justice | 0 | 5 | 19 | 20 |
| **Residential schools and academies** | | | | |
| Child welfare | 19 | 18 | 4 | 3 |
| Health and mental health | 15 | 10 | 1 | 19 |
| Juvenile justice | 14 | 14 | 5 | 11 |
| **Detention centers** | | | | |
| Child welfare | N/A | N/A | N/A | N/A |
| Health and mental health | N/A | N/A | N/A | N/A |
| Juvenile justice | 3 | 5 | 18 | 18 |

Source: GAO analysis of state agencies' survey responses.

Appendix IV: Licensing Status for Selected
Residential Facilities

**Table 16: State Child Welfare Agencies Reporting the Licensing Requirements for Selected Exclusively Private Residential Facilities That Serve Youth and Receive No Government Funding**

| State | Treatment facilities | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|-------|----------------------|------------------|-------|------------|--------------------------------------|
| Alaska | Required | Exempt | NR | NR | NR |
| Ala. | DK | DK | DK | DK | Exempt |
| Ariz. | NS | NS | NS | NS | NS |
| Ark. | Required | DK | DK | DK | DK |
| Calif. | Required | NF | Required | NF | Exempt |
| Colo. | Required | Required | Required | NF | Required |
| Conn. | Required | NF | NF | NF | Exempt |
| D.C. | Required | DK | DK | DK | NF |
| Del. | NF | NF | NF | NF | Required |
| Fla. | NR | NR | NR | NR | Exempt |
| Ga. | Required | Required | NF | NF | Exempt |
| Hawaii | NR | NR | NR | NR | Exempt |
| Iowa | NS | NS | NS | NS | NS |
| Idaho | Required | Required | NF | NF | Required |
| Ill. | Required | DK | NF | DK | NF |
| Ind. | NF | DK | DK | DK | Required |
| Kans. | Exempt | NF | NF | NF | Required |
| Ky. | NS | NS | NS | NS | NS |
| La. | Required | DK | DK | NF | DK |
| Mass. | NR | NR | NR | NR | Required |
| Md. | Required | Required | Required | Required | Required |
| Maine | NR | NF | NF | NF | Required |
| Mich. | Required | Required | Required | Required | Exempt |
| Minn. | Required | NF | NF | NF | NF |
| Mo. | Required | Exempt | Required | Exempt | Exempt |
| Miss. | Exempt | NF | NF | NF | Required |
| Mont. | Required | Required | Exempt | Required | Required |
| N.C. | Required | Required | DK | Exempt | Exempt |
| N.Dak. | NR | NR | NR | NR | Exempt |
| Neb. | Required | NF | NF | NF | NF |
| N.H. | DK | NF | NF | NF | Required |
| N.J. | NS | NS | NS | NS | NS |

**Appendix IV: Licensing Status for Selected
Residential Facilities**

| State | Treatment facilities | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|-------|---------------------|------------------|-------|------------|--------------------------------------|
| N.Mex. | Required | DK | DK | DK | Exempt |
| Nev. | NS | NS | NS | NS | NS |
| N.Y. | Exempt | NF | NF | NF | Exempt |
| Ohio | Required | NR | NF | Required | Exempt |
| Okla. | Required | Required | Required | Required | Required |
| Ore. | Required | Required | NF | NF | Required |
| Pa. | Required | Required | Required | Required | Exempt |
| R.I. | Required | Required | NF | NF | Required |
| S.C. | NF | Exempt | NF | NF | Exempt |
| S.Dak. | Required | NF | NF | NF | Exempt |
| Tenn. | Required | Required | NF | NF | Required |
| Tex. | Required | Required | NR | NR | Exempt |
| Utah | DK | Required | Required | NF | Required |
| Va. | Required | Required | Required | Required | Required |
| Vt. | NS | NS | NS | NS | NS |
| Wash. | Required | Required | Required | NF | Required |
| Wis. | Required | Required | Required | Required | Exempt |
| W.Va. | NS | NS | NS | NS | NS |
| Wyo. | Required | Required | NF | NF | Required |

Source: GAO analysis of state agencies' survey responses.

Notes: NF = no such facility in state, DK = don't know, NS = no survey, NR = no response.

[a]The survey question for private residential schools and academies did not distinguish between private facilities that received government funding and those that did not.

Appendix IV: Licensing Status for Selected
Residential Facilities

**Table 17: State Health and Mental Health Agencies Reporting the Licensing Requirements for Selected Exclusively Private Residential Facilities That Serve Youth and Receive No Government Funding**

| State | Treatment facilities | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|---|---|---|---|---|---|
| Alaska | Required | Required | NF | Required | Exempt |
| Ala. | Required | DK | DK | DK | Exempt |
| Ariz. | Required | Required | NF | DK | DK |
| Ark. | DK | DK | DK | DK | DK |
| Calif. | NR | NR | NR | NR | Required |
| Colo. | Required | Required | Required | NF | Required |
| Conn. | Required | Exempt | Required | NF | Exempt |
| D.C. | Required | NR | NR | NR | DK |
| Del. | Required | NF | NF | NF | DK |
| Fla. | Required | DK | DK | DK | NR |
| Ga. | Required | Required | Required | DK | Required |
| Hawaii | NF | NF | NF | NF | DK |
| Iowa | NF | NR | NR | NR | Required |
| Idaho | Required | Required | NF | NF | Required |
| Ill. | Required | Exempt | Exempt | Exempt | Required |
| Ind. | DK | DK | DK | DK | Required |
| Kans. | NR | NR | NR | NR | DK |
| Ky. | DK | DK | DK | DK | DK |
| La. | Required | DK | DK | DK | DK |
| Mass. | Required | Required | Required | DK | Required |
| Md. | NF | NF | NF | NF | Exempt |
| Maine | Required | DK | DK | DK | DK |
| Mich. | Required | Required | DK | DK | DK |
| Minn. | Required | NF | NF | NF | NF |
| Mo. | DK | DK | DK | DK | DK |
| Miss. | Required | Required | Required | Required | Required |
| Mont. | Required | Required | Exempt | Required | Required |
| N.C. | Required | Required | NR | NR | Exempt |
| N.Dak. | DK | DK | DK | DK | DK |
| Neb. | Required | NF | Required | NF | Required |
| N.H. | DK | DK | DK | DK | Required |
| N.J. | NS | NS | NS | NS | NS |

Appendix IV: Licensing Status for Selected
Residential Facilities

| State | Treatment facilities | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|-------|----------------------|------------------|-------|------------|--------------------------------------|
| N.Mex. | NS | NS | NS | NS | NS |
| Nev. | NS | NS | NS | NS | NS |
| N.Y. | NF | DK | DK | DK | Exempt |
| Ohio | Required | NF | NF | NF | NR |
| Okla. | NS | NS | NS | NS | NS |
| Ore. | NS | NS | NS | NS | NS |
| Pa. | Required | NF | NF | NF | Exempt |
| R.I. | Required | NF | NF | NF | DK |
| S.C. | Required | Required | Required | Required | Exempt |
| S.Dak. | NS | NS | NS | NS | NS |
| Tenn. | Required | Required | Required | Required | Exempt |
| Tex. | Required | DK | Required | DK | DK |
| Utah | Required | Required | Required | NF | Required |
| Va. | Required | Required | NF | Required | Exempt |
| Vt. | DK | DK | DK | DK | Required |
| Wash. | DK | DK | DK | DK | NR |
| Wis. | DK | DK | DK | DK | DK |
| W.Va. | Required | NR | Required | NF | Required |
| Wyo. | Required | NF | NF | NF | DK |

Source: GAO analysis of state agencies' survey responses.

Note: NF = no such facility in state, DK = don't know, NS = no survey, NR = no response.

[a]The survey question for private residential schools and academies did not distinguish between private facilities that received government funding and those that did not.

**Table 18: State Juvenile Justice Agencies Reporting the Licensing Status for Selected Exclusively Private Residential Facilities That Serve Youth and Receive No Government Funding**

| State | Detention centers | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|---|---|---|---|---|---|
| Alaska | NR | NR | NR | NR | NS |
| Ala. | NS | NS | NS | NS | NS |
| Ariz. | DK | DK | DK | DK | Exempt |
| Ark. | Exempt | Exempt | Exempt | Exempt | Exempt |
| Calif. | DK | DK | DK | DK | DK |
| Colo. | Exempt | Required | Exempt | Exempt | Required |
| Conn. | Exempt | NF | NF | NF | Exempt |
| D.C. | NF | NF | NF | NF | NF |
| Del. | NF | NF | NF | NF | Required |
| Fla. | Exempt | Exempt | Exempt | Exempt | Exempt |
| Ga. | NF | DK | DK | DK | Required |
| Hawaii | DK | DK | DK | DK | DK |
| Iowa | NF | NF | NF | NF | Exempt |
| Idaho | NF | DK | DK | DK | DK |
| Ill. | NS | NS | NS | NS | NS |
| Ind. | DK | DK | DK | DK | DK |
| Kans. | NF | NF | NF | NF | NF |
| Ky. | NR | NR | NR | NR | Required |
| La. | NS | NS | NS | NS | NS |
| Mass. | DK | DK | DK | DK | Exempt |
| Md. | NF | NF | NF | NF | Required |
| Maine | NF | NF | NF | NF | DK |
| Mich. | DK | DK | DK | DK | NR |
| Minn. | NF | NF | NF | NF | Exempt |
| Mo. | DK | DK | DK | DK | Required |
| Miss. | NS | NS | NS | NS | NS |
| Mont. | NR | NR | NR | NR | Required |
| N.C. | NR | NR | NR | NR | Required |
| N.Dak. | NF | NF | NF | NF | NF |
| Neb. | NR | NR | NR | NR | NR |
| N.H. | NF | NF | NF | NF | Required |
| N.J. | NR | NR | NR | NR | DK |

Appendix IV: Licensing Status for Selected
Residential Facilities

| State | Detention centers | Wilderness camps | Ranch | Boot camps | Residential schools and academies[a] |
|---|---|---|---|---|---|
| N.Mex. | DK | DK | DK | DK | Exempt |
| Nev. | DK | NF | NF | NF | DK |
| N.Y. | Required | Exempt | Exempt | Exempt | Exempt |
| Ohio | Exempt | Exempt | Exempt | Exempt | Exempt |
| Okla. | Required | DK | DK | DK | Exempt |
| Ore. | NF | Required | NF | NF | Required |
| Pa. | DK | DK | DK | DK | Exempt |
| R.I. | NS | NS | NS | NS | NS |
| S.C. | DK | DK | DK | DK | Required |
| S.Dak. | NF | NF | NF | NF | NF |
| Tenn. | Required | Required | Required | NF | Required |
| Tex. | NS | NS | NS | NS | NS |
| Utah | NF | Required | Required | NF | Required |
| Va. | NF | NF | NF | NF | Exempt |
| Vt. | NF | Required | NF | NF | Required |
| Wash. | NF | NF | NF | NF | Exempt |
| Wis. | DK | DK | DK | DK | DK |
| W.Va. | NF | NF | NF | NF | NF |
| Wyo. | NS | NS | NS | NS | NS |

Source: GAO analysis of state agencies' survey responses.

Notes: NF = no such facility in state, DK = don't know, NS = no survey, NR = no response.

[a]The survey question for private residential schools and academies did not distinguish between private facilities that received government funding and those that did not.

# Appendix V: State Agency Accreditation Requirements for Residential Facilities for Youth

Table 19:  Number of States that Require at Least Some of the Residential Facilities That They License or Certify to Have Independent Accreditation

| Facility type | Child welfare agencies | | Health and mental health agencies | | Juvenile justice agencies | |
|---|---|---|---|---|---|---|
| | Accreditation required for at least some | Accreditation not required | Accreditation required for at least some | Accreditation not required | Accreditation required for at least some | Accreditation not required |
| Government operated | 8 | 15 | 16 | 12 | 12 | 29 |
| Private receiving government funds | 8 | 27 | 16 | 19 | 7 | 27 |
| Exclusively private pay | 4 | 26 | 5 | 21 | 2 | 11 |

Source: GAO analysis of state agencies' survey responses.

The survey questions were as follows: Are government-operated facilities, including county-operated facilities, required to have any of the following in order to provide residential [targeted; health, mental health, or substance abuse; juvenile or rehabilitation] services to youth: independent accreditation to provide services, such as Council on Accreditation (COA), Commission on Accreditation Rehabilitation Facilities (CARF), Joint Commission on Accreditation of Health Care Organizations (JCAHO): (a) required for all, (b) required for most, (c) required for some, (d) not required, (e) don't know, and (f) no response. Which if any of the following types of initial licensure or certification does your agency require for private facilities that plan to provide residential [targeted; health, mental health, or substance abuse; juvenile or rehabilitation] services to youth age 12 to 17 and receive [any government funds, e.g., facilities with state or county contracts or facilities certified to accept Medicaid or Medicare]: independent accreditation to provide services, such as Council on Accreditation (COA), Commission on Accreditation Rehabilitation Facilities (CARF), Joint Commission on Accreditation of Health Care Organizations (JCAHO): (a) required, (b) not required, (c) don't know, and (d) no response. Which if any of the following types of initial licensure or certification does your agency require for private facilities that plan to provide residential [targeted; health, mental health, or substance abuse; juvenile or rehabilitation] to youth age 12 to 17 and receive no government funds (e.g., faith-based and other private facilities that are totally funded by the private sector): independent accreditation to provide services, such as Council on Accreditation, Commission on Accreditation Rehabilitation Facilities, Joint Commission on Accreditation of Health Care Organizations: (a) required, (b) not required, (c) don't know, and (d) no response.

# Appendix VI: Selected State Licensing Standards for Residential Facilities for Youth

**Table 20: Number of State Agencies Reporting That They Require Licensed Government-Operated and Private Residential Facilities to Meet Certain Standards, 2006**

| Standards | Child welfare | | Health and mental health | | Juvenile justice | |
| --- | --- | --- | --- | --- | --- | --- |
| | Government-operated facilities | Private facilities | Government-operated facilities | Private facilities | Government-operated facilities | Private facilities |
| **Pass inspection of physical plant** | | | | | | |
| Required for all | 20 | 37 | 27 | 35 | 41 | 16 |
| Required for less than all | 2 | 0 | 1 | 1 | 2 | 0 |
| **Provide evidence of safe child care practices** | | | | | | |
| Required for all | 19 | 35 | 23 | 30 | 37 | 16 |
| Required for less than all | 3 | 1 | 3 | 3 | 5 | 0 |
| **Have written procedures for reporting physical or sexual abuse or neglect of youth** | | | | | | |
| Required for all | 21 | 37 | 28 | 35 | 43 | 16 |
| Required for less than all | 1 | 0 | 0 | 1 | 0 | 0 |
| **Meet all staff qualifications requirements, including training** | | | | | | |
| Required for all | 20 | 36 | 26 | 34 | 42 | 16 |
| Required for less than all | 2 | 0 | 1 | 2 | 1 | 0 |
| **Perform staff background checks** | | | | | | |
| Required for all | 21 | 37 | 26 | 31 | 43 | 16 |
| Required for less than all | 1 | 0 | 2 | 4 | 0 | 0 |
| **Meet staff-to-child ratios** | | | | | | |
| Required for all | 20 | 34 | 22 | 28 | 32 | 15 |
| Required for less than all | 2 | 3 | 5 | 8 | 10 | 1 |

Appendix VI: Selected State Licensing
Standards for Residential Facilities for Youth

| Standards | Child welfare | | Health and mental health | | Juvenile justice | |
|---|---|---|---|---|---|---|
| | Government-operated facilities | Private facilities | Government-operated facilities | Private facilities | Government-operated facilities | Private facilities |
| **Provide evidence of appropriate educational programming** | | | | | | |
| Required for all | 19 | 31 | 23 | 31 | 41 | 16 |
| Required for less than all | 2 | 1 | 6 | 4 | 2 | 0 |
| **Have procedures in place for use of approved seclusion and restraint techniques** | | | | | | |
| Required for all | 19 | 34 | 23 | 31 | 41 | 16 |
| Required for less than all | 3 | 3 | 5 | 4 | 2 | 0 |
| **Have written suicide prevention plans** | | | | | | |
| Required for all | 13 | 20 | 15 | 20 | 40 | 12 |
| Required for less than all | 8 | 14 | 9 | 13 | 3 | 4 |

Source: GAO analysis of state agencies' survey responses.

Note: Other responses included "Don't know" and "No response."

The survey questions were as follows: When your state develops or opens a government-operated residential facility that provides targeted services to youth, is the facility required to meet state standards in any of the following areas? (a) pass inspection of physical plant; (b) provide evidence of safe child care practices; (c) have written procedures for reporting physical or sexual abuse or neglect of youth; (d) meet staff qualifications requirements, including training; (e) perform staff background check; (f) meet specified staff-to-child ratios; (g) provide evidence of appropriate educational programming; (h) have procedures in place for use of approved seclusion and restraint technique; (i) have written suicide prevention plan. Are each of the following items required for private residential facilities providing targeted services for youth to obtain initial licensure from your agency? (a) pass inspection of physical plant; (b) provide evidence of safe child care practices; (c) have written procedures for reporting physical or sexual abuse or neglect of youth; (d) meet staff qualifications requirements, including training; (e) perform staff background check; (f) meet specified staff-to-child ratios; (g) provide evidence of appropriate educational programming; (h) have procedures in place for use of approved seclusion and restraint technique; (i) have written suicide prevention plan.

# Appendix VII: Selected State Monitoring Requirements for Residential Facilities for Youth

**Table 21: Number of State Agencies Reporting That They Monitored, for All or Less Than All, Selected Issues at Residential Facilities for Youth, 2006**

| Issues | Child welfare | | | Health and mental health | | | Juvenile justice | | |
|---|---|---|---|---|---|---|---|---|---|
| | Government-operated facility | Private facility that received any government funds | Exclusively private facility | Government-operated facility | Private facility receiving government funds | Exclusively private facility | Government-operated facility | Private facility receiving government funds | Exclusively private facility |
| **Physical plant** | | | | | | | | | |
| Monitored for all | 15 | 35 | 29 | 14 | 22 | 16 | 34 | 24 | 9 |
| Monitored for less than all | 6 | 4 | 6 | 13 | 16 | 14 | 8 | 13 | 14 |
| **Staffing issues (e.g., background checks, qualifications, ongoing training)** | | | | | | | | | |
| Monitored for all | 16 | 35 | 28 | 15 | 22 | 16 | 34 | 23 | 8 |
| Monitored for less than all | 6 | 5 | 7 | 13 | 15 | 14 | 7 | 13 | 14 |
| **Use of approved seclusion and restraint** | | | | | | | | | |
| Monitored for all | 14 | 32 | 26 | 14 | 23 | 13 | 32 | 25 | 10 |
| Monitored for less than all | 7 | 7 | 9 | 11 | 13 | 16 | 10 | 10 | 12 |
| **Use of psychotropic medications** | | | | | | | | | |
| Monitored for all | 13 | 30 | 24 | 13 | 22 | 12 | 27 | 22 | 9 |
| Monitored for less than all | 8 | 9 | 9 | 12 | 15 | 16 | 14 | 14 | 13 |
| **Number of complaints of physical or sexual abuse** | | | | | | | | | |
| Monitored for all | 13 | 34 | 27 | 15 | 26 | 15 | 34 | 28 | 12 |
| Monitored for less than all | 9 | 5 | 8 | 12 | 12 | 15 | 15 | 8 | 10 |

Appendix VII: Selected State Monitoring
Requirements for Residential Facilities for
Youth

| Issues | Child welfare | | | Health and mental health | | | Juvenile justice | | |
|---|---|---|---|---|---|---|---|---|---|
| | Government-operated facility | Private facility that received any government funds | Exclusively private facility | Government-operated facility | Private facility receiving government funds | Exclusively private facility | Government-operated facility | Private facility receiving government funds | Exclusively private facility |
| **Number of other complaints, if any (e.g. health or safety concerns)** | | | | | | | | | |
| Monitored for all | 15 | 32 | 26 | 16 | 26 | 14 | 33 | 28 | 10 |
| Monitored for less than all | 7 | 7 | 9 | 11 | 12 | 15 | 9 | 8 | 11 |
| **Presence of educational programming** | | | | | | | | | |
| Monitored for all | 15 | 30 | 24 | 13 | 16 | 12 | 35 | 23 | 9 |
| Monitored for less than all | 5 | 7 | 9 | 13 | 18 | 14 | 6 | 13 | 12 |
| **Quality of educational programming** | | | | | | | | | |
| Monitored for all | 6 | 11 | 6 | 7 | 8 | 6 | 27 | 18 | 8 |
| Monitored for less than all | 14 | 23 | 23 | 16 | 23 | 20 | 13 | 17 | 12 |

Source: GAO analysis of state agencies' survey responses.

Note: Other responses included "Don't know", "No response" and "No such facility in the state."

We asked state child welfare, health and mental health, and juvenile justice
agencies the following question: In 2006, did your agency routinely monitor or
follow up, or authorize for monitoring or follow up, any of the following
issues—in the absence of a complaint—at government-operated residential
facilities, private residential facilities that received government funding, and
exclusively private pay residential facilities providing targeted services for
youth? Response options for this question were: (a) yes, monitored for all, (b)
yes, monitored for most, (c) yes, monitored for some, (d) no, did not monitor,
(e) no such facility in the state, (f) don't know, (g) no response.

# Appendix VIII: State Agency Actions Taken within the Last 3 Years against Government and Private Residential Facilities

**Table 22: Number of State Agencies Taking Actions against Government and Private Residential Facilities within the Last 3 Years**

| Action taken | Child welfare | | Health and mental health | | Juvenile justice | |
|---|---|---|---|---|---|---|
| | Yes | No | Yes | No | Yes | No |
| **Government facility was closed or license, certification, or operating authority was suspended or revoked** | | | | | | |
| Government operated | 1 | 19 | 0 | 18 | 3 | 34 |
| **Private license or authority to operate was suspended** | | | | | | |
| Private receiving government funds | 11 | 21 | 4 | 18 | 9 | 16 |
| Exclusively private | 4 | 28 | 3 | 19 | 3 | 22 |
| **Private license or authority to operate was revoked or not renewed, or facility was closed** | | | | | | |
| Private receiving government funds | 17 | 15 | 8 | 13 | 11 | 13 |
| Exclusively private | 7 | 25 | 3 | 18 | 1 | 23 |
| **Youth were removed** | | | | | | |
| Government operated | 7 | 12 | 2 | 16 | 11 | 26 |
| Private receiving government funds | 26 | 9 | 13 | 8 | 18 | 12 |
| Exclusively private | 5 | 30 | 4 | 17 | 4 | 26 |
| **Banned new admissions or instituted admission restrictions** | | | | | | |
| Government operated | 7 | 14 | 4 | 15 | 7 | 30 |
| Private receiving government funds | 27 | 8 | 16 | 6 | 22 | 7 |
| Exclusively private | 4 | 31 | 4 | 18 | 4 | 25 |
| **Referred or recommended criminal investigations for abuse or neglect that carry fines or imprisonment** | | | | | | |
| Government operated | 10 | 11 | 7 | 8 | 24 | 10 |
| Private receiving government funds | 19 | 11 | 11 | 9 | 17 | 11 |
| Exclusively private | 6 | 24 | 3 | 17 | 7 | 21 |
| **Increased monitoring** | | | | | | |
| Government operated | 16 | 5 | 10 | 8 | 32 | 6 |
| Private receiving government funds | 32 | 3 | 20 | 2 | 30 | 0 |
| Exclusively private | 6 | 29 | 8 | 14 | 8 | 22 |

**Appendix VIII: State Agency Actions Taken
within the Last 3 Years against Government
and Private Residential Facilities**

| | Child welfare | | Health and mental health | | Juvenile justice | |
|---|---|---|---|---|---|---|
| **Required program improvement or corrective action plan** | | | | | | |
| Government operated | 19 | 2 | 17 | 2 | 32 | 4 |
| Private receiving government funds | 35 | 0 | 22 | 1 | 28 | 1 |
| Exclusively private | 12 | 23 | 10 | 13 | 7 | 22 |

Source: GAO analysis of state agencies' survey responses.

We asked state child welfare, health and mental health, and juvenile justice agencies the following question: Over the last 3 reporting years, did your agency take any of the following actions at its government-operated facilities, private facilities that received government funds, or private facilities that did not receive government funds as a result of allegations or findings of noncompliance, improper operations, physical abuse or sexual abuse or neglect of youth, or other negative outcomes? Respondents could also answer "don't know" or "no response."

**GAO-08-346  Residential Facilities**