RECEIVED DEC 26 2019 PRO SE OFFICE

1

United States District Court
Southern District of New York

Martin S. Gottesfeld, pro se,
  Plaintiff
  -against-
Hugh J. Hurwitz, et al.

Case No. 18 SDNY-10836-PGG-GWG

DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-26-19

## EMERGENCY MOTION FOR HEARING AND ORDER REQUIRING COUNSEL FOR THE DEFENDANTS TO SHOW CAUSE FOR VIOLATIONS OF LOC. CIV. R. 1.5(b)(5) AND NEW YORK R. PROF. COND. 1.16(a)

Plaintiff Martin S. Gottesfeld ("herein "Plaintiff"), acting pro se, hereby moves The Honorable Court on an emergency basis to issue an order requiring counsel for the defendants, i.e., Assistant United States Attorney Alexander J. Hogan, to show cause for violating Local Civil Rule 1.5(b)(5) and New York Rule of Professional Conduct 1.16(a).

The plaintiff further moves on an emergency basis for The Court to convene as soon as practicable a hearing on this motion and to order the FCI Terre Haute CMU unit team to produce the plaintiff, if only via the telephone, for this hearing. Absent an explicit order by The Court, the plaintiff believes that agents of Counsel Hogan and his clients - the instant defendants - will block from attending any hearing in the case that the Court schedules.

In support of this motion, the plaintiff herewith provides exhibits 1-7 hereto, and respectfully requests, pursuant to Fed. R. E. 201(c)(2), that the Court take mandatory judicial notice of exhibits 1-7 hereto.

1 of 2   The plaintiff notes Exhibit 1 hereto at 10 & 62, and given the circumstances

the plaintiff humbly requests that The Court order The Office of the Clerk to draw the attention of the instant defendants and their counsel to this filing.

The plaintiff notes Exhibit 1 hereto at 10 ¶32, and that he cannot provide a copy of the incident report without risking the spoliation or other loss of his only copy by agents of AUSA Hogan and the defendants.

Respectfully filed pursuant to the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), on Thursday, December 12th, 2019, by mailing to The Court in an envelope bearing sufficient affixed pre-paid first-class U.S. postage, handed at the next opportunity to Ms. J. Wieder of the FCI Terre Haute CMU unit team, acting in her official capacity as an agent for the defendants and AUSA Hogan,

by: /s/ MSG
Martin S. Gottesfeld, pro se
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

Exhibit 1

Declaration of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, declare that the following is true and correct under the penalty of perjury under the laws of the United States pursuant to 28 U.S.C. § 1746(1) on this 12th day of December, 2019:

1. My name is Martin S. Gottesfeld and I am the sole plaintiff in the case of Gottesfeld v. Hurwitz, et al., 18-cv-10836-PGG-GWG (hereafter "the case"), currently pending before The Honorable United States District Court for the Southern District of New York (hereafter "The Court").

2. Counsel for the defendants in the case is Assistant United States Attorney Alexander J. Hogan (hereafter "AUSA Hogan").

3. On or about Monday, November 25th, 2019, and pursuant to Fed. R. Civ. P. 5, Fed. R. Civ. P. 11(c), Fed. R. Civ. P. 11(b), the New York Rules of Professional Conduct, Local Civil Rule 1.5(b)(5), and the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), I served upon AUSA Hogan a motion for sanctions (hereafter "the motion") — the merits of which I cannot yet bring before The Court due to the twenty-one-(21)-day safe-harbor provision of Fed. R. Civ. P. 11(c).

4. Fearful of retaliation from AUSA Hogan, the defendants in the case, and their agents here at FCI Terre Haute, I mailed a copy of the motion to a licensed attorney in Brooklyn for safekeeping and filing by my next friend in the case of interference here at the FCI.

5. Pursuant to Local Civil Rule 1.5(b)(5), AUSA Hogan and all attorneys who appear before The Court are bound by The New York Rules of Professional Conduct.

6. Only addressing events after the service of the motion, and in no way addressing the events that occurred before the service of the motion,

1 of 10

I note that New York Rule of Professional Conduct 1.16(a) in part states, "A lawyer shall not accept employment on behalf of a person if the lawyer knows or should know that such person wishes to: (1) bring a legal action, conduct a defense, or assert a position in a matter, or otherwise have steps taken for such person, merely for the purpose of harassing or maliciously injuring any person."

7. On Monday evening, December 9th, 2019 – after AUSA Hogan was served the motion, but before I could file it with The Court pursuant to Fed. R. Civ. P. 11(c) – agents of AUSA Hogan and the defendants in the case placed me in the SHU inside the FCI Terre Haute CMU.

8. FBOP Lt. B. Devlin conspicuously and fastidiously wanted to ensure that I received a written administrative detention order and his attitude reveals that he knew the defendants had injured me repeatedly through their failures to provide me such administrative detention orders, in defiance of federal regulations, and that this was a matter of controversy in court.

9. At approximately 10:07 A.M. on Wednesday, December 11th, 2019, Captain Brogan of the FBOP asked me in the SHU, "You know why you're here, right?"

10. I take Captain Brogan's meaning to signify that the defendants in the case and AUSA Hogan want me to know that they are displeased with my recent motion practice, particularly the motion for sanctions.

11. The supposed reason provided by agents of AUSA Hogan and the defendants for placing me in the SHU is flagrantly frivolous and contrived; it was likely the best they could come up with given my stellar conduct record and such short notice.

12. Once again, an unnumbered and untimely incident report (hereafter the "incident report") was delivered to me, which manifestly seeks to punish me for pursuing Constitutionally-protected litigation.

13. The incident report ridiculously accuses me of "trying to extort"

seventy-three (73) "individuals, agencies, and entities" by lawfully "demanding a true copy" of my order of commitment.

14. The absurdity of the incident report reveals its true intended purpose: to demonstrate to me the impunity of AUSA Hagan, the defendants, and their agents to conjure specious excuses, violate clearly-stated FBOP Due Process requirements (in this instance for the timely delivery of numbered incident reports), and continue to violate my Constitutional rights even as the case proceeds under the watchful eye of The Court.

15. Title 18 U.S.C. § 3621(c) states:

Delivery of order of commitment. When a prisoner, pursuant to a court order, is placed in the custody of a person in charge of a penal or correctional facility, a copy of the order shall be delivered to such person as evidence of this authority to hold the prisoner, and the original order, with the return endorsed thereon, shall be returned to the court that issued it.

16. D.C. Code § 13-422 states:

Personal jurisdiction based upon enduring relationship.

A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.

17. D.C. Code § 13-421 states:

Definition of a person.

As used in this subchapter, the term "person" includes an individual, his executor, administrator, or personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia.

18. D.C. Code § 13-421 et seq. are collectively known as the "long-

arm statute" of Washington D.C.

19. "Long-arm" statutes are well known in the legal community because many, if not most, states and territories have one.

20. Pursuant to 28 U.S.C. § 1728, i.e., the Full-Faith-and-credit statute, Federal Courts give full faith and credit to the long-arm statutes of Washington D.C. and other states and territories.

21. As contemplated by D.C. Code § 13-422, the Federal Bureau of Prisons (FBOP) and its acting director are "domiciled in, organized under the laws of" and maintain their "principal place of business in" the District of Columbia.

22. As contemplated by D.C. Code § 13-421, FBOP employees are the "administrator[s]" or "personal representative[s]" of the FBOP and its acting director.

23. FBOP employees transact business in Washington D.C. via the FBOP's trust-fund system, as contemplated by D.C. Code § 13-423(a)(1) and possess real property in Washington D.C. through their benefits and pensions, as contemplated by D.C. Code § 13-423(a)(5).

24. No return, as required by 18 U.S.C. § 3621(c), appears on the docket of United States v. Gottesfeld, 16-cr-10305 (D. Mass.).

25. The only supposed copy of my "Judgment & Commitment" that has ever been provided to me is missing the required seal of the court, the signature of the clerk, and the signature of a U.S. Marshal; and further, no "Order of Commitment" appears within its four corners as signed by Judge Gorton, i.e., its first page and only its first page above Judge Gorton's signature.

26. D.C. Code 16-1905 states:

Right to copy of commitment, forfeiture.

A person committed or detained, or a person in his behalf, may demand a true copy of the warrant of commitment or detainer. An officer or other person detaining a person, who refuses or neglects to deliver to him or to a person in his

behalf a true copy of the warrant of commitment or detainer, if one exists, within six hours after the demand, shall forfeit to the party so detained the sum of $500.

27. On Friday, December 6th, 2019, I sought to exercise my rights under 18 U.S.C. § 3621(c) and D.C. Code § 16-1905 by issuing a written request (hereafter my "request") to my custodians explicitly citing 18 U.S.C. § 3621(c) and D.C. Code § 16-1905.

28. To avoid future ambiguities or arguments before the D.C. Superior Court claiming that I failed to provide sufficient notice to my custodians, I largely used the language of D.C. Code § 16-1905 and, like this statute, my request uses "demand," "true copy," and "shall forfeit."

29. My request referred specifically and explicitly to a "statutorily-mandated sum" (emphasis added), i.e., the $500 specified by D.C. Code § 16-1905.

30. I specified that my demand "is self-executing every twenty-four (24) hours."

31. I have interacted on a nearly-week-daily basis with the supposed accuser and complainant in the incident report, Ms. Rebekka Eisele (hereafter "Ms. Eisele") and I am familiar with her everyday use of language.

32. The incident report was surreptitiously written not by Ms. Eisele, but for her; and while nonetheless frivolous, its author has legal training that Ms. Eisele does not.

33. Ms. Eisele's conduct since I handed her my request is demonstrably inconsistent with the narrative put forth by the author of the incident report in ways that demonstrate it is not just legally frivolous, but factually a sham.

34. For instance, Ms. Eisele has continued to interact normally with me in her official capacity as my case manager as if nothing has happened and I am not now sitting in the SHU in solitary confinement because of her

35. Since the incident report, Ms. Eisele provided to me a BP-8 on December 10th, 2019 (Exhibit 2) and December 11th, 2019 (Exhibit 3), each signed, dated, and timestamped by her.

36. I have formally requested the preservation of audio and video surveillance footage of these normal, cordial, unafraid, unangry, unintimidated interactions (Exhibit 4).

37. No one has been assigned as my new case manager due to any discomfort on the part of Ms. Eisele.

38. In contrast to Ms. Eisele's actual demeanor, whoever wrote the incident report as Ms. Eisele claimed, "I feel threatened by inmate Gottesfeld's demands and I believe he is trying to extort me... Inmate Gottesfeld is attempting to intimidate and compel me... by threat of financial demise."

39. Of course, demanding a "statutorily-authorized sum" with citation to a specific, applicable, statute, such as D.C. Code § 16-1905, cannot be "extortion."

40. Ms. Eisele's everyday vocabulary does not include legal terms such as "extort," "compel," and the uncharacteristically-dramatic "financial demise."

41. If Ms. Eisele were to use such legal terms on her own, she would, in my experience, not misapply them as in the incident report, but instead look them up to ensure their applicability.

42. For instance, Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (citing Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70, 75 (2d Cir. 1986)) ("While Plaintiff is correct that such litigation activity can sometimes satisfy the 'wrongful means' element, this is true only when (1) 'the [defendant] has no belief in the merit of the litigation' or (2) 'the defendant otherwise institutes or threatens to institute litigation in bad faith, intending only to harass the third parties and not to bring [its] claims to definitive adjudication'").

43. If Ms. Eisele were in fact so concerned and threatened by imminent "financial demise," as stated in the incident report, then she would have made

every effort to provide the document required by D.C. Code § 16-1905, but she has not.

44. Ms. Eisele benefits little, if at all, from my placement in the SHU, and in fact, it makes more work for her.

45. In contrast, my placement in the SHU greatly and illegitimately benefits AUSA Hogan and the defendants.

46. Perhaps, unaware that I sent a copy of the motion for sanctions to an attorney for safekeeping and filing by my next friend in a contingency, and knowing that in the SHU I would be seperated from my legal work, AUSA Hogan perceived that he would benefit from the lack of timely filing of the motion for sanctions.

47. AUSA Hogan has until December 19th, 2019, to reply to my opposition to dismiss and roughly similar deadlines to answer other filings. With me in the SHU, his opponent is significantly hamstrung in contesting whatever he may file, including motions for extensions, and a motion to withdraw or otherwise contest his clients' admissions.

48. My law library access is limited to 1-2 hours per day in the SHU, whereas before I spent nearly my entire waking day in a less-inadequate law library, litigating this case and other cases.

49. In violation of 28 C.F.R. §§ 541.31(l) "legal activities" and 541.11(h), (i), and (j), I have no access whatsoever to a typewriter in the FCI Terre Haute CMU SHU (Exhibit 5).

50. In violation of 28 C.F.R. § 543.11(j), I have no access to a desk and I must write on the floor or on my bed. (Exhibit 5)

51. In violation of 28 C.F.R. § 541.31, the only water to which I have access in my cell is toxic (Exhibit 6), so I can only drink three (3) times per week when I am allowed to use the shower, and this affects my ability to litigate against AUSA Hogan because my kidneys are in constant pain and this is distracting.

52. In violation of 28 C.F.R. § 541.31(d), I have no pillow and my mattress is unsanitary and worn down, preventing me from getting restorative sleep; I've barely slept since the night of Sunday, November 8th, 2019, and this affects my ability to litigate against AUSA Hogan and his clients.

53. Agents of AUSA Hogan deny me my radio and, in violation of 28 C.F.R. § 541.31(i), agents of AUSA Hogan deny me my newspaper subscriptions in the SHU, so I am now unaware of potentially-relevant developments in the Epstein investigations and cases.

54. In violation of 28 C.F.R. § 541.31(l) and The First Amendment, my requests for a legal call to The Office of The Clerk of The Court (Exhibit 7) have been fruitless so I cannot timely request a hearing.

55. In violation of 28 C.F.R. § 541.31 I am being subjected to extreme sensory deprivation in the FCI Terre Haute CMU SHU, and this affects my ability to litigate the case against AUSA Hogan's clients.

56. I began and have maintained a hunger strike since the evening of Monday, December 9th, 2019, with a particularized message asking that AUSA Hogan and his agents provide me access to non-toxic potable water in my cell and access to The Court via a legal call to The Office of The Clerk in order to request an emergency hearing — and that they otherwise stop violating Local Civil Rule 1.5(b)(5) and N.Y. R. Prof. Cond. 1.16(a).

57. In the unlikely event that AUSA Hogan was unaware of these violations committed by agents of his and his clients in the case, he is now aware thereof through this filing, and he is ethically obligated to curtail this misconduct.

58. AUSA Hogan and his agents in the FCI Terre Haute Legal Department (both of whom read my filings in the case long before they appear on the

dodo[l] should each remember Fleming Sales Co. v. Bailey, 611 F. Supp. 507, 519-520 (N.D. Ill. 1985) (quoting Lepucki v. Van Wormer, 765 F.2d 86, 87 (7th Cir. 1985)):

[P]racticing lawyers... as officers of the court, have both an ethical and a legal duty to screen claims of their clients for factual veracity and legal sufficiency. Model Rule of Professional Conduct 3.1 (1983); Fed. R. Civ. P. 11. Lawyers have a unique opportunity to counsel restraint of recklessness, to craft imaginitive arguments or to press empty challenges to well-settled principals. Because of our reluctance to constrain the discretion of attorneys in the vigorous advocacy of their clients' interests, we penalize them only where they have failed to maintain a minimum standard of professional ~~conduct~~ responsibility. But we will not overlook such a failure when it occurs, in part because it evidences disdain for the public, whose claims lie dormant ~~because~~ frivolous suits have diverted away scarce judicial resources, disdain for adverseries, who must expend time and money to defend against meritless attacks, and disdain for clients, whose trust is rewarded with legal bills, dismissals, and court-imposed sanctions.

59. "In representation of a client, a lawyer shall not... counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent." ~~Wagner~~ Wagner v. Williford, 804 F.2d 1012, 1017-18 (7th Cir. 1986) (quoting ABA Model Code of Responsibility, Disciplinary Rule 7-102(A)(7)).

60. "'Fraud upon the court' should, we believe, embrace only the species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v. Commissioner, 387 F.2d 689, 691 (7th Cir. 1968) (quoting 7 Moore's Federal Practice, 2d ed., p. 512, para. 60.23). And Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972) (quoting same).

61. At AUSA Hogan's direction or acquiescence, his agents are engaged in a frivolous and dishonest fraud upon the Court cognizeable under the above-cited authorities, including Local Civil Rule 1.5(b)(5) and N.Y. R. Prof. Cond. 1, 1.6(a).

62. Seperated from my legal work and in the FCI Terre Haute CMU SHU, I no longer have access to the address of AUSA Hogan for service nor to same-day photocopies.

63. At approximately 8:30 A.M., Thursday, December 12th, 2019, medical gave me IV fluids due to my inability to drink the water in my cell. While inconvenient for everybody, this resolves one part of my hunger strike - but not all of it. I am grateful to medical for going out of their way to address an issue that shouldn't exist in the first place.

I declare that the foregoing is true and correct under the penalty of perjury under the laws of the United States. Executed on Thursday, December 12th, 2019.

Martin S. Gottesfeld

Exhibit 2

Attachment 1

## FCC Terre Haute

## Administrative Remedy – Informal Resolution

| Inmate Name: Gottesfeld | Register #: |
| --- | --- |
| Unit: CMU | Date Submitted: |

**Section 1: NOTICE TO INMATE** - Be advised, normally prior to filing a Request for Administrative Remedy, BP-229 (13), you must attempt to informally resolve your complaint through your Correctional Counselor.

**Section 1a:** Briefly state your specific single complaint:

**Section 1b:** Briefly state the resolution you request:

Inmate Signature:

Counselor Printed Name/Signature:

**Section 2: Department Assigned**

Date Assigned:          Date Due:

| ☐ Food Service | ☐ Unit Mgmt | ☐ Unicor | ☐ Education |
| --- | --- | --- | --- |
| ☐ Psychology | ☐ Medical | ☐ Chaplain | ☐ Recreation |
| ☐ Trust Fund | ☐ Custody | ☐ Facilities | ☐ Safety |
| ☐ ISM/Mailroom | ☐ Admin. | ☐ SIS | |

**Section 3: Department Head Response**

Issue Resolved Comments:

Issue Un-resolved Comments:

Unable to Address Issue Comments:

| Inmate Signature if Resolved: | | Date: |
| --- | --- | --- |
| Staff Signature: | | Date: |

**Section 4: Tracking**

| | BP-8 issued to inmate | BP-8 returned to Counselor | BP-9 issued to inmate | BP-9 returned to Unit Team | To Admin Remedy Clerk | Returned as Rejected |
| --- | --- | --- | --- | --- | --- | --- |
| Date | 12-10-19 | | | | | |
| Time | 1414 | | | | | |
| Staff | R. Eisele | | | | | |

THX-1330.18C

Page 7

Exhibit 3

Attachment 1

## FCC Terre Haute

## Administrative Remedy – Informal Resolution

| Inmate Name: Gottesfeld | Register #: |
|---|---|
| Unit: Cmu | Date Submitted: |

**Section 1: NOTICE TO INMATE** - Be advised, normally prior to filing a Request for Administrative Remedy, BP-229 (13), you must attempt to informally resolve your complaint through your Correctional Counselor.

**Section 1a:** Briefly state your specific single complaint:

**Section 1b:** Briefly state the resolution you request:

Inmate Signature:

Counselor Printed Name/Signature:

**Section 2: Department Assigned**

Date Assigned:                Date Due:

| ☐ Food Service | ☐ Unit Mgmt | ☐ Unicor | ☐ Education |
|---|---|---|---|
| ☐ Psychology | ☐ Medical | ☐ Chaplain | ☐ Recreation |
| ☐ Trust Fund | ☐ Custody | ☐ Facilities | ☐ Safety |
| ☐ ISM/Mailroom | ☐ Admin. | ☐ SIS | |

**Section 3: Department Head Response**

Issue Resolved Comments:

Issue Un-resolved Comments:

Unable to Address Issue Comments:

| Inmate Signature if Resolved: | Date: |
|---|---|
| Staff Signature: | Date: |

**Section 4: Tracking**

| | BP-8 issued to inmate | BP-8 returned to Counselor | BP-9 issued to inmate | BP-9 returned to Unit Team | To Admin Remedy Clerk | Returned as Rejected |
|---|---|---|---|---|---|---|
| Date | 12-11-19 | | | | | |
| Time | 1056 | | | | | |
| Staff | R-Eisele | | | | | |

THX-1330.18C                                                              Page 7

EXHIBIT 11

To: CMU Unit Team
From: Martin S. Gottesfeld (Reg. No.: 12982-104)
Date: Wednesday, December 11th, 2019, 9:10 A.M. (added 10:10 A.M.)
Subject: Preservation of Audio/Video against spoliation

Salutations Unit Team,

 I formally request the preservation of the following Audio and Video surveillance footage at FCI Terre Haute:

- FCI Terre Haute CMU SHU; Wednesday, December 11th, 2019; 9:05 A.M.; Rounds of Warden Lammer, the safety officer, and medical, and Mr. Woolsen;
- FCI Terre Haute CMU SHU; Tuesday, December 10th, 2019; 2:14 P.M.; Rounds of Ms. Eisele and discussion/issue of BP-8 to Martin S. Gottesfeld.
- FCI Terre Haute CMU Law Library, hall outside the officers' office, and CMU SHU; Monday, December 9th, 2019, 5:00 P.M.ish, entry of Lt. B. Devlin, service of incident report to Martin S. Gottesfeld, administrative confinement of Martin S. Gottesfeld, w/Gottesfeld in law library.
- FCI Terre Haute CMU SHU; Wednesday, December 11th, 2019; 10:07 A.M.; Rounds of Captain Brown.
- FCI Terre Haute CMU Law Library; Friday, December 6th, 2019, 7:20 P.M.ish; Discussion and copy-out exchange between Ms. R. Eisele and Martin S. Gottesfeld.

 I believe in good faith that the above evidence will be relevant to litigation that I will bring in U.S. District court. If there is anything else that I must do in order to preserve the above evidence against spoliation or other loss, then please let me know.

Thanks,

MJG

Martin S. Gottesfeld, pro se

- Page 1 of 1 -

Exhibit S

To: CMU Unit Team + FCI Legal Department as officers of the Court
From: Martin S. Gottesfeld (Reg. No. 12982-104)
Date: Tuesday, December 10th, 2019, 10:30 A.M., Boston Time
Subject: Request for ~~postage~~ and desk for preparation and filing of legal documents

I hereby formally request ~~postage and~~ a desk for the preparation ~~and~~ and filing of legal documents. I am currently being detained without access to a desk ~~with access to neither~~. I also need a typewriter. Please see 28 C.F.R. §§ 543.31(c) and 543.11(c)(3)(i) and (j).

Thanks,

MSG

Martin S. Gottesfeld, pro se

— Page 1 of 1 —

To: Medical
From: Martin S. Gottesfeld (Reg. No. 12982-104)
Date: Wednesday, December 11th, 2019, 8:00 A.M.

Salutations Medical Department:

  Please be advised that the only drinking water to which I have access is toxic. I have had nothing to eat or drink since Monday evening.
  My kidneys hurt.


Thanks,
MSG
Martin S. Gottesfeld

- Page 1 of 1 -

To: CMU Unit Team + FCI Legal Department as officers of the Court            Exhibit 7
From: Martin S. Gottesfeld (Reg. No.: 12982-104)
Date: Tuesday, December 10th, 2019, 10:00 A.M. Eastern Time
Subject: Request for legal call - Gottesfeld v. Hurwitz, 18-cv-10836-PGG-GWG

Salutations Unit Team and Legal Department,

I hope that you are well.

I hereby formally request a legal call to the Clerk's Office of the U.S. District Court located in the Southern District of New York at 500 Pearl St., New York, NY 10007. I make this request on an emergency basis pursuant to my pending case (Gottesfeld v. Hurwitz, et al.), 18-cv-10836-PGG-GWG, S.D.N.Y., Local Civil Rule 1.5(c)(5), and N.Y.R. Prof. Cond. 1.16(a). As officers of the Court, I believe that Legal Department personnel are ethically obligated to facilitate this request so that I can request an emergency hearing.

I am being detained with no access to potable water and no access to a properly-flushing toilet. I have had nothing to drink since Monday evening, nor have I moved my bowels. Agents of the defendants in the above-captioned case have taken steps for the defendants and "asserted a position in a matter... merely for the purpose of... maliciously injuring" me. Please see the unnumbered and untimely BP-A0288 Incident Report delivered to me on December 9th, 2019, at 5:39 P.M. by Lt. B. Devlin.

Once again, this is unconstitutional and the unit team and legal department are hereby noticed that I will move against any assertion of qualified immunity because the position asserted in the incident report is clearly frivolous and clearly a repetition of past unconstitutional conduct in retaliation against my right to petition the Court.

Thank you for your attention to this emergency.

Martin S. Gottesfeld, pro se.

- Page 1 of 1 -

