RECEIVED JAN - 6 2020 PRO SE OFFICE

United States District Court
The Southern District of New York

Martin S. Gottesfeld, pro se,
 Plaintiff
 -against-
Hugh J. Hurwitz, et al.

Case No.: 18-cv-10836-PGG-GWG

## MOTION FOR THE RECRUITMENT OF COUNSEL TO PURSUE CLASS CERTIFICATION

Plaintiff Martin S. Gottesfeld (herein "plaintiff"), acting pro se, hereby moves The Honorable Court to recruit counsel in the instant case for the purpose of pursuing the certification of plaintiff classes.

The plaintiff explicitly raised class certification in the instant complaint, Docket Entry (D.E.) 2.

The recent high-profile and suspicious death of pre-trial detainee Jeffrey Epstein inside the very same special housing unit (SHU) that is in controversy in the instant case sparked public outcry, Congressional inquiry, intense media interest, Justice Department investigations and transfers, including those of Defendant Hurwitz and a successor to Defendant Tatum, controversy in the medical community, and criminal indictments in this district against agents of the instant defendants. The Court can no longer remand detainees into the custody of these defendants and their successors and assignees to await trial at MCC while the relevant questions of detainee mistreatment are suppressed by the wanton retaliation of the instant defendants and their thus-far too-successful cover-ups carried out by blocking the communications of unrepresented incarcerated plaintiffs who bring one (1) complaint at a time in

in isolation only to find that agents of the defendants, their successors, and their parties in privity then transfer them to so-called "terrorist units," where these agents then exercise unlawful Executive content-based discretionary pre-screening of their filings with This Honorable Court, Ex Parte Hull, and then continue to retaliate viciously against them and their families, D.E. 68 and 69.

The plaintiff notes and hereby reincorporates herein by reference D.E. 99 and his filings dated Wednesday, December 18th, 2019.

Potential class members come to MCC, leave the facility, then return to the same unconstitutional conditions therein more than a decade later. These violations are repetitious and yet evade review, which This Court sees everytime the defendants moot a petition brought pursuant to 28 U.S.C. § 2241 by transferring its petitioner.

While the plaintiff is sure counsel would and hopefully will argue more thoroughly, the following is already clear.

The maximum capacity of the SHU at MCC is eighty-four (84) and the conditions in controversy therein are consistent. A stay of over one hundred one (101) days is per-se abnormal, Sandin v. Conner. Yet some people stay for years, Tellier v. Scott, while most stay weeks or less.

The potential classes are so numerous that their joinder is impracticable. Federal Rule of Civil Procedure (herein "Rule") 23(a)(1). Ascertaining their identities and contacting them will take work the plaintiff cannot do inside the walls of a communications-management unit (CMU) where the instant defendants sent the plaintiff days after publication and service of process in the instant case and where they limit the plaintiff to two (2) phone calls per week, one hundred (100) concurrent address-book entries for outbound mail, and twenty (20) stamps per week while punishing him for anything that resembles litigation-related third-party communications.

It has also become clearer that there are questions of law and fact

common to the members particular potential classes. Rule 23(a)(2). For example, have the FBOP leadership and its staff violated the Due Process rights of pre-trial detainees by intentionally exposing them to unconstitutional conditions in the MCC SHU? For a separate but overlapping class, has the FBOP and the conditions in the MCC SHU violated the Eighth Amendment rights of convicted prisoners? And what is the proper redress in each instance?

The public record of the litigation history of MCC and the instant case also make clear that the claims of the representative party are in most ways typical of the potential classes, i.e., freezing cold, rodent and insect infestations, tortious medical care, and interference with attorney collaboration and correspondence with outsiders and the media. Rule 23(a)(3).

The representative party — who has already gone far above the call of duty and demonstrated that he is of more than ordinary firmness and capability — will fairly and adequately protect the interests of the class(es) of which he is a member. Rule 23(a)(4). But he can only do so with appropriate and experienced counsel. He cannot do so pro se.

The case law demonstrates unequivocally that the prosecution of separate actions has already created inconsistent and varying adjudications that have established incompatible standards of conduct. Rule 23(b)(1)(A). And the defendants already try to apply res judicata to past judgments to dispose of new claims. Rule 23(b)(1)(B). D.E. 52 and 111.

The opposing parties acted and were negligent on grounds that apply generally to the class and injunctive relief or declaratory relief — as requested explicitly in the instant complaint (D.E. 2 § "RELIEF") — is appropriate to the classes as wholes since they had endured the same conditions in the same cells at the same time at the hands of the same defendants. Rule 23(b)(2).

3 of 4

The questions of law and fact common to class members predominate over any questions only affecting individual members. Rule 23(b)(3). It is against the class members' interest — and contrary to sound judicial economy — for unrepresented incarcerated plaintiffs to control separate actions and this is indeed likely the reason the problems at MCC have endured for decades. Rule 23(b)(3)(A). Any relevant pending litigation would be more easily consolidated into class actions than otherwise prosecuted, Rule 23(b)(3)(B), and there is no other appropriate forum, Rule 23(b)(3)(C).

For the above-stated reasons, any likely difficulties in managing class actions are far outweighed by the interests of the parties, the public, and judicial economy.

Should the defendants oppose this motion or should The Court have any questions prior to recruiting counsel, then the plaintiff requests a hearing.

Respectfully filed pursuant to the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), by mailing to The Court in an envelope bearing sufficient affixed pre-paid first-class U.S. postage and handed to Ms. J. Wheeler of the FCI Terre Haute CMU unit team, acting in her official capacity as an agent of the defendants, on Thursday, December 19th, 2019, or the first opportunity thereafter, and similarly so to be served upon counsel for the defendants when his agents deliver to me the postage and photocopies that I have ordered,

by: /s/

Martin S. Gottesfeld, pro se
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

4 of 4

Exhibit 1

Declaration of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, declare that the following is true and correct under the penalty of perjury under the laws of The United States pursuant to 28 U.S.C. § 1746(1) on this 19th day of December, 2019:

1. I am Martin S. Gottesfeld, the sole plaintiff in the case of Gottesfeld v. Hurwitz, et al., 18-cv-10836-PGG-GWG (hereafter "the case"), currently pending before The Honorable U.S. District Court for the Southern District of New York (hereafter "The Court").

2. This afternoon I received for the first time docket entry (D.E.) 111 in the case, i.e. the memorandum filed by the defendants in the case (hereafter "the defendants") in reply to my memorandum in opposition (D.E. 101) to the defendants' earlier motion to dismiss (D.E. 51-52) my complaint (D.E. 2).

3. The certificate of service for the defendants' reply is clearly dated—in multiple places—"[Wednesday,] December 11, 2019." D.E. 111-1.

4. The envelope bearing to me the defendants' reply, however, was clearly postmarked as first-class mail by a Pitney Bowes (non-U.S.P.S.) machine on Thursday, December 12th, 2019.

5. As usual, the envelope from The U.S. attorney's office was opened and its contents read outside my presence.

6. There was no tracking label and based upon my training and experience as a CMU prisoner, agents operating under both the defendants in the case and their counsel (herein the "defendants' agents") left pencil markings on the envelope that are meant to lead me to believe that it was received yesterday by the FCI Terre Haute mail room, i.e. on Wednesday, December 18th, 2019.

7. Once in the custody of The U.S. Postal Service, manilla envelopes do not usually take six (6) days for delivery between New York City and Terre

1 of 5

Haute, Indiana — as anybody on the outside can see using the tracking numbers from my recent filings — however, it is possible in this instance given the high volume of holiday packages at this time.

8. I also note, though, that today I received an envelope my wife sent on Monday, December 9th, 2019, by Priority Mail 2-day®, marked by The Postal Service, "EXPECTED DELIVERY DAY 12/12/19," but not marked received by the FCI Terre Haute mail room until yesterday, Wednesday, December 18th, 2019, ~~as marked on the envelope.~~

9. The envelope from my wife had U.S.P.S. tracking number 9505 5124 4641 9343 2796 67 and it shall be possible to check the (in)accuracy of the pencil-marked received dates using this tracking number and comparing the delivery date in the U.S.P.S. system to Wednesday, December 18th, 2019, as marked on the envelope.

10. I will attempt to preserve these envelopes as evidence and prevent their loss through spoliation by ~~the agents~~ defendants' agents.

11. In any event, the defendants' reply to my opposition to their motion to dismiss my complaint (herein the "defendants' reply") is meritless; and it is misleading.

12. Nonetheless, the defendants' reply attempts for the first time to raise new matters of both law and fact; it cites to previously-uncited and unpublished out-of-district decisions that aren't precedential and seeks to admit new documents, but I've never before had an opportunity to challenge any of these new matters, which I would like to do because I believe in good faith not one of them is dispositive of a single one (1) of my claims.

13. I am, however, unable to file a proper and specific motion for leave to file a sur-reply due to the previously-cited and ongoing retaliation and interference carried out with impunity by the defendants' agents.

14. The defendants' agents deprive me of all access to my complaint (D.E. 2) and their motion to dismiss (D.E. 51-52).

15. I am now entering the eleventh (11th) day of my new hunger strike, protesting the ongoing retaliation by the defendants, their counsel, and their collective agents, who, among other things since I filed the case, held me in SHUs without hearings or delivering to me written orders for an additional and subsequent forty-one (41) days from Friday, February 15th, 2019, through Monday, April 1st, 2019; designated me as one of under one hundred (100) prisoners held in a CMU in violation of my right to Due Process, Aref v. Lynch, 833 F.3d 242 (D.C. Cir. 2016); sabotaged my direct appeal; opened nearly one hundred (100) confidential letters to me from attorneys and courts outside of my presence, read them, and preserved them digitally; punished me with untimely and unnumbered incident reports that are manifestly unconstitutional; transferred me very far from my home for contrived and unconstitutional "reasons;" prevented me from publishing for nearly a year; terrorized my family, which is comprised of non-parties to the case; deprived me of contact visits — and indeed all direct two-(2)-way communication with my eighty-nine-(89)-year-old mother and my wife who need me; and put me in a facility where there was recently an ISIS-inspired near-beheading and where I am mixed with prisoners far outside my custody level — all of which The Court has tolerated openly while many journalists and much of the public watch, horrified at this spectacle, as those in positions of authority dodge accountability in the suit that I filed, "ashing the court to force MCC NY to respect human dignity, the First Amendment, federal regulations, and other human and civil rights" (D.E. 101-4 at 6 ¶ 3), months before The Court remanded Jeffrey Epstein into custody and he died in the very same SHU.

16. And now the defendants' agents deny me a legal call to The Clerk of The Court so that I cannot request a hearing.

17. In contrast, medical staff, who have learned of my previous one-hundred-(100)-day hunger strike, thus far continue to provide me potable

3 of 5

drinking water and I am grateful because I ~~have in~~ do not and I have never wanted to die or damage myself permanently.

18. Yesterday, the defendants' agents replaced every mattress in the FCI Terre Haute CMU, but this was only after they acknowledged to me that they placed in the mail (and therefore read) my <u>EMERGENCY MOTION FOR HEARING AND ORDER REQUIRING COUNSEL FOR THE DEFENDANTS TO SHOW CAUSE FOR VIOLATIONS OF LOC. CIV. R. 1.5(b)(5) AND NEW YORK R. PROF. COND. 1.16(a)</u>, mailed and filed pursuant to the prison-mailbox rule of <u>Houston v. Lack</u>, 487 U.S. 266 (1988), on Thursday, December 12th, 2019, which would include <u>Exhibit 1</u> & 52 thereto.

19. I overheard the defendants' agents then talking about throwing the old mattresses in the dumpster, which to me sounded like destruction of evidence because for some time now I and others have asserted Eighth Amendment claims based upon their inadequacy and unhygenic condition.

20. For the first time in a long time - and if only very begrudgingly - the FBOP is providing me an adequate sleep surface, but I still have no desk upon which to write and I quickly gained other problems. <u>Exhibit 2</u>.

21. Through no fault of my own, the defendants' agents skipped me—and only me—during yesterday's weekly commissary delivery.

22. I am running out of stamps, ink, and lined paper but I will serve process of this filing when I can.

23. Today off-colored brown water started leaking into my cell through the corroded bottom of my sink/toilet and it further stained the already-thoroughly-disgusting floor.

24. The color of the leaking water indicates contamination; just as the objective results of the mathematics indicates prosecutorial magistrate-judge shopping in Boston (D.E. <u>101</u> at 28-31).

25. With water sometimes leaking out, other times other contamination is likely seeping in, and this is perhaps the source of the toxins in the drinking

4 of 5

water in this SHU; it is also a potential source of infectious disease.

26. After potential class member Demetrius Hill and I began helping each other with litigation by talking at the doors to our cells, today agents of the defendants moved Mr. Hill to the main SHU at FCI Terre Haute, leaving me now alone in the CMU SHU.

27. The supposed reason for moving Mr. Hill was to get him ready for transfer, but these agents already lied about the relevant circumstances before the Honorable U.S. District Court for The Southern District of Indiana, and Mr. Hill and I believe the real reason was to keep us alone so we'd break easier.

28. It is obvious to me that a person of ordinary firmness would not have kept litigating the case as I did all throughout the events of this year and I believe this is precisely the motive driving the defendants, their counsel, and their collective agents – to harass and maliciously injure me, my family, and my publishers until I cannot or will not maintain the suit.

29. In a further apparent attempt to lower my morale, everyone else in the CMU was given once-per-year FBOP Christmas bags but again the defendants' agents skipped me and I am now forced in the SHU to overhear others outside enjoying their Christmas bags.

I declare that the foregoing is true and correct under the penalty of perjury under the laws of The United States. Executed on Thursday, December 20th, 2019.

by: /s/ G
Martin S. Gottesfeld

5 of 5

Thursday, December 19th, 2019
<u>Houston v. Lack</u>, 487 U.S. 266
(1988)

RECEIVED
JAN - 6 2020
PRO SE OFFICE

U.S. District Court
Pro Se Clerk's Office
500 Pearl St.
New York, NY 10007

SDNY P3
KM3

**NAME:** Martin S. Gottesfeld
**NUMBER:** 23332-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808