UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Martin S. Gottesfeld, pro se,
Plaintiff
- against -
Hugh J. Hurwitz, et al.,
Defendants

Case No.: 18-cv-10836-PGG-OMC

RECEIVED

JAN 15 2020

PRO SE OFFICE

## MOTION FOR SANCTIONS (FED. R. CIV. P. 11(c) AND
## LOC. CIV. R. 1.5(b)(5))

Plaintiff Martin S. Gottesfeld (herein "plaintiff"), acting pro se,
hereby moves The Honorable Court for an order sanctioning the defendants'
counsel, Assistant United States Attorney Alexander J. Hogan (herein
"Assistant United States Attorney Hogan"), by:

1) suspending Assistant United States Attorney Hogan's privilege to
practice before The Honorable Court for nine (9) months;

2) requiring Assistant United States Attorney Hogan to reimburse the
plaintiff for the unnecessary expenses thus far incurred by the relevant
misconduct, estimated currently at five hundred dollars ($500);

3) ordering Assistant United States Attorney Hogan immediately to make
all required disclosures in the instant case;

4) ordering Assistant United States Attorney Hogan immediately to take
responsibility for the sanctioned misconduct and to set straight the record of
the instant case;

5) requiring Assistant United States Attorney Hogan to include a copy of
The Court's order of sanctions with all future notices of appearance he
thereafter files in The Southern District of New York; and

6) referring the misconduct to the relevant complaint committee pursuant
to Local Civil Rule (Loc. Civ. R.) 1.5(f).

The plaintiff brings this motion for sanctions and requests the above

USDC S[...]
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-15-20

remedies pursuant to the below-detailed itemized violations of The Federal Rules of Civil Procedure (Fed. R. Civ. P.) 11(c)(1), 11(c)(2), 11(c)(5), 11(b)(1), 11(b)(2), 11(b)(3), 11(b)(4), 5(b)(1), and 5(b)(2)(C); Loc. Civ. R. 1.5(b)(5) and 1.5(f); and either The New York Rules of Professional Conduct (N.Y. R. Prof. Cond.) 1.1(a) and 1.3(a), or N.Y. R. Prof. Cond. 1.16(a), 3.1(a), 3.1(b)(2), 3.2, 3.3(a)(1), 3.3(a)(2), 3.4(a)(1), 3.4(a)(3), 3.4(a)(4), 3.4(a)(6), and 8.4(c), or all of the above N.Y. R. Prof. Cond.

In support of this motion, the plaintiff herewith provides Exhibit 1 hereto, Martin S. Gottesfeld, Declaration In Support of Motion For Sanctions (Monday, November 25th, 2019); Exhibit 2 hereto, photocopied envelopes of privileged correspondence that was unlawfully and preemptively opened and digitally preserved outside of the plaintiff's presence prior to delivery to the plaintiff; and Exhibit 3 hereto, proof of service of this motion and the exhibits hereto upon Assistant United States Attorney Hogan, effective on Monday, November 25th, 2019, pursuant to the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988) and Fed. R. Civ. P. 5(b)(2)(C), 5(b)(2)(B)(11) and 11(c)(2).

The plaintiff hereby moves The Honorable Court pursuant to Federal Rule of Evidence 201(c)(2) to take mandatory judicial notice of Exhibit 1 hereto, Exhibit 2 hereto, and Exhibit 3 hereto.

As The Court is no doubt aware, Loc. Civ. R. 1.5(b)(5) makes violations of The New York State Rules of Professional Conduct actionable in the district under Fed. R. Civ. P. 11(c). "Indeed, Civil Rule 1.5 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds those practicing before this court to the New York State Lawyer's Code of Professional Responsibility, as adopted by the State's Appellate Divisions." Richards v. City of New York, 2000 U.S. Dist. LEXIS 907, 97 Civ. 7990 (MBM)

(S.D.N.Y. February 3, 2000) at *12-14. "[S]ee also Local Civ. Rule 1.5(b)(5) (violations of the New York State Rules of Professional Conduct are grounds for discipline, including suspension)." United States v. Parse, 789 F.3d 83, 89 (2d Cir. 2015) (emphasis in original).

Assistant United States Attorney Hogan, as counsel for the instant defendants, had "an ethical obligation to 'disclose to the tribunal controlling legal authorit[ies] known to [him,] the lawyer[,] to be directly adverse to the position of the [defendants, his] client[s]." Mayas v. 490 Habitat, Inc., 2019 U.S. Dist. LEXIS 35270, 18-CV-1427 (SJF) (GRB) (S.D.N.Y. March 4, 2019) at *8 n. 5 (alterations[] added), conferring Vill. of Freeport v. Barella, 814 F.3d 594, 609, n. 60 (2d Cir. 2016) and quoting N.Y. R. Prof. Cond. 3.3(a)(2).

Yet, Assistant United States Attorney Hogan failed to disclose various controlling legal authorities that he either knew or should have known to be adverse to his clients' positions. Please see Exhibit 1 hereto at 1 ¶¶ 4-7 and at 2 ¶¶ 18-22.

Assistant United States Attorney Hogan omitted these controlling legal authorities even while he responded to filings that should have prompted him to disclose them. For example, D.E. 59 at 1 states:

[T]he defendants unexpectedly filed dozens of unreported decisions. As such, the process of distinguishing the instant case from those provided by the defendants as unreported is slow and manual, since published, well-accepted, and binding precedential decisions will not bear citation to the plethora of unreported decisions provided by the defendants.
The plaintiff wishes to state explicitly that he believes the defendants' motion to dismiss is meritless and he does look forward to filing his response.
Given the difficulties and delays enumerated in the materials referenced above...

Assistant United States Attorney Hogan, in filing D.E. 61 in response to the above, made no such disclosure of the above-referenced directly-adverse

"published, well-accepted, and binding precedential decisions" despite the plaintiff's citation to the resultant "difficulties and delays" that Assistant United States Attorney Hogan knew or should have known arose from his continued failure to disclose them and the explicit allegation that the arguments Assistant United States Attorney Hogan proffered in <u>D.E. 51 and D.E. 52</u> are "meritless."

For one example, Assistant United States Attorney Hogan argued <u>inter alia</u> in <u>D.E. 52</u> at 28 that <u>Sandin v. Conner</u>, 515 U.S. 472 (1995) applies to the instant case while he withheld that The United States Court of Appeals for The Second Circuit decided directly to the contrary. "<u>Sandin</u> does not apply to pretrial detainees." <u>Benjamin v. Fraser</u>, 264 F.3d 175, 188 (2d Cir. 2001) (collecting cases).

Assistant United States Attorney Hogan nonetheless argued that under <u>Sandin</u>, the length of the plaintiff's pre-trial administrative detention--some eighty-one (81) consecutive days--was in and of itself insufficient to trigger a Due Process liberty interest. <u>D.E. 52</u> at 28.

Assistant United States Attorney Hogan thus ran afoul of Fed. R. Civ. P. <u>11(b)(2)</u> by misapplying <u>Sandin</u> while withholding the adverse decision in <u>Benjamin</u> because his legal contention to apply <u>Sandin</u> to a pre-trial detainee was unwarranted by existing law and supported only by frivolous arguments. <u>Fed. R. Civ. P. 11(b)</u> states in part:

> By presenting to the court a pleading, written motion, or other paper---
> whether by signing, filing, submitting, or later advocating it---an attorney
> or unrepresented party certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances:... (2) the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new law.

Assistant United States Attorney Hogan made no such argument--frivolous or otherwise--"for extending" <u>Sandin</u> nor for "modifying" or "reversing" the

the directly-adverse holding in Benjamin. His argument to apply Sandin without
abrogating Benjamin was thus frivolous. Please see Black's Law Dictionary 739
(9th ed. 2009) (bold and emphasis in original, alteration[] added);

> frivolous, adj. (15[th century]) Lacking a legal basis or legal merit;
> not serious; not reasonably purposeful <a frivolous
> claim).

Assistant United States Attorney Hogan therein also violated N.Y. R.
Prof. Cond. 3.1(a), "A lawyer shall not bring or defend a proceeding, or
assert or controvert an issue therein, unless there is a basis in law and fact
for doing so that is not frivolous." Mena v. Heath, 2016 U.S. Dist. LEXIS
71655, 11cv3681-ALC-FM (S.D.N.Y. May 31, 2016) at *40 quoting N.Y. R. Prof.
Cond. 3.1(a) (from N.Y. Comp. Codes R. & Regs. tit. 22, § 1200 (2013)).

In misrepresenting Sandin in D.E. 32 while also omitting Benjamin,
Assistant United States Attorney Hogan similarly violated N.Y. R. Prof. Cond.
1.16(a) because he misrepresented the law in an inaccurate, dishonest, and
deceitful manner and made no "good faith argument for an extension,
modification, or reversal of existing law." Lightray Imaging Inc. v. Tarek
Invs. Ltd. (In re Peak Hotels & Resorts Grp. Ltd.), 2019 U.S. Dist. LEXIS
55978, District Court Appeal No.: 18 Civ. 384 (ER) (S.D.N.Y. March 31, 2019)
at *11 n. 2 quoting N.Y. R. Prof. Cond. 1.16(a)(2).

Ignorance and incompetence are no excuses for Assistant United States
Attorney Hogan because of his obligations under N.Y. R. Prof. Cond. 1.1(a) and
1.3(a). "A lawyer shall provide competent representation to a client.
Competent representation requires the legal knowledge, skill, thoroughness and
preparation reasonably necessary for the representation." In re Harmon, 2010
Bankr. LEXIS 3345, Case No.: 10-74390-ast, Chapter 13 (E.D.N.Y. September 22,
2010) quoting N.Y. R. Prof. Cond. 1.1(a). "A lawyer shall act with reasonable
diligence and promptness in representing a client." Id. quoting N.Y. R. Prof.

Cond. 1.3(a).

Any argument that Assistant United States Attorney Hogan did not violate Fed. R. Civ. P. 11(b)(2) and N.Y. R. Prof. Cond. 1.16(a), 3.1(a), 3.3(a)(1), 3.3(a)(2), and 8.4(c) is thus a stipulation that he instead violated N.Y. R. Prof. Cond. 1.1(a) and 1.3(a). Yet either way, The Court must sanction Assistant United States Attorney Hogan or risk encouraging additional such misconduct in the future. Moreover, Assistant United States Attorney Hogan unfairly prejudiced the plaintiff through the above misconduct by delaying the adjudication of the instant case and forcing the plaintiff to work needlessly to refute frivolous arguments that Assistant United States Attorney Hogan knew or should have known to be meritless in the first place, i.e. even before he filed them. Please see Exhibit 1 hereto at 2 ¶¶ 10-12.

Throughout this delay, the plaintiff continued to be harmed by the intervening actions of Assistant United States Attorney Hogan and his clients. Exhibit 1 hereto at 3 ¶¶ 18-33. The plaintiff is thus entitled to relief.

Assistant United States Attorney Hogan also violated the above rules by failing to cite Allah v. Milling, 876 F.3d 48 (2d Cir. 2017), in which The United States Court of Appeals for The Second Circuit found; without reliance on the length, atypicality, or harshness of confinement; that the placement of a pre-trial detainee in administrative segregation violated the detainee's Due Process rights.

Assistant United States Attorney Hogan further argued, inter alia, that the conditions of confinement detailed in the instant complaint "do not amount to atypically harsh conditions." D.E. 52 at 29. Yet, he withheld the directly-contradictory holdings of The United States Court of Appeals for The Second Circuit in Corselli v. Coughlin, 842 F.2d 23 (2d Cir. 1988); Welch v. Bartlett, 196 F.3d 389 (2d Cir. 1999); Gaston v. Coughlin, 249 F.3d 156 (2d

Cir. 2001); and Palmer v. Richards, 364 F.3d 60 (2d Cir. 2004).

Perhaps most telling of all, however, Assistant United States Attorney Hogan omitted citation to Tellier v. Fields, 280 F.3d 69 (2d Cir. 2000), wherein The United States Court of Appeals for The Second Circuit upheld This Court's prior explicit rejection of many of the same losing and now-frivolous arguments that Assistant United States Attorney Hogan proffered on behalf of the instant defendants, including that "Plaintiff's Constitutional Rights Were Not Violated." D.E. 52 at 27.

Assistant United States Attorney Hogan, inter alia, also falsely and frivolously averred that the plaintiff moved for an extension "without further elaboration on what he was unable to receive that [was] preventing him from filing his opposition." D.E. 86. Yet, the plaintiff had previously filed exactly such a list. D.E. 81 at 5. Please see also Exhibit 1 hereto at 1 ¶ 8.

Assistant United States Attorney Hogan thus made a false factual contention that could never have evidentiary support and he thereby violated Fed. R. Civ. P. 11(b)(3), which requires, "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Assistant United States Attorney Hogan's multiple false claims similarly violated N.Y. R. Prof. Cond. 3.3(a)(1), "A lawyer shall not knowingly make a false statement of fact to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Treasure Chest Themed Value Mail, Inc. v. David Morris Int'l, Inc., 2019 U.S. Dist. LEXIS 76812, 17 Civ 1 (NRB) (S.D.N.Y. May 6, 1999) at *5 n. 2 quoting N.Y. R. Prof. Cond. 3.3(a)(1).

The bogus denial proffered by Assistant United States Attorney Hogan

against the irrefutable fact that the plaintiff had previously provided an explicit list of "what he was unable to receive that [was] preventing him from filing his opposition" broke Fed. R. Civ. P. 11(b)(4) as well, which requires, "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Assistant United States Attorney Hogan broke N.Y. R. Prof. Cond. 8.4(c) too. "A lawyer or law firm shall not... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Bacote v. Riverbay Corp., 2017 U.S. Dist. LEXIS 35098, 16 Civ. 1599 (GBD) (AJP) (S.D.N.Y. March 10, 2017) at *26 quoting N.Y. R. Prof. Cond. 8.4(c).

It is further worth noting that Assistant United States Attorney Hogan claimed falsely in D.E. 88 that the plaintiff had violated The Court's scheduling order. In reality though, agents of Assistant United States Attorney Hogan had delayed the mailing of the plaintiff's motions for extensions, which were nonetheless timely due to the prison-mailbox rule arising from the Supreme Court decision of Houston v. Lack, 487 U.S. 266 (1988). Exhibit 1 at 2 ¶ 9. Assistant United States Attorney Hogan, however, omitted citation to Houston v. Lack in D.E. 88 even though--or perhaps precisely because--as a legal authority, Houston v. Lack is binding and directly adverse to his assertions therein.

Assistant United States Attorney Hogan's omission of Houston v. Lack from D.E. 88 is another violation of either N.Y. R. Prof. Cond. 1.16(a)(2), 3.1(a), 3.3(a)(1), 3.3(a)(2), and 8.4(c); as well as Fed. R. Civ. P. 11(b)(2) and 11(b)(3); or of N.Y. R. Prof. Cond. 1.1(a) and 1.3(a). Please see Exhibit 1 hereto at 2 ¶ 9.

Before Assistant United States Attorney Hogan violated Fed. R. Civ. P.

11(b)(2) and 11(b)(3) and N.Y. R. Prof. Cond. 3.3(a)(1) and 8.4(c) with his dishonest and deceitful misrepresentations about the plaintiff's timely and properly-annotated motions for extensions—the filings of which were only necessitated by the actions and omissions of Assistant United States Attorney Hogan, his clients, and their collective agents--Assistant United States Attorney Hogan already broke these same rules when he filed D.E. 52-1 and D.E. 52-2. Please see the plaintiff's November 18th, 2019, memorandum of law in opposition to the defendants' motion to dismiss at pages 63-64 and 73. The eight-(8)-day gap between D.E. 52-1, as therein dated, and D.E. 52-2, as therein dated, is evidence of the dishonest and deceitful misrepresentation that Assistant United States Attorney Hogan tried to perpetrate upon This Court. Given Exhibit 17 to the plaintiff's memorandum in opposition to the motion to dismiss, why else would D.E. 52-2 have been dated eight (8) days before D.E. 52-1? No matter the answer, Assistant United States Attorney Hogan presented D.E. 52-1 to This Court along with the unequivocal misrepresentation therein that D.E. 52-2 was "true and correct" on May 16th, 2019. Yet, the aforementioned Exhibit 17 to the plaintiff's memorandum in opposition unequivocally proves that D.E. 52-2 was neither true nor correct as of eight (8) days earlier on May 8th, 2019.

Assistant United States Attorney Hogan thus violated N.Y. R. Prof. Cond. 3.4(a)(4). "[A] lawyer shall not... knowingly use perjured testimony or false evidence." Otto v. Hearst Commns., Inc., 2019 U.S. Dist. LEXIS 35051, 17-CV-4712 (GHW) (JLC) (S.D.N.Y. February 21, 2019) at *31-32 quoting N.Y. R. Prof. Cond. 3.4(a)(4).

Of course, suborning perjury is also illegal. 18 U.S.C. § 1622. Therefore, Assistant United States Attorney Hogan violated N.Y. R. Prof. Cond. 3.4(a)(6) by filing D.E. 52-1 and D.E. 52-2. "A lawyer shall not... knowingly

engage in other illegal conduct or conduct contrary to these Rules." Gelter
v. Brizinova (In re Brizinova), 565 B.R. 488, 501 (E.D.N.Y. 2017) quoting N.Y.
R. Prof. Cond. 3.4(a)(6).

Assistant United States Attorney Hogan is further breaking N.Y. R. Prof.
Cond. 3.4(a)(6) by taking part in his clients' unlawful conspiracy to deprive
the plaintiff of his civil rights in flagrant violation of 18 U.S.C. § 241 and
by unscrupulously defending and hiding said conspiracy. Please see Exhibit 1
hereto at 2 ¶¶ 18-33.

Indeed, Exhibit 2 to the plaintiff's memorandum in opposition shows that
on February 3rd, 2019, the plaintiff put the instant case on the front page of
The Intercept.

The docket entry text for docket entries 23-26 shows that on February
11th, 2019, all of the defendants and Assistant United States Attorney Hogan
were served the instant complaint. Assistant United States Attorney Hogan has
claimed otherwise, but given the above-detailed misconduct, the plaintiff
trusts the docket as it stands and so should The Honorable Court. Further,
Assistant United States Attorney Hogan has never moved to amend the docket,
which is the official record. "A docket is a court's official record of what
occurs in a case." Leonard v. Lacy, 88 F.3d 181, 185 (2d Cir. 1996).

Four (4) days after service, as shown in D.E. 13, the defendants and
Assistant United States Attorney Hogan unlawfully moved the plaintiff to the
SHU at MDC Brooklyn and designated him to a "communications-management unit,"
or "CMU," with no prior administrative hearings or written administrative
orders, Exhibit 1 hereto at 4 ¶¶ 32-33. This violated the same federal
regulations noted in the instant case as well as the plaintiff's Due Process
rights, 28 C.F.R. §§ 541.25(a) and 541.26. Aref v. Lynch, 833 F.3d 242 (D.C.

Cir. 2016).

Through the above unlawful actions, Assistant United States Attorney Hogan and his clients needlessly delayed and added expense to the instant litigation. They continued their obstruction for the malicious purpose of harassing and injuring the plaintiff, his family, and his team even after the plaintiff's explicit notification in D.E. 59 at 1 and other pleadings. Assistant United States Attorney Hogan is thus violating on an ongoing basis Fed. R. Civ. P. 11(b)(1) and N.Y. R. Prof. Cond. 1.16(a)(1), 3.1(b)(2), and 3.2.

Assistant United States Attorney Hogan is bringing the above untrue, frivolous, and deceitful claims for the "improper purpose" of "harass[ing], caus[ing] unnecessary delay, or needlessly increas[ing] the cost of litigation." Fed. R. Civ. P. 11(b)(1).

"A lawyer shall not accept employment on behalf of a person if the lawyer knows or reasonably should know that such person wishes to: (1) bring a legal action, conduct a defense, or assert a position in a matter, or otherwise have steps taken for such person, merely for the purpose of harassing or maliciously injuring any person." Lightray Imaging Inc. at *11 n. 2 quoting N.Y. R. Prof. Cond. 1.16(a). "[I]n representing a client, a lawyer shall not use means that have no substantial purpose other than to delay or prolong the resolution of litigation, in violation of Rule 3.2, or serves merely to harass or maliciously injure another" person. Brizinova at 499 quoting N.Y. R. Prof. Cond. 3.1(b)(2).

These violations call into question whether Assistant United States Attorney Hogan is meeting his obligations under N.Y. R. Prof. Cond. 3.4(a)(1) and 3.4(a)(3). "[A] lawyer shall not... suppress any evidence that the lawyer

or the client has a legal obligation to produce." Otto at *31 quoting N.Y. R. Prof. Cond. 3.4(a)(1). Similarly, Assistant United States Attorney may not "conceal or knowingly fail to disclose that which the lawyer is required by law to reveal." Id. quoting N.Y. R. Prof. Cond. 3.4(a)(3). Please see also the plaintiff's previously-filed CLAIM FOR MANDATORY JUDICIAL NOTICE, FREV 201(c)(2), BY AFFIDAVIT, Request for Admission number 28, wherein the instant defendants admitted that they have in their custody and control further documents validating the plaintiff's claims.

The plaintiff hereby moves The Honorable Court to rebuke the above misconduct by Assistant United States Attorney Hogan and to issue a six-(6)-point order as above described. The plaintiff asks that Assistant United States Attorney Hogan lose the same amount of time from his pursuits--nine (9) months--that his misconduct took from the plaintiff. Please see Exhibit 1 at 3 ¶ 28. This is a modest sanction given that in addition to the plaintiff's lost publications and needless work and delay, Assistant United States Attorney Hogan's misconduct knowingly led to the plaintiff unnecessarily and unlawfully spending February 15th, 2019, through March 31st, 2019, in solitary and small-group confinement.

Should The Honorable Court wish to see receipts validating the costs incurred, then the plaintiff can certainly provide them. The plaintiff believes that five hundred dollars ($500) is a low estimate and that an assiduous tally would result in an exact figure that is considerably higher.

Assistant United States Attorney Hogan should, of course, take responsibility for the above misconduct, set straight the record of the instant case, and make any required disclosures absent any explicit mandate by The Honorable Court. By issuing such an order, therefore, The Court would

merely help assure the correction of that which never should have gone awry in the first place.

Requiring Assistant United States Attorney Hogan to include a copy of The Court's order of sanctions with all future notices of appearance he files in The Southern District of New York is a prudent and necessary means of ensuring his future compliance with This Court's rules, indepedent of his own voluntary choices. By ensuring that all future judicial officers in the district before whom Assistant United States Attorney Hogan later appears and all relevant litigating parties learn of the misconduct in this case, This Court would deter future misconduct and help ensure that fair notice is given to judicial officers and opposition counsel so that they can be on guard against it.

Finally, referral of this misconduct pursuant to <u>Loc. Civ. R. 1.5(f)</u> is surely prudent. This Court lacks the authority to do all that the grievance committee can do. Given the instant events, further investigations of Assistant United States Attorney Hogan's conduct in other cases before other judicial officers in the district are prudent. Such investigations are for the committee to conduct, but it may only do so upon referral.

The Court and the unrepresented incarcerated plaintiff rely on sworn assistant United States attorneys, including Assistant United States Attorney Hogan, to play their vital role in the proper administration of justice. They must not be allowed to stray or the nation suffers as a whole. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all... As such, he is in a peculiar and very definite manner a servant of the law." <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935) (internal quotation marks and citation omitted).

"The United States wins its point whenever justice is done its citizens

in the courts." Brady v. Maryland, 373 U.S. 83 (1963). The United States would

surely lose its point should Assistant United States Attorney Hogan continue

the above misconduct.

Moreover, "justice must satisfy the appearance of justice." Offutt v.

United States, 348 U.S. 11, 14 (1954). There would be no justice, apparent or

otherwise, if such misconduct is tolerated openly.

The plaintiff notes Exhibit 1 hereto at 4 ¶¶ 36-37 and his rights under

Castro v. United States, 540 U.S. 375 (2003).

Respectfully mailed and filed pursuant to the prison-mailbox rule of

Houston v. Lack on Thursday, December 19th, 2019, or the first opportunity

thereafter in an envelope bearing sufficient affixed pre-paid first-class U.S.

postage and U.S. Postal Service tracking number 9114 9023 0722 4291 7997 15,

handed to Ms. J. Wheeler of the FCI Terre Haute CMU Unit Team, acting in her

official capacity as an agent of the defendants and of Assistant United States

Attorney Hogan,

by:

Martin S. Gottesfeld, pro se
Federal Registration Number: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

## CERTIFICATE OF SERVICE

I, Martin S. Gottesfeld, pro se, hereby certify that on Monday, November 25th, 2019, I mailed a copy of the foregoing document to counsel for the defendants in the above-captioned case pursuant to Houston v. Lack, 487 U.S. 266 (1988) and Fed. R. Civ. P. 11(c)(2), Fed. R. Civ. P. 5(b)(1) and 5(b)(2)(C), by handing said copy in an envelope bearing sufficient affixed pre-paid first-class U.S. postage to Ms. J. Wheeler of the FCI Terre Haute CMU unit team for mailing in her official capacity as an agent of the defendants and their counsel in the above-captioned case,

by _____

Martin S. Gottesfeld, pro se

Declaration In Support of Motion For Sanctions:

I, Martin S. Gottesfeld, hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 25th day of November, 2019, and pursuant to 28 U.S.C. § 1746(1) I hereby declare that the following is true and correct under penalty of perjury under the laws of the United States:

1. My name is Martin S. Gottesfeld and I am the sole plaintiff in the case of Gottesfeld v. Hurwitz, et al., 18-cv-10836-PGG-GWG (hereafter "the case"), currently pending before The Honorable United States District Court for The Southern District of New York (hereafter "The Court").

2. Counsel for the defendants in the case is Assistant United States Attorney Alexander J. Hogan (herein also "Assistant United States Attorney Hogan").

3. Like all assistant United States attorneys, Assistant United States Attorney Hogan is a sworn public official and an officer of The Court.

4. Assistant United States Attorney Hogan        filed as docket entry (D.E.) fifty-one (51) in the case a motion to dismiss along with D.E. fifty-two (52), a memorandum of law in support thereof (hereafter collectively also the "motion to dismiss").

5. Assistant United States Attorney Hogan intentionally, or incompetently, or both intentionally and incompetently withheld from the motion to dismiss controlling legal authorities that are directly adverse to the position of his clients and that were either known to him or that should have been known to him and that he had a duty to discover prior to filing, specifically including, but in no way limited to the following: Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001); Corselli v. Coughlin, 842 F.2d 23 (2d Cir. 1988); Allah v. Milling, 867 F.3d 48 (2d Cir. 2017); Tellier v. Fields, 280 F.3d 69 (2d Cir. 2000); Gaston v. Coughlin, 249 F.3d 156 (2d Cir. 2001); Palmer v. Richards, 364 F.3d 60 (2d Cir. 2004); Welch v. Bartlett, 196 F.3d 389 (2d Cir. 1999); Fed. R. Crim. P. 18 and 46(h)(1); and Corr. Servs. Corp. v. Malesko, 534 U.S. 61 (2001).

6. At the same time that Assistant United States Attorney Hogan withheld from the motion to dismiss the above directly-adverse and controlling legal authorities, Assistant United States Attorney Hogan frivolously and meritlessly misapplied the inapplicable Supreme Court decision of Sandin v. Conner, 515 U.S. 472 (1995), despite the explicit and binding admonishment by The United States Court of Appeals for The Second Circuit that "Sandin does not apply to pretrial detainees." Please see D.E. 52 at 28 ("1. Confinement in the SHU") and please cf. Benjamin v. Fraser, 264 F.3d 175, 188 (2d Cir. 2001) (collecting cases) ("Sandin does not apply to pretrial detainees").

7. In misapplying Sandin while omitting Benjamin, Assistant United States Attorney Hogan made no "good faith argument for an extension, modification, or reversal of" the existing law that "Sandin does not apply to pretrial detainees," but he instead dishonestly, deceitfully, and inaccurately misrepresented the law as if Sandin does apply to pre-trial detainees and The Second Circuit never ruled otherwise.

8. Assistant United States Attorney Hogan filed D.E. 86 in the case, wherein he claimed falsely that I moved for an extension "without further elaboration on what" I "was unable to receive that" was "preventing" me "from

filing" my "opposition," when in reality I had filed exactly such a list in
D.E. 81 at 5. Please see D.E. 86 and please cf. D.E. 81 at 5.

9. Assistant United States Attorney Hogan filed D.E. 88 in the case,
wherein he falsely averred that I violated The Court's scheduling order when I
had not done so. Please see D.E. 88 and please cf. Houston v. Lack, 487 U.S.
266 (1988) and my Thursday, November 21st, 2019, letter-reply to D.E. 88
addressed to The Honorable United States District Court Judge Paul G.
Gardephe.

10. I was forced to deplete substantial financial resources to refute the
frivolous and meritless arguments that Assistant United States Attorney Hogan
proferred. These financial resources were required to purchase typewriter
ribbons, typewriter eraser ribbons, TRULINCS fees, U.S. postage, stationery,
and photocopies that I estimate cost me five hundred dollars ($500).

11. The frivolous and meritless arguments were employed by Assistant
United States Attorney Hogan to needlessly delay and add expense to my
litigation of the case.

12. By the time this declaration is filed with The Court, more than six
(6) months will have elapsed since Assistant United States Attorney Hogan
filed the motion to dismiss and this entire period of delay is attributable to
the frivolous arguments he put forth therein.

13. Assistant United States Attorney Hogan requested permission on March
21st, 2019, to provide information ex parte to The Court in D.E. 19 at 1 n. 2.

14. The Court granted permission to Assistant United States Attorney
Hogan in D.E. 20, entered on March 21st, 2019, to file the above-requested
information ex parte; however nowhere did The Court authorize Assistant United
States Attorney Hogan to submit anything entirely off the record.

15. Assistant United States Attorney Hogan nonetheless submitted a March
21st, 2019, letter to The Court that was entirely outside the record of the
case.

16. Assistant United States Attorney Hogan referred in the past tense to
"the Government's March 21, 2019[,] ex parte submission to [T]he Court" when
he filed D.E. 27.

17. The docket report for the case shows no possible docket entry numbers
for any ex parte submission between D.E. 20 at D.E. 27, therefore Assistant
United States Attorney Hogan submitted the information entirely off the
record.

18. On August 19th, 2016, The United States Court of Appeals for The
District of Columbia Circuit decided Aref v. Lynch, 833 F.3d 242 (D.C. Cir.
2016) and therein held that the defendants in the case cannot lawfully
transfer prisoners without prior due process to communications-management
units (herein also "CMUs").

19. The holding in Aref also applies to agents and attorneys of the
defendants in the case.

20. In violation of Aref, the defendants in the case and Assistant United
States Attorney Hogan transferred me to CMU with no prior administrative
hearings and without providing to me beforehand any written administrative
orders, just like they continued to deprive me of the required due process

before they placed me in the SHU at MDC Brooklyn and FTC Oklahoma and just as the defendants in the case had done by placing me in the SHU at MCC New York.

21. I had never once been found responsible for a single inmate disciplinary infraction before the defendants in the case put me in any SHU or CMU.

22. By designating me to a CMU with no prior due process in violation of Aref, Assistant United States Attorney Hogan and his clients in the case have denied me direct access to New York State case law, rules of procedure, and rules of professional conduct that would otherwise easily be available to me in a regular institution law library.

23. The only way for me to lookup New York State case law, rules of procedure, and rules of professional conduct is to look for references thereto in the federal court decisions that are included in the LexisNexus™ subscription that is available to CMU inmates and this is an incomplete, indirect, menial, time-consuming, and difficult-to-use manner of access that often results in out-of-date and incomplete information.

24. Assistant United States Attorney Hogan and his clients in the case have also illegitimately gained access to my privileged legal correspondence by designating me to a CMU as ever since this designation was made my privileged correspondence has for the first time been regularly opened, digitized, and preserved for Assistant United States Attorney Hogan's review outside my presence.

25. Assistant United States Attorney Hogan and his clients in the case have illegitimately and preemptively read privileged legal correspondence prior to its delivery to me, including the contents of every envelope represented in Exhibit 2 to this filing, despite explicit markings from U.S. courts that include, "CONFIDENTIAL," "LEGAL MAIL," and "LEGAL MAIL - open only in the presence of inmate;" and explicit markings by licensed attorneys that include, "Attorney-Client Privileged Material Open in Presence of Inmate Only" and "LEGAL MAIL CONFIDENTIAL & PRIVILEGED."

26. Four (4) days after Assistant United States Attorney Hogan and his clients in the case were served the complaint in the case, they moved me to the SHU at MDC Brooklyn and I was told I was designated to a CMU.

27. Since being moved to the SHU at MDC Brooklyn I have published only a couple of articles and I have not published anything at all since April, 2019, due to the unlawful retaliation carried out by Assistant United States Attorney Hogan and his clients in the case.

28. I have thus lost nine (9) months and counting of publication.

29. Assistant United States Attorney Hogan is prejudicing my pending direct appeal before The First Circuit by participating in the above conduct.

30. By placing me in a CMU, Assistant United States Attorney Hogan and his clients are denying me use of AlphaSmart technology that is widely available to inmates elsewhere for word processing. This is one way in which the conduct of Assistant United States Attorney Hogan and his clients prejudices me in my litigation of all of my cases.

31. The above-summarized conduct is being carried out by clients of Assistant United States Attorney Hogan and their collective agents to unduly

delay my litigation of the case and other cases, needlessly incur expense in the litigation of the case, and maliciously injure myself, my family, and my team while prejudicing our petitions for the vindication of our Constitutional rights.

32. Before I was placed in a CMU I was not allowed to attend any relevant administrative hearings, and so far as I know, no such administrative hearings were held.

33. Before I was placed in a CMU I was not provided any relevant written administrative orders.

34. I am serving this filing and all of its accompanying exhibits on Assistant United States Attorney Hogan on Monday, November 25th, 2019, pursuant to the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988)-- the application of which Assistant United States Attorney Hogan has never contested and therefore has waived--as well as Fed. R. Civ. P. 11(c)(2), Fed. R. Civ. P. 5(b)(1) and 5(b)(2)(C), and Fed. R. Civ. P. 6(d), on Monday, November 25th, 2019, by handing a copy of said filing and all of its accompanying exhibits in an envelope bearing sufficient affixed pre-paid first-class U.S. postage to Ms. J. Wheeler of the FCI Terre Haute CMU unit team at the next opportunity for mailing in her official capacity as an agent of both the defendants in the case and Assistant United States Attorney Hogan.

35. I shall thereafter, in the absence of a sufficient response by Assistant United States Attorney Hogan, file this filing and all of its accompanying exhibits with The Court pursuant to Fed. R. Civ. P. 11(c)(2) and (6)(d) on or after Thursday, December 19th, 2019, by handing a copy of said filing and all of its exhibits in an envelope bearing sufficient affixed pre-paid first-class U.S. postage and United States Postal Service tracking number 9114 9023 0722 4291 7997 15 to Ms. J. Wheeler of the FCI Terre Haute CMU unit team at the first opportunity on or after said date for mailing to The Court in her official capacity as an agent of the defendants pursuant to the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988).

36. By so service and later filing this motion and its accompanying exhibits I do not stipulate to any action or actions that may prejudice my rights or have any adverse effect on my litigation of the instant case, including that I do not stipulate to any withdrawal or other adjudication of the motion to dismiss that results in its dismissal without prejudice to the claims brought therein by Assistant United States Attorney Hogan.

37. Based on my experience in the FCI Terre Haute CMU, it is unlikely that agents of Assistant United States Attorney Hogan and his clients will allow me to attend any hearing telephonically unless The Court specifically orders the FCI Terre Haute CMU unit team to allow me access to each hearing on an individual-hearing basis.

I hereby declare that the foregoing is true and correct under penalty of perjury under the laws of the United States. Executed on Monday, November 25th, 2019.

Martin S. Gottesfeld

NAME: Martin S. Gottesfeld
NUMBER: Reg. No. 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

12982-104

U S Attorneys Office
Southern District of NY
1 Saint Andrews PLZ
NEW YORK, NY 10007
United States

Monday, November 25th, 2019, Houston v. Lack, 487 U.S. 266 (1988)





Written and mailed Thursday January 9th , 2019

Dear my love,

I love you and hope you're well. I love you so much. My last letter was mailed Monday 12/6. At the same time this was mailed, the motion for sanctions is on it's way to the court. It'll definitely arrive before you see this.  That said, I mailed a letter to Judge Gardephe on Saturday night that was expected but not guaranteed to arrive on Monday and it's still not on the docket…. Backed up clerks? 3 of your motions hit the docket today. Motion for the recruitment of counsel to pursue class class certifications, your decleration, your motion for an extension of time to file, and the government opposing it. I'm including the government's reply here in this white envelope and the others plus the motion for sanctions in a manilla envelope -  also all sent out tonight. Monday (maybe Tuesday) I received returned mail of a bunch of pictures I sent you on December 10th I believe was the date. I put 10 pictures per envelope and sent them all at the same time. They're just pictures of me. I was hoping you'd have them to keep you company. It said it exceeded the 25 limit. (Although they were all in different envelopes.) Ive had a few really busy days in terms of outreach/calls, friendlies,  and doing what I can to secure Brandon. Sorry to keep it vague. I prefer to tell you about retroactively about things that pan out, which means I'm not keeping a lot to myself.  Although, what are they going to do, throw you in the SHU? Take away your radio and newspapers? One promising thing was a friend of david's who liked his piece reached out to me for something along the lines of what michelle did a few years ago, except this lady's would be longer. We'll see what happens with viriginia.  I have it on good authority that you get bottled water 3 times 3 times a day and that you're having problems with legal mail and restrictions on calls to clerks of court that they involuntarily draw blood and take blood pressure, and that you sound good. That's it though. I don't have it on any authority if you're being forcefed or not. Rest assured I have called the clerk of court, for whatever that's worth. Asked if they saw the motion. I have it on good authority they have it (it's on the docket). I'm going to resend the pictures. First batch tonight You should see my face looking back at you ☺. 60 minutes did a piece of Jeffrey epstein's suicide. Graphic photos of Jeffrey Epstein's dead body and the jail cell where he died of an apparent suicide were aired by CBS News' 60 Minutes Sunday evening. Multiple photographs were given to 60 Minutes by pathologist Michael Baden, who was hired by the alleged child sex trafficker's family to look into his death, according to the show. Baden thought that Epstein could have been murdered despite the medical examiner's official report that he died of a suicide on Aug. 10. The pictures range from Epstein on a metal slab after his death, close-ups of the ligature marks around his neck and images of the inside of the jail cell where the apparent suicide occurred. They aired photos of Jeffrey Epstein's autopsy Sunday. The ligature marks don't match the nooses in the jail cell, Baden thought. He did not think definitively that Epstein's death was not a suicide, also thinking that he still had more investigating to do. -The forensic evidence released so far, including the autopsy, point much more to murder and strangulation than the suicide … the suicidal hanging -  Baden thought. Baden dismissed the idea that he would automatically assume suspicion surrounding Epstein's death because he was hired by the family. Baden noted that his -job is to find what the truth is. - The pathologist thought that Epstein's death may not have been a suicide because of the -unusual fractures- he viewed in the dead financier's neck. -he have never seen three fractures like this in a suicidal hanging,-. The New York City medical examiner's office has disputed Baden's theory. The office stands – firmly- behind their finding of suicide by hanging, noting that the fractures can be found in suicides as well as homicides. 60 Minutes also obtained a handwritten note, allegedly from Epstein, found in the jail cell where he died. The note read that One guard kept me in a

locked shower stall for one hour. Noel, the guard, sent me burnt food. Giant bugs crawling over my hands. No fun!! Epstein was arrested in July on charges of child sex trafficking and was awaiting trial in a Manhattan jail. Jeffrey Epstein: Jail CCTV erased by 'technical errors' Surveillance video from disgraced financier Jeffrey Epstein's first suspected suicide attempt was destroyed by accident, prosecutors think. US attorneys say the jail mistakenly saved footage from the wrong cell. The issue over this footage comes from the case of Nicholas Tartaglione, a former New York police officer who shared a cell with Epstein in July. Epstein was found semi-conscious in his prison cell with injuries to his neck on 25 July. After this incident, he was placed on suicide watch. Eventually, Epstein was moved to a different cell, where he died on 10 August. Two prison guards have since been accused of failing to check on Epstein during this time and falsifying records to say that they had. There have been ongoing questions over the July recording, which was initially deemed missing and then was said to have been located by jail staff. A letter filed by Assistant US Attorneys Jason Swergold and Maurene Comey thought -the footage contained on the preserved video was for the correct date and time, but captured a different tier than the one where Cell-1 was located - , New York City media think. -The requested video no longer exists on the backup system and has not since at least August 2019 as a result of technical errors.- A lawyer for Mr Tartaglione - who is charged with homicide in an unrelated case - had requested the footage. The attorney argued the video could show his client had acted -admirably- possibly helping Epstein. The Federal Bureau of Prisons did not immediately respond to a request for comment.


Love you very much,

Dana

Dana Gottesfeld in reference to Martin Gottesfeld
Martin Gottesfeld, Register Number 12982-104
FCI Terre Haute Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

Honorable Paul G. Gardephe
United States District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 1007

January 9, 2020

      Re: *Gottesfeld v. Hurwitz, 18. Civ. 10836 (PGG)*

Dear Judge Gardephe,

Please find enclosed the Plaintiff's Motion for Sanctions on AUSA Alexander J. Hogan, which
was identified as forthcoming in the Plaintiff's December 12th, 2019 Motion for Hearing,
Docket Entry No. 116, paragraphs 3 and 46.

Sincerely,
Dana Gottesfeld
Wife of plaintiff Martin Gottesfeld

CC: Alexander J. Hogan



U.S. POSTAGE PAID
FCM LG ENV
BOSTON, MA
02205
JAN 09, '20
AMOUNT

**$1.60**

R2305M147378-60

1000          10007

RECEIVE D

JAN 15 2020

PRO SE OFFICE

In reference to Martin Gottesfeld
Reg ID D982-104
FCI Terre Haute
PO Box 33
Terre Haute, IN 47808

Pro Se Intake Unit
Southern District of NY
500 Pearl St., Room 200
NY, NY 10007

USMP3
SDNY