UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| Martin S. Gottesfeld, pro se, |
| Plaintiff |
| - against - |
| Hugh J. Hurwitz, et al. |

RECEIVED
SDNY PRO SE OFFICE
2020 FEB 26  AM 9: 57

Case No.: 18-cv-10836-PGG-GWG

## MOTION TO COMPEL

Plaintiff Martin S. Gottesfeld (herein the "plaintiff"), acting pro se, hereby moves The Honorable Court for an order compelling the defendants to deliver to him the copy of instant docket entry 121 recently mailed to him by The Clerk of The Court, or in the alternative, to issue an order requiring the defendants to show cause as to why they should not be so compelled.

In support of this motion, the plaintiff herewith provides and respectfully directs The Court's attention to exhibits 1-5 hereto.

If The Court has any questions prior to granting the requested order, then the plaintiff respectfully requests a hearing on this motion.

Respectfully filed in accordance with the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), by mailing to The Court in an envelope bearing sufficient affixed pre-paid first-class U.S. postage and U.S.P.S. tracking number 9114 9023 0722 4291 1824 63, handed to Ms. Rebekka Eisele of the FCI Terre Haute CMU unit team, acting in her official capacity as an agent of the defendants, on Monday, February 10th, 2020, or the first opportunity thereafter,

by: /s/ _____
Martin S. Gottesfeld, pro se
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

- Page 1 of 1 -

Declaration of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, declare that the following is true and correct under the penalty of perjury under the laws of The United States pursuant to 28 U.S.C. § 1746(1), Fed. R. Evid. 801(d)(2)(A-E), and Fed. R. Evid. 901(b)(1) on this tenth (10th) day of February, 2020:

1. I am Martin S. Gottesfeld and I am the sole plaintiff in the case of Gottesfeld v. Hurwitz, et al., 18-cv-10836-PGG-GWG (herein "the case"); currently pending before The Honorable U.S. District Court for The Southern District of New York (herein "The Court").

2. On Friday, February 7th, 2020, Ms. J. Wheeler of the FCI Terre Haute CMU unit team delivered to me while acting in her official capacity as an agent of the defendants in the case a piece of mail from The Court that was postage-paid by a non-U.S.P.S. Neopost machine on Thursday, January 30th, 2020 (herein "the mailing").

3. I have provided herewith a black and white photocopy of the envelope that bore to me the mailing as Exhibit 2 hereto.

4. The envelope that bore to me the mailing is marked "OFFICIAL BUSINESS," "CONFIDENTIAL," "DOCKET SERVICES," and "LEGAL MAIL."

5. The envelope that bore to me the mailing has a return address for The Clerk of The Court.

6. Agents of the defendants in the case left markings upon the envelope that bore to me the mailing that, based upon my experience and training as a CMU prisoner, are meant to lead me to believe that it was received in the FCI Terre Haute mail room on Friday, January 31st, 2020.

7. Agents of the defendants in the case marked the envelope that bore to me the mailing "THIS MAIL DOES NOT QUALIFY AS SPECIAL/LEGAL MAIL AS DEFINED BY BOP [Program Statement] 5265.11 CORRESPONDENCE" (emphasis in original).

8. In reality, however, Federal Bureau of Prisons Program Statement 5265.14: Correspondence (Harley G. Lappin; April 5, 2011) Chapter 2 says specifically, "Special mail... also includes correspondence received from the following:... U.S. Courts (including U.S. Probation Officers)" (emphasis in original). Please see Exhibit 3 hereto, excerpts of Federal Bureau of Prisons Program Statement 5265.14 (retrieved Monday, February 10th, 2020), quoting 28 C.F.R. § 540.2(c).

9. Federal Bureau of Prisons Program Statement 5265.14 further states, "mail from the chambers of a Federal judge... should be given special [mail] handling even if it does not have a special mail marking on the envelope." Exhibit 3 hereto, Chapter 10, "SPECIAL MAIL."

10. Federal Bureau of Prisons Program Statement 5265.14 also parenthetically defines "incoming legal mail" as "mail from courts or attorneys." Exhibit 3 hereto, Chapter 11, "LEGAL CORRESPONDENCE," quoting 28 C.F.R. § 540.19(a).

11. Federal Bureau of Prisons Program Statement 5800.16: Mail Management Manual (Harley G. Lappin; April 5, 2011) states explicitly, "Staff will use professional judgment to determine whether correspondence is from either the Chambers of a Judge or a Member of the U.S. House of Representatives, Senate, or Executive Office. **This type of mail will be afforded special mail handling even without the special mail marking.**" Exhibit 4 hereto, Section 3.8,

- Page 1 of 3 -

"SPECIAL MAIL" (emphasis in original) (retrieved February 10th, 2020).

12. Federal Bureau of Prisons Program Statement 5800.16 further states, "Staff will open incoming inmate special mail in the inmates[sic] presence." Id., Section 3.9, "IN/OUT PROCESSING REQUIREMENTS FOR SPECIAL AND LEGAL MAIL."

13. Therefore, the mailing did in fact "QUALIFY AS SPECIAL/LEGAL MAIL AS DEFINED BY" the Federal Bureau of Prisons program statements on correspondence and mail management--contrary to the marking placed on the envelope by agents of the defendants in the case.

14. Nonetheless, agents of the defendants in the case opened the mailing outside my presence, read it, and digitally preserved it.

15. When Ms. Wheeler delivered to me the mailing on Friday, February 7th, 2020, I marked the envelope in her presence, "Rec'ved already opened F[riday] 2020-02-07" (emphasis in original) and signed it.

16. When the mailing was delivered to me by Ms. J. Wheeler, it contained copies of docket entries 113 and 121 in the case, which I had previously requested The Court to order The Clerk of The Court to mail to me, and nothing else.

17. I have never received an order from The Court on the relevant motion in which I requested copies of docket entries 113 and 121.

18. When Ms. J. Wheeler delivered to me the mailing, she stated in her official capacity as an agent of the defendants in the case that I am not allowed to have a copy of docket entry 121 because it contains the information of another inmate, but that I could review its contents in her presence and then hand it back to her.

19. I asked Ms. J. Wheeler to confirm that the decision to confiscate docket entry 121 from the mailing was made by Ms. Katherine Siereveld of the FCI Terre Haute legal department.

20. Ms. J. Wheeler confirmed in her official capacity as an agent of the defendants in the case that the decision was indeed made by Ms. Katherine Siereveld.

21. Ms. J. Wheeler also said that any member of the FCI Terre Haute legal department would confirm that I am not allowed to have a copy of docket entry 121.

22. I asked Ms. J. Wheeler if I could later review docket entry 121 again if I should need to do so, and she confirmed in her official capacity as an agent of the defendants in the case that I would be allowed to review the filing again in the presence of staff if I so requested.

23. I have never been given a confiscation notice regarding the copy of docket entry 121 that was taken from the mailing and as far as I know, no such notice has ever been prepared and sent to The Court.

24. I have reviewed the following authorities for the presence of a rule that forbids me to possess filings in my court cases that contain the information of other inmates and found no such rule: The FCI Terre Haute CMU inmate handbook (docket entry 69 at 69 and docket entry 79 at 43), 28 C.F.R. Part 540 Subpart J on the communications-management units (docket entry 79 at 9), Federal Bureau of Prisons Program Statement 5214.02 on the communications-management units (docket entry 79 at 15), Federal Register Volume 80 Number 14 at page 3168 on the communications-management units (docket entry 79 at 30),

and 28 C.F.R. § 541.3 (the Federal Bureau of Prisons list of "Prohibited acts and available sanctions).

25. There is no such rule which prohibits me from possessing filings in my court cases that bear the information of other inmates and the idea is in fact farcical given the nature of federal litigation which often includes codefendants, plaintiff classes, and motions to intervene.

26. In contrast, a cursory review of the relevant federal regulations quickly turned up 28 C.F.R. §§ 543.11(d) and 543.11(d)(1).

27. "An inmate's legal materials include but are not limited to the inmate's pleadings and documents (such as a presentence report) that have been filed in court... which contain the inmate's name and/or case caption prominently displayed on the first page." 28 C.F.R. § 543.11(d) (Exhibit 45 hereto, retrieved Monday, February 10th, 2020).

28. "An inmate may solicit or purchase legal materials from outside the institution. The inmate may receive the legal materials in accordance with the provisions on incoming publications or correspondence..." 28 C.F.R. § 543.11(d)(1) (Exhibit 45 hereto).

29. The defendants in the case and agents of both them and their counsel are instead denying me my regulatory rights so as to illegitimately interfere with my ability to litigate the case and specifically with my pending motion for the recruitment of counsel to pursue class certifications, when they are not in the first instance supposed to be opening my mail from The Court outside my presence and reading it prior to delivering it to me, especially when said mail bears the return address of The Clerk of The Court and is marked explicitly, "OFFICIAL BUSINESS," "CONFIDENTIAL," "DOCKET SERVICES," and "LEGAL MAIL."

I declare that the foregoing is true and correct under the penalty of perjury under the laws of The United States. Executed on Monday, February 10th, 2020.

by: /s/ _____
Martin S. Gottesfeld, pro se

Ex. B
2-of-2

CLERK
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
THE DANIEL PATRICK MOYNIHAN UNITED STATES COURTHOUSE
U.S. COURTHOUSE - 500 PEARL STREET
NEW YORK, NY 10007
OFFICIAL BUSINESS

CONFIDENTIAL

DOCKET SERVICES

LEGAL MAIL

Martin S Gottesfeld
ID No. 12982-104
FCI Terre Haute
P.O Box 33
Terre Haute, IN 47808

neopost
01/30/2020
US POSTAGE $00.80

FIRST-CLASS MAIL

Rec'd already opened
F2020-02-07

THIS MAIL DOES NOT QUALIFY
AS SPECIAL/LEGAL MAIL AS
DEFINED BY BOP PS 5265.11
CORRESPONDENCE

Exhibit 3

| | |
|---|---|
| **OPI:** | **CPD/CPB** |
| **NUMBER:** | **5265.14** |
| **DATE:** | **April 5, 2011** |
| **SUBJECT:** | **Correspondence** |



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program Statement

OPI: CPD/CPB

NUMBER: 5265.14

DATE: April 5, 2011

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## 2. DEFINITIONS

§ 540.2 Definitions.

**(a)** *General correspondence* **means incoming or outgoing correspondence other than** *special mail*. *General correspondence* **includes packages sent through the mail.**

General correspondence refers to traditional mail sent or received via the U.S. Postal Service. For the purpose of this policy, general correspondence refers to inmate mail only.

The Warden or designee must give prior approval for an inmate to receive or send a package (see the Program Statement **Mail Management Manual**). Procedures for incoming publications are discussed in the Program Statement **Incoming Publications**. Procedures for inmate electronic messaging are addressed in the Program Statement **Trust Fund Limited Inmate Computer System (TRULINCS) — Electronic Messaging**.

**(1)** *Open general correspondence* **means general correspondence which is not limited to a list of authorized correspondents, except as provided in § 540.17.**

28 CFR § 540.17 refers to Section 9 of this Program Statement.

**(2)** *Restricted general correspondence* **means general correspondence which is limited to a list of authorized correspondents.**

**(b)** *Representatives of the news media* **means persons whose principal employment is to gather or report news for:**

**(1) A newspaper which qualifies as a general circulation newspaper in the community in which it is published. A newspaper is one of "general circulation" if it circulates among the general public and if it publishes news of a general character of general interest to the public such as news of political, religious, commercial, or social affairs. A key test to determine whether a newspaper qualifies as a "general circulation" newspaper is to determine whether the paper qualifies for the purpose of publishing legal notices in the community in which it is located or the area to which it distributes;**

**(2) A news magazine which has a national circulation and is sold by newsstands and by mail subscription to the general public;**

**(3) A national or international news service; or**

proj

1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**(4) A radio or television news program, whose primary purpose is to report the news, of a station holding a Federal Communications Commission license.**

**(c)** *Special mail* **means correspondence** *sent to* **the following:  President and Vice President of the United States, the U.S. Department of Justice (including the Bureau of Prisons), U.S. Attorneys Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts (including U.S. Probation Officers), Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, other Federal and State law enforcement offices, attorneys, and representatives of the news media.**

The Centers for Disease Control (CDC) is part of the U.S. Public Health Service; correspondence sent to the CDC is considered special mail.

An inmate is expected to use the special mail privilege responsibly.  Refer questions concerning alleged abuses to the Office of General Counsel.

*Special mail* **also includes correspondence** *received from* **the following: President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts.  For incoming correspondence to be processed under the special mail procedures (see §§ 540.18--540.19), the sender must be adequately identified on the envelope, and the front of the envelope must be marked "Special Mail — Open only in the presence of the inmate".**

28 CFR §§ 540.18-19 refers to Sections 10 and 11, respectively, of this Program Statement.

d. *Warden* is defined in 28 CFR 500.1, separately published, as "... the chief executive officer of a U.S. Penitentiary, Federal Correctional Institution, Medical Center for Federal Prisoners, Federal Prison Camp, Federal Detention Center, Metropolitan Correctional Center, or any federal penal or correctional institution or facility. 'Warden' also includes any staff member with authority explicitly delegated by any chief executive officer."

proj

2

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10. **SPECIAL MAIL**

§ 540.18 Special mail.

**(a) The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail. The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail — Open only in the presence of the inmate".**

Incoming mail meeting these requirements must be treated per this rule. The Warden may, however, treat incoming mail that does not meet all requirements for special mail handling in the same fashion as special mail, including opening it in the inmate's presence and inspecting it only for contraband. For example, mail from the chambers of a Federal judge or from a Member of Congress should be given special handling even if it does not have a special mail marking on the envelope.

Similarly, mail from an adequately identified sender that contains markings similar to the phrase "Special Mail — Open only in the presence of the inmate" may be given special handling. Examples of similar markings include "Attorney-Client — Open only in the presence of the inmate" and "Legal Mail — Open only in the presence of the inmate."

**(b) In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail.**

**(c) (1) Except as provided for in paragraph (c)(2) of this section, outgoing special mail may be sealed by the inmate and is not subject to inspection.**

**(2) Special mail shall be screened in accordance with the provisions of paragraph (c)(2)(iii) of this section when the special mail is being sent by an inmate who has been placed on restricted special mail status.**

**(i) An inmate may be placed on restricted special mail status if the Warden, with the concurrence of the Regional Counsel, documents in writing that the special mail either has posed a threat or may pose a threat of physical harm to the recipient (e.g., the inmate has previously used special mail to threaten physical harm to a recipient).**

**(ii) The Warden shall notify the inmate in writing of the reason the inmate is**

proj

1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

being placed on restricted special mail status.

(iii) An inmate on restricted special mail status must present all materials and packaging intended to be sent as special mail to staff for inspection. Staff shall inspect the special mail material and packaging, in the presence of the inmate, for contraband. If the intended recipient of the special mail has so requested, staff may read the special mail for the purpose of verifying that the special mail does not contain a threat of physical harm. Upon completion of the inspection, staff shall return the special mail material to the inmate if the material does not contain contraband, or contain a threat of physical harm to the intended recipient. The inmate must then seal the special mail material in the presence of staff and immediately give the sealed special mail material to the observing staff for delivery. Special mail determined to pose a threat to the intended recipient shall be forwarded to the appropriate law enforcement entity. Staff shall send a copy of the material, minus the contraband, to the intended recipient along with notification that the original of the material was forwarded to the appropriate law enforcement entity.

(iv) The Warden shall review an inmate's restricted special mail status at least once every 180 days. The inmate is to be notified of the results of this review. An inmate may be removed from restricted special mail status if the Warden determines, with the concurrence of the Regional Counsel, that the special mail does not threaten or pose a threat of physical harm to the intended recipient.

(v) An inmate on restricted mail status may seek review of the restriction through the Administrative Remedy Program.

(d) Except for special mail processed in accordance with paragraph (c)(2) of this section, staff shall stamp the following statement directly on the back side of the inmate's outgoing special mail:

"The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address."

The stamp includes the above statement, the name and address of the institution and space for the

proj

2

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

date.

11. **LEGAL CORRESPONDENCE**

**§ 540.19 Legal correspondence.**

**(a) Staff shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter. The inmate may be asked to sign as receiving the incoming legal mail. This paragraph applies only if the sender has marked the envelope as specified in § 540.18.**

28 CFR § 540.18 refers to Section 10 of this Program Statement.

Staff are expected to develop a master log containing the above information. The inmate may be requested (but not required) to sign the log, indicating receipt of the legal mail. If the inmate refuses, staff note this in the log.

**(b) The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail — Open only in the presence of the inmate".**

**Legal mail shall be opened in accordance with special mail procedures (see § 540.18).**

28 CFR § 540.18 refers to Section 10 of this Program Statement.

**(c) Grounds for the limitation or denial of an attorney's correspondence rights or privileges are stated in part 543, subpart B. If such action is taken, the Warden shall give written notice to the attorney and the inmate affected.**

Part 543, subpart B, refers to the Program Statement **Inmate Legal Activities**.

Any violation of the attorney/client correspondence privilege is referred to Regional Counsel, who, in conjunction with the Office of General Counsel, may restrict the inmate or attorney from further correspondence privileges.

**(d) In order to send mail to an attorney's assistant or to a legal aid student or assistant, an inmate shall address the mail to the attorney or legal aid supervisor, or the legal organization or firm, to the attention of the student or assistant.**

proj

3

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

See the Program Statement **Inmate Legal Activities** for information concerning Bureau recognition of an attorney's assistant or legal aid student assistant.

**(e)   Mail to an inmate from an attorney's assistant or legal aid student or assistant, in order to be identified and treated by staff as special mail, must be properly identified on the envelope as required in paragraph (b) of this section, and must be marked on the front of the envelope as being mail from the attorney or from the legal aid supervisor.**

proj

4

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 1:18-cv-10836-PGG   Document 151   Filed 02/26/20   Page 13 of 20

Exhibit 4

| | |
|---|---|
| OPI: | CPD/CPB |
| NUMBER: | 5800.16 |
| DATE: | April 5, 2011 |
| SUBJECT: | Mail Management Manual |



U.S. Department of Justice

Federal Bureau of Prisons

# Program Statement

OPI:   CPD/CPB

NUMBER:   5800.16

DATE:   April 5, 2011

## Mail Management Manual

/s/

*Approved*: Harley G. Lappin

Director, Federal Bureau of Prisons

proj

1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## 3.8 SPECIAL MAIL

The Bureau policy on inmate correspondence identifies certain types of incoming correspondence as special mail, **to be opened only in the inmates presence.** For this special handling to occur, Bureau policy requires that the sender be adequately identified on the envelope and that the envelope be marked Special Mail — Open Only in the Presence of the Inmate or with similar language. Refer to the Program Statement **Correspondence** for those offices which are not required to use the Special Mail statement.

Staff will use professional judgement to determine whether correspondence is from either the Chambers of a Judge or a Member of the U.S. House of Representatives, Senate, or Executive Office. **This type of mail will be afforded special mail handling even without the special mail marking.** Other Congressional and judicial correspondence will be afforded special mail handling provided the sender is adequately identified on the envelope and the envelope has the special mail marking in accordance with the Program Statement **Correspondence**.

The Bureau has prepared an instruction sheet, Special Mail Notice (BP-A0493), for an inmate to include with correspondence the inmate sends to the attorney representing that inmate. This instruction sheet advises the attorney of the required procedures for incoming attorney-client correspondence to be afforded special mail privileges.

CMCs will ensure that copies of the instruction sheet for special mail handling of incoming attorney-client correspondence are provided as admission and orientation handouts and are placed in inmate housing areas, attorney visiting rooms, and other locations accessible to inmates.

Specifically, the attorney must be adequately identified on the envelope as an attorney and the envelope must be marked Special Mail — Open Only in the Presence of the Inmate, or with similar language clearly indicating the particular item of correspondence qualifies as special mail and the attorney is requesting the correspondence be opened only in the inmates presence.

The use of the title Esquire without additional indication of the senders occupation does not establish the bearer as an attorney or legal aid supervisor. Mail from individuals using the title Esquire as the exclusive identification of their status shall not be handled as special mail, even if the envelope contains some special mail markings. However, use of the title Esquire after the senders name, in addition to the same name being included in the return address of the law office, does sufficiently identify the sender as an attorney. Alternatively, the use of the term Esquire after the senders name, in addition to some notation on the envelope that the sender is an attorney (i.e., Attorney-At-Law) is also sufficient identification.

**Other Mail.** The Warden may treat incoming mail that does not meet all of the requirements for special mail handling in the same fashion as special mail, including opening it in the inmates

proj

1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

presence and inspecting it only for contraband. It is recommended the Institution Supplement outline local criteria used to identify incoming special mail.

## 3.9  IN/OUT PROCESSING REQUIREMENTS FOR SPECIAL AND LEGAL MAIL

Ordinarily, inmate correspondence will be processed and delivered with 24 hours. Special and legal mail is afforded priority. Reasonable efforts by staff to deliver legal/special mail will be documented in the log book if the mail is unable to be delivered as provided by this policy. Staff must further document the attempts to deliver legal/special mail every 24 hours after the time initially logged until delivered.

Staff will open incoming inmate special mail in the inmates presence. Staff are to check for contraband and funds at this time. Funds enclosed in the inmate correspondence are to be rejected. Additionally, inmates are not permitted to receive or maintain in their property Pre-Sentence Investigation Reports or Statement of Reason.

Mail room staff will maintain a log detailing receipt and delivery of special mail. Additionally, special/legal mail will be time-stamped, or a handwritten note will be made on the envelope, to show date and time received in the mail room. Although inmates may be asked to sign for this mail, they are not required to do so.

Inmates will deliver their own outgoing special or legal mail directly to a staff member, normally a member of the unit team or correctional systems staff. Staff receiving the mail will immediately confirm the inmate delivering it is the same inmate reflected in the return address. After this confirmation, the mail will be hand carried to the mail room. If mail is received by staff beyond the established hours of the mail room, local procedures will be established in the institution supplement. Special and legal mail will be received and processed in accordance with section 1.4 of this Manual. Outgoing special or legal mail submitted without an accurate return address will not be processed and will be returned immediately to the inmate for correct preparation (institutions with TRULINCS will also include a TRULINCS generated mailing label).

Outgoing special mail weighing 16 ounces or greater will be processed as a package. This requires using Form BP-329, Request Authorization to Mail Inmate Package. Inmates may still seal their outgoing special mail before submitting directly to staff for further processing and it will not be opened unless contraband is apparent as a result of electronic scanning.

All outgoing special mail is subject to scanning by electronic means including, but not limited to x-ray, metal detector, and ion spectrometry devices. Inspection of sealed outgoing special mail by these methods may occur outside the inmates presence. Electronic scanning is for the sole purpose of identifying harmful materials, and cannot be used to read or review the content of outgoing special mail communication.

proj

2

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Correspondence that meets the conditions of outgoing special mail that USPS subsequently returns, will be processed as incoming special mail (open only in presence, etc.). Returned special mail will be entered into all log books in the same fashion as other incoming special mail.

Periodically, CMCs will review the special/legal mail delivery process to ensure that policy requirements are met. CMCs will consult specifically with staff and review requisite record keeping to ensure that delivery time frames are being met.

When an inmate is not at the institution, the special mail remains sealed and is forwarded to the inmate regardless of the 30-day forwarding period for general mail.  Staff will use all means practicable to locate inmates to forward special mail (e.g., SENTRY, card files, telephone calls). If the inmate:

```
    Has been transferred, the mail will be forwarded to the inmate
at the final transfer destination.
    Is out on writ, staff will use all means practicable to
forward special mail.
    Has been released to the community, Special and Legal mail
will be forwarded to the address the inmate provided.  If a
forwarding address is not available, forward the mail to the U.S.
Probation Office in the release district, provided the inmate is,
or was, under supervision.
    Was released by expiration of sentence and a forwarding
address is not available, return the correspondence to the sender
with a notation of the date and type of release and a statement
that no forwarding address is available.
```
When forwarding special mail, mail room staff will note forwarding details in the log.

proj

**3**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

28 C.F.R.

## § 543.11 Legal research and preparation of legal documents.

(a) The Warden shall make materials in the inmate law library available whenever practical, including evening and weekend hours. The Warden shall allow an inmate a reasonable amount of time, ordinarily during the inmate's leisure time (that is, when the inmate is not participating in a scheduled program or work assignment), to do legal research and to prepare legal documents. Where practical, the Warden shall allow preparation of documents in living quarters during an inmate's leisure time.

(b) The Warden shall periodically ensure that materials in each inmate law library are kept intact and that lost or damaged materials are replaced.

(c) Staff shall advise an inmate of rules and local procedures governing use of the inmate law library. Unauthorized possession of library materials by an inmate constitutes a prohibited act, generally warranting disciplinary action (see part 541 of this chapter).

(d) An inmate's legal materials include but are not limited to the inmate's pleadings and documents (such as a presentence report) that have been filed in court or with another judicial or administrative body, drafts of pleadings to be submitted by the inmate to a court or with other judicial or administrative body which contain the inmate's name and/or case caption prominently displayed on the first page, documents pertaining to an inmate's administrative case, photocopies of legal reference materials, and legal reference materials which are not available in the institution main law library (or basic law library in a satellite camp).

(1) An inmate may solicit or purchase legal materials from outside the institution. The inmate may receive the legal materials in accordance with the provisions on incoming publications or correspondence (see 28 CFR part 540, subparts B and F) or through an authorized attorney visit from a retained attorney. The legal materials are subject to inspection and may be read or copied unless they are received through an authorized attorney visit from a retained attorney or are properly sent as special mail (for example, mail from a court or from an attorney), in which case they may be inspected for contraband or for the purpose of verifying that the mail qualifies as special mail.

(2) Staff may allow an inmate to possess those legal materials which are necessary for the inmate's own legal actions. Staff may also allow an inmate to possess the legal materials of another inmate subject to the limitations of paragraph (f)(2) of this section. The Warden may limit the amount of legal materials an inmate may accumulate for security or housekeeping reasons.

CFR                                                                 1

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(e) An inmate is responsible for submitting his documents to court. Institution staff who are authorized to administer oaths shall be available to provide necessary witnessing of these documents, as requested by inmates and at times scheduled by staff.

(f)(1) Except as provided for in paragraph (f)(4) of this section, an inmate may assist another inmate in the same institution during his or her leisure time (as defined in paragraph (a) of this section) with legal research and the preparation of legal documents for submission to a court or other judicial body.

(2) Except as provided for in paragraph (f)(4) of this section, an inmate may possess another inmate's legal materials while assisting the other inmate in the institution's main law library and in another location if the Warden so designates.

(i) The assisting inmate may not remove another inmate's legal materials, including copies of the legal materials, from the law library or other designated location. An assisting inmate is permitted to make handwritten notes and to remove those notes from the library or other designated location if the notes do not contain a case caption or document title or the name(s) of any inmate(s). The assisting inmate may also develop and possess handwritten drafts of pleadings, so long as the draft pleadings do not contain a case caption or document title or the name(s) of any inmate(s). These notes and drafts are not considered to be the assisting inmate's legal property, and when the assisting inmate has these documents outside the law library or other designated location, they are subject to the property limitations in § 553.11(a) of this chapter.

(ii) Although the inmate being assisted need not remain present in the law library or other designated location while the assistance is being rendered, that inmate is responsible for providing and retrieving his or her legal materials from the library or other designated location. Ordinarily, the inmate must provide and retrieve his or her legal materials during his or her leisure time. An inmate with an imminent court deadline may request a brief absence from a scheduled program or work assignment in order to provide or retrieve legal materials from an assisting inmate.

(3) The Warden may give special consideration to the legal needs of inmates in mental health seclusion status in federal medical centers or to inmates in controlled housing.

(4) The Warden at any institution may impose limitations on an inmate's assistance to another inmate in the interest of institution security, good order, or discipline.

(g) The institution staff shall, upon an inmate's request and at times scheduled by staff, duplicate legal documents if the inmate demonstrates that more than one copy must be submitted to court

CFR                                                                 2

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

and that the duplication cannot be accomplished by use of carbon paper. The inmate shall bear the cost, and the duplication shall be done so as not to interfere with regular institution operations. Staff may waive the cost if the inmate is without funds or if the material to be duplicated is minimal, and the inmate's requests for duplication are not large or excessive.

(h) Unless clearly impractical, the Warden shall allow an inmate preparing legal documents to use a typewriter, or, if the inmate cannot type, to have another inmate type his documents. The Warden may allow the inmate to hire a public stenographer to type documents outside the institution, but the institution may not assume the expense of hiring the public stenographer. Staff shall advise the inmate of any delay in the typing of which they have received notice from the stenographer.

(i) The Warden shall give special time allowance for research and preparation of documents to an inmate who demonstrates a requirement to meet an imminent court deadline. Otherwise, each inmate shall continue his regular institutional activities without undue disruption by legal activities.

(j) With consideration of the needs of other inmates and the availability of staff and other resources, the Warden shall provide an inmate confined in disciplinary segregation or administrative detention a means of access to legal materials, along with an opportunity to prepare legal documents. The Warden shall allow an inmate in segregation or detention a reasonable amount of personal legal materials. In no case shall the amount of personal legal materials be such as to pose a fire, sanitation, security, or housekeeping hazard.

[44 FR 38263, June 29, 1979, as amended at 55 FR 29992, July 23, 1990; 62 FR 4890, 4893, Jan. 31, 1997]

5 U.S.C. 301; 18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082 (Repealed in part as to conduct occurring on or after November 1, 1987), 5006-5024 (Repealed October 12, 1984 as to conduct occurring after that date), 5039; 28 U.S.C. 509, 510, 1346(b), 2671-80; 28 CFR 0.95-0.99, 0.172, 14.1-11.
[EFFECTIVE DATE NOTE: 62 FR 4890, 4893, Jan. 31, 1997, revised paragraphs (a), (d), and (f) and the last sentence of paragraph (h), effective Mar. 3, 1997.]

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

RECEIVED
SDNY PRO SE OFFICE
2020 FEB 26 AM 9:56

Monday, February 10th, 2020; Houston v. Lack, 487 U.S. 266 (1988)

⇔ 129982-104 ⇔
U S District Court
Pro Se Clerk
500 Pearl ST
NEW YORK, NY 10007
United States



