UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN S. GOTTESFELD,

                              Plaintiff,

                - v. -

ACTING DEPUTY DIRECTOR DAVID
ANDERSON, WARDEN ESKER L.
TATUM, MEDICAL DIRECTOR
ANTHONY BUSSONICH, and ACTING
DIRECTOR HUGH J. HURWITZ,

                              Defendants.

**ORDER**

18 Civ. 10836 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Pro se Plaintiff Martin Gottesfeld filed this action on November 19, 2018,

alleging that he was improperly held in the Special Housing Unit of the Metropolitan

Correctional Center ("MCC") between November 2016 and February 2017.  (Cmplt. (Dkt. No.

2) at 4 & ¶¶ 4, 6, 8)[1]  The Complaint names as defendants Hugh Hurwitz, the Acting Director of

the Federal Bureau of Prisons; David Anderson, the former Acting Deputy Director of the U.S.

Marshals Service; Esker Tatum, the former warden of the MCC; and Anthony Bussonich, the

MCC's former medical director.  (Id. at 1, 3)

Gottesfeld asserts constitutional claims under Bivens v. Six Unknown Named

Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and, when read liberally, tort

claims under the Federal Tort Claims Act ("FTCA").  The Complaint also asserts claims under

the New York State Constitution.

---

[1] Page citations refer to the pagination generated by this District's Electronic Case Files ("ECF")
system.

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim, arguing that Gottesfeld's Bivens and FTCA claims should be dismissed for failure to exhaust administrative remedies.[2]  (Def. Br. (Dkt. No. 52))  Defendants further argue that all of Gottesfeld's claims fail on their merits, and should be dismissed for failure to state a claim under Rule 12(b)(6).

For reasons discussed below, the Court converts Defendants' motion to dismiss for failure to exhaust administrative remedies into a motion for summary judgment, and grants that motion as to Plaintiff's Bivens and FTCA claims.  The Court construes Gottesfeld's New York State constitutional claims as arising under Bivens or the FTCA and grants Defendants summary judgment on those claims for the same reason.  This Court further concludes that Plaintiff's Bivens claims – and any claim under the False Claims Act – must, in any event, be dismissed for failure to state a claim under Rule 12(b)(6).

## BACKGROUND

## I.   FACTS

On August 1, 2018, in the District of Massachusetts, Gottesfeld was convicted of conspiracy to damage a protected computer, in violation of 18 U.S.C. § 371, and damaging a protected computer, in violation of 18 U.S.C. § 1030(a)(5)(A).  He was sentenced to 121 months'

---

[2]  Under the Prison Litigation Reform Act ("PLRA"), Bivens claims are subject to an exhaustion requirement.  "[F]ailure to exhaust administrative remedies under the PLRA is [a non-jurisdictional] affirmative defense, and is grounds for dismissal under Rule 12(b)(6)."  Wood v. Byrd, No. 16-CV-8142 (KMK), 2020 WL 550787, at *4 (S.D.N.Y. Feb. 4, 2020) (citing Williams v. Priatno, 829 F.3d 118, 122 (2d Cir. 2016)).  By contrast, where "'a claimant fails to exhaust . . . FTCA administrative remedies, a court will not have jurisdiction to hear the case and the matter must be dismissed under Rule 12(b)(1).'"  Obispo v. Bronx Lebanon Hosp., No. 19 CIV 2815 (LAK) (GWG), 2019 WL 6870996, at *6 (S.D.N.Y. Dec. 17, 2019) (quoting Lassic v. Hudson River Health Care, Inc., 2013 WL 3929633, at *2 (S.D.N.Y. July 29, 2013)).

imprisonment.  See United States v. Gottesfeld, No. 16 Cr. 10305 (NMG) (D. Mass.), Dkt. Nos.

301, 389 (Verdict and Judgment).

Between November 14, 2016 and February 4, 2017, Gottesfeld was held in

pretrial detention at the Metropolitan Correctional Center ("MCC"), a Federal Bureau of Prisons

("BOP") facility in Manhattan.  (Cmplt. (Dkt. No. 2) at 4 & ¶ 1)  At the MCC, Gottesfeld

engaged in a hunger strike.  (Id. ¶ 1)  As a result of his hunger strike, MCC personnel placed him

in solitary confinement in the Special Housing Unit ("SHU"), where he remained throughout his

time at the MCC.  (Id. at 4 & ¶¶ 2, 8)

Gottesfeld complains that his placement in the SHU was improper, that he "never

received written notice of the reason(s) for his placement" there, and that he was given no

hearing prior to being placed in the SHU.  (Id. ¶¶ 6-7)  While in the SHU, Gottesfeld was

subjected to "conditions that would shock the conscience of the average objectively reasonable

member of the public."  (Id. ¶ 9)  SHU inmates experienced a "rodent and [cockroach]

infestation problem" (id. ¶ 10-12), a temporary lapse in running water (id. ¶ 13), and cold

temperatures resulting from "insufficient insulation."  (Id. ¶ 14)  SHU inmates also had "fewer

opportunities for in-person visits with family members and . . . fewer opportunities for attorney

visits" due to a lack of visiting rooms.  (Id. ¶ 4)

On November 21, 2016, the Huffington Post published an open letter from

Gottesfeld to then-U.S. Attorney General Loretta Lynch and U.S. Department of Justice

Inspector General Michael Horowitz, in which Gottesfeld complained about the conditions of his

confinement.  (Id. ¶ 15)  Agents from the Inspector General's Office later interviewed

Gottesfeld, and he told the agents about the cold temperatures inside the MCC.  (Id.)  In late

2016, Gottesfeld received "thermal underwear," but the underwear did not cover his "face, feet,

or hands." (Id. ¶ 14)  "[L]eaking water [was] pooled on the floor [of Gottesfeld's cell] and algae [grew] in the toilet." (Id. ¶ 16)  In an email to the Huffington Post, the "MCC acknowledged the water leak." (Id.)  According to Gottesfeld, he faced a "heightened risk of infection" and "emotional distress" from these conditions. (Id.)

Gottesfeld also complains that he "was repeatedly threatened by MCC's medical staff, in particular by Medical Director Anthony Bussonich, with the . . . practice of force-feeding if he did not stop his . . . hunger strike." (Id. ¶ 17)  Gottesfeld was also "denied the ability to send sealed media mail . . . to Rolling Stone" for an article about Gottesfeld's case. (Id. ¶ 18)  Gottesfeld contends that his "sealed media mail to a reporter for Wired Magazine arrived with signs of tampering," and that "[Warden] Tatum . . . personally denied [Gottesfeld]" the right to be "interviewed by multiple media outlets [that] requested access to him." (Id. ¶ 20)  According to Gottesfeld, correspondence "responding to other media inquiries either wasn't sent out from the facility or arrived without having been sealed by prison staff." (Id. ¶ 21)

## II.  PROCEDURAL HISTORY

The Complaint was filed on November 19, 2018, and asserts claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). (Cmplt. (Dkt. No. 2) ¶ 23)[3]  Gottesfeld alleges violations of his (1) Fifth Amendment due process rights; (2) right to counsel under the Sixth Amendment; (3) First Amendment free speech rights;  (4) right to protection from cruel and unusual punishment under the Eighth Amendment;[4]

---

[3]  As discussed above, Gottesfeld complains that he never should have been assigned to the SHU; that the SHU was infested with vermin; that the heat in the SHU was inadequate; that there was inadequate time for attorney and non-attorney visits; that leaking water pooled in his cell; that his mail was tampered with; and that he was threatened with force-feeding after he began his hunger strike.  (Cmplt. (Dkt. No. 2) ¶¶ 4, 6-7, 10-21)

[4]  Because Gottesfeld was a pretrial detainee at the MCC, the Fifth Amendment – not the Eighth Amendment – is the proper vehicle for his conditions of confinement claim.  See, e.g., Rodriguez

and (5) rights under the New York State Constitution (Cmplt. (Dkt. No. 2) at 14 & ¶¶ 8, 9, 23-24) Read liberally, the Complaint could be construed as also asserting claims under the Federal Tort Claims Act (Def. Br. (Dkt. No. 52) at 9-10) In his opposition brief, Gottesfeld contends that his allegations may also warrant relief under the False Claims Act. (Pltf. Opp. (Dkt. No. 101-3) at 4) The Complaint seeks injunctive relief and damages.[5] (Cmplt. (Dkt. No. 2) at 14 & ¶ 25)

On May 16, 2019, Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Def. Br. (Dkt. No. 52)) In the alternative, Defendants seek summary judgment under Fed. R. Civ. P. 56. (Id.)[6]

---

v. New York Downtown Hosp., No. 14 CIV. 5958 PAC SN, 2015 WL 5244680, at *1 (S.D.N.Y. Sept. 8, 2015) ("Because [plaintiff] was a federal pretrial detainee rather than a convicted prisoner, the Court construes his allegations to arise under the Due Process Clause of the Fifth Amendment, rather than under the Cruel and Unusual Punishment Clause of the Eighth Amendment.").

[5] Defendants contend that Gottesfeld's claims should be dismissed as moot, because he is no longer incarcerated at the MCC. (Def. Reply (Dkt. No. 101) at 5 n.1 (citing Dawkins v. Copeland, No. 17-cv-9926 (ER), 2019 WL 1437049, at *9 (S.D.N.Y. Mar. 31, 2019) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" (quoting Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006))))) While Gottesfeld's claims are moot to the extent he seeks injunctive relief, his claim for damages has not been rendered moot by his transfer to another institution.

[6] Pursuant to Local Civil Rule 12.1, Defendants' motion was accompanied by a "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings." (Dkt. No. 52-3 at 1-2) The Notice reads as follows:

Defendants in this case have moved to dismiss or for judgment on the pleadings pursuant to Rule 12(b) or 12(c) of the Federal Rules of Civil Procedure, and have submitted additional written materials. This means that the defendants have asked the Court to decide this case without a trial, based on these written materials. You are warned that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For this reason, THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits as required by Rule 56(c) and/or other documents. . . .

In short, Rule 56 provides that you may NOT oppose the defendants' motion simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the

On November 27, 2019, after the Court had granted Gottesfeld's numerous requests for extensions of time (Dkt. Nos. 58, 62, 73, 91), he filed an opposition brief.  (Pltf. Opp. (Dkt. No. 101))  Defendants filed their reply on December 11, 2019.[7]  (Def. Reply (Dkt. No. 111))

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Standard

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter

---

defendant and raising specific facts that support your claim.  If you have proof of your claim, now is the time to submit it.  Any witness statements must be in the form of affidavits.  An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial.  You may submit your own affidavit and/or the affidavits of others.   You may submit affidavits that were prepared specifically in response to defendants' motion.

If you do not respond to the motion on time with affidavits and/or documents contradicting the facts asserted by the defendants, the Court may accept defendants' facts as true.  Your case may be dismissed and judgment may be entered in defendants' favor without a trial.

If you have any questions, you may direct them to the Pro Se Office.

(Id.) (emphasis in original).  The Notice includes the full text of Rule 56.  (Dkt. No. 52-4 at 1-9)
[7]  This Court denied Gottesfeld's motion for leave to file a sur-reply.  See Dkt. Nos. 92, 119, 124, 126.  To the extent that Gottesfeld argues that Defendants' Reply presents evidence not previously discussed (see Dkt. Nos. 131, 141)), the Court has not considered such evidence in resolving Defendants' motion.  To the extent Gottesfeld complains that Defendants' Reply cites cases not previously discussed (see Dkt. No. 141), moving parties may cite new cases in their reply to address arguments raised in an opposition brief.  See, e.g., Mohsen v. Morgan Stanley & Co. Inc., No. 11 CIV. 6751 PGG, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (noting that a defendant's opposition may cite "new cases" in "response to Plaintiff's arguments" without warranting a sur-reply); Yale New Haven Hosp. v. Azar, 409 F. Supp. 3d 3, 18 (D. Conn. 2019) ("That the [defendant] responded to an argument made in [plaintiff's] opposition with citation to cases not cited in the initial brief, does not entitle [plaintiff] to file a sur-reply. To hold otherwise would provide for endless sur-replies.").

jurisdiction). . . ."  Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31

(2007).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v.

United States, 201 F.3d 110, 113 (2d Cir. 2000).  Where subject matter jurisdiction is challenged,

a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject

matter jurisdiction exists.'"  APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney

v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).

   In resolving a Rule 12(b)(1) motion to dismiss, a court "must accept as true all

material factual allegations in the complaint, but [is] not to draw inferences from the complaint

favorable to plaintiffs."  J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).

The court "may consider affidavits and other materials beyond the pleadings to resolve the

jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the

affidavits."  Id.  Courts may also "consider 'matters of which judicial notice may be taken.'"

Greenblatt v. Gluck, 03 Civ. 597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003)

(quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

  **B.**  **Rule 12(b)(6) Standard**

   For claims to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain

"factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI

Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "'enough facts

to state a claim to relief that is plausible on its face.'"  Starr v. Sony BMG Music Entm't, 592

F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, a court accepts as true all well-pled factual allegations but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id.  Moreover, a court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  Where a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible" – dismissal is appropriate.  Twombly, 550 U.S. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).  For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[ ] in framing the complaint.'" DeLuca v. AssetIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (first alteration in original) (quoting Chambers, 282 F.3d at 153).

A district court may also "rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir.

1998); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records . . . in deciding a motion to dismiss.").  "In the motion to dismiss context, . . . a court should generally take judicial notice 'to determine what statements [the documents] contain[ ] . . . [,] [and] not for the truth of the matters asserted.'"  Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

In ruling on a motion to dismiss, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and alterations omitted); see also Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (noting that pro se litigants "generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest'" (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996))).  That said, a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face.  See Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).  Although courts are "obligated to draw the most favorable inferences" from a complaint, they "cannot invent factual allegations that [a plaintiff] has not pled."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

C.   **Summary Judgment Standard**

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d

9

140, 145 (2d Cir. 2007)).  "[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim."  <u>Bay v. Times Mirror Magazines, Inc.</u>, 936 F.2d 112, 116 (2d Cir. 1991).

   In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  <u>Cifra v. G.E. Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001).  However, for claims to survive a motion for summary judgment, a plaintiff "must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor."  <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).  "Mere conclusory statements, conjecture or speculation" by the plaintiff will not defeat a summary judgment motion.  <u>Gross v. Nat'l Broad. Co., Inc.</u>, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

   "Although the same standards apply when a <u>pro</u> <u>se</u> litigant is involved, 'the <u>pro</u> <u>se</u> litigant should be given special latitude in responding to a summary judgment motion.' . . . [T]he Court must liberally construe the claims of a <u>pro</u> <u>se</u> litigant."  <u>Brown v. Selwin</u>, 250 F. Supp. 2d 299, 306-07 (S.D.N.Y. 1999) (quoting <u>Shepherd v. Fraisher</u>, No. 96 Civ. 3283 (JGK), 1999 WL 713839, at *2 (S.D.N.Y. Sept. 14, 1999)).

II.    **ANALYSIS**

    A.    **Failure to Exhaust Administrative Remedies**

        1.    **Applicable Law**

Defendants argue that the Complaint should be dismissed for failure to exhaust administrative remedies.  Under the Prisoner Litigation Reform Act or PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'"  Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).

The Supreme Court has held that the PLRA requires "'proper exhaustion,'" Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)), which means that "'prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself.'"  Id. (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)).  Accordingly, the exhaustion inquiry requires courts to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009).

An inmate in BOP custody who has a grievance must exhaust a four-step administrative process.  First, the inmate must present his or her complaint to a staff member on a BP-8 form.  (Aassiddaa Decl. (Dkt. No. 52-1) ¶ 4 (citing 28 C.F.R. § 542.13))  If the issue is not resolved, the inmate must then submit an Administrative Remedy Request – on a BP-9 form

– to the Warden within 20 calendar days of the incident that triggered the complaint.  (Id. (citing 28 C.F.R. § 542.14))  Where the inmate is not satisfied with the Warden's response, the inmate must  submit an appeal to BOP's Regional Director on a BP-10 form, and must do so within 20 calendar days of the Warden's response.  (Id. ¶ 5 (citing 28 C.F.R. § 542.15))  Where the inmate is not satisfied with the Regional Director's response, the inmate must file a Central Office Administrative Remedy Appeal on a BP-11 form with the BOP's General Counsel, and must do so within 30 calendar days of the Regional Director's response.  (Id. ¶ 6)

Because a "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement, . . . 'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'"  Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016) (quoting Jones, 549 U.S. at 216).  Nonetheless, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement."  Id.

"[W]here 'nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused.'"  Stevens v. City of New York, No. 12 CIV. 1918 (JPO) (JLC), 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (quoting McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).  "[W]hen converting a [m]otion to [d]ismiss into a [m]otion for [s]ummary [j]udgment under Fed. R. Civ. P. 12(d), notice to the parties is mandated, particularly when a pro se litigant is involved."  Samuels v. Fischer, 168 F. Supp. 3d 625, 653 (S.D.N.Y. 2016) (internal quotation marks omitted).

"[I]n the PLRA exhaustion context, courts typically have insisted upon limited discovery before converting a motion to dismiss for failure to exhaust administrative remedies into a motion for summary judgment."  Shaw v. Ortiz, No. 15-CV-8964 (KMK), 2016 WL 7410722, at *5 (S.D.N.Y. Dec. 21, 2016); see also Hernandez, 582 F.3d at 307-08 (directing district court to permit plaintiff to take discovery where plaintiff had not received notice of "the nature or consequences of summary judgment" and where the record did not include "four documents" relevant to his exhaustion efforts).  Discovery is not necessary, however, when the "the facts regarding [p]laintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome."  Parra v. Wright, No. 11-CV-6270 CJS, 2013 WL 6669235, at *7 (W.D.N.Y. Dec. 18, 2013); see also Rodriguez v. Reppert, No. 14-CV-671-RJA-MJR, 2016 WL 11483439, at *1 (W.D.N.Y. Sept. 28, 2016), adopted by, 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016) (considering pre-discovery motion for summary judgment in part "because all facts relevant to their exhaustion defense are undisputed").

     **2.**     **<u>Application</u>**

          **a.**     **Whether Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to Exhaust Administrative Remedies Should Be <u>Converted Into a Motion for Summary Judgment</u>**

Because it is not clear from the face of the Complaint that Gottesfeld failed to exhaust his administrative remedies, Defendants' motion to dismiss for failure to exhaust must be converted into a motion for summary judgment.  As discussed above, pursuant to Local Civil Rule 12.1, Gottesfeld was given notice that Defendants' motion to dismiss might be converted into a motion for summary judgment, and he was informed of the consequences of such a conversion.  (Dkt. No. 52-3 at 1-2)  He was also told how Defendants' motion could be defeated: "[Y]ou may NOT oppose the defendants' motion simply by relying upon the allegations in your

complaint.  Rather, you must submit evidence, such as witness statements or documents,
countering the facts asserted by the defendant and raising specific facts that support your claim."
(Id. at 1) (emphasis in original).  This notice is sufficient to permit conversion.  See, e.g.,
Hernandez, 582 F.3d at 308 n.2 (notice to pro se parties pursuant to Local Rule 12.1 provides
sufficient notice to convert motion to dismiss to motion for summary judgment without further
notice or explanation; collecting cases); Loccenitt v. City of New York, No. 10-8319, 2012 WL
5278553, at *3 (S.D.N.Y. Oct. 22, 2012) ("Courts in this district have concluded that a notice
pursuant to Local Civil Rule 12.1 suffices to satisfy the requirement that parties be afforded a
chance to offer affidavits and other evidence.").

   Moreover, discovery is not necessary here because Gottesfeld has set forth in
detail his efforts to exhaust (see Pltf. Opp. (Dkt. No. 101-1) at 9, 22-26, 31; Handwritten
Complaints (Dkt. No. 99) at 34-36), and Defendants do not dispute Gottesfeld's account of his
efforts to exhaust.  Because the relevant facts are "not disputed, and it does not appear that any
amount of discovery would change the outcome," Parra, 2013 WL 6669235, at *7, it is
appropriate to convert Defendants' motion to dismiss for failure to exhaust administrative
remedies into a motion for summary judgment.

   **b.**  **Whether Gottesfeld Exhausted His Administrative Remedies**

   Here, Defendants' exhaustion argument is premised on Gottesfeld's failure to
initiate the grievance process during the 81 days that he was detained at the MCC.  (Cmplt. (Dkt.
No. 2) ¶ 8; Def. Br. (Dtk. No. 52) at 16)  Gottesfeld argues, however, that the administrative
process was not available to him during his time at the MCC, and that Defendants should be
estopped from arguing failure to exhaust.  In support of this argument, Gottesfeld asserts that he

requested ten BP-8 forms on January 20, 2017, but that MCC staff denied his request.  (Pltf. Opp. (Dkt. No. 101-1) at 9, 25-30)

As an initial matter, Gottesfeld has not alleged that any of the named defendants denied him grievance forms.[8]  His failure to allege any of the Defendants' personal involvement dooms his estoppel argument.  See, e.g., Evans v. Aramark Food, No. 14 CV 6469 (NSR), 2016 WL 1746060, at *3 (S.D.N.Y. Apr. 28, 2016) ("Where a plaintiff does not allege that a defendant was personally involved in the denial of grievance forms . . . , the defendant will not be estopped from raising the exhaustion defense."); Rambert v. Mulkins, No. 11 CIV. 7421 KPF, 2014 WL 2440747, at *12 (S.D.N.Y. May 30, 2014) ("Plaintiff has failed to allege that Defendants were in any way involved in the lack of grievance forms in the SHU. . . . Because Plaintiff has failed to allege any facts demonstrating any personal involvement of Defendants, they are not estopped from asserting this defense.").

In any event, "a denial of grievance forms does not, in itself, make administrative remedies unavailable."  Evans, 2016 WL 1746060, at *3; see also, e.g., Silvagnoli v. Figueroa, No. 12 Civ. 7761 (AT), 2014 WL 4160213, at *4 (S.D.N.Y. Aug. 19, 2014) ("[Prison staff's] alleged [repeated] refusal to give Plaintiff a grievance form does not render administrative remedies unavailable either, as '[d]enial of [grievance] forms . . . does not itself constitute a denial of remedies.'") (quoting Indelicate v. Suarez, 207 F. Supp. 2d 216, 219 (S.D.N.Y. 2002)); Armand v. Simonson, No. 12-CV-7709 (KMK), 2016 WL 1257972, at *22 (S.D.N.Y. Mar. 30, 2016) ("[N]o argument could be made that administrative remedies were not available to

---

[8]  Plaintiff has instead alleged – in a supplemental filing – that "Mr. Espinet," his counselor at the MCC, rejected his request for ten BP-8 forms.  (Pltf. Decl. (Dkt. No. 123) at 8)

Plaintiff . . . by virtue of her allegation that . . . she was ignored by correctional staff in asking for supplies and grievance forms. . . .") (alterations omitted).

A "correctional facility's failure to make [grievance] forms available does not relieve a prisoner from the obligation to undertake 'reasonable efforts' to properly exhaust." Rambert, 2014 WL 2440747, at *11.  The "reasonable efforts" standard requires "a serious effort by the prisoner to appeal through the proper statutory channels."  Clarke v. Thornton, 515 F. Supp. 2d 435, 439 (S.D.N.Y. 2007); see, e.g., O'Connor v. Featherston, No. 01 CIV. 3251 (HB), 2002 WL 818085, at *2-3 (S.D.N.Y. Apr. 29, 2002) (plaintiff's efforts to exhaust were reasonable where unhelpful prison officials denied requests for forms but where he wrote letters, filed a FOIA request, and made other inquiries about the issue).

Here, despite the alleged refusal to provide forms, Gottesfeld submitted two handwritten grievances to MCC staff on January 29, 2017 – five days before he left the MCC. (Handwritten Complaints (Dkt. No. 99) at 34-36; Cmplt. (Dkt. No. 2) at 4)  The first grievance concerns an incident at the prison law library – an incident that is not the subject of the Complaint – while the second involves MCC's alleged refusal to permit Gottesfeld to send "special mail" to a Rolling Stone reporter.[9]  (Handwritten Complaints (Dkt. No. 99) at 34-36) As to his request to send "special mail" to Rolling Stone, Gottesfeld asserts that MCC staff told him that his request was denied because the address listed on his "special mail" package was a

---

[9]  Pursuant to BOP regulations, an "inmate may write through 'special mail' to representatives of the news media specified by name or title."  28 CFR § 540.20.  Subject to certain exceptions, "outgoing special mail may be sealed by the inmate and is not subject to inspection."  28 CFR § 540.18(c)(1).

post office box.  In the Complaint, Plaintiff contends that the MCC's reference to a post office box was "both wrong and irrelevant."[10]  (Id. at 34)

Plaintiff's grievance concerning his "special mail" package was not timely.  His handwritten complaint makes clear that this issue arose in December 2016.  (Id.)  But Gottesfeld did not request a BP-8 complaint form until January 20, 2017, and he did not submit a written complaint until January 29, 2017.  (Id at 35; Pltf. Opp. (Dkt. No. 101-1) at 9)  Because Gottesfeld waited more than 20 days to make a written complaint concerning his "special mail," his complaint was untimely.  As a result, any claims based on alleged interference with Gottesfeld's mail to Rolling Stone will be dismissed.  Anderson v. Marr, No. 10 CIV. 818 (SHS) (FM), 2011 WL 3423694, at *6 (S.D.N.Y. July 18, 2011), report and recommendation adopted, 2011 WL 3585968 (S.D.N.Y. Aug. 10, 2011) ("'[F]iling an untimely or otherwise procedurally defective administrative grievance or appeal' does not satisfy the exhaustion requirement.") (quoting Woodford v. Ngo, 548 U.S. 81, 83-84 (2006)); Francis v. United States, No. 3:10 Civ. 1474 (AWT), 2011 WL 3563146, at *4 (D. Conn. Aug. 12, 2011) ("[T]he plaintiff failed to exhaust her administrative remedies because she filed an untimely Administrative Remedy Request [after the 20-day deadline].").

As to Gottesfeld's other complaints about the conditions of his confinement at the MCC (see Cmplt. (Dkt. No. 2) ¶¶ 4, 6-7, 10-21), Gottesfeld never filed a written grievance at all. (Aassiddaa Decl. (Dkt. No. 52-1) ¶ 9; Pltf. Opp. (Dkt. No. 101-1) at 9 (referencing only the two

---

[10]  Gottesfeld sought to send "special mail" to the following address:  Mr. David Kushner – Reporter – Rolling Stone; 174 Nassau Street, #357; Princeton, NJ 08542.  (Handwritten Complaint (Dkt. No. 99) at 34)  This address corresponds to a UPS Store that offers "Mailbox Services."  Princeton, THE UPS STORE, https://locations.theupsstore.com/nj/princeton/174-nassau-st; see Ann Wang v. Gov't Employees Ins. Co., No. 15-CV-1773 (JS) (ARL), 2016 WL 11469653, at *3 (E.D.N.Y. Mar. 31, 2016) ("The Court . . . make take judicial notice of the location of any GEICO offices based on Google Maps.").

handwritten complaints discussed above)  To the extent that Gottesfeld argues that his transfer from the MCC prevented him from exhausting his administrative remedies, Gottesfeld arrived in the SHU on November 14, 2016, and within a week's time he arranged for an open letter to former Attorney General Loretta Lynch and Department of Justice Inspector General Michael Horowitz to be published in the Huffington Post, in which he complained about the conditions of his confinement – the same conditions that he cites in the Complaint).[11]  (Cmplt. (Dkt. No. 2) ¶¶ 1, 15)  Yet he waited more than two months – until January 20, 2017 – to even request a BP-8 complaint form.  (Pltf. Opp. (Dkt. No. 101-1) at 9; Handwritten complaints (Dkt. No. 99) at 34-35)  By this time, any complaint he could have made about the conditions in the SHU would have been untimely.  See Joost v. Menifee, No. 03-cv-1608 (DLC), 2003 WL 22977499, at *2-3 (S.D.N.Y. Dec. 19, 2003) (dismissing complaint for failure to exhaust because plaintiff did not file administrative complaint within 20 days of when he was first assigned to the SHU).

*    *    *    *

Because of Gottesfeld's failure to exhaust his administrative remedies, Defendants are entitled to summary judgment on his claims.

---

[11] Jailed Activist Hacker Says He's Being Punished For His Hunger Strike, HUFFINGTON POST (Nov. 21 2016), www.huffpost.com/entry/jailed-activist-hacker-hunger-strike_n_58337736e4b058ce7aac9e0c ("As a direct result of my hunger strike, I am currently being punished at the DOJ facility MCC New York, despite never having been adjudicated of any crime by any court, nor even a prison disciplinary process.  I am being held in solitary confinement, have not been able to call my family, nor my attorneys.  I have been threatened with being placed on suicide watch, forcefully hydrated by IV, and force-fed.  I am told if I don't drink voluntarily, I [can't] leave segregation.  This is a clear and blatant attempt to break the hunger strike; there is no medical reason for restricting my calls to my wife, nor placing [me] in solitary. . . . My cell is cold, with standing water leaking on the floor, which given the compromising effects of starvation on my immune system, infection greatly increases the odds of a catastrophic and deadly infection.").

B.    **Merits of _Bivens_ Claims**

Even if Gottesfeld had exhausted his administrative remedies – or his failure to exhaust could be excused – his constitutional claims would fail on the merits.

1.    **Applicable Law**

Gottesfeld purports to sue under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  "[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called <u>Bivens</u> action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.'" <u>Lombardi v. Whitman</u>, 485 F.3d 73, 78 (2d Cir. 2007) (internal citations omitted) (quoting <u>Thomas v. Ashcroft</u>, 470 F.3d 491, 496 (2d Cir. 2006)).  In other words, a <u>Bivens</u> action permits a suit against a federal employee acting under color of federal law for damages resulting from the violation of an individual's constitutional rights.  <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 70–71 (2001).  The <u>Bivens</u> cause of action "is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983."  <u>Iqbal</u>, 556 U.S. at 677.

For liability to attach, a <u>Bivens</u> defendant must have been "personally involved in the claimed constitutional violation."  <u>Arar v. Ashcroft</u>, 585 F.3d 559, 569 (2d Cir. 2009).  Because the doctrine of <u>respondeat superior</u> does not apply, <u>see Iqbal</u>, 556 U.S. at 676, "[a] supervisory official cannot be liable solely on account of the acts or omissions of his or her subordinates."  <u>Bellamy v. Mount Vernon Hosp.</u>, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009) (citation omitted); <u>Rivera v. Lempke</u>, 810 F.Supp.2d 572, 576 (W.D.N.Y.2011) ("[m]ere failure to correct, or acquiescence in, a lower-level employee's

violation is not enough").  Government officials "cannot be held liable unless they themselves"

engaged in unconstitutional conduct; it is not enough for a defendant to simply have held a high

position of authority.  Iqbal, 556 U.S. at 683; id. at 693 ("each Government official, his or her

title notwithstanding, is only liable for his or her own misconduct"); see also Cannenier v.

Skipper-Scott, No. 18 CIV. 2383 (LGS), 2019 WL 764795, at *7 (S.D.N.Y. Feb. 20, 2019) ("For

individual liability to attach, Bivens defendants – even those in supervisory positions – must be

personally involved such that 'through their own actions, they satisfy each element of the

underlying constitutional tort.'") (quoting Turkmen v. Hasty, 789 F.3d 218, 250 (2d Cir. 2015),

rev'd on other grounds, Ziglar v. Abbasi, 137 S. Ct. 1843, 1869 (2017)).  Accordingly, a Bivens

complaint that does not allege the personal involvement of each defendant is "fatally defective

on its face."  Alfaro Motors. Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations

and citations omitted).

### 2.    Application

The Complaint names BOP Acting Director Hurwitz and U.S. Marshal Service

Acting Deputy Director Anderson as defendants, but otherwise does not mention them.

According to the Complaint, during the relevant time period, Hurwitz was based in Washington,

D.C., and Anderson was based in Arlington, Virginia.  (Cmplt. (Dkt. No. 2) at 3)  The Complaint

contains no allegations suggesting that either Hurwitz or Anderson knew about or was personally

involved in the conditions of Gottesfeld's confinement at the MCC.  Accordingly, the Complaint

fails to state a claim against Hurwitz and Anderson.  See Ramrattan v. Fischer, No. 13 CIV. 6890

(KPF), 2015 WL 3604242, at *10 (S.D.N.Y. June 9, 2015) ("'The bare fact that [an official]

occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim.'")

(quoting Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995)).

As for Medical Director Bussonich, the Complaint alleges that he "threatened [Gottesfeld] . . . with the brutal practice of force-feeding." (Cmplt. (Dkt. No. 2) ¶ 17)  As discussed above, Gottesfeld was then engaged in a hunger strike at MCC. (Id. ¶ 1)  In any event, any threat of force-feeding would not violate Gottesfeld's constitutional rights. "[V]erbal threats or abuse are not sufficient to state a constitutional violation." Jermosen v. Coughlin, 878 F. Supp. 444, 449 (N.D.N.Y. 1995); see also, e.g., Little v. Municipal Corp., 51 F.Supp.3d 473, 500 (S.D.N.Y.2014) ("[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right. . . ."); Cotz v. Mastroeni, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (verbal threats or abuse are not sufficient to state a constitutional violation).[12] Because threatening an inmate with force-feeding does not give rise to a constitutional violation, Plaintiff fails to state a claim against Bussonich.

As for Warden Tatum, the Complaint alleges that he "personally denied the plaintiff his First Amendment right to be interviewed by multiple media outlets which requested access to him, including Rolling Stone and Wired." (Cmplt. (Dkt. No. 2) ¶ 20 (emphasis added)) A prison official who bars media interviews of an inmate does not violate the inmate's First Amendment rights where other channels of communication are available, however. See Pell v. Procunier, 417 U.S. 817, 827 (1974) (upholding ban on media interviews of inmates where alternative communication channels were available); Ndoromo v. Holder, No. 09 CIV. 5741

---

[12]  Given that Gottesfeld does not allege that he was force-fed, the constitutionality of force-feeding is not at issue.  Courts have held, however, that court-ordered force-feeding "does not violate a hunger-striking prisoner's constitutional rights," because "[o]ther compelling governmental interests, such as the preservation of life, prevention of suicide, and enforcement of prison security, order, and discipline, outweigh" the prisoner's liberty interest in protesting by refusing food.  Grand Jury Subpoena John Doe v. United States, 150 F.3d 170, 172 (2d Cir. 1998).

(BMC), 2010 WL 302123, at *2 (E.D.N.Y. Jan. 20, 2010) (rejecting First Amendment claim

based on prisoner's "complaint . . . that prison authorities have not responded to his requests for

access to the media").  And here there are no allegations suggesting that Warden Tatum cut off

Gottesfeld from "other channels of communication," such as the telephone and regular mail.

Gottesfeld complains that Warden Tatum prevented him from sending a "sealed"

message to a Rolling Stone reporter.  (Cmplt. (Dkt. No. 2) ¶ 18; Pltf. Opp. (Dkt. No. 101-2) at 1)

But the "limited First Amendment right to freedom from censorship of inmate mail 'is not

equivalent to freedom from inspection or perusal.'"  Houston v. Covey, No. 14-CV-6609-FPG,

2017 WL 3726470, at *4 (W.D.N.Y. Aug. 30, 2017) (quoting Wolff v. McDonnell, 418 U.S.

539, 576 (1974)).  And Gottesfeld ultimately managed to communicate with the reporter; indeed,

Rolling Stone published a lengthy article about Gottesfeld in June 2017, which includes

numerous quotes from him.[13]  (Dtk. No. 101-4 at 11-20)  Accordingly, Gottesfeld suffered no

cognizable harm.  Abreu v. Travers, No. 9:15 CV 540 (MAD) (ATB), 2016 WL 6127510, at *10

(N.D.N.Y. Oct. 20, 2016) ("A single instance of mail tampering that does not result in the

plaintiff suffering any damage is generally insufficient to support a constitutional challenge.")

(citing Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975)); see also, e.g., Wingate v. City

of New York, No. 14-CV-4063-ARR-LB, 2018 WL 3863439, at *7 (E.D.N.Y. Aug. 14, 2018)

("To show a violation of this First Amendment right, plaintiff must demonstrate that prison

officials established an ongoing practice of interfering with his mail or that he suffered harm

caused by the mail tampering."); Shepherd v. Fisher, No. 08 CIV.9297 (LTS) (RLE), 2011 WL

3278966, at *2 (S.D.N.Y. July 27, 2011) ("To state a violation of the right to free speech arising

---

[13]  Gottesfeld was also "a contributor to The Huffington Post throughout his time at MCC."
(Cmplt. (Dkt. No. 2) ¶ 15) (emphasis added)

from interference with an inmate's legal mail, an inmate must allege an ongoing practice by prison officials of interfering with his mail or some harm suffered due to the tampering.").

To the extent that Gottesfeld contends that Warden Tatum's actions violated BOP regulations governing "special mail" (Pltf. Opp. (Dkt. No. 101-1) at 3), any such violation would not give rise to a constitutional claim.  See Mendez v. Bell, No. 3:16-CV-02123 (JAM), 2018 WL 4039321, at *4 (D. Conn. Aug. 23, 2018) ("[T]echnical non-conformity with prison procedure is not a constitutional violation[.]") (collecting cases).  Accordingly, the Complaint does not state a claim as to Tatum.

Because the Complaint does not plead facts sufficient to demonstrate that any of the Defendants was personally involved in conduct that would give rise to a constitutional violation, Plaintiff has not stated a Bivens claim against any Defendant.  See, e.g., Thomas, 470 F.3d at 496 (noting that in Bivens actions, "a plaintiff must allege that the individual defendant was personally involved in the constitutional violation"); Skyers v. United States, No. 12 CIV. 3432, 2013 WL 3340292, at *6 (S.D.N.Y. July 2, 2013) ("To state a claim for a constitutional violation under Bivens, a plaintiff must allege that an individual defendant was personally involved in the purported violation."); Glendora v. Pinkerton Sec. & Detective Servs., 25 F. Supp. 2d 447, 452 (S.D.N.Y. 1998) ("In order to state a claim under Bivens, [plaintiff] must allege that [defendant] personally violated a well-established constitutional right of which a reasonable persons would have known.  Absent such specific allegations, the complaint is insufficient as a matter of law and must be dismissed.").

### C.   State Law Claims

Gottesfeld also claims that Defendants violated his state constitutional rights (Cmplt. (Dkt. No. 2) ¶¶ 23-24), but "the New York State Constitution only permit[s] suits against

state actors acting under color of state law, and not against the federal government or federal employees acting under federal law."  Hightower v. United States, 205 F. Supp. 2d 146, 154 n.4 (S.D.N.Y. 2002).  Accordingly, where a plaintiff asserts claims against federal officials under the New York State Constitution, courts construe such claims as arising under either Bivens or the Federal Torts Claims Act ("FTCA").  Id. (construing state constitutional claims as Bivens claims); Belton v. Wydra, No. 3:17 Civ. 2006 (KAD), 2019 WL 2162718, at *15 (D. Conn. May 17, 2019) (noting that "state constitutional claims are included within state law claims subject to the . . . FTCA").

Here, to the extent that Gottesfeld's claims arise under Bivens, they fail for the reasons set forth above.  To the extent Gottesfeld's claims arise under the FTCA, those claims must be dismissed for lack of subject matter jurisdiction, given Gottesfeld's failure to exhaust his administrative remedies.  "Pursuant to the FTCA, tort claims against the United States must be 'presented in writing to the appropriate Federal agency within two years after such claim accrues[.]'"  Hobbes v. Lasco, No. 20-CV-511 (CM), 2020 WL 882444, at *4 (S.D.N.Y. Feb. 21, 2020) (quoting Roberson v. Greater Hudson Valley Family Health Ctr., Inc., No. 17-CV-7325, 2018 WL 2976024, at *2 (S.D.N.Y. June 12, 2018)); see 28 U.S.C. § 2401(b).  "'Failure to exhaust the agency's administrative remedies within the statute of limitations will render the claim 'forever barred.'"  Id.  "The exhaustion requirement is jurisdictional and cannot be waived.  Id. (citing Celestine v. Mount Vernon Neighborhood Health Cir., 403 F.3d 76, 82 (2d Cir. 2005)).

More than two years have passed since Gottesfeld left the MCC (Cmplt. (Dkt. No. 2) at 4), and he has not filed an administrative tort claim concerning the events discussed in the

Complaint.  (Aassiddaa Decl. (Dkt. No. 52-1) ¶¶ 10-11)[14]  As a result, any FTCA claim would be subject to dismissal for lack of subject matter jurisdiction, given Gottesfeld's failure to exhaust. Lassic, 2013 WL 3929633, at *2 ("If a claimant fails to exhaust her FTCA administrative remedies, a court will not have jurisdiction to hear the case and the matter must be dismissed.").

      **D.**      **False Claims Act Claims**

In his opposition brief, Gottesfeld asserts that, read liberally, the Complaint seeks relief under the False Claims Act ("FCA").  (Pltf. Opp. (Dkt. No. 101-3) at 4)  In support, Gottesfeld cites the Complaint's allegation that the BOP "'appears to use assignments of favored staff, including [Warden Tatum], to MCC for periods of time which seem designed to help them maximize their pension benefits at taxpayer expense just prior to retirement.'"  (Id. (quoting Cmplt. (Dkt. No. 2) ¶ 21)

"[T]he FCA imposes liability on any person who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval' to the U.S. government; or who 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'"  U.S. ex rel. Polansky v. Pfizer, Inc., 822 F.3d 613, 618 (2d Cir. 2016) (quoting 31 U.S.C. § 3729(a)-(b)).  The FCA allows a "'private individual, known as a relator to bring a civil qui tam action on behalf of the [G]overnment' for the making of a false claim against government funds."  United States ex rel. Kolchinsky v. Moody's Corp., 162 F. Supp. 3d 186, 194–95 (S.D.N.Y. 2016) (quoting U.S. ex rel. Grupp v. DHL Express (USA), Inc., 742 F.3d 51, 53 (2d Cir. 2014)).

---

[14]  Indeed, Gottesfeld appears to renounce any reliance on the FTCA.  (Pltf. Opp. (Dkt. No. 101-2) at 42)

"Because the False Claims Act is an anti-fraud statute, 'claims brought under the FCA fall within the express scope of Rule 9(b)" of the Federal Rules of Civil Procedure.  <u>United States ex rel. Corporate Compliance Assocs. v. New York Soc'y for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery</u>, No. 07 Civ. 292 (PKC), 2014 WL 3905742, at *7 (S.D.N.Y. Aug. 7, 2014).  "Accordingly, FCA pleadings are 'inadequate unless they are linked to allegations, stated with particularity, of actual false claims submitted to the government that constitute the essential element of an FCA qui tam action.'"  <u>United States ex rel. Bilotta v. Novartis Pharms. Corp.</u>, 50 F. Supp. 3d 497, 510 (S.D.N.Y. 2014).  "Generally, to comply with Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  <u>United States v. McKesson Corp.</u>, No. 12-CV-6440 (NG) (LB), 2019 WL 438357, at *10 (E.D.N.Y. Feb. 4, 2019), <u>reconsideration denied</u>, 2019 WL 2717104 (E.D.N.Y. June 28, 2019) (quoting <u>United States ex rel. Chorches v. Am. Med. Response, Inc.</u>, 865 F.3d 71, 81 (2d Cir. 2017)).  "However, an FCA complaint 'can satisfy Rule 9(b)'s particularity requirement by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge.'"  <u>Id.</u>

Here, the Complaint seeks relief for injuries that federal officers allegedly inflicted on Gottesfeld; the Complaint does not seek to vindicate rights belonging to the BOP or the federal government.  <u>See</u> <u>Todie v. Buffalo Half-Way House, Inc.</u>, No. 1:16-CV-307(MAT), 2017 WL 564095, at *4 (W.D.N.Y. Feb. 11, 2017) (dismissing prisoner's FTCA where "Plaintiff is not seeking to vindicate any rights belonging to the federal Bureau of Prisons or any other

federal government agency.  Rather, he is seeking redress for injury caused by Defendants to himself").  Even assuming <u>arguendo</u> that the Complaint could be read as seeking to vindicate the federal government's rights, Gottesfeld has not alleged with particularity fraudulent statements supporting an FCA claim.  Indeed, there is nothing inherently fraudulent about BOP employees seeking higher-paying positions in order "to help them maximize their pension benefits." (Cmplt. (Dkt. No. 2) ¶ 21)  Nor is there anything inherently fraudulent about BOP hiring someone who is seeking to maximize his pension benefits.  (<u>See</u> <u>id.</u>)  Gottesfeld's allegations do not create a strong inference that specific false claims were submitted to the federal government in connection with Warden Tatum's employment at the MCC.  For these reasons, the Complaint fails to plausibly state an FCA claim.

## III.    <u>LEAVE TO AMEND</u>

The Second Circuit has cautioned that district courts "should not dismiss [a <u>pro</u> <u>se</u> plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).  "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'"  <u>Lucente v. Int'l Bus. Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (quoting <u>Ruffolo v. Oppenheimer & Co.</u>, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)).  "One appropriate basis for denying leave to amend is that the proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." <u>Id.</u> (internal citations omitted).

Here, granting leave to amend would be futile, because Gottesfeld has failed to exhaust his administrative remedies under the PLRA and FTCA.  These deficiencies are not the

result of "inadequate[ ] or inartful[ ]" pleading and are therefore not susceptible to cure by re-

pleading. Cuoco, 222 F.3d at 112. Consequently, leave to amend would be futile. See, e.g.,

Penalver v. Soc. Sec. Admin., No. 19-CV-01878, 2020 WL 32465, at *6 (E.D.N.Y. Jan. 2, 2020)

("Because the plaintiff cannot circumvent her failure to exhaust by changing her pleadings, . . .

amendment of her claims would be futile."); Romero v. Teamsters Union Local 272, No. 1:15-

CV-07583-GHW, 2019 WL 4688642, at *8 (S.D.N.Y. Sept. 25, 2019) ("[B]ecause Defendant

has demonstrated that Plaintiff failed to exhaust his administrative remedies, Plaintiff's motion

for leave to amend is denied."). As to any FCA claim, Gottesfeld's allegations of fraud are based

on speculation and he has not pleaded facts that "'give[ ] any indication that a valid claim might

be stated.'" In re IAC/Interactive Corp. Sec. Litig., 478 F. Supp. 2d 574, 596 (S.D.N.Y. 2007)

(quoting Van Buskirk v. The N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003)).

      Gottesfeld has filed two motions to "add defendants" (Dkt. Nos. 98, 133; see also

Dkt. No. 140), but the individuals he proposes to add as defendants are either high-ranking BOP

or U.S. Marshals Service officials, or staff at the Federal Correctional Institution in Terre Haute,

Indiana, where Gottesfeld is currently incarcerated. (Dkt. No. 133 ¶¶ 29-41) As for the high-

ranking officials, Gottesfeld has alleged no facts suggesting that they were personally involved in

violations of his constitutional rights. As for the staff at FCI-Terre Haute – as this Court ruled in

addressing Gottesfeld's requests for injunctive relief (Dkt. Nos. 12-13, 30, 43, 45) – this Court

lacks subject matter jurisdiction over Gottesfeld's Terre Haute-based claims.[15] (Order (Dkt. No.

66))

---

[15] Despite the Court's ruling concerning Gottesfeld's Terre Haute-based claims, he has
continued to file more requests for injunctive relief. See, e.g.. Dkt. Nos. 68, 69, 79, 80, 84, 116,
121). This Court lacks subject matter jurisdiction over these applications, and they are denied
for the same reasons set forth in the Court's August 5, 2019 Order. (Dkt. No. 66)

Leave to amend is particularly inappropriate here, given that Gottesfeld has made dozens of submissions since Defendants' motion to dismiss was filed, including – as discussed – multiple motions to add new defendants.  (Dkt. Nos. 98, 133, 140)  None of Gottesfeld's filings gives any indication that he has a viable claim, however.  See Brown v. Superior Contract Cleaners, No. 10-CV-6238 CJS, 2011 WL 4055166, at *5 (W.D.N.Y. Sept. 12, 2011) ("Plaintiff has made a number of supplemental submissions, none of which indicate that he could submit an amended pleading that would survive dismissal.  Accordingly, leave to replead is denied.").  Accordingly, leave to amend is denied.

## CONCLUSION

For the reasons stated above, Defendants' motion (Dkt. No. 51) is granted, and Plaintiff's claims are dismissed.  The Clerk of Court is respectfully directed to terminate the motion, close the case, and mail a copy of this order to pro se Plaintiff by certified mail.  Any pending motions are denied as moot.  This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated: New York, New York
     March 6, 2020                SO ORDERED.

                                     Paul G. Gardephe
                                     United States District Judge